## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RUTH V. BRIGGS,                          :
                                         :
        Plaintiff,                       :      Case No. 2:16-cv-00248-RK
                                         :
    v.                                   :      HON. ROBERT F. KELLY, SR., J.
                                         :
TEMPLE UNIVERSITY,                       :
                                         :
        Defendant.                       :
                                         :
                                         :


## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL OR, IN THE ALTERNATIVE, FOR A REMITTITUR

I.    INTRODUCTION ................................................................................................. 1

II.   PROCEDURAL HISTORY.................................................................................. 3

III.  ARGUMENT ...................................................................................................... 4

    A.    Legal Standard Governing Judgment As A Matter Of Law Under Rule
        50(b)............................................................................................................ 4

    B.    There Was No Evidentiary Basis For The Jury To Conclude That Temple
        Unlawfully Discriminated Against Ms. Briggs Because Of Her Age ................. 5

        1.    Ms. Briggs Failed To Prove A Prima Facie Case Of Age
            Discrimination................................................................................... 6

            a.    Ms. Briggs Was Not Qualified For Her Position......................... 6

            b.    Ms. Briggs Did Not Suffer An Adverse Employment
                Action............................................................................... 8

            c.    Ms. Briggs Failed To Establish An Inference of
                Discrimination................................................................... 9

        2.    Ms. Briggs Failed To Prove That Temple's Legitimate Non-
            Discriminatory Reason For Its Actions Was A Pretext For
            Discrimination................................................................................. 15

            a.    No Reasonable Factfinder Could Disbelieve Temple's
                Reason For Disciplining And Discharging Ms. Briggs .............. 16

            b.    Ms. Briggs Did Not Prove That An Invidious,
                Discriminatory Reason Motivated Temple................................. 17

    C.    There Was No Evidentiary Basis For The Jury To Conclude Temple
        University Retaliated Against Ms. Briggs .......................................................... 19

        1.    Ms. Briggs Failed To Establish A Prima Facie Case Of Retaliation ....... 19

            a.    Ms. Briggs' Only Protected Conduct Was Her Complaints
                to Ms. Foehl and Mr. Etezady....................................................... 20

            b.    Ms. Briggs Did Not Experience An Adverse Employment
                Action............................................................................... 20

            c.    There Is No Causal Connection Between Ms. Briggs'
                Complaints To Ms. Foehl and Mr. Etezady And The End
                Of Her Employment................................................................ 20

        2.    Ms. Briggs Did Not Prove Pretext ........................................................ 21

D.      There Was No Evidentiary Basis For The Jury To Conclude Temple
        University Subjected Ms. Briggs To An Age-Based Hostile Work
        Environment ....................................................................................... 22

E.      There Was No Evidentiary Basis For The Jury To Conclude Temple
        University Subjected Ms. Briggs To A Retaliatory Hostile Work
        Environment ....................................................................................... 26

F.      There Was Insufficient Evidence For The Court To Charge The Jury With
        Willfulness For Ms. Briggs' ADEA Claims ...................................... 27

G.      Temple University Is Entitled To A New Trial Because The Jury Failed
        To Follow This Court's Instructions On The Verdict Sheet, Rendering The
        Verdict Form Internally Incompatible And The Verdicts Irreconcilably
        Inconsistent ........................................................................................ 29

H.      Temple University Is Entitled To A New Trial On Plaintiff's Back Pay
        Damages .............................................................................................. 33

I.      The Jury's Compensatory Damages Award Is Unsupported, And
        Judgment Should Be Entered In Favor Of Temple University Under Rule
        50(b); Alternatively, The Court Should Remit It ............................... 36

J.      If Judgment As A Matter Of Law Is Not Granted In Full, A New Trial Is
        Warranted; Alternatively The Court May Deny The Motion For A New
        Trial On The Condition That The Plaintiff Accepts A Remittitur Of The
        Jury Verdict ........................................................................................ 38

IV.   CONCLUSION ............................................................................................ 40

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Acumen, LLC v. Advanced Surgical Services, Inc.*,
   561 F.3d 199 (3d Cir. 2009) .......................................................................................29, 32

*Allen v. PetSmart, Inc.*,
   512 F. Supp. 2d 288 (E.D. Pa. 2007) ................................................................................7

*Anderson v. Haverford Coll.*,
   868 F. Supp. 741 (E.D. Pa. 1994) ...................................................................................11

*Andreoli v. Gates*,
   482 F.3d 641 (3d Cir. 2007) ............................................................................................21

*Andrews v. City of Philadelphia*,
   895 F.2d 1269 (3d Cir. 1990) ..........................................................................................24

*Argue v. David Davis Enters.*,
   No. 02-9512, 2008 WL 450097 (E.D. Pa. Feb. 15, 2008) ...............................................27

*Bedford v. Se. Pa. Transp. Auth.*,
   867 F. Supp. 288 (E.D. Pa. 1994) ...................................................................................21

*Beech Aircraft Corp. v. Rainey*,
   488 U.S. 153 (1988) .........................................................................................................34

*Berea v. Pickering Creek Indus. Park, Inc.*,
   865 F.2d 49 (3d Cir. 1989) .........................................................................................33, 34

*Berndt v. Kaiser Aluminum & Chem. Sales, Inc.*,
   604 F. Supp. 962 (E.D. Pa. 1985) ...................................................................................27

*Billet v. CIGNA Corp.*,
   940 F.2d 812 (3d Cir. 1991) ............................................................................................17

*Bland v. PNC Bank, N.A.*,
   No. 15-1042, 2016 WL 10536026 (E.D. Pa. Dec. 30, 2016) ...........................................34

*Boner v. Bd. of Comm'rs of Little Rock Mun. Water Works*,
   674 F.2d 693 (8th Cir. 1982) .............................................................................................6

*Boykins v. Lucent Techs., Inc.*,
   78 F. Supp. 2d 402 (E.D. Pa. 2000) ...........................................................................18, 21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Burrage v. U.S.*,
   571 U.S. 204 (2014)...................................................................................30, 31, 32

*Byrd v. Elwyn*,
   No. 16-02275, 2016 WL 5661713 (E.D. Pa. Sept. 9, 2016)......................................27

*Carter v. Mid-Atl. Healthcare, LLC*,
   228 F. Supp. 3d 495 (E.D. Pa. 2017) .........................................................................5

*Carvalho-Grevious v. Del. State Univ.*,
   851 F.3d 259 (3d Cir. 2017).......................................................................................19

*Cohen v. Pitcairn Trust Co.*,
   No. 99-5441, 2001 WL 873050 (E.D. Pa. June 20, 2001).........................................7

*Comaper Corp. v. Antec, Inc.*,
   596 F.3d 1343 (Fed. Cir. 2010).............................................................................29, 33

*Connors v. Chrysler Fin. Corp.*,
   160 F.3d 971 (3d Cir. 1998).......................................................................................5

*Cridland v. Kmart Corp.*,
   929 F. Supp. 2d 377 (E.D. Pa. 2013) .......................................................................18

*Crumpton v. Potter*,
   305 F. Supp. 2d 465 (E.D. Pa. 2004) .......................................................................13

*Dean v. Specialized Sec. Response*,
   Civil Action No. 09-515, 2011 U.S. Dist. LEXIS 94722 (W.D. Pa. Aug. 24,
   2011) ........................................................................................................................15

*Deans v. Kennedy House, Inc.*,
   587 F. App'x 731 (3d Cir. 2014) .............................................................................11

*Dreshman v. Henry Clay Villa*,
   733 F. Supp. 2d 597 (W.D. Pa. 2010)...................................................................24, 26

*E.E.O.C. v. Wyeth Pharmaceutical*,
   No. 03-2967, 2004 WL 503417 (E.D. Pa. March 11, 2004)....................................12

*Ellis v. Pennsylvania Dept. of Corrections*,
   No. 15-2329, 2017 WL 1928342 (M.D. Pa. May 10, 2017)....................................12

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Ezold v. Wolf, Block, Schorr & Solis-Cohen*,
    983 F.2d 509 (3d Cir. 1992)............................................................................10, 17

*Faragher v. City of Boca Raton*,
    524 U.S. 775 .........................................................................................................25

*Fiorentini v. William Penn School Dist.*,
    665 F. App'x 229 (3d Cir. 2016) ......................................................................8, 13

*Frost v. PetSmart, Inc.*,
    No. 05-6759, 2007 WL 602990 (E.D. Pa. Feb. 26, 2007) ...................................7, 17

*Fuentes v. Perskie*,
    32 F.3d 759 (3d Cir. 1994)....................................................................................17

*Funayama v. Nichia Am. Corp.*,
    No. 08-5599, 2011 U.S. Dist. LEXIS 40016 (E.D. Pa. Apr. 13, 2011) ................25

*Genter v. Cheney University of Pennsylvania*,
    No 94-7443, 1996 WL 525323 (E.D. Pa. Sept. 17, 1996) (Kelly, J.)..............29, 30

*Gross v. FBL Fin. Servs., Inc.*,
    557 U.S. 167 (2009)..........................................................................................5, 30

*Hairston v. Runyon*,
    No. CIV. A. 96-CV-8707, 1997 WL 798240 (E.D. Pa. Dec. 11, 1997) ..................6

*Harding v. Careerbuilder, LLC*,
    168 F. App'x 535 (3d Cir. 2006) .........................................................................17

*Harris v. Mercy Health Corp.*,
    No. 97-7802, 2000 U.S. Dist. LEXIS 11228 (E.D. Pa. Aug. 10, 2000) ................18

*Hodczak v. Latrobe Specialty Steel Co.*,
    451 F. App'x 238 (3d Cir. 2011) ......................................................................10, 18

*Jensen v. Potter*,
    435 F.3d 444 (3d Cir. 2006)............................................................................22, 23

*Jones v. Se. Pa. Transp. Auth.*,
    796 F.3d 323 (3d Cir. 2015)........................................................................6, 11, 21

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Keller v. ORIX Credit Alliance, Inc.*,
   130 F.3d 1101 (3d Cir. 1997)................................................................16

*Kelly v. Matlack, Inc.*,
   903 F.2d 978 (3d Cir. 1990)................................................................28

*Kotas v. Eastman Kodak Co.*,
   No. 95-CV-1634, 1997 WL 570907 (E.D. Pa. Sept. 4, 1997) .............5, 38

*Lightning Lube, Inc. v. Witco Corp.*,
   802 F. Supp. 1180 (D.N.J. 1992), *aff'd*, 4 F.3d 1153 (3d Cir. 1993)....................40

*Logan v. Countrywide Home Loans*,
   No. 04-5974, 2007 WL 879010 (E.D. Pa. March 15, 2007)....................10

*Magee v. Gen. Motors Corp.*,
   213 F.2d 899 (3d Cir. 1954)................................................................38

*Malarkey v. The Reading Hosp. and Med. Ctr.*,
   No. 09-3278, 2010 WL 4703537 (E.D. Pa. Nov. 19, 2010) .....................6

*Mandile v. Clark Material Handling Co.*,
   131 F. App'x 836 (3d Cir. 2005) ..........................................................5

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973)................................................................5, 19

*McGrath v. Lumbermens Merchandising Corp.*,
   851 F. Supp. 2d 855 (E.D. Pa. 2012) .......................................15, 16, 18

*Mieczkowski v. York City School Dist.*,
   414 F. App'x 441 (3d Cir. 2011) ...........................................................12

*Milillo v. Thomas Jefferson Univ. Hosp.*,
   No. 14-3143, 2015 WL 5964992 (E.D. Pa. Oct. 13, 2015) .....................32

