# EXHIBIT 09
## Trial Tr. 07 19 18

1

```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF PENNSYLVANIA

RUTH V. BRIGGS,               .
                              . Case No. 1:15-cv-00902-LS
          Plaintiff,          .
                              .
          vs.                 . 601 Market Street
                              . Philadelphia, Pennsylvania 19106
                              . July 19, 2018
                              .
TEMPLE UNIVERSITY,            .
                              .
          Defendants.         .
. . . . . . . . . . . . . . .
              TRANSCRIPT OF TRIAL
                     DAY 4
     BEFORE THE HONORABLE ROBERT F. KELLY
          UNITED STATES DISTRICT JUDGE
                 AND A JURY
```

APPEARANCES:

For the Plaintiff:          Laura Carlin Mattiacci, Esq.
                            Stephen G. Console, Esq.
                            Rahul Munshi, Esq.
                            CONSOLE MATTIACCI LAW, LLC
                            1525 Locust Street
                            Philadelphia, Pennsylvania 19102

For the Defendant:          Richard R. Harris, Esq.
                            Rachel Fendell Satinsky, Esq.
                            LITTLER MENDELSON, PC
                            1601 Cherry Street, Suite 1400
                            Philadelphia, Pennsylvania 19102

Audio Operator:             Electronically Recorded
                            by Court Personnel

Transcription Company:      JDR Acquisition, LLC./
                            Advanced Transcription
                            1880 John F. Kennedy Boulevard
                            6th Floor
                            Philadelphia, Pennsylvania 19103
                            (855)204-8184

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

```
 1  reasonable doubt."  That's -- that applies in a criminal
 2  case, not a civil case.
 3          I have in my hand a copy of the verdict form, and
 4  it is composed of several questions; it's four pages long.
 5  And that -- you shouldn't look upon that as being burdensome
 6  because it is a good outline of what I'm going to tell you.
 7  They are questions that are -- will be about the charge that
 8  I'm about to start, and I think that you will find it an aid.
 9  So as I go through things, don't worry about am I going to
10  remember all of this.  This, I think, will help jog your
11  memory.
12          This case involves two statutes.  One is Age
13  Discrimination in Employment Act and the other is Title VII,
14  which in our case involves discrimination as to sex.  And
15  throughout the case, we been referring to sex or gender.
16  It's probably more accurate to say that this is really a
17  gender dispute case, but in any event, I'll probably use both
18  expressions and discharge.
19          In this case -- this is as to age discrimination in
20  employment claim, in this case, Ms. Briggs is alleging that
21  Temple University terminated her employment because of her
22  age.  In order for Ms. Briggs to recover on this
23  discrimination claim against Temple University, she must
24  prove that Temple terminated her employment and intentionally
25  discriminated against her.  This means she must prove that
```

52

1    age was a determinative factor in their decision.
2              Let me correct that, that but for her age, not a
3    determining -- but for her age, Temple University would not
4    have terminated her.
5              To prevail, Ms. Briggs must prove both of the
6    following by a preponderance of the evidence:  That Temple
7    University terminated her employment; and, second, that
8    Temple University terminated her employment because of her
9    age.  In other words, it was the reason that Temple
10   University terminated her employment.
11             Although Ms. Briggs must prove that Temple
12   University acted with the intent to discriminate, Ms. Briggs
13   is not required to prove that Temple University acted with
14   the particular intent to violate her federal civil rights.
15   Moreover, she is not required to prove -- to produce direct
16   evidence of intent such as statements admitting
17   discrimination.  Intentional discrimination may be inferred
18   from the existence of other facts.  You should weigh all the
19   evidence received in the case in deciding whether Temple
20   University intentionally discriminated against Ms. Briggs
21   because of her age.
22             If you find that Temple University terminated Ms.
23   Briggs' employment, Temple University has given a non-
24   discriminatory reason for its decision to terminate Ms.
25   Briggs' employment.  If you believe Temple University's

