IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RUTH BRIGGS,** | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION NO. |
| | : 16-cv-0248 |
| **TEMPLE UNIVERSITY** | : |
| Defendant. | : |

**PLAINTIFF RUTH BRIGGS'S POST-TRIAL MOTION FOR FRONT
PAY DAMAGES AND FOR A NEW TRIAL ON PUNITIVE DAMAGES ONLY**

For the reasons set forth in the accompanying Memorandum of Law in Support of Plaintiff Ruth Briggs's Post-Trial Motion for Front Pay Damages and for a New Trial on Punitive Damages Only, Plaintiff respectfully requests that this Court enter an Order granting Plaintiff's Motion. The Civil Judgement entered in this matter should be amended to include $489,835 in front pay damages to Plaintiff, and a new trial should be ordered on the issue of punitive damages only.

Respectfully submitted,

**CONSOLE MATTIACCI LAW, LLC**

_____
Laura C. Mattiacci, Esq.
Rahul Munshi, Esq.
1525 Locust St., Ninth Floor
Philadelphia, PA 19102
(215) 545-7676 (t)
(215) 814-8920 (f)

Attorneys for Plaintiff, Ruth Briggs

Dated: August 10, 2018

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

_____

**RUTH BRIGGS,**

          **Plaintiff,**

    v.

**TEMPLE UNIVERSITY**

          **Defendant.**
_____

**CIVIL ACTION NO.
16-cv-0248**

**PLAINTIFF RUTH BRIGGS'S MEMORANDUM OF LAW IN
SUPPORT OF HER POST-TRIAL MOTION FOR FRONT PAY
DAMAGES AND FOR A NEW TRIAL ON PUNITIVE DAMAGES ONLY**

## I. INTRODUCTION AND FACTUAL SUMMARY

On July 19, 2018, the jury in this employment matter rendered a verdict in favor of Plaintiff Ruth Briggs and against Defendant Temple University, awarding Plaintiff $250,000 in back pay economic loss damages (which were doubled as liquidated damages under the Age Discrimination in Employment Act, as amended, 29 U.S.C. §621, *et seq.* ("ADEA")), and $350,000 in pain and suffering damages. By agreement among the parties and the Court, the jury was not asked, and did not determine, the amount of front pay damages that Plaintiff is entitled to recover as a result of Defendant's unlawful conduct. On July 25, 2018, the Court entered an Amended Civil Judgement (Doc. No. 62) in accordance with the verdict sheet in the amount of $850,000.

Plaintiff commenced this employment discrimination, retaliation, and hostile work environment action against her former employer, Defendant Temple University, for violations of the ADEA, the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA"), and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII"). The jury found in favor of Plaintiff on the following claims:

1

(1) age discrimination in connection with the termination of Plaintiff's employment (Question 2);

(2) retaliation in the form of termination against Plaintiff for complaining of age discrimination (Question 3);

(3) age-based hostile work environment (Question 5);

(4) retaliation in the form of hostile work environment against Plaintiff for complaining of age discrimination (Question 7); and

(5) retaliation in the form of hostile work environment against Plaintiff for complaining of gender discrimination (Question 8).

The jury further found that Defendant engaged in willful misconduct by intentionally discriminating against Plaintiff because of age or retaliating against her because of her complaint of age discrimination (Question 10). As a result of this finding, Plaintiff is entitled to liquidated damages of $250,000 (Plaintiff's back pay economic losses) under the ADEA.

Plaintiff now moves for post-trial relief on two issues: (1) the Court's determination of front pay economic damages to be awarded to Plaintiff; and (2) a new trial solely on the issue of punitive damages, which were not assessed by the jury in this original trial.

## II.  FRONT PAY DAMAGES

At trial and prior to the jury's deliberation, the Court and the parties agreed that if the jury returned a verdict in Plaintiff's favor, Plaintiff would submit a post-trial application to the Court on front pay damages for the Court's determination. See July 19, 2018 AM Trial Transcript at 68:20-69:5. Plaintiff requests an award of front pay to make her whole and restore her, "so far as possible . . . to a position where [she] would have been were it not for the unlawful discrimination." Albemarle Paper Co. v. Moody, 422 U.S. 405, 421 (1975).