*Montgomery Ward & Co. v. Duncan*,
   311 U.S. 243 (1940)................................................................38

*O'Connell v. Associated Wholesalers, Inc.*,
   No. 12-cv-02540, 2013 WL 3742445 (E.D. Pa. July 17, 2013) .............13

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Oncale v. Sundowner Offshore Services*,
    523 U.S. 75 (1998) ..................................................................................................23

*Rush v. Scott Specialty Gases, Inc.*,
    930 F. Supp. 194 (E.D. Pa. 1996) ..................................................................36, 37, 38, 40

*Ryan v. CBS Corp.*,
    No. 06-2385, 2007 WL 2317380 (E.D. Pa. Aug. 7, 2007) ................................25, 26

*Saidu-Kamara v. Parkway Corp.*,
    155 F. Supp. 2d 436 (E.D. Pa. 2001) .............................................................25

*Schofield v. Metropolitan Life Ins. Co.*,
    No. 03-0357, 2006 WL 2660704 (M.D. Pa. Sept. 15, 2006) .............................8

*Shaw v. Cumberland Truck Equipment Co.*,
    No. 09-CV-359, 2012 WL 1078958 (M.D. Pa. March 30, 2012) .......................5

*Shramban v. Aetna*,
    115 F. App'x 578 (3d Cir. 2004) ..................................................................23

*Simpson v. Key Jewelers, Div. of Sterling, Inc.*,
    142 F.3d 639 (3d Cir. 1998) ........................................................................19

*Smith v. ABF Freight Systems, Inc.*,
    No. 04-cv-2231, 2007 WL 3231969 (M.D. Pa. Oct. 29, 2007) .........................14

*Spence v. Bd. of Ed.*,
    806 F.2d 1198 (3d Cir. 1986) ..................................................................36, 37, 40

*Szostek v. Drexel Univ.*,
    No. 12-2921, 2013 WL 4857989 (E.D. Pa. Sept. 11, 2013) ..............................22

*Valentin v. Crozier-Chester Medical Center*,
    986 F. Supp. 292 (E.D. Pa. 1997) ..............................................................37, 38

*Watson v. Eastman Kodak Co.*,
    235 F.3d 851 (3d Cir. 2000) ......................................................................10

*Willis v. UPMC Children's Hosp. of Pittsburgh*,
    808 F.3d 638 (3d Cir. 2015) ......................................................................5, 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Statutes**

42 U.S.C. § 2000e-5(e)(1)..................................................................................... *passim*


**State Statutes**

Pennsylvania Human Relations Act....................................................................2, 4, 5, 6

**Rules**

Federal Rule of Civil Procedure 50 ..................................................................2, 4, 36, 40

Federal Rule of Civil Procedure 59 ..................................................................3, 38, 40

Federal Rule of Evidence 106.............................................................................34

## I.       INTRODUCTION

On July 19, 2018, the jury returned a verdict for Ms. Briggs, and against Temple University, despite *any evidence* of discriminatory or retaliatory animus.  The jury awarded Ms. Briggs $250,000.00 in back pay damages, with liquidated damages, and $350,000.00 in compensatory damages for a total verdict of $850,000.00.

Ms. Briggs tried to sustain her burden of proof solely by presenting her own, uncorroborated testimony that Temple "treated her differently," "responded to her differently," and "disciplined her differently."  Critically, however, Ms. Briggs presented absolutely no evidence to show that Temple actually treated anyone differently than Ms. Briggs, responded to her differently, or disciplined her differently than other employees for any reason, much less because of her age or complaints of age and gender discrimination.

Ms. Briggs' age discrimination claim rested on three legally insufficient allegations:

(1) Dr. Wu *once* commented about women in China retiring at 55—stray remarks, like this alleged comment, rarely are given weight, particularly when such comments are temporally remote from the challenged employment decisions;

(2) Temple disciplined Hailey King, a younger female employee, less severely than Ms. Briggs—Ms. King is not a comparator because there was no evidence that Ms. King, or any other employee, engaged in misconduct similar to the misconduct of Ms. Briggs; and

(3) Temple reassigned some of Ms. Briggs' job duties when Ms. Briggs relocated to the tenth floor—the reassignment of job duties is not discriminatory, especially because Ms. Briggs presented no details about the purported reassignment, including to whom the job duties were reassigned, who reassigned the duties, and whether the duties were even initially Ms. Briggs' responsibility.

1

These three allegations do not, in any way, establish that Ms. Briggs' age was the "but-for" cause of Temple's decision to discipline Ms. Briggs.

Ms. Briggs, likewise, failed to prove her retaliation claim.  The individuals who gave Ms. Briggs the opportunity to resign in lieu of termination—Dr. Wu, Ms. Walton, and Mr. Wacker— testified unequivocally and without contradiction that they were unaware Ms. Briggs made discrimination complaints; therefore, they could not possibly have acted with retaliatory animus. Furthermore, Ms. Foehl gave uncontroverted testimony that she did not tell *anyone* about the content of her conversations with Ms. Briggs until after Ms. Briggs' employment ended.  And, Ms. Briggs' harassment claims similarly fail as a matter of law because there is no evidence that Dr. Wu's purported actions had *anything whatsoever* to do with Ms. Briggs' age.

For these reasons, Ms. Briggs failed to carry her burden of proving her claims under the Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Pennsylvania Human Relations Act ("PHRA").  Ms. Briggs' dearth of evidence did not establish that age was the "but-for" cause of Temple offering her the opportunity to resign in lieu of termination, her complaint of age discrimination was the "but-for" cause of Temple offering her the opportunity to resign in lieu of termination, and that she experienced age-based harassment and retaliatory harassment based upon her complaint of age and gender discrimination.  Because Ms. Briggs did not prove that age or retaliation was the "but-for" cause of the end of her employment, she, likewise, did not prove that Temple University's conduct was willful and should warrant liquidated damages.  For these reasons, Temple University respectfully requests that the Court enter judgment as a matter of law in Temple University's favor under Federal Rule of Civil Procedure 50(b) on Plaintiff's claims of age discrimination, age retaliation, age-related hostile work environment, retaliatory hostile work

environment (age and gender complaint), back pay, liquidated damages, and compensatory damages.

Temple University also requests a new trial under Federal Rule of Civil Procedure 59(a) because (1) the jury's verdict was against the weight of the evidence; (2) the jury failed to follow the Court's instructions on the verdict form; (3) the jury's verdict is inconsistent; (4) the jury miscalculated back pay damages and failed to consider the uncontroverted testimony that Ms. Briggs voluntarily removed herself from the job market after securing a job that paid less than half of what she earned at Temple University; (5) the Court erred by allowing Ms. Briggs' counsel to read cherry-picked testimony about Plaintiff's back wage loss in response to the jury's question about how to calculate damages, while refusing to allow Temple University's counsel to read testimony concerning Ms. Briggs failure to mitigate her damages; namely, voluntarily removing herself from the job market; and (6) the jury's compensatory damages verdict is unsupported by the record.

Finally, if the Court determines that Temple University is not entitled to judgment as a matter of law or a new trial on the aforementioned grounds, Temple University requests an amendment, alteration, or remittitur of the jury's verdict as it pertains to back-pay and liquidated damages because the back pay award, and the liquidated damages award, was premised upon the jury's apparent misunderstanding of how to calculate damages.

## II.   PROCEDURAL HISTORY

After resigning from her employment with Temple University in April 2014, Ruth Briggs initiated this action by filing a Complaint against the University, (Docket No. 1), alleging that Temple discriminated against her because of her age and sex, subjected her to a hostile work environment because of her age, sex, and her complaints of age and gender discrimination, and

3

retaliated against her for complaining of age and sex discrimination.

Following this Court's denial of Temple's Motion for Summary Judgment, by Order dated January 3, 2018, (Docket No. 31), the parties proceeded to trial, which commenced on July 16, 2018.  During trial, Ms. Briggs asserted claims of age and gender discrimination, age, gender, and retaliatory harassment, and age and gender retaliation under the ADEA, Title VII, and the PHRA.  The parties presented testimony from July 16 to July 18.  In her case-in-chief, Ms. Briggs called (1) Gregory Wacker (Temple University's Director of Finance in the Dean's Office of the College of Science and Technology); (2) Dr. Jie Wu (Ms. Briggs' former supervisor and the Chair of the Department of Computer and Information Sciences); (3) Deirdre Walton (Temple University's Director of Labor/Employee Relations); and (4) Sandra Foehl (Temple University's EOC Director)—*each of whom refuted Ms. Briggs' claims of discrimination, harassment, and retaliation*.  Ms. Briggs also testified.  She presented no witnesses who corroborated her testimony.

The Court held the jury charge conference on July 18, and, on July 19, counsel made closing arguments and the Court instructed the jury.  On July 19, the jury returned a verdict for Ms. Briggs, and against Temple University, on her claims of age discrimination, age retaliation, age-related hostile work environment, and retaliatory hostile work environment (age and gender complaint).  (*See* Verdict Form, Docket No. 58.)  The jury awarded Ms. Briggs $250,000.00 in back pay damages, with liquidated damages, and $350,000.00 in compensatory damages for a total verdict of $850,000.00.

## III.   ARGUMENT

### A.   Legal Standard Governing Judgment As A Matter Of Law Under Rule 50(b)

In deciding a motion for judgment as a matter of law under Rule 50(b), the Court must consider "whether, 'viewing the evidence in the light most favorable to the non-movant and

giving [her] the advantage of every fair and reasonable inference, there is sufficient evidence from which a jury reasonably could find liability.'" *Shaw v. Cumberland Truck Equipment Co.*, No. 09-CV-359, 2012 WL 1078958, at *3 (M.D. Pa. March 30, 2012) (quoting *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993)); *Mandile v. Clark Material Handling Co.*, 131 F. App'x 836, 838 (3d Cir. 2005). While the Court must draw factual inferences for the non-moving party, "'[t]he question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party.'" *Kotas v. Eastman Kodak Co.*, No. 95-CV-1634, 1997 WL 570907, at *7 (E.D. Pa. Sept. 4, 1997) (Kelly, J.) (quoting *Lightning Lube*, 4 F.3d at 1166).

**B.     There Was No Evidentiary Basis For The Jury To Conclude That Temple Unlawfully Discriminated Against Ms. Briggs Because Of Her Age**

Absent direct evidence, which the Court found did not exist,[1] discrimination claims are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[2] *See, e.g.*, *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015). Under this framework, if Ms. Briggs established a *prima facie* case, the burden shifted to Temple to articulate a legitimate, non-discriminatory reason for the challenged employment decision. *Id.* Then, the burden shifted back to Ms. Briggs, who had the ultimate burden to prove that the University's reason was a pretext for discrimination. *Id.*

Ultimately, Ms. Briggs had to prove that Temple would not have terminated her employment ***but-for*** her age. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009); *see also Carter v. Mid-Atl. Healthcare, LLC*, 228 F. Supp. 3d 495, 501 (E.D. Pa. 2017) ("As such, to

---

[1] *See* Trial Tr. (7.19.18) 51:22-53:21 (wherein the Court instructed the jury on the burden-shifting framework to apply to Ms. Briggs' claim of age discrimination).