53

1  stated reason and if you find that Temple University's
2  decision to terminate Ms. Briggs' employment would have
3  occurred because of Temple University's stated reason,
4  regardless of Ms. Briggs' age, then you must find for Temple
5  University.  If you disbelieve Temple University's stated
6  reason for its conduct, then you may, but need not, find that
7  Ms. Briggs has proven intentional discrimination.
8         In determining whether Temple University's stated
9  reason for its actions was a pretext or excuse for
10 discrimination, you may not question Temple University's
11 business judgment.  You cannot find intentional
12 discrimination simply because you disagree with the business
13 judgment of Temple University or because it is harsh or
14 unreasonable.  You are not to consider Temple University's
15 wisdom.
16        However, you may consider whether Ms. Briggs has
17 proven that Temple University's reason is merely a cover-up
18 for discrimination.  Ultimately, you must decide whether Ms.
19 Briggs has proven that but for her age, Temple University's
20 decision to terminate her employment would not have been
21 made.
22        There is also a claim of hostile work environment
23 and harassment.  This is under the Age Discrimination
24 Employment Act, as well as Title VII.  They claimed that this
25 was done because of her gender or sex.  Ms. Briggs claims

1   reason for Temple University's terminating her employment.
2            I'm going to at this time give you an instruction
3   as to damages in the event that you find the age
4   discrimination in employment has been proved.  And the fact
5   that I give you an instruction on damages should not be taken
6   by you as an indication from me that I think that you should
7   find any particular verdict.  In this instruction, I am
8   required to give you all of the law that you may need to
9   decide the case.  So the fact that I give you this
10  instruction, as I said, should not be taken as an indication
11  from me about what verdict you should render.
12           If you find that Temple University terminated Ms.
13  Briggs' employment and intentionally discriminated against
14  Ms. Briggs because of her age or sex, then you must determine
15  the amount of damage that Temple University's actions have
16  caused Ms. Briggs.  Ms. Briggs has the burden of proving
17  damages by a preponderance of the evidence.
18           You must award as actual damages an amount that
19  reasonably compensate Ms. Briggs for any lost wages and
20  benefits, taking into consideration any increases in salary
21  and benefits, including pension that Ms. Briggs would've
22  received from Temple University had Ms. Briggs been the
23  subject of Temple University's -- had she not been the
24  subject of Temple University's discrimination.
25           Back-pay damages, if any, apply from the time of --

1  he employment ended, until the date of a verdict.  You must
2  reduce any award by the amount of expenses that Ms. Briggs
3  would have incurred in making those earnings.  As I say that,
4  I don't think you have -- anybody has given you any evidence
5  of that.
6         If you award back pay, you are instructed to deduct
7  from the back pay a figure, whatever wages Ms. Briggs has
8  obtained from other employment during that period.  However,
9  note that you should not deduct -- well, the rest of it
10 doesn't matter.
11        You are further instructed that Ms. Briggs has a
12 duty to mitigate her damages.  That is, she has -- she is
13 required to make reasonable effort under the circumstances to
14 reduce her damages.  And it's Temple University's burden to
15 prove that Ms. Briggs has failed to mitigate.  So if Temple
16 University persuades you buy a preponderance of the evidence
17 that Ms. Briggs failed to obtain substantially equivalent job
18 opportunities that were reasonably available to her, you must
19 reduce the amount of damages by the amount of wages that Ms.
20 Briggs reasonably could have earned if she had obtained those
21 opportunities.
22        In assessing age discrimination in employment
23 damages, you must not consider attorneys fees or costs or
24 litigation costs in this case.
25        There's an element of damage, liquidated damages if

84

1            MS. MATTIACCI:  You know --
2            MR. HARRIS:  (indiscernible)
3            MS. SATINSKY:  Your Honor, the instruction is fine
4    as it is.
5            THE COURT:  I'm not changing it now.
6            MS. MATTIACCI:  Okay.  I just wanted --
7        (Sidebar concluded)
8            THE COURT:  The jury may retire to consider its
9    verdict.
10       (Jury excused to begin deliberations at 12:24 p.m.)
11           THE COURT:  The jury has its lunch there.  You
12   know, if the attorneys want to get lunch, I guess, but try to
13   be back, but be back definitely within an hour.
14           MR. HARRIS:  Very well.
15           THE COURT:  If you can be back sooner, that's all
16   the better because they may have a question right away, you
17   never know.
18           MR. HARRIS:  Okay.
19           MS. MATTIACCI:  Okay.
20           THE COURT:  All right.  Thank you.
21           COUNSEL:  Thank you, Your Honor.
22       (Off the record at 12:25 p.m.)
23       (Proceedings resume at 2:39 p.m.)
24       (Jury not present)
25           THE COURT:  The jury has sent a question.  The