It is undisputed that Plaintiff is now 63 years old and was 59 when she was terminated by Defendant on April 1, 2014 after 13 years of employment. See July 17, 2018 AM Trial Transcript at 10:12; 15:23-25.  Plaintiff testified that after she was terminated by Defendant, she undertook diligent search efforts online and in-person to find another job, including applying to over 100 jobs in total and many positions at Temple. Id. at 111:22-114:19; 117:11-16.  Positions that Plaintiff applied to at Defendant after her termination included: Faculty Recruiter, Admissions Counselor, Department Coordinator, Administrative Operators Coordinator, Community Outreach Coordinator, Senior Administrative Specialist, Coordinator for the Annual Fund for Athletics, Research Specialist, Technical Writer, Community Outreach Worker, Program Manager, Event Planning Coordinator, and Tristate Regional Coordinator. Id. at 112:24-114:19; Plaintiff's Trial Exhibit 59.  Defendant did not offer Plaintiff any of these positions. See July 17, 2018 AM Trial Transcript at 113:14-15.  In addition to positions at Defendant Temple University, Plaintiff applied for jobs at other education institutions, and also applied for cashier and clerk positions. Id. at 117:11-118:1; Plaintiff's Trial Exhibit 67.

From April 1, 2014 until August 2016, Plaintiff was unemployed. See July 17, 2018 AM Trial Transcript at 119:6-9. Plaintiff ultimately secured a position in August 2016 as a home health aide with Liberty Home Resources, where she continues to work. Id. at 118:24-119:5.  As a home health aide, Plaintiff initially earned $10.50 per hour and now earns $10.70 per hour. Id. at 119:10-12.  In total, Plaintiff has earned around $44,000 since August 2016, or $22,000 per year. Id. at 120:14-18.  In contrast, at Defendant, Plaintiff earned approximately $69,500 in salary and benefits annually. Id. at 119:13-15; Plaintiff's Trial Exhibit 62 at p.11.  Plaintiff's total economic losses from her termination date on April 1, 2014 through the end of trial on July 19, 2018 are approximately $250,000.  The jury awarded Plaintiff $250,000 in economic losses as a result of

Defendant's unlawful conduct.  See Verdict Sheet at Question 9.

Moving forward, the annual difference in compensation between the amount Plaintiff would have earned if she remained an employee of Defendant ($69,500) and the amount in compensation that she currently earns ($22,000) is $47,500.  Plaintiff testified that she has not considered retirement and that she has no target date of retirement.  See July 17, 2018 AM Trial Transcript at 122:24-123:8.  Accordingly, this Court should award Plaintiff front pay damages to compensate her for the losses she will suffer from the end of trial through her potential retirement date.  See Bartek v. Urban Redev. Auth. of Pittsburgh, 882 F.2d 739, 747 (3d Cir. 1989) (front pay damages are appropriate where "a victim of employment discrimination will experience a loss of future earnings because he or she cannot be placed in the employment position that was unlawfully denied").

With regard to the length of the front pay period, the Third Circuit has explained:

> [T]here will often be uncertainty concerning how long the front-pay period should be, and the evidence adduced at trial will rarely point to a single, certain number of weeks, months, or years.  More likely, the evidence will support a range of reasonable front-pay periods.  Within this range, the district court should decide which award is most appropriate **to make the claimant whole**.

Donlin v. Philips Lighting North America Corp., 581 F.3d 73, 87 (3d Cir. 2009) (emphasis added).

In Donlin, the Third Circuit held that the District Court did not abuse its discretion when it awarded the plaintiff front pay for 10 years.  The Third Circuit and other district courts in this Circuit have upheld even larger awards reflecting longer periods of future lost wages.  See Bianchi v. City of Philadelphia, 80 Fed.Appx. 232, 237-38 (3d Cir. 2003) (affirming $512,500 front pay award representing 13 years of lost wages); Bates v. Bd. of Educ. of Capital Sch. Dist., 2000 U.S. Dist. LEXIS 4873, (D. Del. Mar. 31, 2000) (upholding front pay award for 17 years).