[2] Age discrimination claims asserted under the PHRA are analyzed using the same framework as claims asserted under the ADEA. *See, e.g.*, *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 972 (3d Cir. 1998).

establish a disparate-treatment claim under the ADEA or the PHRA 'a plaintiff must prove that age was the "but-for" cause of the employer's adverse decision.'" (quoting *Gross*, 557 U.S. at 175-80)); *Malarkey v. The Reading Hosp. and Med. Ctr.*, No. 09-3278, 2010 WL 4703537, at *9 (E.D. Pa. Nov. 19, 2010) (rejecting plaintiff's argument that "the PHRA does not employ the 'but for' test").  Not only did Ms. Briggs fail to meet this burden, she also did not demonstrate the existence of animus.  The trial record supports only one conclusion:  Ms. Briggs' age was not the ***but-for*** cause of Temple's decision to end Ms. Briggs' employment.

### 1.    Ms. Briggs Failed To Prove A *Prima Facie* Case Of Age Discrimination

To demonstrate a *prima facie* case of disparate treatment, Ms. Briggs must have shown that (1) she is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) the circumstances of the adverse action give rise to an inference of discrimination.  *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 327 (3d Cir. 2015).  Because Ms. Briggs failed to satisfy the second, third, and fourth elements, Temple is entitled to judgment as a matter of law on Ms. Briggs' ADEA age discrimination claim.

#### a.    *Ms. Briggs Was Not Qualified For Her Position*

Ms. Briggs failed to establish that she was qualified for her position when her employment ended.  Indeed, the record demonstrates she was unqualified.  Though Ms. Briggs had the education and technical skills required for an Executive Assistant, her repeated, admitted mistakes and violations of Temple's policies rendered her unqualified to remain in her position. *See Hairston v. Runyon*, No. CIV. A. 96-CV-8707, 1997 WL 798240, at *2 (E.D. Pa. Dec. 11, 1997) ("By violating a legitimate USPS policy (to refrain from heated verbal exchanges), [plaintiff] has failed to show he was qualified for [his] position, and failed to satisfy the second requirement of his *prima facie* case."); *see also Boner v. Bd. of Comm'rs of Little Rock Mun.*

6

*Water Works*, 674 F.2d 693, 696 (8th Cir. 1982) (finding lower court did not err in concluding plaintiff was not qualified due to his poor job performance).

Ms. Briggs admitted that her supervisors consistently rated her "below average," that "below average" was the highest performance rating she received during her tenure at Temple, (Trial Tr. (7.17.18 PM) 30:6-12, 46:4-9, 47:22-48:8, 102:9-21)), 2.91 (on a 4-point scale) was the highest score she received on any evaluation (still below an "average" score of 3.0), (Trial Tr. (7.17.18 PM) 48:1-3), and that she received this highest score from Dr. Wu.  (Trial Tr. (7.17.18 PM) 48:16-24.)  Moreover, Ms. Briggs admitted to the errors and deficiencies articulated in the warnings and discipline that led to the end of her employment.  (Trial Tr. (7.17.18 PM) 9:2-12:1.)  Said differently, there is no dispute in the record that Temple disciplined Ms. Briggs and Temple offered her the choice to resign in lieu of termination (and Ms. Briggs then chose to resign) because of these errors and deficiencies, and because of Ms. Briggs' repeated violations of Temple's policies.  (Trial Tr. (7.17.18 PM) 137:13-24; Trial Tr. (7.18.18 AM) 21:11-22:10, 94:12-95:2.)  In contrast, Ms. Briggs' uncorroborated evaluation of her own performance is inadequate as a matter of law.  *See Allen v. PetSmart, Inc.*, 512 F. Supp. 2d 288, 296 (E.D. Pa. 2007) (holding that the plaintiff's "mere disagreement with [his employer's] decision [to terminate him based upon the employer's opinion of his performance] is insufficient, as a matter of law, to allow him to survive summary judgment."); *Frost v. PetSmart, Inc.*, No. 05-6759, 2007 WL 602990, at *7 (E.D. Pa. Feb. 26, 2007) (granting summary judgment in favor of the defendant-employer on plaintiff's age discrimination claim, and explaining that "[plaintiff's] own subjective beliefs that he performed as well or better than other store managers are immaterial for the purposes at hand.").  In analyzing discrimination claims, it is the employer's view of performance that is relevant, not what the plaintiff believes to be the truth.  *See Cohen v.*

*Pitcairn Trust Co.*, No. 99-5441, 2001 WL 873050, at *7 (E.D. Pa. June 20, 2001) (even if, as plaintiff argues, the employer's "beliefs about [plaintiff's] performance are unfair . . . it is irrefutable that [the employer] viewed [plaintiff's] performance as inadequate and her work ethic as lacking.  It is his perceptions that count, and not what the plaintiff claims is the objective truth.").  Ms. Briggs, therefore, failed to prove that she was qualified for her position.

   *b.*  *Ms. Briggs Did Not Suffer An Adverse Employment Action*

  Because Ms. Briggs resigned from Temple, she experienced no adverse employment action, the second element of a *prima facie* case.  Courts consistently have held that a resignation is *not* an adverse employment action.  *See, e.g., Fiorentini v. William Penn School Dist.*, 665 F. App'x 229, 234 (3d Cir. 2016).  Rather, "[a]n adverse employment action is one which is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment."  *Schofield v. Metropolitan Life Ins. Co.*, No. 03-0357, 2006 WL 2660704, at *8 (M.D. Pa. Sept. 15, 2006) ("An employee who voluntarily resigns cannot show that he or she has suffered an adverse employment decision at the hands of the employer." (collecting cases)).

  Ms. Briggs unequivocally testified that she resigned from Temple.  On April 3, 2014, Ms. Briggs emailed Ms. Walton stating, "It is with great sadness that I resign from my position, Executive Assistant in the Department of Computer and Information Sciences in the College of Science and Technology effective April 1, 2014."  (Trial Ex. D-23; Trial Tr. (7.17.18 PM) 61:4-24.)  She testified Temple gave her a choice to resign and she was told she "could resign," (Trial Tr. (7.17.18 AM) 116:22-25; (7.17.18 PM) 61:20-22)), which she did.  After she resigned, Ms. Briggs repeatedly confirmed her employment ended not because she was fired, but because she resigned.  For example, on August 14, 2015, *more than a year after her resignation*, when speaking with a friend (former Temple University Professor, Abbe Forman), Ms. Briggs disputed rumors that Temple University fired her for wrongdoing and insisted, "my reason for separation

8

is because I resigned." (Trial Ex. D-34). Similarly, during a job interview at the Community College of Philadelphia, Ms. Briggs told interviewers she resigned from Temple University. (Trial Tr. (7.17.18 AM) 116:12-24.) Thus, Ms. Briggs failed to establish the third element of a *prima facie* case of age discrimination.

c.    *Ms. Briggs Failed To Establish An Inference of Discrimination*

Ms. Briggs premised her age discrimination claim on: (1) Dr. Wu *once* commented about women in China retiring at 55, (2) Temple disciplined Hailey King, a younger female employee, less severely than Ms. Briggs, and (3) Temple reassigned some of Ms. Briggs' job duties to female student workers when Ms. Briggs relocated to the tenth floor. (Trial Tr. (7.17.18 AM) 75:19-23.) This paucity of evidence fails to prove that any of Temple's decisions made regarding Ms. Briggs resulted from age (or any other) animus.

*First*, Dr. Wu's purported comment about the retirement age for women in China does not give rise to an inference of discrimination. Ms. Briggs testified that on November 9, 2011, Dr. Wu "said, well, you -- because, you know, in China, we put women out to pasture at 55." (Trial Tr. (7.17.18 AM) 31:7-14.) Dr. Wu denied making this comment (which includes an American idiom); nonetheless, even if Ms. Briggs' testimony were to be believed, Dr. Wu's purported comment was wholly unrelated to and temporally remote from the end of Ms. Briggs' employment, which occurred over two years later and, again, was Ms. Briggs' decision. This "stray remark" also was unconnected to the only other act that Ms. Briggs claimed was discriminatory: her January 2014 discipline for "Violation of work rule B 10 . . . Failing to meet expected standards of performance, productivity or efficiency."[3] "Stray remarks . . . by

---

[3] In her EEOC Charge of Discrimination, Ms. Briggs alleges that Temple University discriminated against her by disciplining her on January 20, 2014 and discharging her on April 1, 2014. *See* Compl. (ECF No. 1) Ex. 1. Ms. Briggs does not allege that any other actions taken by Temple, including her other disciplinary actions, were discriminatory. Nor could she do so, as a charge of discrimination must be filed with the EEOC within 300 days

decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision." *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 533 (3d Cir. 1992) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring)); *see also Hodczak v. Latrobe Specialty Steel Co.*, 451 F. App'x 238, 241 (3d Cir. 2011) (stating that temporally remote comments unrelated to alleged adverse employment action are "entitled to minimal weight" even if made by decision makers); *Logan v. Countrywide Home Loans*, No. 04-5974, 2007 WL 879010, at *8 (E.D. Pa. March 15, 2007) (finding that age-related comments (*e.g.*, "regularly" referring to the plaintiff "as 'the old man,' [telling plaintiff] that he couldn't remember things because he was 'old' and needed to 'hang it up,'" and suggesting that plaintiff "needed a 'walker' due to his age"), the most recent of which made approximately four months before his termination, were "too stray and too remote from the [termination] decision to support a reasonable indirect inference of age discrimination"). Notably, Ms. Briggs confirmed that Dr. Wu's alleged comment was *the only* comment he made about her age. (*See* Trial Tr. (7.17.18 AM) 38:9; Trial Tr. (7.19.18) 51:22-53:21) Given these circumstances, Dr. Wu's purported comment establishes no inference of age discrimination, much less discriminatory animus. *See, e.g., Hodczak*, 451 F. App'x at 241; *Ezold*, 983 F.2d at 533.

*Second*, the evidence regarding Hailey King—a purportedly similarly situated employee outside her protected class—cannot situate her as a legal "comparator." To rely on comparators, Ms. Briggs "must [have] establish[ed] that the other employee's acts were of comparable seriousness to [her] own infraction" and that she and the other employee "engaged in the same

---

from the alleged unlawful employment practice. *See* 42 U.S.C. § 2000e-5(e)(1). Ms. Briggs filed her Charge on or about April 23, 2014. *See* Compl. Ex. 1. Therefore, claims based upon any alleged discriminatory acts occurring more than 300 days before she filed her Charge (June 27, 2013) are time-barred. *See, e.g.*, *Watson v. Eastman Kodak Co.*, 235 F.3d 851, 854 (3d Cir. 2000).

conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Anderson v. Haverford Coll.*, 868 F. Supp. 741, 745 (E.D. Pa. 1994) (internal quotation marks omitted).

Ms. Briggs contrasted Ms. King's unexcused absence, and the level of discipline Ms. King received, with Ms. Briggs' own admitted unexcused absence, and the level of discipline she received. (Trial Tr. (7.17.18 AM) 81:13-82:19.) The only evidence of Ms. King's unexcused absences was that they occurred during a hurricane, when Ms. King could not call in, and Dr. Wu gave her a verbal warning because of the incident. (Trial Tr. (7.16.18 PM) 82:12-83:19.) Ms. Briggs did not know, and no witness testified, about Ms. King's disciplines. (Trial Tr. (7.17.18 AM) 82:9-15.) On the other hand, Ms. Briggs' unexcused absence related to her being three hours late to work, failing to notify Dr. Wu, or any administrator, or manager, and, *while she could do so*, affirmatively choosing not to send Dr. Wu an email. (Trial Tr. (7.17.18 AM) 78:11-17; Trial Tr. (7.18.18 AM) 21:11-16, 32:15-33:6.) Ms. Briggs admitted that, before this incident, she had been late to work, and she also received numerous disciplinary actions. (Trial Tr. (7.17.18 AM) 79:22-80:4.) Therefore, there were "differentiating or mitigating circumstances" between her conduct and Ms. King's conduct that distinguishes their treatment and makes Ms. King an improper comparator as a matter of law. *See, e.g., Jones*, 796 F.3d at 328-29 (finding conduct of plaintiff's proposed comparator who underreported his vacation time to compensate for overtime work was materially different from plaintiff's misconduct in claiming pay for work he never performed).