85

1  question is how do we calculate the lost wages?  Any
2  suggestions on what I should tell them?
3           MS. MATTIACCI:  Well, Your Honor, we could provide
4  them with the amount of money that she would have made if she
5  stayed there minus the amount of money that she has made,
6  which was the calculation that I put on the screen during the
7  closing.
8           THE COURT:  Well, you can't add to the record.
9  They were given some figures, but they were very general,
10 right?
11          MS. MATTIACCI:  They were.  It was the -- it was
12 really her salary that she would -- it was $53,000 was what
13 she made at Temple, plus benefits.  And there were -- that
14 number was given to them.  And then they were told that she
15 made $22,000 a year since then.
16          THE COURT:  Okay.
17          MS. MATTIACCI:  And the -- you know, I just -- I
18 did the calculation, it was on the screen during the closing,
19 of what the difference was.  Maybe they just didn't remember
20 it because they couldn't, you know, write it down.
21          THE COURT:  53,000 and 22?
22          MS. MATTIACCI:  No, it was --
23          THE COURT:  That was the testimony?
24          MS. MATTIACCI:  No, 69,000 is the -- it's 50 -- it
25 was 50 -- 69,000 was her total compensation at Temple per

1   the second two years is where the $22,000 per each year comes

2   out.  So the first two years she's completely out 69,000.

3   The second two years, it's 22,000 deducted each year.

4           THE COURT:  Well, I don't want to --

5           MS. MATTIACCI:  I mean, you could tell them that

6   since the time of her termination, she has made 44,000, and

7   if she was still at Temple, she would have made 69,000 per

8   year.  She -- and they know she's been out of work for four

9   years.

10          MR. HARRIS:  Judge, the issue is, as this Court --

11  as we directed the Court at side bar, unfortunately Ms.

12  Briggs stopped looking for work, and that's into the record,

13  as well, once she received her employment as a home health

14  care assistant.

15          THE COURT:  I am going to tell the jury that they

16  -- you know, if they want some particular testimony read

17  back, we will do it.  But, you know, I don't want to search

18  the record at this point, frankly.

19          Bring the jury in.

20          THE BAILIFF:  They need two minutes, Judge.  Two

21  are in the restroom.

22          MS. MATTIACCI:  Your Honor, the calculation of the

23  benefits is in trial Exhibit P-62 on Page 11.  This is an

24  exhibit in evidence.  I would propose that the jury --

25          THE COURT:  Show it to the other side.  Would you

1  her subsequent employment, how much she has made since she's
2  found a new job.  And we propose those are the only two
3  things that should be heard.
4        THE COURT:  Read that.
5        MR. MUNSHI:  Question:
6        "And while you were working at Temple, what was
7  your annual salary?
8        "Answer:  From $50,000 with benefits.
9        "Question:  And at the $10.70 that you are -- that
10 you've been making in total, how much have you made working
11 as a home healthcare aide for two years?
12       "Answer:  It's about 22,000 a year, so two -- it's
13 been two years now, so forty-four."
14       THE COURT:  Does that help?
15       A JUROR:  Yes.
16       A JUROR:  Yes.
17       THE COURT:  The jury may retire to consider their
18 verdict.
19     (Jury resumes deliberations)
20       MR. HARRIS:  We were trying to find the clip, and
21 I'll I've it to the Court's discretion, the portion of the
22 transcript where Ms. Briggs said that she stopped looking for
23 a job.  I think they're entitled to receive that, as well,
24 and that's what I was explaining to counsel.
25       THE COURT:  I tried to give them what they asked

93

1  for, and that's it.  You may have an exception.
2           MR. HARRIS:  Very well.  Thank you.
3           THE COURT:  I'll go off.
4       (Off the record at 2:52 p.m.)
5       (Proceedings resume at 2:58 p.m.)
6       (Call to order of the Court)
7           THE COURT:  You may be seated.
8           All right.  Take the verdict.
9           THE CLERK:  Yes, Your Honor.  Members of the jury,
10 please rise.
11          THE COURT:  I don't want them to rise.
12          THE CLERK:  Okay, I'm sorry.  Everybody be seated.
13 Just the foreperson.
14          A JUROR:  Okay.
15          THE CLERK:  Members of the jury, have you reached a
16 verdict based upon the questions from the Court?
17          THE FOREPERSON:  Yes.
18          THE CLERK:  Will the foreperson please answer the
19 Question 1, yes or no?
20          THE FOREPERSON:  No.
21          THE CLERK:  Question 2, yes or no?
22          THE FOREPERSON:  Yes.
23          THE CLERK:  Question 3, yes or no?
24          THE FOREPERSON:  Yes.
25          THE CLERK:  Question 4, yes or no?