Other courts of appeals have likewise affirmed front pay awards of 10 years or more.  See Padilla v. Metro-North Commuter Railroad, 92 F.3d 117 (2d Cir. 1996) (upholding front pay award of over 20 years); Broadnax v. City of New Haven, 141 Fed.Appx. 18 (2d Cir. 2005) (affirming front pay award of 23 years); Passantino v. Johnson & Johnson, 212 F.3d 493 (9th Cir. 2000) (affirming front pay award of 22 years); Gotthardt v. Amtrak, 191 F.3d 1148 (9th Cir. 1999) (affirming 11 year front pay award); Meacham v. Knolls Atomic Power Lab., 381 F.3d 56, 79 (2d Cir. 2004) (affirming award of front pay for 9-12.5 years to victims of age discrimination); Pierce v. Atchison, Topeka & Santa Fe Ry. Co., 65 F.3d 562, 574 (7th Cir. 1995) (10-year front pay award did not constitute an abuse of discretion); Hukkanen v. Int'l Union of Operating Eng'rs, Hoisting & Portable Local No. 101, 3 F.3d 281, 286 (8th Cir. 1993) (upholding 10 years of front pay award); Belk v. City of Eldon, 228 F.3d 872 (8th Cir. 2000) (finding 10 years of front pay to be reasonable).

Here, Plaintiff requests front pay damages for 10 years – until she is 74 years old – which is well within the Court's discretion under Third Circuit precedent.  The below table shows the annual front pay losses that Plaintiff will sustain moving forward at a rate of $47,500 per year.  The Court should assess the front pay damages at **$489,835** (10 years-worth) and amend the Civil Judgement to reflect the same.[1]

---

[1] Under Pennsylvania state law, there is no requirement that a front pay award must be reduced to present value.  See Kaczkowski v. Bolubasz, 421 A.2d 1027 (Pa. 1980) (advocating the "total offset" method, under which no reduction is necessary to determine present value, as the value of future income streams is likely to be offset by inflation).  Because Plaintiff's claims arise under the Pennsylvania Human Relations Act ("PHRA"), there is no need to reduce the front pay award to present value.

| YEARS OF FRONT PAY | TO AGE[2] | AMOUNT |
|---|---|---|
| 1 | 65 | $62,335 |
| 2 | 66 | $109,835 |
| 3 | 67 | $157,335 |
| 4 | 68 | $204,835 |
| 5 | 69 | $252,335 |
| 6 | 70 | $299,835 |
| 7 | 71 | $347,335 |
| 8 | 72 | $394,835 |
| 9 | 73 | $442,335 |
| **10** | **74** | **$489,835** |
| 11 | 75 | $537,335 |
| 12 | 76 | $584,835 |
| 13 | 77 | $632,335 |
| 14 | 78 | $679,835 |
| 15 | 79 | $737,335 |

The remedial purposes of the anti-discrimination statutes at issue in this case would be frustrated if Plaintiff is not made whole following Defendant's unlawful conduct. A front pay award of 10 years – taking in account Plaintiff's substantial mitigation efforts – is certainly appropriate in this matter where Plaintiff will continue to suffer significant economic losses into the future. According to Dr. Wu's trial testimony, Defendant employs staff members within

---

[2] The table includes pro-rated front pay losses from July 19 (date of verdict) through November 10 (Plaintiff's birthday), or $14,835.

Plaintiff's former department who are in their 70s. See July 16, 2018 PM Trial Transcript at 113:15-114:7. Therefore, based on Defendant's own testimony, it is entirely likely that absent Defendant's unlawful conduct against Plaintiff, she could have remained an employee at Defendant for another 10 years, or to age 74. Plaintiff should be compensated and made whole in the form of front pay damages to account for these significant economic losses moving forward.[3]

### III. PUNITIVE DAMAGES

Prior to the start of trial, Plaintiff submitted proposed Jury Instructions which included an instruction on punitive damages under Title VII (Doc. No. 49 at p.11) and a proposed Jury Verdict Sheet which included a question regarding punitive damages liability (Doc. No. 46 at Question 11 ("Did Ruth Briggs prove that it is more likely than not that Temple showed reckless indifference to Ms. Briggs's federally protected rights?"). At trial, the parties stipulated to bifurcate the trial on punitive damages, where the jury would first determine whether punitive damages should be assessed and then a second phase of trial would commence regarding the amount of punitive damages. See July 16, 2018 PM Trial Transcript at 3:13-4:21. During the Charging Conference, however, the Court ruled that it would not charge the jury on punitive damages. See July 18, 2018 Trial Transcript at 73:18-23. Consequently, the verdict sheet submitted to the jury did not contain a question regarding punitive damages liability.