Moreover, the January 2014 written warning Ms. Briggs received for her unexcused tardiness and failure to follow protocol is not an adverse employment action and cannot support a comparator's differing treatment; thus, it is immaterial. *See Deans v. Kennedy House, Inc.*, 587

11

F. App'x 731, 734 (3d Cir. 2014) (oral and written warnings concerning tardiness and work absences were not adverse actions—they made no material change in the terms and conditions of employment) (citing *Weston v. Pennsylvania*, 251 F.3d 420, 431 (3d Cir. 2001), *overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)); *Mieczkowski v. York City School Dist.*, 414 F. App'x 441, 446-47 (3d Cir. 2011) (two letters of reprimand received by employee immediately preceding her departure were not adverse employment actions even though the letters of reprimand were permanently placed in her personnel file); *see also Ellis v. Pennsylvania Dept. of Corrections*, No. 15-2329, 2017 WL 1928342, at *12 (M.D. Pa. May 10, 2017) ("negative criticisms of [employee's] work, negative employment evaluations, and 'micromanagement'" did not constitute adverse employment actions); *E.E.O.C. v. Wyeth Pharmaceutical*, No. 03-2967, 2004 WL 503417, at *2 (E.D. Pa. March 11, 2004) (oral reprimands and supervisor confronting plaintiff-employee regarding tardiness were not adverse employment actions).

Quite simply, there was no evidence that any other employee, much less one in Dr. Wu's reporting structure, engaged in misconduct similar to the misconduct of Ms. Briggs, which directly led to additional discipline and ultimately caused Ms. Briggs to resign in lieu of termination:  Ms. Briggs identified no other employee who (1) failed to carry out instructions given by a direct supervisor to complete travel expense reimbursements for the direct supervisor; (2) failed to carry out instructions given by a direct supervisor to book a hotel reservation for a colloquium speaker; (3) engaged in disruptive or disorderly conduct by becoming argumentative and unprofessional with a direct supervisor, and calling the direct supervisor a liar, in response to being disciplined for neglecting job duties and failing to carry out instructions given by the direct supervisor.  These incidents, for which there are no comparators, directly led to the termination

of Ms. Briggs' employment.  (Ex. P-45; Trial Tr. (7.17.18 AM) 93:3-5, 101:11-16.)  There also

is no evidence that any other employee had a similarly problematic performance history to Ms.

Briggs.  With no such evidence, Ms. Briggs did not establish Ms. King as a comparator.  *See,*

*e.g.*, *Crumpton v. Potter*, 305 F. Supp. 2d 465, 474 (E.D. Pa. 2004) (finding plaintiff failed to

prove *prima facie* case and granting summary judgment for defendant on discrimination claim

because "plaintiff has not identified any similarly situated non-protected person who was treated

more favorably than he").

    *Third*, Ms. Briggs' testimony that Temple reassigned some of her job duties to young

female student workers when she moved to the tenth floor, (Trial Tr. (7.17.18 AM) 45:5-16

(testifying that an individual named Mary Kate took over the duties for "all [of Dr. Wu's] travel

arrangements")), and that she was "banished" to the tenth floor, likewise, fail to establish the

inference of discrimination required for a *prima facie* case.

    A reassignment of job duties does not *ipso facto* create an inference of discrimination.

*See, e.g.*, *O'Connell v. Associated Wholesalers, Inc.*, No. 12-cv-02540, 2013 WL 3742445, at

*12 (E.D. Pa. July 17, 2013) (holding that reassignment of plaintiff's duties to younger

employees did not create inference of discrimination).  That is especially true where, as here with

Ms. Briggs, the reassignment of job duties does not change the employee's title, salary, or

benefits.  *See Fiorentini*, 665 F. App'x at 234-35 (holding that reassignment of a teacher's duties

to a teacher ten (10) years younger was not an adverse employment action, because "the

reassignment did not change her title, salary, or benefits," and the teacher's "subjective belief

that her reassignment was a 'demotion' is insufficient . . . .").  Ms. Briggs own belief that the

reassignment of her duties was impermissible cannot support her age discrimination claim,

particularly given that she *never* presented evidence that the reassignment of her duties occurred

because of her age.

Further, Ms. Briggs failed to sufficiently identify the details surrounding the reassignment of her job duties—including identifying the individuals who assumed her duties (*e.g.*, who they were and how old they were, much less whether they were younger than 40), the actual duties assumed by others, the identity(ies) of the person(s) who reassigned the duties, and whether the duties purportedly reassigned were duties of Ms. Briggs' position to begin with—such that they cannot demonstrate discriminatory bias. *Smith v. ABF Freight Systems, Inc.*, No. 04-cv-2231, 2007 WL 3231969, at *11 (M.D. Pa. Oct. 29, 2007) ("A 'reassignment of job duties is not *automatically* actionable' . . . . To determine whether a reassignment constitutes an adverse employment action, the court must consider the reassignment 'from the perspective of a reasonable person in the plaintiff's position, *considering all the circumstances*.'" (emphasis added) (quoting *Burlington N.*, 548 U.S. at 71).

Ms. Briggs' relocation to the tenth floor also is not evidence of intentional age discrimination. Ms. Briggs admitted that her relocation actually helped her perform her job. Specifically, after Ms. Briggs testified that Temple "banished" her to the tenth floor—presumably to establish an inference of discrimination—she contradicted herself when confronted with her prior inconsistent deposition testimony. Ms. Briggs then admitted she "welcomed being able to work up there [i.e., the tenth floor of Cornell]" because there was "less traffic," it was not "noisy," and "[i]t was helpful to my performing my job, yes." (Trial Tr. (7.17.18 PM) 5:9-21, 7:2-21).)

In sum, Ms. Briggs presented no evidence sufficient to establish an inference of discrimination. Because Ms. Briggs did not prove a *prima facie* case of age discrimination, Temple University is entitled to judgment as a matter of law on Ms. Briggs' age discrimination

claim.

### 2.  Ms. Briggs Failed To Prove That Temple's Legitimate Non-Discriminatory Reason For Its Actions Was A Pretext For Discrimination

Even if Ms. Briggs somehow established a *prima facie* case of disparate treatment (which she did not), Temple rebutted any such inference by providing evidence that its decisions were made for legitimate, non-discriminatory reasons:  Temple disciplined Ms. Briggs, and offered her the option to resign in lieu of termination, due to her repeated behavioral and job performance issues that violated Temple's Rules of Conduct.  (Trial Tr. (7.16.18 PM) 13:7-13; (7.17.18 AM) 101:11-16; (7.17.18 PM) 137:9-24; (7.18.18 AM) 46:3-15, 67:17-23, 94:12-95:2.) *See Willis*, 808 F.3d at 644.  In this, Temple did not have to disprove an improper motive; rather, it merely had to *identify* a legitimate motive for the challenged employment decision, which it plainly did.  *See, e.g.*, *Dean v. Specialized Sec. Response*, Civil Action No. 09-515, 2011 U.S. Dist. LEXIS 94722, at *38 (W.D. Pa. Aug. 24, 2011).

Given Temple's legitimate, non-discriminatory reason, Ms. Briggs had to adduce evidence from which the jury either reasonably could (a) disbelieve Temple's articulated legitimate reason; or (b) believe that an invidious discriminatory reason was more likely than not the but-for cause of Temple University's action.  *McGrath v. Lumbermens Merchandising Corp.*, 851 F. Supp. 2d 855, 860 (E.D. Pa. 2012) (citing *Hodczak*, 451 F. App'x at 241-42 as reflecting the modification to *Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994) and its progeny—from "motivating or determinative cause" to "but-for cause"—because of *Gross*, 557 U.S. 167).  She did neither.  Evidence of disparate treatment is fundamental to the adequacy of a verdict in a discrimination case.  Without such evidence, a verdict cannot stand.  Ms. Briggs' presented no evidence of discriminatory animus and, thus, showed no evidence of disparate treatment.  Therefore, Temple is entitled to judgment as a matter of law on Ms. Briggs' age discrimination

claim.

> a.   *No Reasonable Factfinder Could Disbelieve Temple's Reason For Disciplining And Discharging Ms. Briggs*

To prevail on her age discrimination claim Ms. Briggs must have adduced evidence from which the jury reasonably could disbelieve Temple's legitimate reason for Ms. Briggs' discipline and the end of her employment.   "Our Court of Appeals has explained that '[t]o show that an employer's legitimate reasons should be disbelieved, a plaintiff must offer evidence that would allow a fact finder to reasonably infer that *each* of the employer's proffered non-discriminatory reasons was either a *post hoc* fabrication or otherwise did not actually motivate the employment action.'"   *McGrath*, 851 F. Supp. 2d at 860 (emphasis and alteration in original) (quoting *Marione v. Metro. Life Ins. Co.*, 188 F. App'x 141, 144 (3d Cir. 2006)).   To accomplish this, Ms. Briggs had to demonstrate:

> such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons [for its action] that a reasonable fact-finder could rationally find them unworthy of credence.

*McGrath*, 851 F. Supp. 2d at 860 (quoting *Marione v. Metro. Life Ins. Co.*, 188 F. App'x 141, 144 (3d Cir. 2006)).   "Put another way, an employee-plaintiff [like Ms. Briggs] must point to 'evidence contradicting the *core facts* put forward by the employer as the legitimate reason for its decision.'"   *McGrath*, 851 F. Supp. 2d at 860-61 (emphasis in original) (quoting *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006)).

At this stage of the analysis, the question is "not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [an unlawful motive]."   *Keller v. ORIX Credit Alliance, Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997) (internal quotation marks omitted).   As the Third Circuit has explained, it is the Plaintiff's burden to "cast[] doubt on an employer's articulated reasons for an employment decision.   Without some evidence to cast this

doubt, this court will not intervene in an otherwise valid management decision. To require less would be to expose to litigation every management decision impacting on a protected party." *Billet v. CIGNA Corp.*, 940 F.2d 812, 828 (3d Cir. 1991); *see also Ezold*, 983 F.2d at 533.

Ms. Briggs presented no evidence from which the jury reasonably could have disbelieved Temple's legitimate non-discriminatory reason. Though she testified that she believed her disciplines were harsh and unreasonable, Ms. Briggs *admitted* to the misconduct that gave rise to them. (Trial Tr. (7.17.18 AM) 58:21-22, 78:3-5; (7.17.18 PM) 13:2-7, 13:16-14:5, 15:10-15.) Ms. Briggs also presented no evidence that the decision-makers—Dr. Wu and Ms. Walton, with input from Mr. Wacker—did not honestly believe Ms. Briggs' misconduct occurred. All Ms. Briggs pointed to was Temple's lack of documentation concerning her poor performance and tardiness, (Trial Tr. (7.17.18 AM) 80:5-7; (7.17.18 PM) 116:13-15, 117: 8-17, 119:8-19, 120:6-9, 133: 21-24, 146:16-17), which is legally insufficient to disbelieve Temple's rationale for its legitimate personnel decisions, *see Harding v. Careerbuilder, LLC*, 168 F. App'x 535, 539 (3d Cir. 2006), and her own testimony about her performance as compared to others, which is incompetent as a matter of law. *Frost*, 2007 WL 602990, at *7 (granting summary judgment in favor of the defendant-employer on plaintiff's age discrimination claim, and explaining that "[plaintiff's] own subjective beliefs that he performed as well or better than other store managers are immaterial for the purposes at hand."). Said differently, Ms. Briggs was not competent to offer testimony evaluating her peers, or herself. Therefore, any such testimony cannot support a discrimination verdict without corroboration.