Plaintiff brings this instant Motion under Federal Rule of Civil Procedure 59(a)(1)(A) for a new trial solely on the issue of punitive damages because the Court's ruling to not charge the

---

[3] In the alternative to front pay damages, Plaintiff moves for reinstatement at Defendant at or above her former salary of $53,000 plus full benefits, plus any cost of living increases that were granted in the interim. "The decision to grant reinstatement or its alternative, front pay, is within the discretion of the district court." Kraemer v. Franklin & Marshall College, 941 F.Supp. 479, 482 (E.D. Pa. 1996) (citing Maxfield v. Sinclair In'l, 766 F.2d 788, 796 (3d Cir. 1985)).

jury on punitive damages was an error.[4] "An error of law, if prejudicial, is a good ground for a new trial." 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure Civil § 2805 (3d Ed. 2012). For an error of law to warrant a new trial, it must affect a party's substantial rights. Fed.R.Civ.P. 61. "An error in the jury charge or in the jury verdict sheet and its component interrogatories may furnish grounds for a new trial." Bull v. UPS, No. 07-2291, 2014 U.S. Dist. LEXIS 89077, at *16 (D.N.J. July 1, 2014).

Under Title VII, "[a] complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). An award of punitive damages is permissible where a jury finds by a preponderance of the evidence that a management official of the defendant acted with malice or reckless indifference. See Third Circuit Model Jury Instructions at 5.4.2. Further, an employer must be found vicariously liable and punitive damages must be imputed upon it when there is evidence that the employer failed to make "good-faith efforts to comply with Title VII." Kolstad v. American Dental Ass'n, 527 U.S. 526, 539 (1999).

As demonstrated by the overwhelming evidence adduced at trial, the jury's finding that Defendant engaged in unlawful retaliation under Title VII because of Plaintiff's complaints of gender discrimination, and the jury's finding that Defendant's actions constituted willful misconduct, the jury should have been asked to determine whether punitive damages should be

---

[4] Rule 59(a)(1)(A) states:
   (a) In General
      (1) Grounds for New Trial.  The court may, on motion, grant a new trial on all or some of the issues – and to any party – as follows:
         (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court.

assessed against Defendant.  Under Fed.R.Civ.P. 59, this Court should order a new trial solely on the issue of punitive damages under Title VII, as the evidence presented at trial showed that Defendant's unlawful actions constituted reckless indifference to Plaintiff's federally-protected rights under Title VII.

The evidence presented at trial showed that Plaintiff engaged in protected activity by complaining of gender discrimination to **<u>numerous</u>** officials at Defendant, including, but not limited to, Director of Equal Employment Opportunity ("EEO") Sandy Foehl, Director of Labor and Employee Relations Deirdre Walton, Director of Business and Administration Gregory Wacker, in-house counsel Cameron Etezady, and in-house counsel Fay Trachtenberg.  Despite consistent pleas for help for over two years to remedy the hostile work environment to which she was subjected, Plaintiff was met only with the run-around as Defendant's employees allowed for the toxic environment under Plaintiff's supervisor, Dr. Jie Wu, to fester.

The evidence showed that after Plaintiff engaged in protected activity, the work environment grew more hostile and Defendant embarked on a campaign of retaliatory and unwarranted disciplinary actions against her.  For example, immediately after Plaintiff opposed Dr. Wu's discriminatory comment that in China women of Plaintiff's age are "put out to pasture," Plaintiff was given a written disciplinary warning – the first one in her career of over 10 years at Defendant.  In 2013, Dr. Wu issued a three-day unpaid suspension to Plaintiff – again, the first one in her career – for allegedly making an error in travel booking.  In January 2014, Plaintiff received another written warning for oversleeping on <u>one</u> occasion, while another employee within the department received no discipline for failing to come to, or call out of, work for three straight days.  Finally, on April 1, 2014, Defendant terminated Plaintiff's employment under pretextual circumstances.  The termination came on the heels of Plaintiff specifically informing Defendant

that she felt discriminated against because of her age and gender and that she had already spoken with the Equal Employment Opportunity Commission ("EEOC").

The jury found that Plaintiff proved, by the preponderance of the evidence, that she was subjected to severe or pervasive harassment by Defendant Temple University because of her reasonable, good-faith complaint regarding gender discrimination. See Question 8. In so finding, the jury inherently determined that: (a) Plaintiff engaged in protected activity by complaining of gender discrimination; (b) Plaintiff had a good-faith basis for complaining of gender discrimination; and (c) Defendant violated Title VII by retaliating against Plaintiff because she engaged in protected activity in complaining of gender discrimination. In other words, the jury found that Defendant engaged in unlawful, intentional retaliation under Title VII.