> b. *Ms. Briggs Did Not Prove That An Invidious, Discriminatory Reason Motivated Temple*

For the same reasons, Ms. Briggs failed to show pretext under the second method identified in *Fuentes*; Ms. Briggs did not prove that age discrimination was more likely than not

the but-for cause of Temple offering Ms. Briggs the choice resign in lieu of termination, which she ultimately did. *See Hodczak*, 451 F. App'x at 241; *McGrath*, 851 F. Supp. 2d at 862. In this context it must be emphasized that the plaintiff's own subjective beliefs or feelings cannot establish that discrimination was the reason for the end of her employment. *Boykins v. Lucent Techs., Inc.*, 78 F. Supp. 2d 402, 413 (E.D. Pa. 2000) ("Pretext cannot be established based on speculation and mere conclusory allegations."). Rather, she must proffer *actual evidence* to support her claim of pretext. *Harris v. Mercy Health Corp.*, Civil Action No. 97-7802, 2000 U.S. Dist. LEXIS 11228, at *29 (E.D. Pa. Aug. 10, 2000) (finding plaintiff's unsupported allegations insufficient to avoid summary judgment where he "offer[ed] no evidence suggesting that defendant's asserted reasons for its actions . . . were either objectively false or merely pretextual"). Additionally, and most consequentially here, "under Third Circuit precedent, a plaintiff's uncorroborated testimony about discriminatory treatment cannot—on its own— demonstrate invidious intent . . . ." *Cridland v. Kmart Corp.*, 929 F. Supp. 2d 377, 389 (E.D. Pa. 2013) (citing *Solomon v. Soc'y of Auto Eng'rs*, 41 F. App'x 585, 586 (3d Cir. 2002) (affirming summary judgment for employer because "only evidence in support of [plaintiff's] claims was [plaintiff's] own testimony")).

There is no evidence in the record to support a finding that age discrimination was the but-for cause of Temple University's decisions. Ms. Briggs' evidence was limited to Dr. Wu's vague and temporally remote alleged comment about the retirement age of women in China, her non-specific claims that Dr. Wu treated other employees more favorably than he treated her, and her claims that Ms. King only received a verbal warning for failing to call-in or report to work in the aftermath of a hurricane. (Trial Tr. (7.16.18 PM) 83:2-19.) As the Third Circuit has recognized, "[a] decision adversely affecting an older employee does not become discriminatory

merely because one younger employee is treated differently." *Simpson v. Key Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 646 (3d Cir. 1998). Rather, there must be "evidence from which to infer discrimination apart from the fact that some members of one group are sometimes treated better and sometimes treated worse than members of another group." *Id.* Ms. Briggs presented no such evidence. She did not contend that *any of* her performance evaluations were discriminatory when she received them, she did not question that the incidents that led to the end of her employment were discriminatory when they occurred, and she did not complain to any of the people involved in her day-to-day performance—Dr. Wu, Mr. Wacker, or Mr. DiMeo—that *any* of the treatment she received was discriminatory contemporaneous to the treatment.

Ms. Briggs failed to show that her age even played ***any factor*** in—much less was ***the but-for cause of***—Temple offering Ms. Briggs the option to resign in lieu of termination. Ms. Briggs' lack of evidence regarding discriminatory animus and disparate treatment is fatal to her age discrimination claim. Temple, therefore, is entitled to judgment as a matter of law.

### C. There Was No Evidentiary Basis For The Jury To Conclude Temple University Retaliated Against Ms. Briggs

To have prevailed on her retaliation claim, Ms. Briggs must have shown that her protected activity was the "but-for" cause of Temple offering Ms. Briggs the option to resign in lieu of termination, which she ultimately accepted. *See, e.g.*, *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 259, 257 (3d Cir. 2017). Ms. Briggs presented no such evidence. Accordingly, Ms. Briggs failed to meet her burden to sustain her retaliation claim under the ADEA.

#### 1. Ms. Briggs Failed To Establish A *Prima Facie* Case Of Retaliation

The *McDonnell Douglas* burden-shifting analysis also applies to claims of retaliation. *Id.* To establish a *prima facie* case of retaliation Ms. Briggs had to prove: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal connection

19

existed between her protected activity and the adverse action. *Id*.

        *a.*     *Ms. Briggs' Only Protected Conduct Was Her Complaints to Ms. Foehl and Mr. Etezady*

Temple acknowledges that Ms. Briggs' complaints of age and gender discrimination to Cameron Etezady and Ms. Foehl constitute protected activity.

        *b.*     *Ms. Briggs Did Not Experience An Adverse Employment Action*

For the same reasons articulated in Section III(B)(1)(b), *supra*, Ms. Briggs experienced no adverse employment action, and therefore, she did not prove her retaliation claim.

        *c.*     *There Is No Causal Connection Between Ms. Briggs' Complaints To Ms. Foehl and Mr. Etezady And The End Of Her Employment*

Ms. Briggs failed to establish the requisite causal link between her complaints to Ms. Foehl and Mr. Etezady and the end of her employment.  Ms. Walton, Dr. Wu, and Mr. Wacker—the decision makers regarding Ms. Briggs' final, April 1, 2014, discipline that led to the end of her employment—were unaware that Ms. Briggs made any complaints of unlawful discrimination or harassment during her employment at Temple.  *See* (Trial Tr. (7.16.18 PM) 100:1-20) (Dr. Wu testifying that Ms. Walton never relayed that Ms. Briggs complained of sex and age discrimination or retaliation and he only learned of Ms. Briggs' complaints this year); (Trial Tr. (7.16.18 PM) 37:10-24, 38:1-2) (Mr. Wacker testifying he was not aware Ms. Briggs complained of discrimination or retaliation while she worked at Temple); (Trial Tr. (7.17.18 PM) 108:15-18; (7.18.18 AM) 59:6-10.) (Ms. Walton testifying that Ms. Briggs did not bring claims of age discrimination to her attention); (Trial Tr. (7.18.18 PM) 40:7-22) (Ms. Foehl testifying that she did not relay the content of her conversations with Ms. Briggs to Ms. Walton, Mr. Wacker, or Dr. Wu).  Furthermore, Ms. Walton, Dr. Wu, and Mr. Wacker did not even know that Ms. Briggs communicated with Ms. Foehl (or anyone else) about her belief that she had been discriminated against under any theory.  (Trial Tr. (7.16.18 PM) 37:10-12; Trial Tr. (7.18.18

AM) 96:3-6.)  Consistent with their testimony, Ms. Foehl testified that she did not, during Ms. Briggs' employment at Temple University, communicate with Mr. Wacker, Dr. Wu, Mr. DiMeo, or Ms. Walton about the content of any of her communications with Ms. Briggs.  (Trial Tr. 7.18.18 PM) 40:7-22.)  Without knowledge of Ms. Briggs' complaints, the decision makers quite plainly could not have retaliated against Ms. Briggs for complaining, and no retaliatory animus existed.  *See, e.g., Boykins*, 722 F. App'x at 157 ("A plaintiff 'cannot establish that there was a causal connection without some evidence that the individuals responsible for the adverse action knew of the plaintiff's protected conduct at the time they acted.'" (quoting *Daniels v. Sch. Dist of Philadelphia*, 776 F.3d 181, 196 (3d Cir. 2015))); *Andreoli v. Gates*, 482 F.3d 641, 650 (3d Cir. 2007) (affirming summary judgment for employer on employee's retaliation claim because (1) no evidence existed that supervisors responsible for adverse actions knew plaintiff informally complained to EEO office, and (2) plaintiff's informal complaint to EEO office was temporally remote (five months) from alleged adverse employment action); *Bedford v. Se. Pa. Transp. Auth.*, 867 F. Supp. 288, 293 (E.D. Pa. 1994) (noting that "[i]f the person who decided that plaintiff's employment should be terminated had no knowledge that she had engaged in the protected activity in question, then clearly he could not have retaliated against [plaintiff] for so doing.").

Because there was no causal connection between Ms. Briggs complaints and the end of her employment, she did not establish a *prima facie* case and her retaliation claim fails as a matter of law.  *See, e.g., Jones*, 796 F.3d at 331 (affirming summary judgment for employer on retaliation claim where plaintiff failed to show a causal connection between her protected activity and her termination).

## 2. Ms. Briggs Did Not Prove Pretext

Assuming *arguendo* that Ms. Briggs established a *prima facie* case of retaliation (which

she did not), Temple rebutted any inference of discrimination by providing evidence that its decisions were made for legitimate, non-discriminatory reasons:  Temple disciplined Ms. Briggs, and she received the option to resign in lieu of termination, because of her repeated behavioral and job performance issues, which violated Temple's Rules of Conduct.  For the same reasons Ms. Briggs lacks evidence that Temple's legitimate, non-discriminatory reason was a pretext for her age discrimination claim, *see* Section III(B)(2), *supra*, she also lacks evidence that the reason was a pretext for retaliation.  *See Szostek v. Drexel Univ.*, No. 12-2921, 2013 WL 4857989, at *15 (E.D. Pa. Sept. 11, 2013) (declining to analyze pretext on retaliation claim after analyzing pretext on disparate treatment claim and concluding it did not exist).

### D.  There Was No Evidentiary Basis For The Jury To Conclude Temple University Subjected Ms. Briggs To An Age-Based Hostile Work Environment

To prevail on a claim of age discrimination under a theory of a hostile or abusive work environment, Ms. Briggs must have established that (1) she suffered intentional discrimination because of her age, (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected her, (4) the discrimination would have detrimentally affected a reasonable person in like circumstances, and (5) there is a basis for holding Temple University liable.  *See, e.g., Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006).  Ms. Briggs did not meet this standard.

Ms. Briggs' hostile work environment claim is premised upon exceedingly limited, self-serving testimony:  (1) "every morning," she had to meet with Dr. Wu and Mr. DiMeo "for [] a staff meeting to discuss [her performance deficiencies]" (Trial Tr. (7.17.18 AM) 49:16-50:8); (2) a stray remark by Dr. Wu in November 2011, in which he allegedly discussed women in China being "put out to pasture" at 55 (Trial Tr. (7.17.18 AM) 31:12-13); (3) "on two separate occasions," Dr. Wu "look[ed] at [her] and sa[id], what are you, stupid" (Trial Tr. (7.17.18 AM) 30:1-2); (4) one time Dr. Wu said to Ms. Briggs, "can't you speak English" (Trial Tr. (7.17.18

AM) 30:3); and (5) Dr. Wu "raise[d] his voice frequently" when "he met with his -- Ph.D. candidates" and "it was so disturbing [for Ms. Briggs] to hear him yelling at them."  (Trial Tr. (7.17.18 AM) 29:19-23).  This conduct does not rise to the level of a hostile work environment because (1) the alleged harassment was not severe or pervasive; (2) an objectively, reasonable person would not have been affected detrimentally by the incidents Ms. Briggs testified to; and (3) the evidentiary record demonstrates that Ms. Briggs was not subjectively offended by the supposed conduct.  Finally, Ms. Briggs offered no evidence linking the infrequent and sporadic comments about her performance deficiencies and a single alleged comment about women in China being "put out to pasture" at 55 to any discriminatory animus based on her age or any other characteristic.