The jury further found that Plaintiff proved, by the preponderance of the evidence, that Defendant Temple University engaged in willful misconduct by intentionally discriminating against her because of age or retaliating against her because of her complaint of age discrimination. See Question 10. To establish willfulness, the jury was required to find that Defendant knew or showed reckless disregard for whether its actions were prohibited by the law. Taken as a whole, the verdict sheet clearly shows that the jury found that: (a) Defendant discriminated against Plaintiff because of her age; (b) Defendant retaliated against Plaintiff because of her complaint of age discrimination; and (c) Defendant's actions constituted willful misconduct.

The testimony and documents in evidence show that Plaintiff's complaints of age discrimination and gender discrimination are inextricably **intertwined**. Plaintiff's complaints about age and gender discrimination are based on the same operative facts and are memorialized in the same operative documents. For example, Plaintiff's primary complaint stemmed from Dr. Wu's comment that **women** of Plaintiff's age are put out to pasture. Among other people, she

10

relayed this complaint to Ms. Walton, Defendant's Director of Labor and Employee Relations. See July 17, 2018 PM Trial Transcript at 121:12-18 ("Q. You did become aware . . . that Ms. Briggs was upset that Dr. Wu said that **women** in China are put out to pasture at her age, correct? A. There was a time, yes, when Ms. Briggs contacted me and relayed that story to me."). Likewise, on July 30, 2012, Plaintiff met with Ms. Foehl, Defendant's EEO Director, and according to Ms. Foehl's notes, Plaintiff complained of Dr. Wu's statement that "In China **women your age** are done." See Plaintiff's Trial Exhibit 4. Further, on February 10, 2013, Plaintiff emailed Mr. Etezady, Defendant's in-house counsel, and stated, "Jie Wu has mentioned that the professional lives of **women my age** (58) in China are over . . ." See Plaintiff's Trial Exhibit 13. Again on April 1, 2014, Plaintiff complained to Ms. Foehl about both age **and** gender discrimination. See July 17, 2018 AM Trial Transcript at 90:4-7.

There is no doubt that the jury found that Plaintiff engaged in protected activity by complaining of **both** age and gender discrimination, and that Defendant retaliated against Plaintiff because she complained of **both** age and gender discrimination. The jury's verdict is consistent with the testimony and evidence adduced at trial, which show that Plaintiff's complaints – and Defendant's responses to Plaintiff's complaints – intertwine both age **and** gender discrimination and subsequent retaliation.

As expressed in Question 10, the jury found that Defendant's conduct in retaliating against Plaintiff because she complained of age discrimination constituted willful misconduct. The jury was not asked if Defendant's conduct in retaliating against Plaintiff because she complained of gender discrimination was likewise willful misconduct. However, if asked, the jury logically would have determined that Defendant engaged in willful misconduct in retaliating against Plaintiff because of her gender discrimination complaint because Plaintiff's gender and age

11

discrimination complaints were inextricably intertwined – they happened simultaneously and all stemmed from the same operative facts.

The jury's analysis of whether Defendant engaged in willful misconduct in retaliating against Plaintiff because of her age discrimination complaints and the jury's prospective analysis of whether Defendant engaged in malice or reckless indifference in retaliating against Plaintiff because of her gender discrimination complaints would be identical. In various contexts, courts have acknowledged the overlapping similarities between the "willful misconduct" standard for liquidated damages under the ADEA and the "malice" or "reckless indifference" standard for punitive damages under Title VII. See, e.g., Safeco Ins. Co. v. Burr, 551 U.S. 47, 57 (2007) ("where willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well"); Pichler v. Unite, 646 F.Supp.2d 759, 764 (E.D. Pa. 2009) ("Whatever the distinctions may be between willfulness and recklessness, at the very least the former encompasses the latter . . .").

Under the ADEA, a plaintiff is entitled to liquidated damages if the employer's conduct is "willful," meaning that it "either knew or showed *reckless disregard* for the matter of whether its conduct was prohibited by the statute." Hazen Paper Co. v. Biggins, 507 U.S. 604, 617 (1993) (emphasis added). Similarly, under Title VII, a plaintiff is entitled to punitive damages if the employer has engaged in intentional discrimination or retaliation with "malice or with *reckless indifference* to the federally protected rights of an aggrieved individual," 42 U.S.C. § 1981a(b)(1), meaning that the employer either knew its actions violated federal law prohibiting discrimination and did it anyway, or the action was taken with knowledge that it may violate the law. See Third Circuit Model Jury Instruction No. 5.4.2. At its core, the standards are the same – to obtain liquidated damages under the ADEA or punitive damages under Title VII, the plaintiff must show

Defendant's knowledge that its conduct violated the law (i.e., malice) or reckless disregard or indifference as to whether its conduct is unlawful.