To prevail on her hostile work environment claim, Ms. Briggs had to demonstrate that her "'workplace [was] permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment . . . ."  *Oncale v. Sundowner Offshore Services*, 523 U.S. 75, 78 (1998) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)).  "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."  *Shramban v. Aetna*, 115 F. App'x 578, 580 (3d Cir. 2004) (internal quotation marks omitted).

As this Court instructed the jury, to prove the conduct that Ms. Briggs testified about was sufficiently "severe" or "pervasive," the totality of the circumstances must be considered, including the frequency of the conduct; its severity; "whether the conduct [was] physically threatening or humiliating, or a mere offensive utterance; and whether the conduct unreasonably interfere[ed] with the employee's job performance."  *Jensen*, 435 F.3d at 452 (citing *Harris*, 510

U.S. at 23); *(see also* Trial Tr. (7.19.18) 54:15-18 ("This element requires that you look at the evidence from the point of view of a reasonable person of 59 years of age and how that person would have reacted to Ms. Briggs' work environment.")).

Whether the comments and conduct Ms. Briggs described created a hostile work environment requires analyzing subjective and objective factors.  *See Andrews v. City of Philadelphia*, 895 F.2d 1269, 1483 (3d Cir. 1990).  The subjective factor considers whether Ms. Briggs truly was offended by the comments or conduct.  *See id*.  The objective factor—what a reasonable person in Ms. Briggs' position would think of the comments and conduct—is "more critical" because the objective factor "ensures that 'ordinary socializing in the workplace' and 'teasing' are not mistaken as discrimination that affects the terms and conditions of one's employment."  *Dreshman v. Henry Clay Villa*, 733 F. Supp. 2d 597, 616-17 (W.D. Pa. 2010) (citing *Oncale*, 523 U.S. at 81-82); *Andrews*, 895 F.2d at 1483.

Ms. Briggs failed to present sufficient evidence to establish a hostile work environment because the conduct about which she testified does not even approach the level of severity or pervasiveness required to constitute an actionable hostile work environment, and—as an objective matter—a reasonable person would not have been affected detrimentally by what Ms. Briggs says she experienced.  Although Ms. Briggs' complained about a myriad of actions she believed made her work environment "hostile," she did not prove her workplace was "permeated with **discriminatory** intimidation, ridicule, and insult."  Rather, she testified that her workplace was "hostile" simply because of Temple's efforts to address her performance deficiencies (*i.e.*, having to attend weekly "staff meetings" with Dr. Wu and Mr. DiMeo to address her performance deficiencies (*see* Trial Tr. (7.17.18 AM) 49:16-50:8)).  As for "the two separate occasions" when Ms. Briggs testified Dr. Wu asked her, "what are you, stupid" (Trial Tr.

24

(7.17.18 AM) 30:1-2), and the one time she testified Dr. Wu said "can't you speak English" (Trial Tr. (7.17.18 AM) 30:3), these are sporadic comments, were not physically threatening, and amounted to "ordinary tribulations of the workplace," which are non-actionable as a matter of law.  *See, e.g.*, *Saidu-Kamara v. Parkway Corp.*, 155 F. Supp. 2d 436, 439-41 (E.D. Pa. 2001) (finding four instances of harassment over an eighteen month period not sufficient to state a hostile work environment claim); *Ocasio*, 368 F. Supp. 2d at 376-77 (reasoning that, over a three year period of employment, plaintiff failed to demonstrate pervasive and regular hostile work environment claim where, at most, plaintiff alleged four complaints because of her national origin); *Funayama v. Nichia Am. Corp.*, No. 08-5599, 2011 U.S. Dist. LEXIS 40016, at \*40-41 (E.D. Pa. Apr. 13, 2011) (granting summary judgment on plaintiff's harassment claim where plaintiff alleged four discriminatory comments in four years); *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 n.1 (requiring the harassing incidents to be "'more than episodic; they must be sufficiently continuous and *concerted* in order to be deemed pervasive'" (emphasis added) (quoting *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1189 (2d Cir. 1987))).  What is more, these alleged remarks have nothing to do with Ms. Briggs' age or gender!

Ms. Briggs' claims are remarkably less severe than, for example, those in *Ryan v. CBS Corp.*, Civil Action No. 06-2385, 2007 WL 2317380 (E.D. Pa. Aug. 7, 2007) (Kelly, J.), which this Court held did not constitute actionable harassment.  In *Ryan*, the plaintiff alleged, among other actions, that his supervisor often asked him if he would retire, another manager talked to plaintiff about retiring, two managers repeatedly made "old man" jokes and comments about plaintiff and remarks about his age at a marketing luncheon, including telling a client she would have to cut up plaintiff's food so he could chew it and that his food needed to be put in a blender, a manager emailed all account executives, including plaintiff, telling them that two new accounts

executives right of out college would start soon, and everyone needed to "step it up," and some of plaintiff's most lucrative advertising accounts were given to younger salespeople. *Id.* at *3-4. This Court found these incidents insufficiently severe or pervasive to constitute actionable age-based harassment, and granted summary judgment for the defendant. *Id.* at *10.

Ms. Briggs remained at Temple University for over two years after Dr. Wu allegedly made a single alleged comment regarding women in China being "put out to pasture." (*See* Trial Tr. (7.17.18 AM) 31:4-5; 91:14-25; 119:6-9). Any comments and conduct she experienced were, therefore, obviously not severe or pervasive enough to affect her psychological stability or materially change the terms and conditions of her employment. *See Dreshman*, 733 F. Supp. 2d at 613 (granting summary judgment on aged-based and sex-based hostile work environment claims where "years passed without any incidents" and "majority of the claimed incidents of harassment happened years before [plaintiff] was terminated").

Ms. Briggs did not experience harassment or a hostile work environment "because of" her age. Ms. Briggs' offered evidence of infrequent and sporadic comments about her performance deficiencies and an alleged single comment about women in China being "put out to pasture" at 55; these comments are neither objectively nor subjectively "severe or pervasive." She failed to demonstrate an age-related hostile work environment claim and Temple University is entitled to judgment as a matter of law.

**E.    There Was No Evidentiary Basis For The Jury To Conclude Temple University Subjected Ms. Briggs To A Retaliatory Hostile Work Environment**

To prevail on a retaliatory hostile work environment claim, Ms. Briggs had to prove "(1) [she] suffered intentional discrimination because of [her] protected activity; (2) [Temple University's] intentional discrimination was severe or pervasive; (3) the discrimination detrimentally affected [her]; (4) the discrimination would detrimentally affect a reasonable

person in like circumstances; (5) [she] suffered materially adverse action or actions in relation to the hostile work environment; and (6) a basis for [Temple University's] liability." *Byrd v. Elwyn*, No. 16-02275, 2016 WL 5661713, at *9 (E.D. Pa. Sept. 9, 2016) (citing *Petrulio v. Teleflex, Inc.*, No. 12-7187, 2014 WL 5697309, at *10 (E.D. Pa. Nov. 5, 2014)).

Ms. Briggs' retaliatory hostile work environment claim is premised upon the same conduct that purportedly supports her hostile work environment claims.  For the same reasons articulated in Section III(D)(1), *supra*, the conduct about which Ms. Briggs testified was not sufficiently severe or pervasive to create an objectively or subjectively hostile work environment, retaliatory or otherwise, and therefore, she did not prove her retaliatory hostile work environment claim.  Likewise, Ms. Briggs' retaliatory hostile work environment fails as a matter of law because, for the same reasons articulated in Section III(C)(1)(c), *supra*, Ms. Briggs failed to demonstrate a causal link between her protected activity and the supposed harassment.

F.     **There Was Insufficient Evidence For The Court To Charge The Jury With Willfulness For Ms. Briggs' ADEA Claims**

Liquidated damages are available under the ADEA only when the employer "*willfully*" violated the Act.  *Argue v. David Davis Enters.*, No. 02-9512, 2008 WL 450097, at * 2 (E.D. Pa. Feb. 15, 2008) (citing 29 U.S.C. § 626(b)).  The Supreme Court has defined willfulness "as meaning that the defendant 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA.'"  *Argue*, 2008 WL 450097, at *3 (quoting *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128-129 (1985)).  The Court adopted this "stringent standard" so the punitive provisions of the ADEA could not be applied against an employer merely because the employer knew the ADEA may be applicable.  *See Berndt v. Kaiser Aluminum & Chem. Sales, Inc.*, 604 F. Supp. 962, (E.D. Pa. 1985) (explaining that, in *Thurston*, Supreme Court "adopted a stringent standard of 'willfulness'" and "rejected a standard

27

that a violation of the ADEA was willful if the employer simply knew of the applicability of the ADEA" because "such a standard 'would result in an award of double damages in almost every case.'" (quoting *Thurston*, 469 U.S. at 128)).  The Third Circuit has offered these examples "which might show willfulness:  (1) where evidence exists that the employer had previously violated the ADEA; (2) where the employee's termination came at a time when it would deprive her of a pension; or (3) when the decision at issue was egregious, as in the systematic purging of older people from the employee staff."  *Kelly v. Matlack, Inc.*, 903 F.2d 978, 982 (3d Cir. 1990) (citing *Dreyer v. Arco Chemical Co.*, 801 F.2d 651, 658 (3d Cir. 1986)).  The Third Circuit also has "made clear that pretext alone is an insufficient basis to award liquidated damages."  *Id*.

The record here is devoid of any evidence that Temple knew or showed reckless disregard regarding whether its conduct was prohibited by the ADEA.  First, the only conduct about which Ms. Briggs testified that is even conceivably related to Ms. Briggs' age is the single comment Dr. Wu made about women in China being "put out to pasture" at 55, which occurred over two years before Ms. Briggs' employment ended.  That's it.  Second, as discussed in Section III(C)(1)(c), *supra*, none of the decision-makers or supposed harassers had any idea that Ms. Briggs complained of harassment and discrimination during her employment.  Without knowledge of Ms. Briggs' complaints, the decision makers and supposed harassers plainly could not have retaliated against Ms. Briggs for complaining.

In short, Ms. Briggs presented no evidence of discriminatory or retaliatory animus—let alone evidence of willfulness.  With no competent evidence upon which to find willfulness, this Court erred by charging the jury with an instruction on willfulness and presenting the jury with a verdict form that provided for such a finding.  However, this Court may cure the error by deciding that the jury's finding of willfulness was not supported by the evidence and that Temple

University is entitled to judgment as a matter of law.

> **G.    Temple University Is Entitled To A New Trial Because The Jury Failed To Follow This Court's Instructions On The Verdict Sheet, Rendering The Verdict Form Internally Incompatible And The Verdicts Irreconcilably Inconsistent**

When a jury reaches an internally incompatible verdict, the district court should enter judgment as a matter of law.  *Acumen, LLC v. Advanced Surgical Services, Inc.*, 561 F.3d 199, 218 (3d Cir. 2009) ("a judgment as a matter of law was the proper remedy where a jury reached an internally incompatible verdict . . . ." (citing *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 407 (3d Cir. 2000))).  A district court may, alternatively, "order an entirely new trial" where the jury's verdicts "are genuinely inconsistent and if the evidence might support either of the 'inconsistent' verdicts . . . ."  *Acumen, LLC*, 561 F.3d at 217-18 (quoting *Mosley v. Wilson*, 102 F.3d 85, 90-91 (3d Cir. 1996)); *see also Comaper Corp. v. Antec, Inc.*, 596 F.3d 1343, 1345 (Fed. Cir. 2010) (holding that "the district court was required to grant a new trial because the jury's verdicts . . . were irreconcilably inconsistent."); *Genter v. Cheyney University of Pennsylvania*, No 94-7443, 1996 WL 525323, *3-6 (E.D. Pa. Sept. 17, 1996) (Kelly, J.) (granting defendants' motion for a new trial because jury's responses to verdict form were inconsistent and jury failed to follow verdict form instructions).