**Because Plaintiff's complaints of age and gender discrimination were inextricably intertwined, Defendant intentionally and unlawfully retaliated against Plaintiff because she complained of <u>both</u> age <u>and</u> gender discrimination, and Defendant's retaliatory actions were willful, the jury should have been permitted to assess punitive damages in this case under Title VII.**

Accordingly, Plaintiff requests a new trial under Fed.R.Civ.P. 59 solely on the punitive damages issue. As evidenced by the jury's finding that Defendant violated Title VII by retaliating against Plaintiff for complaining of gender discrimination, the clear fact that Plaintiff's complaints of age and gender discrimination were inextricably intertwined, and the jury's finding that Defendant's conduct in retaliating against Plaintiff for complaining of age discrimination was willful and reckless, the Court committed error at trial by prohibiting the jury from considering whether punitive damages should be assessed against Defendant until Title VII.[5]

---

[5] The fact that the jury awarded Plaintiff $350,000 in pain and suffering damages has no impact on Plaintiff's ability to obtain punitive damages under Title VII in this case. Although Title VII places a cap on the amount of compensatory and punitive damages a plaintiff is allowed to recover, here the Plaintiff also brought, and succeeded upon, her claim under the Pennsylvania Human Relations Act, which has no cap on compensatory damages. The Third Circuit addressed this precise situation in <u>Gagliardo v. Connaught Labs.</u>, 311 F.3d 565 (3d Cir. 2002). In that case, the plaintiff succeeded at trial on her claims under the PHRA and the Americans with Disabilities Act ("ADA"). The jury awarded the plaintiff $2,000,000 in compensatory damages and $500,000 in punitive damages. <u>Id.</u> at 568. The court reduced the punitive damages award to $300,000 – pursuant to the damages cap under the ADA – but upheld the full compensatory damages award because the federal law "does not prevent a claimant from recovering greater damages under a state law claim that is virtually identical to a capped federal claim." <u>Id.</u> at 570; <u>see also</u> 42 U.S.C. § 2000e-7 (Title VII's prohibition against limiting state law remedies); <u>Tamburo v. Ross/West View Emergency Med. Servs. Auth.</u>, No. 04-1237, 2007 U.S. Dist. LEXIS 29355, at *4 (W.D. Pa. Apr. 20, 2007) (upholding the compensatory damages award under the PHRA and explaining, "The Court [in <u>Gagliardo</u>] reasoned that the absence of a damages cap in the PHRA indicates that it was intended to provide a remedy beyond its federal counterpart and that imposing the cap would frustrate the statutory proclamation regarding a state's ability to provide for a greater recovery.")

## IV. CONCLUSION

For the foregoing reasons, Ms. Briggs respectfully requests that this Court grant her Post-Trial Motion and: (a) amend the Civil Judgement to include $489,835 in front pay damages and (b) order a new trial solely on the issue on punitive damages.

Respectfully submitted,

**CONSOLE MATTIACCI LAW, LLC**

_____
Laura C. Mattiacci, Esq.
Rahul Munshi, Esq.
1525 Locust St., Ninth Floor
Philadelphia, PA 19102
(215) 545-7676 (t)
(215) 814-8920 (f)
mattiacci@consolelaw.com
munshi@consolelaw.com

Attorneys for Plaintiff, Ruth Briggs

Dated: August 10, 2018

---

Circuit courts across the country have reached the same conclusion on this issue. See Hall v. Consol. Freightways Corp., 337 F.3d 669, 678-79 (6th Cir. 2003); Passantino v. Johnson & Johnson, 212 F.3d 493, 509-10 (9th Cir. 2000); Martini v. Fannie Mae, 178 F.3d 1336, 1349-50 (D.C. Cir. 1999); Kimzey v. Wal-Mart Stores, Inc., 107 F.3d 568, 576 (8th Cir. 1997); Rodriguez-Torres v. Caribbean Forms Mfr., Inc., 399 F.3d 52, 66 (1st Cir. 2005).