Here, the jury plainly failed to follow the Court's instructions pertaining to the Verdict Form.  (Docket No. 58.)  Specifically, the instructions following Question 2 (which asked "Has Ms. Briggs proved, by a preponderance of the evidence, that *but-for* her age, Temple University would not have terminated her position?" (emphasis added)) stated, "*If you answered 'Yes,' skip to Question 8.  If 'No,' proceed to Question 3.*"  (Verdict Form, ECF No. 58) (emphasis in original).  Although the jury answered "Yes" to Question 2 it, nonetheless, *answered* Questions 3 – 7, inexplicably answering Questions 3, 5, and 7 in the affirmative.  This is virtually the same

mistake the jury made in *Genter*.  There, the verdict form provided that "[t]he jury was instructed to stop deliberating and, thus, not consider an award of damages, if they answered 'NO' as to all Defendants for questions 5 *or* 6."  *Genter*, 1996 WL 525323, at *5 n.2 (emphasis in original). Despite answering question 5 in the negative, the jury continued deliberating and entered an award for the plaintiffs.  *Id*. at *2, 5.  Because the jury failed to follow the instructions on the verdict form, and because the jury's responses to the questions in the verdict form were inconsistent, this Court ordered a new trial.  *Id*. at *11.  The Court should do the same here.

Not only did the jury fail to follow the Court's clear instruction—which casts doubt on whether the jury followed the Court's other instructions—it rendered a verdict that is internally incompatible.  Question 3, which the jury answered in the affirmative, read:  "Has Ms. Briggs proved, by a preponderance of the evidence, that *but-for* her reasonable, good-faith complaint regarding age discrimination, Temple University would not have terminated her position?" (Verdict Form, Docket No. 58) (emphasis added).  The jury's answer in the affirmative to Question 3 is irreconcilably inconsistent with its answer in the affirmative to Question 2 because both questions required the jury to find but-for causation, and a plaintiff cannot prevail on more than one claim requiring proof of but-for causation.  As the Supreme Court held in *Gross*, to qualify as the "but-for" cause, the alleged cause must be "**the** 'reason' that the employer decided to act."  *Gross* 557 U.S. at 176 (emphasis added).  To permit a lesser "but-for" standard would contradict the Supreme Court's repeated explanation of the exacting requirements of "but-for" causation in *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009), *Univ. of Texas Southwestern Med. Ctr. v. Nassar*, and *Burrage v. U.S.*, 571 U.S. 204 (2014).

In *Burrage*, the Supreme Court addressed the causation requirement in a criminal statute, but the Court, after finding the statute's plain meaning to require actual cause, applied the *Nassar*

"but-for" standard to determine the parameters of the actual causation requirement. *Burrage*,

571 U.S. at 211-12.  In elaborating upon the meaning of "but-for" causation, the Court gave

these examples:

> Thus, where A shoots B, who is hit and dies, we can say that A [actually] caused B's death, since but for A's conduct B would not have died.  The same conclusion follows if the predicate act combines with other factors to produce the result, so long as the other factors alone would not have done so—if, so to speak, it was the straw that broke the camel's back.  Thus, if poison is administered to a man debilitated by multiple diseases, it is a but-for cause of his death, even if those diseases played a part in his demise, so long as, without the incremental effect of the poison, he would have lived.

> This but-for requirement is part of the common understanding of cause.  Consider a baseball game in which the visiting team's leadoff batter hits a home run in the top of the first inning.  If the visiting team goes on to win by a score of 1 to 0, every person competent in the English language and familiar with the American pastime would agree that the victory resulted from the home run.  This is so because it is natural to say that one event is the outcome or consequence of another when the former would not have occurred but for the latter.  It is beside the point that the victory also resulted from a host of *other* necessary causes, such as skillful pitching, the coach's decision to put the leadoff batter in the lineup, and the league's decision to schedule the game.  By contrast, it makes little sense to say that an event resulted from or was the outcome of some earlier action if the action merely played a nonessential contributing role in producing the event.  If the visiting team wound up winning 5 to 2 rather than 1 to 0, one would be surprised to read in the sports page that the victory resulted from the leadoff batter's early, non-dispositive home run.

*Id*. (internal citations and quotation marks omitted).

In each of these scenarios, the Court illustrated there could only be **one** "but-for" cause.

In the baseball example, the Court recognized that the home team won the game because of "a

host of *other* necessary causes, such as skillful pitching, the coach's decision to put the leadoff

batter in the lineup, and the league's decision to schedule the game."  *Id*. at 212 (emphasis in

original).  But these contributing causes were "beside the point" because the home run was the

**only** and **the but-for** cause of victory.  *Id*.  As for the proverbial straw that broke the camel's back, though all of the previous straws made positive incremental contributions, the Court pointed to the last straw as the sole or but-for cause.  Cementing its interpretation of the stringent standard of "but-for" causation, the Supreme Court rejected the government's interpretation of causation that "would treat as a cause-in-fact every act or omission that makes a positive incremental contribution, however small, to a particular result."[4]  *Id*. at 217-18.

In another case handled by Ms. Briggs' counsel, this Court rejected the plaintiff's interpretation of *Burrage*, and concluded that age must be **the** but-for cause, not just **a** but-for cause, of the adverse action.  *Milillo v. Thomas Jefferson Univ. Hosp.*, No. 14-3143, 2015 WL 5964992, at *4 n.7 (E.D. Pa. Oct. 13, 2015) ("Plaintiff contends that her burden is to show that age was *a* but-for cause of her non-selection and not *the* but-for cause of her non-selection.  We do not agree with this reading of *Burrage*." (emphasis in original)).

This irreconcilably inconsistent result—a finding of more than one but-for cause—is presumably what the Court sought to avoid by instructing the jury to "*skip*" Questions 3 – 7 if it answered Question 2 in the affirmative.  (*See* Verdict Form, ECF No. 58) (emphasis in original).  Because the jury returned a verdict that is internally incompatible, Temple University is entitled to judgment as a matter of law on Ms. Briggs claims for age-based retaliation, age-based hostile work environment, and age-based retaliatory hostile work environment (Questions 3, 5, and 7 on the Verdict Form, respectively).  *See Acumen, LLC*, 561 F.3d at 218.  The Court may, alternatively, "order an entirely new trial[.]"  *Acumen, LLC*, 561 F.3d at 217-18 (quoting *Mosley*,

---

[4] Justice Ginsburg's concurrence in *Burrage* further highlights the jury's mistake in this case and leaves no doubt regarding the majority's interpretation of "but-for" causation.  Justices Ginsburg and Sotomayor declined to join the *Burrage* majority because they "do not read 'because of' in the context of antidiscrimination laws to mean 'solely because of.'"  *Burrage*, 571 U.S. at 219 (Ginsburg, J., concurring).  If the majority opinion allows for multiple causes to exist under the Court's "but-for" standard—particularly "in the context of antidiscrimination laws"—Justices Ginsburg and Sotomayor would not have had any reason to refuse to join the majority.

102 F.3d at 90-91); *see also Comaper Corp.*, 596 F.3d at 1345.

**H.    Temple University Is Entitled To A New Trial On Plaintiff's Back Pay Damages**

A jury's miscalculation of back-pay damages, particularly when the miscalculation results from a court's failure to provide adequate instructions on applicable limitations to back-pay damages, is grounds for a new trial.  *See Berea v. Pickering Creek Indus. Park, Inc.*, 865 F.2d 49, 50-51, 53-54 (3d Cir. 1989) (reversing district court, remanding for new trial on damages, and holding district court's failure to instruct jury on a limitation to back-pay damages was a plain error necessitating new trial).  This is precisely what occurred here.  Temple University is, therefore, entitled to a new trial on back-pay damages.

During its deliberation, the jury submitted this question to the Court:  "how do we calculate the lost wages?"  (Trial Tr. (7.19.18) 84:25-85:1.)  In response, the Court called the jury to the jury box and allowed Ms. Briggs' counsel to read this one-sided testimony to the jury:

> MR. MUNSHI: Question:
>
> And while you were working at Temple, what was your annual salary?
>
> Answer: From $50,000 with benefits.
>
> Question: And at the $10.70 that you are -- that you've been making in total, how much have you made working as a home healthcare aide for two years?
>
> Answer: It's about 22,000 a year, so two -- it's been two years now, so forty-four.
>
> THE COURT: Does that help?
>
> A JUROR: Yes.
>
> A JUROR: Yes.
>
> THE COURT: The jury may retire to consider their verdict.

(Trial Tr. (7.19.18) 92:5-18.)

To (1) put Ms. Briggs' counsel's cherry-picked testimony in context, (2) avoid misleading the jury on the question of damages, and (3) insure a fair and impartial understanding Ms. Briggs' back-pay damages, Temple's counsel requested permission to read back testimony concerning Ms. Briggs' failure to mitigate her damages—specifically, Ms. Briggs' admission that she stopped looking for work once she became a home healthcare aide, even though she was earning less than half of what she earned while working for Temple University. (Trial Tr. (7.19.18) 87:10-14, 92:20-24.) The Court refused. (Trial Tr. (7.19.18) 87:15-19, 92:25-93:3.) This, alone, warrants a new trial. *See Berea*, 865 F.2d at 50-51. The common-law "rule of completeness," which underlies Federal Rule of Evidence 106, intends to prevent exactly this prejudice. *See Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 171-72 (1988) (holding, in part, that "[t]he District Court's refusal to admit the proffered completion evidence was a clear abuse of discretion."); *Bland v. PNC Bank, N.A.*, No. 15-1042, 2016 WL 10536026, at *4 (E.D. Pa. Dec. 30, 2016) ("To the extent that the Court admits any party's offered excerpts of depositions, responses to interrogatories, and answers to requests for admission, the Court will admit the additional portions of same or other writings or recorded statements pointed to by the opposing party that the Court determines in fairness ought to be considered at the same time as required by the rule of completeness codified at Federal Rule of Evidence 106 . . . 'We take this to be a reaffirmation of the obvious: that when one party has made use of a portion of a document, such that misunderstanding or distortion can be averted only through presentation of another portion, the material required for completeness is *ipso facto* relevant and therefore admissible.'" (quoting *Beech*, 488 U.S. at 172)).

The jury then subsequently returned a miscalculated award of $250,000 in back-pay damages, which is irreconcilable with the record. According to Ms. Briggs' testimony, which

her counsel read back to the jury, Ms. Briggs earned $50,000 per year at Temple.  In August

2016, approximately twenty-eight months after her employment at Temple ended, Ms. Briggs

obtained work as a home health aide, earning $22,000 per year.  (Trial Tr. (7.17.18 AM) 118:24-

119:5, 120:14-18.)  *Even if the jury ignored Ms. Briggs' failure to mitigate her damages* (*see*

Trial Tr. (7.17.18 PM) 72:12-14), she would only be entitled to $170,332 in **back pay** —*i.e.*,

$116,666 for the two years and four months she was out of work (based upon her annual salary

of $50,000) and $53,666 for the difference in pay between her wages from Temple and her

wages as a home health aide over the twenty-three months from August 2016 to the July 2018

verdict.  However, because Ms. Briggs' admitted that she stopped looking for work in August

2016, (*see* Trial Tr. (7.17.18 PM) 72:12-14), Ms. Briggs was entitled to $116,666 only for the

two years and four months she was out of work.[5]  Neither scenario, however, explains the jury's

$250,000 back pay award.  Because of the Court's error and the jury's miscalculation of back

pay damages, Temple respectfully requests a new trial.

---

[5] The Court provided the following instructions on how to calculate back-pay damages:

> Back-pay damages, if any, apply from the time of -- [t]he employment ended until the date of a verdict.  You must reduce any award by the amount of expenses that Ms. Briggs would have incurred in making those earnings.  As I say that, I don't think you have -- anybody has given you any evidence of that.

> If you award back pay, you are instructed to deduct from the back pay a figure, whatever wages Ms. Briggs has obtained from other employment during that period.  However, note that you should not deduct -- well, the rest of it doesn't matter.

> You are further instructed that Ms. Briggs has a duty to mitigate her damages.  That is, she has -- she is required to make reasonable effort[s] under the circumstances to reduce her damages.  And it's Temple University's burden to prove that Ms. Briggs has failed to mitigate.  So if Temple University persuades you by a preponderance of the evidence that Ms. Briggs failed to obtain substantially equivalent job opportunities that were reasonably available to her, you must reduce the amount of damages by the amount of wages that Ms. Briggs reasonably could have earned if she had obtained those opportunities.

(Trial Tr. (7.19.18) 61:25-62:21.)

I.      **The Jury's Compensatory Damages Award Is Unsupported, And Judgment Should Be Entered In Favor Of Temple University Under Rule 50(b); Alternatively, The Court Should Remit It**

The District Court in *Rush v. Scott Specialty Gases, Inc.*, 930 F. Supp. 194 (E.D. Pa. 1996), *rev'd on other grounds*, 113 F.3d 476 (3d Cir. 1997), summarized the evidence a plaintiff must prove to obtain an award of compensatory damages in a discrimination case:

> The Third Circuit has ruled that if the only evidence of emotional distress is plaintiff's own testimony that she was depressed and humiliated, and there is no evidence of physical suffering, the need for professional care or the like, then there is no "reasonable probability, rather than a mere possibility, that damages due to emotional distress were in fact incurred as a result of" the wrongful act. *Spence [v. Board of Ed.]*, 806 F.2d [1198,] 1201 [3d Cir. 1986)] (quoting district court opinion).
>
> In contrast, if a plaintiff has corroborated his or her own testimony with testimony of friends, family and expert witnesses and proffers evidence that he or she has needed or will need professional care, this evidence can support a compensatory damages award. *Bolden v. SEPTA*, 21 F.3d 29, 33 (3d Cir. 1994).

930 F. Supp. at 199.  Routinely, the Third Circuit has upheld trial courts' decisions remitting all emotional distress damages for lack of proof because the plaintiff's only evidence of emotional distress was her own testimony that the challenged job action depressed and humiliated her.  *See Spence v. Bd. of Ed.*, 806 F.2d 1198, 1201 (3d Cir. 1986).

As with the plaintiff in *Spence*, the entirety of Ms. Briggs' evidence supporting her compensatory damages claim is found in one question and answer:

> Q.      And lastly, Ruth, you had mentioned your family a few times.  And tell us about how this experience -- how it's affected any relationships you've had with any of your family?
>
> A.      My three grand -- I think the proudest role I've ever been called is -- I have been called is Mimi, and that's grandmother to my grandkids.  And that first Christmas, when I didn't have anything, I didn't even have -- I couldn't even put up a tree for them, I didn't have gifts for them.  And it's so hard to tell children, little ones, that you don't have it.  And it -- I'm making it now,

with the subsidized rent, but I don't have any extra money.
There's no money.

(Trial Tr. (7.17.18 AM) 123:9-21.)   While this testimony may have appealed to the jury's emotion, it cannot support a compensatory damages claim.  *See Spence*, 806 F.2d at 1201; *Rush*, 930 F. Supp. at 199.  Ms. Briggs offered *none* of the evidence suggested by the court in *Rush* to support any compensatory damages award—she presented no other witness to testify about any injury she sustained or emotional damages she suffered, she presented no evidence she sought medical treatment because of Temple actions, and she presented no evidence from which the jury could conclude that she was damaged emotionally.  Given Ms. Briggs' failure to present sufficient evidence on this point, the Court should enter judgment in Temple's favor on compensatory damages.

If the Court does not enter judgment for Temple, the Court should remit the jury's award substantially.   In *Rush*, the plaintiff presented testimony from friends and family that her personality changed and testimony from an expert witness she suffered from depression; the trial judge remitted the compensatory award from $1 million to $100,000.  *See Rush*, 930 F. Supp. at 199.  Likewise, in *Valentin v. Crozier-Chester Medical Center*, 986 F. Supp. 292, 305 (E.D. Pa. 1997), the court reduced compensatory damages from $209,000 to $52,250 because it concluded, from the plaintiff's testimony, that she was depressed and "very humiliated" at having to explain her termination to future employers could not justify an award of $209,000.  The Court stated that given this "'thin evidence of rather limited damages,' the plaintiff could only recover 'a minimal award for intangible injuries.'"  *Id.* (quoting *Hetzel v. County of Prince William*, 89 F.3d 169, 171 (4th Cir. 1996)).

Ms. Briggs' evidence is far weaker than the evidence submitted by the plaintiffs in *Rush* and *Valentin*.  The Court should reduce the jury's compensatory damages award to zero or to a

smaller amount consistent with *Rush*, *Valentin*, and other decisions based on similarly weak evidentiary proofs or, in the alternative, grant Temple University a new trial on this issue.

> **J.      If Judgment As A Matter Of Law Is Not Granted In Full, A New Trial Is Warranted; Alternatively The Court May Deny The Motion For A New Trial On The Condition That The Plaintiff Accepts A Remittitur Of The Jury Verdict**

A court may grant a new trial on all or some issues, to any party, following the entry of judgment, "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1). "Where a motion for judgment as a matter of law is accompanied by a motion for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure, the court shall also rule on the motion for a new trial." *Kotas*, 1997 WL 570907, at *7 (citing *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)). A district court may grant a motion for a new trial if it determines (1) the verdict is against the weight of the evidence, (2) the damages are excessive, or (3) substantial errors were made in the admission or rejection of evidence or the giving or refusal of instructions. *See Montgomery Ward*, 311 U.S. at 251; *see also Valentin*, 986 F. Supp. at 298.

In analyzing a motion for new trial, the court need not view the evidence in the light most favorable to the verdict winner. *See Magee v. Gen. Motors Corp.*, 213 F.2d 899, 900 (3d Cir. 1954). Rather, "the decision to grant or deny a motion for a new trial 'is confided almost entirely to the discretion of the district court.'" *Valentin*, 986 F. Supp. at 299 (citing *Blancha v. Raymark Indus.*, 972 F.2d 507, 512 (3d Cir. 1992)).

As discussed above, Ms. Briggs failed to offer sufficient evidence to sustain her claims of age discrimination, age retaliation, age-related hostile work environment, and retaliatory hostile work environment based upon her complaints of age and gender discrimination. There is no evidence in the record to support a finding that age discrimination was the but-for cause of

38

Temple University's decisions.  Ms. Briggs' evidence was limited to Dr. Wu's vague and temporally remote alleged comment about the retirement age of women in China, her non-specific claims that Dr. Wu treated other employees more favorably than he treated her, and her claims that Ms. King only received a verbal warning for failing to call-in or report to work in the aftermath of a hurricane.  Temple's personnel decisions regarding Ms. Briggs would not have been made "but-for" Ms. Briggs' persistent performance deficiencies, not her age.

Ms. Briggs' retaliation claim is equally flawed because Ms. Walton, Dr. Wu, and Mr. Wacker—the decision makers regarding Ms. Briggs' final, April 1, 2014, discipline that led to the end of her employment—were unaware Ms. Briggs made any complaints of discrimination during her employment at Temple University.  Without knowledge of Ms. Briggs' alleged complaints of discrimination, the decision makers could not have had the retaliatory animus necessary to support Ms. Briggs' retaliation claim.

There is also no evidence to support a finding that Ms. Briggs was subjected to a hostile work environment because of her age, or that she was subjected to a retaliatory hostile work environment.  To support these claims, Ms. Briggs offered nothing more than evidence of infrequent and sporadic comments about her performance deficiencies and a single alleged comment about women in China being "put out to pasture" at 55; these comments are neither objectively nor subjectively "severe or pervasive."

Finally, the juror's failure to follow the instructions in the Verdict Form, the irreconcilable inconsistences in their verdict, their miscalculation of back-pay, and their award of compensatory damages notwithstanding the absence of any supporting evidence, indicates that their decision was based on sympathy rather than evidence.

For each of these reasons, Temple University is entitled to judgment as a matter of law or, in the alternative, a new trial. Indeed, the standard for a new trial is "substantially less demanding than that for judgment as a matter of law." *Lightning Lube, Inc. v. Witco Corp.*, 802 F. Supp. 1180, 1185 (D.N.J. 1992), *aff'd*, 4 F.3d 1153 (3d Cir. 1993).

If a court does not grant a new trial, the Court may still, in its discretion, deny the motion for a new trial on the condition that Ms. Briggs accepts a remittitur of the jury verdict. *See Rush*, 930 F. Supp. at 197. Remittitur is "well established as a device employed when the trial judge finds that a decision of the jury is clearly unsupported and/or excessive." *See Spence*, 806 F.2d at 1201. The decision of the district judge to grant a remittitur of the verdict can only be disturbed upon a showing of a manifest abuse of discretion. *See id*. (citing *Murray v. Fairbanks Morse*, 610 F.2d 149, 152-53 (3d Cir. 1979)). "The district judge is in the best position to evaluate the evidence presented and determine whether or not the jury has come to a rationally based conclusion." *Id*. Thus, the Court should, at the very least, remit the jury's award to an amount that reflects the evidence and not the jury's emotional response to the case.

## IV.   CONCLUSION

Ms. Briggs believed that Temple treated her harshly or unfairly, and the jury evidently agreed. But, Temple adhered to its Code of Conduct and meted out discipline based on poor performance, in an appropriate manner, free of discriminatory animus. There is simply no evidence in this case that indicates that anyone at Temple treated Ms. Briggs in a discriminatory manner *because of* her age or her complaints of age and gender discrimination.

Thus, Temple respectfully requests this Court grant its Motion for Judgment as a Matter of Law under Rule 50(b) and enter judgment for Temple on each of Ms. Briggs' claims. In the alternative, Temple respectfully requests a new trial under Rule 59(a) or a remittitur of the jury's verdict.

Respectfully submitted,

*/s/ Richard R. Harris*

Richard R. Harris (PA No. 84897)
Rachel Fendell Satinsky (PA No. 308751)
Jonathan L. Shaw (PA No. 316882)
**LITTLER MENDELSON, P.C.**
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102.1321
267.402.3000 – telephone
267.402.3131 – facsimile
rharris@littler.com
rsatinsky@littler.com
jlshaw@littler.com

*Attorneys for Defendant Temple University*