1

                    UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF PENNSYLVANIA


RUTH V. BRIGGS,              .
                            .  Case No. 1:16-cv-248
            Plaintiff,  .
                            .
        vs.                 .  601 Market Street
                            .  Philadelphia, Pennsylvania 19106
                            .  July 18, 2018
                            .
TEMPLE UNIVERSITY,          .
                            .
            Defendants..
.  .  .  .  .  .  .  .  .  .  .  .  .
                  TRANSCRIPT OF TRIAL
                 DAY 3 - P.M. SESSION
        BEFORE THE HONORABLE ROBERT F. KELLY
             UNITED STATES DISTRICT JUDGE
                    AND A JURY
APPEARANCES:

For the Plaintiff:          Laura Carlin Mattiacci, Esq.
                            Stephen G. Console, Esq.
                            Rahul Munshi, Esq.
                            CONSOLE MATTIACCI LAW, LLC
                            1525 Locust Street
                            Philadelphia, Pennsylvania 19102


For the Defendant:          Richard R. Harris, Esq.
                            Rachel Fendell Satinsky, Esq.
                            LITTLER MENDELSON, PC
                            1601 Cherry Street, Suite 1400
                            Philadelphia, Pennsylvania 19102


Audio Operator:             Electronically Recorded
                            by Court Personnel


Transcription Company:      JDR Acquisition, LLC./
                            Advanced Transcription
                            1880 John F. Kennedy Boulevard
                            6th Floor
                            Philadelphia, Pennsylvania 19103
                            (855)204-8184


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

2

```
 1                       INDEX

 2   WITNESS                    DIRECT  CROSS  REDIRECT  RECROSS

 3   FOR THE PLAINTIFF

 4   SANDRA FOEHL                 3      39

 5

 6                                                  PAGE

 7   DEFENDANT'S MOTION FOR JUDGMENT                  43

 8   DEFENDANT'S MOTION FOR JUDGMENT                  61

 9   PLAINTIFF'S MOTION FOR JUDGMENT                  61

10   CHARGE CONFERENCE                                61

11
     EXHIBIT                                 IDENT.  EVID.
12
     P-4       2012 Foehl Handwritten Notes            5
13   P-44      4/1/14 Foehl Notes                     32
     P-55      8/8/14 Foehl/Wu Email(s)               35
14

15

16

17

18

19

20

21

22

23

24

25
```

3

1                      AFTERNOON SESSION

2          (Proceedings resume after Luncheon Recess at 1:21 p.m.)

3          (Jury present)

4               THE COURT:  Call your next.

5               MS. MATTIACCI:  Yes, Your Honor.  The plaintiff

6    calls Sandy Foehl to the stand as an of cross.

7               THE COURT OFFICER:  Please raise your right hand,

8    place your left hand on the Bible, right here.

9    SANDRA FOEHL, WITNESS FOR THE PLAINTIFF, SWORN

10              THE COURT OFFICER:  Please state your full name for

11   the record.

12              THE WITNESS:  My first name is Sandra, S-a-n-d-r-a,

13   middle initial A, last name Foehl, F-o-e-h-l.

14              THE COURT:  All right.  You may proceed.

15              MS. MATTIACCI:  May we begin, Your Honor?

16              THE COURT:  All right.

17                   DIRECT EXAMINATION

18   BY MS. MATTIACCI:

19   Q    Good afternoon, miss -- is it Foehl?

20   A    Foehl.

21   Q    Okay.  Great.

22        Now you're currently employed by Temple, correct?

23   A    I am.

24   Q    And you are the Director of the Equal Opportunity

25   Compliance Department?

4

1  A    It's Office of Equal Opportunity Compliance, and I am

2  the Director.

3  Q    Okay.  Thank you.

4        And is it true that you've held this position since

5  2005?

6  A    2009, would be more correct, as to title.

7  Q    Did you hold that position as of 2013 and 2014?

8  A    Yes.

9  Q    Is it correct that your job is to handle complaints of

10  discrimination and harassment?

11  A    I'm just -- excuse me.  Complaints of unlawful

12  discrimination and harassment, yes.

13  Q    Is it true that you have never taken any legal courses?

14  A    Not for credit.

15  Q    How about in terms of a legal background; do you have

16  any legal background?

17  A    No.

18  Q    But is it true that Temple has put you in charge of the

19  University's compliance with federal, state, and municipal

20  civil rights laws?

21  A    That's correct.

22  Q    It's true that, in the Summer of 2012, that you received

23  a complaint of age and sex discrimination from Ruth Briggs,

24  correct?

25  A    Ms. Briggs came to talk with me in July of 2012, about

5

1    concerns in the workplace.

2    Q    Specifically involving age and sex discrimination,

3    correct?

4    A    She complained of age discrimination, yes.

5    Q    Okay.  Let's take a look.  There's a binder in front of

6    you, it says "Plaintiff's Documents."

7    A    Yes.

8    Q    Okay.  If you can turn to the fourth tab.

9    A    (Witness reviews exhibits)

10   Q    Do you recognize these two pages of documents as your

11   handwritten notes?  The first page is dated July 30th, 2012.

12   That note continues to the second page, and then the third

13   page is August 3rd, 2012.

14   A    (Witness reviews exhibit)

15        These are my notes of those dates.

16           MS. MATTIACCI:  Okay.  Your Honor, I'd move for the

17   admission of P-4.

18           MS. SATINSKY:  No objection.

19           THE COURT:  It's admitted.

20        (P-4 received in evidence)

21   BY MS. MATTIACCI:

22   Q    Okay.  Let's show the jury what you wrote here.  Now

23   this is in regards to the meeting that you had with Ms.

24   Briggs on July 30th, 2012.  Is that correct?

25   A    That's correct.

6

1

2  Q    And you -- at the top, it says, "Meeting requested by

3  Ruth Briggs"?

4  A    It does.

5  Q    And then this first paragraph says:

6          "Ms. Briggs has been in the Department of Computer

7          Information Sciences for the past three years,

8          since September of 2009, working with the

9          Department Chair, Dr. Wu."

10      Did I read that correctly?

11 A    That's what it says.

12 Q          "George Palladino arranged the temporary placement

13          'on loan from the Dean's Office.'  Greg Wacker has

14          history of arrangement."

15      Is that correct?

16 A    That's what Ms. Briggs said to me.

17 Q    Okay.  And then the next paragraph says:

18          "Problems.  Dr. Wu yells and says demeaning things;

19          e.g., are you stupid, in Chinese; in China, women

20          your age are done."

21      Do you see that?

22 A    I do.

23 Q    And then it says:

24          "Ms. Briggs gives Dr. Wu the benefit of the doubt

25          for his remarks, accounting" -- "allowing for

7

1              cultural differences and difficulty with English."

2

3        Is that correct?

4   A    That's what Ms. Briggs said to me.

5   Q    Next your notes say:

6              "Writeup for insubordination.  Department Secretary

7              Judy Lennon is a thirty-year employee, but not

8              adept with technology.  Dr. Wu's instruction to Ms.

9              Briggs, 'Don't help her,' 'Send her to the Dean's

10             Office.'  Greg Wacker adds, ''ll discipline you if

11             you help her.'  Ms. Briggs' position, of course I'm

12             going to help her."

13       That's what she relayed to you?

14  A    That's what Ms. Briggs said to me.

15       (Pause in proceedings)

16  Q    She also -- you also wrote:

17             "Dr. Wu gives my work to student worker; e.g., Mary

18             Beth goes to the hotel with Dr. Wu to meet the

19             conference planner."

20       Is that correct?

21  A    That's what Ms. Briggs said.

22  Q    So she was saying that she used to be the one that would

23  go with Dr. Wu to the conferences, and he was having student

24  workers do that with him?

25  A    My notes record that she said to me that the student

8

```
 1   worker did those chores with Dr. Wu --
 2   Q    Okay.
 3   A    -- at the time.
 4   Q    Okay.  And then your notes go on to say:
 5            "Salary.  My salary level is T-26, but I'm paid at
 6            a lower rate than technical T-26.  My position is
 7            non bargaining unit, no recourse through union.
 8            Current job description is Executive Assistant, as
 9            in Dean's Office.  I believe I'm still paid from
10            Dean's Office Cost Center."
11       Is that correct?
12   A    That's what Ms. Briggs related to me.
13   Q    And then she said -- and then you wrote:
14            "Performance Evaluation?  PDP in 2012, a 1.5, and
15            previous PDPs in 2011, 2010, based on undefined
16            various functions and Dr. Wu's comments."
17       Is that correct?
18   A    That's what Ms. Briggs related.
19   Q    And then your notes go on to say:
20            "Remedy?  Ms. Briggs wants to return to her initial
21            job duties, editing papers, editing web content,
22            supervising.  'I'll oversee front office
23            operations.'"
24       Correct?
25   A    I --
```

9

1  Q       "Clear PDP, functions defined, salary commensurate

2           with job and years in service."

3    And then you wrote:

4        "File age discrimination complaint."

5    And then it says:

6        "I'm scared."

7    So is that relaying that you asked if she was filing an

8  age discrimination complaint, and she replied back that she's

9  scared to do that?

10  A   Or she was wondering about filing an age discrimination

11  complaint, and went on to say she was scared.

12  Q   Okay.  So she was asking about filing an age

13  discrimination complaint, but relayed to you that she was

14  scared, correct?

15  A   That's what I recorded; she said, "I'm scared."

16  Q   And then, for completeness, the rest of your notes say:

17        "And I'm taking time in August, for which I've

18        requested FMLA, postoperative care of son."

19    And then -- is that what she relayed to you?

20  A   Yes, she did.

21  Q   Okay.  And then your notes say:

22        "Salary and PDP concerns to HR?  Human Resources

23        hasn't been helpful.  Ask advice of new Interim

24        Dean Michael Klein?  Ms. Briggs said she hasn't

25        done so, but I may do so on her behalf."

10

1        And then is that your signature?

2  A    Yes, it is, my initials.

3  Q    Okay.  So then, when you received this information from

4  Ms. Briggs, and when she's relaying that she believes she's

5  being discriminated against, did you, in fact, do an

6  investigation into this complaint?

7  A    I did at a later date.  At this point, we discussed what

8  options she had for resolving her concerns.

9  Q    Okay.  And so why did you not do an investigation into

10 her concerns?

11 A    She didn't, at this point, file a formal complaint.

12 Q    So she needed to file a formal complaint, in order to

13 have an investigation done?

14 A    She needed to tell me she wanted me to proceed with an

15 investigation.

16 Q    So are you saying that Temple's policy is that

17 investigation will not be conducted unless the employee

18 specifically says, I want a formal investigation done?

19 A    Yes.

20 Q    Doesn't Temple have an obligation to ensure that the

21 workplace is free of discrimination and retaliation,

22 regardless of whether a formal request by a specific employee

23 is made or not?

24 A    I'll answer that in two parts.  We do have an obligation

25 to make sure that the University complies with federal,

11

1   state, and local regulations prohibiting unlawful

2   discrimination in the workplace.  But our own resolution

3   procedures provide for informal resolution and formal

4   complaints.  And I need to be directed by an individual who

5   wishes to file a formal complaint that I'm to go ahead and do

6   so.

7   Q    And that discretion is given to the person who is

8   complaining, or the victim of the discrimination?

9   A    It's the complainant's direction to me that let's me go

10  forward with a formal complaint.

11  Q    Okay.  So, under Temple's policy, you are -- you're not

12  to go forward with a complaint unless the employee

13  specifically tells you to go forward with the complaint -- I

14  mean with the investigation.

15  A    That's correct.  I'm hearing one perspective from a

16  complainant, I'm hearing their side of the story.  When they

17  tell me I can go forward and conduct an investigation, I do

18  so.

19  Q    So let me ask you.  If you have, say, a female faculty

20  member comes to you and complains that there is a senior male

21  dean that is, for example, requesting private meetings with

22  her, and saying inappropriate sexual things and requesting

23  massages, but she's very scared to go forward with that

24  complaint and doesn't want an investigation.  Are you saying

25  that, therefore, no investigation is done, and nothing is

12

1    done in that situation?

2    A    I don't believe I've said that.  I've said that, as in

3    Ms. Briggs' case, I discussed what the options are, what

4    resources there are at the University, to be helpful; what

5    options there are for resolving the concerns.  And I let the

6    complainant give me direction as to what he or she wants to

7    do.

8         But in the case of a sexual harassment complaint, we're

9    now obligated, and I will tell an individual that I must

10   report that allegation forward to our Title IX Coordinator.

11   Q    So is sexual harassment treated differently than age

12   discrimination?

13   A    Only in -- with respect to the Title IX Coordinator know

14   that a report has been made.

15   Q    Okay.

16   A    It's still up to the individual complainant to decide

17   what, among the choices, are available to him or her, how we

18   proceed.

19   Q    All right.  Can I have you take a look at P-13 in your

20   binder?

21   A    (Witness reviews exhibits)

22   Q    Do you see that email?  P-13, do you have it there?  I

23   can blow it up for you, if that would be easier.

24   A    Is that Ruth Briggs to Cameron Etezady?  I see it.

25   Q    Yes.

13

1          And this is on February 9th, 2013.  Ms. Briggs contacts

2     Mr. Etezady, who is in the General Counsel's Office of

3     Temple, correct?

4     A     Yes, he is.

5     Q     And she says:

6               "I am contacting you to request a confidential

7               conversation to discuss disparate treatment for me,

8               which I believe is related to my age of 58.  I am

9               concerned about retaliation.  If you are unable to

10              guarantee confidentiality, please say so in your

11              reply.  Sincerely, Ruth."

12     Do you see that?

13     A     (Witness reviews exhibit)

14     Q     I'm just making sure that you're able to read that

15     email?

16     A     I can read it, yes.

17     Q     Okay.  And will you agree with me that it's that many

18     employees are often very scared to come forward with

19     complaints of retaliation and discrimination in the

20     workplace.

21     A     That's a little hard for me to judge because, when I

22     hear about them, they have come forward.

23     Q     But -- and when they come forward, is it your -- do you

24     often find that those that are coming forward are fearful of

25     retaliation coming their way after complaining?

1  A    I think as many who come forward to me are determined

2  that they're going to have their day and be heard, and want

3  me to do an investigation.

4  Q    Well, even if they want you to, are you saying that

5  they're -- it's very rare, then, for somebody to be concerned

6  about retaliation?

7  A    No, but it -- not retaliation, particularly, but

8  everyone wants to know about the consequences of filing a

9  complaint, and that's part of my responsibility, to explain

10  what a complaint investigation is like, and to tell them what

11  to expect.

12  Q    Okay.  If you'll look at the email right above that,

13  which is Mr. Etezady's response.

14  A    (Witness reviews exhibit)

15       That's dated February 10th.

16  Q    February 10th, 2013.

17  A    Yes.

18  Q    And the part -- I didn't blow it up, but the first line

19  says:

20           "Thank you for trusting me and contacting me with

21           what I'm sure is a very difficult matter."

22       And then he says:

23           "I am happy to speak with you, but while I will

24           keep our conversation confidential, I cannot

25           promise anonymity in the event you raise something

15

1          that I must investigate further.  My obligation is

2          to ensure the University complies with applicable

3          law.  I want to assure you, however, that Temple

4          does not tolerate retaliation."

5      Do you see that?

6    A    I do.

7    Q    So that -- the email from the attorney is saying that,

8    even if she doesn't want to go forward with it, he might have

9    to go forward with it anyway and investigate it, correct?

10   A    That's what he has said.

11   Q    But that's not your understanding of Temple's policy,

12   correct?

13   A    My understanding of Temple policy is to allow the

14   complainant to guide me in what action I take.  There are

15   some very rare instances where I will have to say to an

16   individual, I need to take action, regardless of your

17   instructions, and that's in the case of sexual assault, for

18   example, where I at least need to advise our Title IX

19   coordinator.

20        And the other rare exception would be if someone has

21   shared with me a threat of physical harm, either to himself

22   or herself, or to another individual.

23   Q    So, absent a sexual assault or a sex -- or a physical

24   harm, Temple will allow a hostile work environment of age,

25   sex, or retaliation to exist in the workplace because the

16

1   complainant hasn't authorized an investigation, at that

2   point.

3   A    Again, that doesn't necessarily follow.  What I am

4   hearing from a complainant is one side of the story.  I know

5   that there is at least one other side of the story, and

6   perhaps more.  It's my obligation to investigate and

7   determine what the facts are.

8   Q    So -- okay.  So then you will investigate it, if the

9   person comes forward with the complaint.

10  A    If the individual says, yes, you may go forward and

11  investigate.

12  Q    Okay.  We are going to move on.

13       Let's take a look at P-7.

14  A    (Witness reviews exhibits)

15  Q    Okay.  P-7.  Do you recognize the bottom as an email to

16  you?

17  A    Yes, sending an email from Ruth Briggs, dated September

18  9th, 2012.

19  Q    Okay.  And she says in here:

20           "Dear Sandy, I'm uncertain about the status of the

21           complaint about which we spoke, regarding my job

22           description, my performance development plan, and

23           addressing my salary to the 2011 maximum salary

24           level, new hire range, for a T-26.  I did receive a

25           1.75 salary increase and a one-time one-thousand-

17

1          dollar bonus, but I heard from other non-bargaining

2          staff members they also received a small salary

3          increase."

4     And then she talks about her salary, as compared to what

5 the minimum and maximum are, and the target.

6     You recall receiving this email, correct?

7 A   I do.

8 Q   All right.  And we can see that, even if -- with this --

9 with the increase, her salary is only $51,252.  Do you see

10 that?

11 A   I see that.

12 Q   Five hundred and twenty-five dollars.

13     And the maximum for a new hire is $53,600.  So,

14 actually, a new hire coming into a position as -- like hers

15 would be making more money than she would.

16 A   That happens.

17 Q   Okay.  And she was -- and the target midrange for her

18 position was $60,500, and she was well short of that,

19 correct?

20 A   That's what she reported.

21 Q   Okay.  And then she gave you information about her

22 background and her qualifications, correct?

23 A   Yes.

24 Q   And what did you do to investigate this issue concerning

25 her salary being underpaid?

1   A    At this time, I didn't investigate.  I would have

2   advised any individual with a salary issue to please raise it

3   with Human Resources and Compensation; they are the first

4   responders to salary issues.

5   Q    Did she relate to you that she was -- believed that her

6   salary was lower than two other males that she knew of in the

7   Department?

8   A    She did note that in this communication.

9   Q    So did that trigger, for you, a thought that this could

10  be a sex-based pay discrepancy that the Equal Opportunity

11  Compliance Office should look into?

12  A    No.  Human Resources should go first, with a salary

13  issue.

14  Q    Even if there's a sex-based pay discrepancy?

15  A    That's an allegation in this communication, and I don't

16  know it to be the case.  But Human Resources would also look

17  at that, would look at comparable salaries across the board.

18  Q    Did you do anything to investigate whether the

19  discrepancy in pay was a sex-based problem?

20  A    Not at this time.

21  Q    So then, if we go to P -- we're at P-7.  Let's go to P-

22  10.

23  A    (Witness reviews exhibits)

24  Q    All right.  Do you recognize P-10?

25  A    I -- this is the first time I've seen P-10.

19

 1   Q    Okay.  For context, P-10 is an email from February 7th,

 2   2013, in which Ms. Briggs sends to Rhonda:

 3            "I'm so bullied" -- "I am so bullied and harassed

 4            all day.  Two people in the Dean's Office tell me

 5            that I can find another job.  That can't be right.

 6            Ruth."

 7        And then Rhonda Brown -- who is in Human Resources.  Is

 8   that correct?  Or the Office of Institutional Diversity?

 9   A    I believe Rhonda's title was Associate Vice President,

10   heading up Office of Multicultural Affairs.

11   Q    Okay.

12   A    It might have changed by this time to Institutional

13   Diversity.

14   Q    Okay.  So, in response to the salary issue, you told Ms.

15   Briggs to go see HR, which would have been Deirdre Walton,

16   correct?

17   A    Yes.

18   Q    Then, in terms of the age and sex comments and

19   hostilities she was receiving from Dr. Wu, you didn't do

20   anything with that because you said she didn't tell you to go

21   forward with a formal complaint.

22            MS. SATINSKY:  Objection, Your Honor.

23   Q    Is that correct?

24            MS. SATINSKY:  Objection, Your Honor, the witness

25   never testified to that.

1        MS. MATTIACCI:  I'm asking if that's correct.

2        MS. SATINSKY:  Your Honor, she --

3        THE COURT:  Sustained as to the objection.

4  BY MS. MATTIACCI:

5  Q    So, here, with the -- in terms of this particular email,

6  it appears that Ms. Brown is advising Ms. Briggs to go see

7  you.  Is that correct?

8  A    That's what it appears to be.

9  Q    Okay.

10        MS. MATTIACCI:  Now, if we could go to P-12.

11  BY MS. MATTIACCI:

12  Q    This is the -- we were just looking at this email a

13  little bit ago.

14  A    Yes.

15  Q    So, the other part, which -- when he write -- Mr.

16  Etezady writes back and says it's his obligation to ensure

17  that the university complies with applicable law, he also

18  advises that he will be attending a trial for most of next

19  week and so he is out and his time is extremely limited.

20        And then, in the next paragraph, he says:

21             "I would also recommend that you speak with Sandy

22             Foehl or Tracy Hamilton in EEOC."

23        Do you see that?

24  A    I do.

25  Q    So, Mr. Etezady refers Ms. Briggs back to you.  Is that

21

1   right?

2   A    He refers Ms. Briggs to me or Ms. Hamilton.  I don't

3   know whether or not he would have known that I had previously

4   spoken with Ruth Briggs.

5   Q    Okay.  But this is now a different period of time.  This

6   is now February of 2013 and she has clearly brought a

7   complaint of age discrimination and retaliation in her email,

8   correct?

9   A    She does say she believes it's related to my age.

10  Q    Yes.  And then so Mr. Etezady refers her to you?

11  A    Yes.

12  Q    Okay.

13          MS. MATTIACCI:  Let's go to P-14.

14  BY MS. MATTIACCI:

15  Q    I'm sorry, let me see if I can skip ahead here.  Okay.

16  If we go to P-14 --

17  A    Yes.

18  Q    -- okay, P-14 is now the next in the same time frame the

19  next day.  If you go to the bottom of Temple 196, Mr. Etezady

20  says:

21          "I apologize for doing this by email.  I'm out of

22          the office most of the week.  I was unclear about

23          your email.  Are you uncomfortable with Sandy,

24          Tracy, or Deirdre.  Any of the three would be able

25          to accomplish a mediation that you requested.  I

22

1           could also refer you to Fay Trachtenberg in my

2           office who could provide you with more prompt

3           attention.  If none of those options are

4           acceptable, let's set up a meeting to talk through

5           those things."

6       So, he's offering her some options there, correct?

7  A    Yes.

8  Q    Did he ever make you aware that he was advising her at

9  this time concerning those complaints?

10 A    No.

11          MS. MATTIACCI:  All right.  Let's go to P-34.

12 BY MS. MATTIACCI:

13 Q    Do you see P-34?

14 A    I do.

15 Q    And this is an email from Ruth Briggs to you:

16          "I want to schedule an appointment to file a

17          complaint."

18      Do you see that?

19 A    Yes, I do.  It's dated a year later.

20 Q    Well, it's dated February 25th, 2014, and she says:

21          "I tried desperately to make my work situation

22          tolerable while my family and friends say I need to

23          take proactive defense against my supervisor and

24          two managers in the dean's office, but I have

25          reached my breaking point."

23

1      And then she advises that she plans to file an EOC

2  internally and have already had a phone intake with the EEOC.

3

4  Do you see that?

5  A    I do.

6  Q    Okay.  So, up until this time, between the time that you

7  spoke with Ms. Briggs, in which she relayed to you the

8  complaints of age and sex discrimination, at this point, had

9  you had any conversations with anybody in regards to Ms.

10  Briggs' complaints?

11          MS. SATINSKY:  Objection, Your Honor; misstates the

12  witness' testimony.  The witness did not testify that there

13  were complaints of sex discrimination.

14          MS. MATTIACCI:  Yes -- yes, she did in the

15  beginning.

16          MS. SATINSKY:  No, she said there was a complaint

17  of age discrimination.

18  BY MS. MATTIACCI:

19  Q    Miss -- I can clarify, because Ms. Briggs -- we looked

20  at it -- I mean, Ms. Foehl, we looked at an email in which

21  Ms. Briggs was complaining of sex-based pay discrepancy,

22  correct?

23  A    She raised concerns about her will salary.

24  Q    And she's relayed her concerns in the context that she

25  felt that she was underpaid as a woman, correct?

24

1  A    As I recall, the memo that we looked at, she pointed out

2  what she believed was low-paid salary, less than it should

3  be.  She said that in that email that there were two men in

4  the dean's office who were paid better than she.  I don't

5  know if that was the case; that's what she alleged.

6  Q    Okay.  So, between that time and the time of February

7  25th, 2014, did you speak with -- well, let's just start with

8  Deirdre Walton in HR in regards to complaints that Ms. Briggs

9  was making in the workplace?

10  A    Soon after my initial conversation with Ms. Briggs, I

11  asked Deirdre Walton if she had any interaction with Ms.

12  Briggs, because some of the concerns -- or Ms. Briggs had

13  raised a salary concern with me.

14  Q    Let's take a look -- so, you did tell Ms. Briggs about

15  her salary concerns, correct?

16  A    I think you're --

17          THE COURT:  Did you tell Ms. Briggs?

18          MS. MATTIACCI:  I'm sorry.  I'm so sorry, Your

19  Honor.

20  BY MS. MATTIACCI:

21  Q    Ms. Walton?

22  A    I asked Ms. Walton if she had any interaction with Ms.

23  Briggs because Ms. Briggs had brought a concern to me about

24  salary.

25  Q    Okay.  I want to find that email real quick.

25

1          MS. MATTIACCI:  P-6.

2    BY MS. MATTIACCI:

3    Q    So, this is -- P-6 -- this is on the heels of when Ms.

4    Briggs came to you and you sat with her and you took those

5    handwritten notes in which she said:  Age discrimination,

6    scared.  And then she relayed to you that she felt she was

7    underpaid compared to other males and she relayed to you the

8    hostility that she was experiencing with Dr. Wu.

9          So, it's right after this, correct?

10   A    That's correct.

11   Q    And at this point in time, your testimony is you

12   couldn't investigate Ms. Briggs' complaints, because she

13   didn't formally request an investigation into her complaints,

14   correct?

15   A    She didn't direct me to at the time.

16   Q    But you did do an investigation into Ruth Briggs at that

17   time, didn't you?

18   A    No.

19          MS. MATTIACCI:  Well, let's take a look at P-6.

20   BY MS. MATTIACCI:

21   Q    This is an email that you sent to Deirdre Walton and

22   Eric Brunner, on August 3rd, 2012, correct?

23   A    That's correct.

24          MS. MATTIACCI:  I move for the admission of this

25   document, Your Honor.

1      THE COURT:  There's nothing on the screen.

2      MS. MATTIACCI:  I didn't -- because it wasn't admit

3  it, I just wanted to admit it, P-6.

4      MS. SATINSKY:  I have no objection, Your Honor.

5      THE COURT:  All right.  It's admitted.

6  BY MS. MATTIACCI:

7  Q   So, the note that we just looked at were August -- July

8  30th, 2012.  Now, in August 30th, 2012, you write:

9          "Deirdre and Eric, do either of you have some

10          history with Ruth Briggs in the College of Science

11          and Technology, especially, since her assignment to

12          the Department of Computer Information Sciences; if

13          so, will you share?"

14      So, you were looking for information on Ruth Briggs,

15  correct?

16  A   Ms. Briggs had raised a concern about salary with me.

17  She had also raised a concern about her performance

18  evaluations.  I was asking my colleagues if she had brought

19  those concerns to their attention, which would be an actual

20  place to make a report about salary and performance

21  evaluations.

22  Q   Did you send a similar email in regards to asking

23  anybody if they had some history with Dr. Wu and the way that

24  she treated people in the workplace?

25  A   Not at this time.

27

1    Q    Why not?

2    A    Ms. Briggs had brought to me concerns about her current

3    workplace.  She hadn't said to me, Go investigate.  I don't

4    report or I don't pursue individual's concerns, allegations

5    until they tell me to do so.  I want individuals to

6    understand that when they authorize me to do an

7    investigation, I'm carrying information that they give to me

8    and I want them to understand what can follow from that.

9        So, when ready to do so, I carry their reports forward

10   and I ask for a response to those concerns.  Ms. Briggs

11   hadn't told me to do so at this time.

12   Q    Did Ms. Briggs tell you to email Deirdre and Eric to

13   find out what they thought about her history?

14   A    Would you repeat the question?

15   Q    Yes.  Did Ms. Briggs tell you to reach out to Deirdre

16   and Eric and find out if they had some history with her in

17   the College of Science and Technology?

18   A    Ms. Briggs raised a salary concern with me and she a

19   raised a concern about her performance evaluations.  I

20   reached out to my colleagues who would have some information

21   about that, that might be helpful to me in knowing how to

22   advise Ms. Briggs.

23       If she hadn't taken those concerns forward to Human

24   Resources, she needed to do so.  If she had, I needed to know

25   that.  I don't need to cover ground that's already been

28

1    covered.

2    Q    Okay.  But that's not what it says.  It just says, "some

3    history."   Isn't that correct?

4    A    It is an inquiry.  What can you tell me, if anything?

5             MS. MATTIACCI:   Okay.  Let's go back to P-4.

6    BY MS. MATTIACCI:

7    Q    Because you made some handwritten notes of the

8    conversation that you had in response that email.  This --

9    these are a continuation of your notes, correct?  We're

10   looking at the third page of P-4.

11   A    Those are notes from August 3rd.

12   Q    August 3rd.  And that's the same date of the email that

13   we just looked at when you reached out to Deirdre and Eric,

14   asking if they had some history with Ruth Briggs, correct?

15   A    Correct.

16   Q    And your notes say, "Phone conversation with Eric

17   Brunner."  What does that mean?  Is it HR learning or HP

18   learning?

19   A    HR, Human Resources.

20   Q    Okay.  So, he's with Human Resources, correct?

21   A    Yes.

22   Q    Learning and development, in regards to Ruth Briggs.

23   Some performance criticisms were made in previous PDPs.  She

24   never had a 3.0 rating.  Mr. Brunner's recommendation to Ms.

25   Briggs was to have a conversation with her supervisor,

29

1    clarify with him what he expects in her work, correct?

2    A    That's what I noted.

3    Q    And is that what Mr. Brunner told you?

4    A    Yes.

5    Q    And what was your takeaway from that conversation?

6    A    That some of these issues had been raised before with

7    Eric Brunner in Human Resources and some advice had been

8    given to Ms. Briggs.

9    Q    And were you satisfied that that advice was sufficient

10   to alleviate Ms. Briggs' concerns concerning her supervisor?

11   A    I didn't come to any conclusion at this point.

12   Q    And what did you do to try to reach a conclusion?

13   A    Waited for further direction from Ms. Briggs.

14          MS. MATTIACCI:  Can you spell turn to P-38.

15   BY MS. MATTIACCI:

16   Q    I can put it up on the screen if it's easier for you to

17   see it there.

18   A    I'm actually better off with paper.

19   Q    Oh, okay.  So, P-38 are a series of emails and the

20   second from the top is from recognition to Deirdre.  The

21   subject is:  Urgent.  Please contact me on Monday and it's

22   dated March 25th, 2014:

23          "Deirdre, I do not know how to respond to this

24          email.  I'm drowning here.  I have reached out to

25          you numerous times and waited and waited.  This is

30

1            affecting the quality of my life and my personal

2            life.  All I want to do so continue to work without

3            being harassed."

4       And then she goes on about some of the details that the

5  jury has heard a lot of already.  And then that email was

6  forwarded to you on March 25th, 2014.  Is that correct?

7  A    Yes.

8  Q    And, in fact, did you have a discussion with Ms. Walton

9  in regards to what was relayed in the email?

10  A    No.

11  Q    Why not?

12  A    I think that at about this time, I had a similar

13  communication from Ruth Briggs and since she, again, was

14  raising issues about -- well, similar issues -- same issues,

15  I had directed her to Deirdre Walton in the Human Resources

16  Office.  So, this information from Ms. Walton was confirming

17  to me that there had been an ongoing conversation between Ms.

18  Briggs and Ms. Walton.

19  Q    But the communication from Ms. Walton to you says, "And

20  for discussion."  So, did that indicate to you that she

21  wanted to discuss it with you?

22  A    It could.  It didn't necessarily mean that discussion

23  took place right away.  I don't remember whether or not we

24  discussed it at that time.

25  Q    Okay.  You did have a meeting with Ms. Briggs on April

1    1st, 2014.  Is that correct?

2    A    I did.

3    Q    And that meeting was at approximately ten o'clock in the

4    morning?

5    A    It was a morning meeting.  It could have been ten

6    o'clock.

7    Q    Okay.  And in that meeting, Ms. Briggs, again, relays to

8    you complaints of age and sex discrimination, correct?

9    A    Ms. Briggs, at that time, said to me that she wanted me

10   to conduct an investigation and I agreed to do so.

11   Q    She said, and, specifically, her claims of sex and age

12   discrimination, correct?

13   A    Age discrimination, I clearly remember.  I remember that

14   she had suggested sex discrimination, with regard to the

15   salary issue.

16   Q    Okay.  Let's take a look at the notes from that meeting.

17            MS. MATTIACCI:  If we could turn to P-44.

18   BY MS. MATTIACCI:

19   Q    Do you recognize these as your notes from the April 1st

20   meeting?

21   A    Yes.

22            MS. MATTIACCI:  Your Honor, I move for the

23   admission of P-44.

24            MS. SATINSKY:  No objection.

25            THE COURT:  They're admitted.

32

1      (P-44 received in evidence)

2    BY MS. MATTIACCI:

3    Q    All right.  These are your notes meeting with Ms.

4    Briggs.  The first thing it says is, "Age, standard for me,

5    extraordinary."  And then on the right-hand side, "No

6    contract coverage," meaning she was not in a union, so she

7    had no protection from a union.  Is that correct?

8    A    That's correct.

9    Q    She says, "Written up 1/20, written up for being late --

10   overslept."  And then it says, "Send through to DiMeo."

11   Do you know what that refers to?

12   A    As best I can recall, she was reporting that she was

13   disciplined for being late and I'm not quite sure whether or

14   not she was -- she related to me that Drew DiMeo -- said that

15   she had been late or Drew DiMeo was the one who had written

16   her up.

17   Q    And then it says, "Called in and reached student

18   worker."

19        Do you see that?

20   A    Yes.

21   Q    And then there's -- I can't read that on your copy -- I

22   don't know if you can see it on yours, what that last word

23   is?

24   A    No, I can't see the last word either.

25   Q        "Always confrontational with me, coming in late

33

1          intentionally on days scheduled for meetings and

2          failed to call in, failed to follow our department

3          procedure."

4      Was she referring to Drew DiMeo in this COL?

5  A    She was relating to me what she had been disciplined

6  for, what the criticisms were and I don't remember whether or

7  not the criticisms were coming from Dr. Wu or Dr. DiMeo --

8  I'm sorry -- Drew DiMeo.

9  Q    So, you're saying you have a clear recollection that she

10 was relaying to you that she was being disciplined for coming

11 in late intentionally on days scheduled for meeting and then

12 failing to call in?

13 A    That's what she related to me.

14 Q    Then it says:

15          "First six months, Hailey King, out three days

16          without calling in.  Contract?"

17     What did that mean?

18 A    I remember that Hailey King was the individual with whom

19 she was comparing herself and saying that her discipline was

20 unfair.  I'm not quite sure whether or not she was -- the

21 contract with the question mark means that Ms. King was

22 covered by a union contract.

23 Q    Okay.  Let's go to the next part:

24     Tenth floor location, works for Ruth can concentrate on

25 proofreading, but says has been diminished doing financial

34

1   records.  Some sits in -- some sits in Ruth's meeting with

2   Dr. Wu -- oh, Drew sits in Ruth's meeting with Dr. Wu, asks

3   Deirdre about bidding and checked box in regards to active

4   discipline, and then your notes.

5       Do you see that?

6   A   I see that.

7   Q   So, this is the entirety of your notes that you took in

8   regards to the meeting in which Ms. Briggs relays to you that

9   she wants to file a complaint of age and sex discrimination?

10  A   These were new matters that Ms. Briggs was relating to

11  me on April 4th, 2014.

12  Q   Okay.  So, you were going to add these to your other

13  notes, the ones that we looked at previously?

14  A   I keep a file and all the information acquired goes into

15  the one file.

16  Q   Okay.  Now, after you -- she left this meeting, Ms.

17  Briggs walked out of the meeting with you and was called into

18  a meeting with Mr. Wacker and Ms. Walton, correct?

19  A   I didn't know that at the time.

20  Q   Do you now know that she walked out of the meeting and

21  was called into a meeting with Mr. Wacker and Ms. Walton and

22  was terminated?

23  A   No.  The information I had came later that day from Ms.

24  Briggs, herself, who told me that her employment was ending.

25  Q   Okay.  So, you're saying that as of the time you had the

35

1   meeting with Ms. Briggs on April 1st, you had no idea that

2   Ms. Briggs was going to be terminated on that day?

3   A     None.

4   Q     Even though we just looked at an email from March 25th,

5   where you were copied -- you were forwarded a an email from

6   Ms. Walton that said, "FYI, for discussion" a week earlier?

7   A     Correct.

8            MS. MATTIACCI:  Can you take a look at P-55.

9   BY MS. MATTIACCI:

10  Q     Do you see that email?

11  A     I do.

12  Q     This is emails between you and Dr. Wu, correct?

13  A     Correct.

14  Q     They are dated August 8th, 2011 -- I mean, 2014?

15  A     August 8th and later.

16  Q     August 8th and later, okay.

17           MS. MATTIACCI:  Your Honor, I move for the

18  admission of P-55.

19           MS. SATINSKY:  No objection, Your Honor.

20           THE COURT:  It's admitted.

21       (P-55 received in evidence)

22  BY MS. MATTIACCI:

23  Q     Okay.  Let's go down to the bottom one, which is the

24  first one in the chain.  This is you to Dr. Wu and this is in

25  August of 2014, correct?

36

1    A    Correct.

2    Q         "Dr. Wu, there's a particular allegation in Ruth

3              Briggs' complaints to the United States Equal

4              Employment Opportunity Commission that I need to

5              review with you.  Will you give me a few minutes in

6              person or by phone to go over Ms. Briggs' claim.

7              Please suggest a day and time to do so.  Thank you

8              for your continuing assistance."

9         Do you see that?

10   A    I do.

11   Q    Okay.  So, now, at this point, this is about four months

12   after Ms. Briggs was terminated?

13   A    Yes.

14   Q    And this is the first time that you've gone down to talk

15   to Dr. Wu about Ms. Briggs' claims?

16   A    I'm not sure that's accurate, but I would have to

17   refresh my memory from the record.  My own recollection is

18   that I started my investigation in April, but by August, Ms.

19   Briggs' complaint to the U.S. Equal Employment Opportunity

20   Commission had been received by Temple University.

21   Q    Okay.  So you believe that you may have talked to Dr. Wu

22   even earlier than this?

23   A    Yes, that's my recollection.

24   Q    And when you talked to Dr. Wu, you relayed to him that

25   Ms. Briggs was bringing complaints against him for age and

1   sex discrimination, correct?

2   A    When I met with Dr. Wu, I would have related all of the

3   allegations that Ms. Briggs had made about his treatment of

4   her.

5   Q    And that would have been sometime between April 2014 and

6   August of 2014?

7   A    Yes.

8   Q    Now, speaking to Dr. Wu about Ms. Briggs' claims of

9   discrimination and retaliation was something that you could

10  have done while Ms. Briggs was still working there, correct?

11          MS. SATINSKY:  Objection, Your Honor.  The witness

12  didn't testify that there was a claim of retaliation.

13          MS. MATTIACCI:  Okay.

14          THE COURT:  Sustained.

15  BY MS. MATTIACCI:

16  Q    You -- we did review an email in which Ms. Briggs said

17  that she had a claim of retaliation.  Do you recall that?

18  A    Wasn't that the email with Cameron Etezady?

19  Q    Yes.

20  A    Well, I don't recall that Ms. Briggs raised an issue of

21  retaliation with me up through our conversations through

22  April 1st.

23  Q    Okay.  Let me just state it more generally, then.  Prior

24  to Ms. Briggs being terminated, you could have spoken to Ms.

25  -- to Dr. Wu about Ms. Briggs' claims, correct?

1   A   When Ms. Briggs indicated that I should conduct an

2   investigation, yes, I could.

3   Q   But because you're saying that you didn't get an

4   official statement from her to do so, that's the reason that

5   you were not able to speak with Dr. Wu?

6   A   On April 1st, when she told me that she wished to file a

7   formal complaint and have me investigate, I initiated a

8   complaint.

9   Q   I understand that.  But my question was just, you are --

10  your testimony is, while Ms. Briggs was still employed, you

11  were unable to speak with Ms. -- Dr. Wu about her complaint

12  because Ms. Briggs didn't give you an official statement

13  telling you to go forward with the investigation.  Is that

14  your position?

15  A   I'm -- I'm not sure that I agree with your choice of

16  words.  It's not that I couldn't.  It's that the procedure or

17  the procedure that guides my office is to move on the

18  direction of the complainant and that's what I did.

19      When Ms. Briggs came to me on April 1st, 2014, she was

20  employed, so far as I knew.

21          MS. MATTIACCI:  Okay.  And I believe we already

22  admitted P-55 into evidence.  Is that correct?

23          MS. SATINSKY:  Yep.

24  BY MS. MATTIACCI:

25  Q   Okay.  And then you can see here, there's a series of

39

1    emails that go back and forth between you and Dr. Wu about

2    scheduling the meeting to meet with him in August of 2014.

3    So, you -- maybe you met with him earlier, but this could

4    have been an additional meeting with Dr. Wu.  Is that

5    correct?

6    A    Yes.

7           MS. MATTIACCI:  I don't have any further questions,

8    Your Honor.

9           MS. SATINSKY:  Your Honor, may we have the Court's

10   indulgence for a minute?

11          THE COURT:  Yes.

12      (Pause in proceedings)

13                      CROSS-EXAMINATION

14   BY MS. SATINSKY:

15   Q    Good afternoon, Ms. Foehl.

16   A    Hello.

17   Q    I just have a few questions for you.  You testified

18   earlier that you conducted an investigation when Ms. Briggs

19   told you to do so on April 1st, 2014?

20   A    Yes.

21   Q    Did you reach a conclusion as part of that

22   investigation?

23   A    Yes.

24   Q    What was your conclusion?

25   A    I concluded that there was no violation of Temple

40

1    University policy prohibiting discrimination on the basis of

2    age or gender.

3    Q    Did you communicate that to Ms. Briggs?

4    A    That's the usual practice.  What I don't remember is her

5    having filed the agency complaint made a difference in this

6    case.

7    Q    Ms. Foehl, during the time that Ms. Briggs was employed

8    at Temple, did you communicate with Greg Wacker about the

9    content of your communications with Ms. Briggs?

10   A    No, I did not.

11   Q    During the time that Ms. Briggs was employed at Temple,

12   did you communicate with Dr. Wu about the content of your

13   communications with Ms. Briggs?

14   A    No, I did not.

15   Q    During Ms. Briggs' employment at Temple, did you

16   communicate with Drew DiMeo about the content of your

17   communications with Ms. Briggs?

18   A    No, I did not.

19   Q    During Ms. Briggs' employment at Temple, did you

20   communicate with Deirdre Walton about the content of your

21   communications with Ms. Briggs?

22   A    No.

23          MS. SATINSKY:  Your Honor, I have no further

24   questions.

25          MS. MATTIACCI:  No questions, Your Honor.

41

1          THE COURT:  You may step down.  Thank you.

2      (Witness excused)

3          THE COURT:  All right.  Yes?

4          MS. MATTIACCI:  Your Honor, we have no more live

5  witnesses.  We have a very short read-in to do, about half a

6  page.

7          THE COURT:  A deposition read-in?

8          MS. MATTIACCI:  Yes.

9          THE COURT:  Okay.  Do you want to do that now?

10          MS. SATINSKY:  No objection, Your Honor.

11          MR. HARRIS:  We have no objection.  We just don't

12  know what the cuts are.

13          THE COURT:  Have you gone over them?  All right.

14          MS. MATTIACCI:  They're super short.  Do you want

15  to look at them real quick?

16          MR. HARRIS:  Yes, please.

17      (Counsel confers.)

18          THE COURT:  Do you want to tell us who these --

19          MS. MATTIACCI:  Yes.  I'm just going to read very

20  small portions of Dr. Wu's deposition and the highlighted

21  parts are the parts that we're going to read into the record.

22          THE COURT:  I think, as you heard before, a

23  deposition is taken of a witness.  It's taken down by a

24  stenographer, word for word.  The person is under oath and

25  subject to cross-examination.  It's done -- it's not in my

42

1   presence, but in the presence of counsel representing the

2   parties.  All right.

3           MS. MATTIACCI:  Thank you.

4           The question to Dr. Wu:

5           "Are you generally familiar within your capacity as

6   a manager that there are federal and state laws that protect

7   individuals from certain types of discrimination?

8           "Witness:  Yes, I know that.

9           "And are you familiar within your capacity as a

10  manager at Temple that Temple has anti-discrimination and

11  anti-retaliation policies?

12          "Yes.

13          "Do you consider these policies of anti-

14  discrimination and anti-retaliation important?

15          "Oh, yeah, very important.

16          "Why?

17          "The reason that people -- that we should not

18  discriminate people based on age, gender."

19          And then the last one:

20          "Did you ever yell in Chinese in the workplace?

21          "Answer:  Yes, sometimes with my students, Chinese

22  students."

23          That's all.

24          THE COURT:  All right.

25          MS. SATINSKY:  Your Honor, may we see you at

43

1    sidebar, please?

2              THE COURT:  Yes.

3        (Sidebar)

4              THE COURT:  What's wrong with him yelling at his

5    students in Chinese?

6              MS. MATTIACCI:  He said he didn't.  It's just a

7    contradiction.  He said, I never ever yell.

8              THE COURT:  Oh, okay.

9              MS. MATTIACCI:  They said he did.

10             THE COURT:  I thought that was a new violation.

11             MR. MUNSHI:  It is not.

12             THE COURT:  Oh, yes?

13             MS. SATINSKY:  Your Honor, if I may?  I'd like to

14   make a motion for judgment as a matter of law under Rule

15   50(a).

16             THE COURT:  Might as well send the jury out to --

17             MS. SATINSKY:  I think so.

18        (Sidebar concluded)

19             THE COURT:  At this time, would the jury go to the

20   jury retirement room, please.

21        (Jury excused)

22             MS. SATINSKY:  Yes, Your Honor.

23             As I indicated at sidebar, on behalf of the

24   defendant, Temple University, now that plaintiff has closed

25   her case, I'd like to move for judgment as a matter of law,

44

1   pursuant to Rule 50(a) of the Federal Rules of Civil

2   Procedure.

3          Judgment for Temple is appropriate here because

4   there is no legally sufficient evidentiary basis for the jury

5   to find for Ms. Briggs on her claims of age discrimination,

6   sex discrimination, retaliation, age-based harassment, and

7   sex-based harassment.

8          To the standard under Rule 50(a):

9          "A mere scintilla of evidence is insufficient to

10         proceed beyond judgment as a matter of law.  The

11         question is not whether literally there is no

12         evidence supporting the party against whom the

13         motion is directed, but whether there is evidence

14         upon which the jury could find a verdict for that

15         party."

16         Beginning with Ms. Briggs' discrimination claims,

17   the evidence at trial is insufficient to support a claim of

18   age discrimination or gender discrimination, under Title 7 of

19   the ADEA and the PRHA.

20         Your Honor, Dr. Wu's supposed comment about women

21   in China don't opportunity direct evidence of age or gender

22   discrimination.  The only comment Ms. Briggs testified Dr. Wu

23   made to her about her age was that, "In China, we put women

24   out to pasture at 55."

25         That's according to Ms. Briggs' testimony at trial

45

1    on the morning of July 17th, 2018, at Page 31, Lines 12 to

2    13.  This single comment does not prove the existence of

3    discrimination without inference or presumption, as required

4    to constitute direct evidence; see, Glanzman v Metropolitan

5    Management Company, 391 F.3rd 506 (3d Cir. 2004).

6         To constitute direct evidence, the evidence must

7    prove, without inference or presumption, that the

8    decision-maker can place substantial negative reliance on the

9    Plaintiff's age or gender in reaching their decision.  Even

10   if true, this one isolated, vague comment from Dr. Wu is not

11   direct evidence of age or gender discrimination.

12        Your Honor, if I may cite you to a case called

13   Cellucci v RBS Citizens of North America, 987 F.Supp.  2d 578

14   (2013) E.D. Pennsylvania, by Judge Robreno.

15        In that case, the plaintiff alleged that her

16   supervisor asked her several times whether she planned to

17   retire, commented she probably had a fat 401(k) and a pension

18   and told the plaintiff that the bank is changing and it needs

19   new, younger faces.  The defendant in that case was a bank.

20        The Court concluded that although the combination

21   of retirement questions and the "younger faces" comment could

22   be age-based bias, those comments, because they had no

23   inference or presumption, don't meet the rigorous direct

24   evidence requirement.

25        Also pertinent to that Court's decision was the

46

1    time that elapsed between the alleged comments and the time

2    of the adverse employment action.  In that case, it was about

3    a year.

4           Here, the alleged time difference between Dr. Wu's

5    one single comment and the end of Ms. Briggs' employment was

6    three years; therefore, if Ms. Briggs is to prove a prima

7    facie case of discrimination, she must do so using

8    circumstantial evidence under the McDonnell Douglas tests.

9           Absent direct evidence, as Your Honor is well

10   aware, claims of discrimination are analyzed under the

11   familiar burden-shifting framework set forth in McDonnell

12   Douglas, 411 U.S. 792, 1973.  Gender and age-discrimination

13   claims under the Pennsylvania human relations act are

14   analyzed using the same framework as Title 7 and the ADEA.

15          Under this framework, if Ms. Briggs establishes a

16   prima facie case, the burden shift to Temple to articulate a

17   legitimate, non-discriminatory reason for the challenged

18   employment decision.  Then, the burden shifts back to Ms.

19   Briggs, who has the ultimate burden to prove that the proper

20   reason was pretense for discrimination.

21          To establish a disparate treatment claim, under the

22   ADEA and PRRA, based upon age, Ms. Briggs must prove that age

23   was the but-for cause of her termination.  That's from Gross

24   v FBL Financial Services, Inc., 557 U.S. 167 (2009).

25          Ms. Briggs, likewise, as I said, must prove that

1   age was the but-for cause of her termination to prevail on

2   her claim of age discrimination, under the PHRA and that's

3   from Carter v Mid-Atlantic Healthcare, LLC, 228 F.Supp. 3d

4   495.  It's an Eastern District case from 2013.

5          To establish a prima facie case, Ms. Briggs must

6   prove four elements.  First, she must show she's a member of

7   a protected class.  Second, she must show she was qualified

8   for her position.  And third, she must show that she suffered

9   an adverse employment action.  Finally, she must show that

10   the circumstances surrounding the adverse employment action

11   give rise to an inference of discrimination.

12          That is from Jones v Southeastern Pennsylvania

13   Transportation Authority, 796 F.3d 323, (3d.Cir. 2015) here,

14   Temple does not dispute that Ms. Briggs was a member of a

15   protected class, however, Ms. Briggs cannot establish a prima

16   facie case of age discrimination or gender discrimination,

17   because she cannot show the second, third, and fourth

18   elements required from her prima facie case.

19          First, Ms. Briggs was not qualified for her

20   position.  She cannot establish that she was qualified for

21   her position at the time of her discharge.  As she testified,

22   she didn't understand Dr. Wu's job.  She didn't understand

23   allocations of time that Dr. Wu spent on portions of his job.

24          Her repeated and admitted mistakes in violations of

25   Temple's policy rendered her unqualified to remain in her

48

1    position.  There are a number of cases that support that

2    position, including Nelson v DeVry, Inc.; it's 2009 U.S.

3    Dist. Lexis 38161; it's an Eastern District case from April

4    23rd, 2009; Hairston v Runyon, that's a 1997 case from the

5    Eastern District at 1997 WL 798240.

6            During the trial in this case, Ms. Briggs admitted

7    that she was consistently rated below average and that the

8    low average was the highest performance rating that she

9    received during her tenure at Temple.  That's at the trial

10   transcript from July 17th, 2018, the p.m. session, at Page

11   30, Line 6 through 12, Page 46, Lines 4 through 9, Page 47,

12   Line 22 to Page 48, Line 28 and Page 102, Lines 9 to 21.

13           Ms. Briggs also admitted at trial that the highest

14   score that she received on a performance evaluation was a

15   2.91, still a below-average score, and she received this

16   score from Dr. Wu.

17           The undisputed evidence shows that Ms. Briggs was

18   disciplined and discharged because of her performance

19   deficiencies and repeated violation of Temple's legitimate

20   procedures; therefore, she cannot show that she was qualified

21   for her position, cannot establish a prima facie case, and

22   cannot prevail on a claim of age or gender discrimination.

23           Ms. Briggs cannot prove the next element of a prima

24   facie case of age or gender discrimination, because she did

25   not suffer an adverse employment action.  The record is clear

1    that Ms. Briggs' employment was not terminated; rather, she

2    resigned from her employment at the university.   On April

3    3rd, 2013, Ms. Briggs sent Ms. Walton an email that was

4    testified to extensively at trial, wherein she stated, "It is

5    with great sadness that I resign from my position, executive

6    assistant in the Department of Computer and Information

7    Sciences in the College of Science and Technology, effective

8    April 1, 2014."

9          That is Defendant's Exhibit 23.  It's at the trial

10   transcript from the afternoon session of July 17th, 2018,

11   Page 61, Lines 4 through 24.

12          Ms. Briggs testified she was told she could resign

13   and that was offered to her by Ms. Walton and Mr. Wacker.

14   That is also at the afternoon session of July 17th, 2018,

15   Line -- Page 61, Line 20 to Page 62, Line 6.

16          On August 14th, 2015, more than a year later, when

17   speaking with a friend and former can colleague in the

18   Facebook posts that were showed at trial in Exhibit D-34, Ms.

19   Briggs took issue with rumors that Temple fired her for

20   wrongdoing and insisted that, "My reason for my separation is

21   because I resigned."  Again, that's at Exhibit D-24 -- D-34.

22          Ms. Briggs also testified at trial that when she

23   interviewed at the Community College in Philadelphia, she

24   told the woman in her interview that she resigned from Temple

25   because she was asked to resign.  That is from the morning

50

1   session of July 17th, 2018, Page 116, Line 22 to 25.

2          Ms. Briggs cannot establish the final element of a

3   prima facie case because she cannot prove an inference of

4   discrimination, based on her age or gender.

5          Ms. Briggs' discrimination claims are essentially

6   premised on two facts:  one, Dr. Wu's comment -- alleged

7   comment regarding women in China and, two, her contention

8   that her co-worker, Hailey King, was disciplined less

9   severely for an unexcused absence.  First of all, to the

10  extent that Ms. Briggs contends that Hailey King was treated

11  more favorably than she was, Ms. Briggs cannot sustain her

12  burden on a gender discrimination claim because Ms. King is

13  also a woman and so she's identified a woman in the same

14  protected class who was treated more favorably than she was,

15  not somebody outside of her protected class that was treated

16  better than she was.

17          Additionally, the situation that she compares

18  herself to and Ms. King are not the same.  To rely on a

19  comparator, Ms. Briggs must establish that other employee's

20  -- that the other employee's acts were of comparable

21  seriousness to her own infraction and that she and the other

22  employee engaged in the same conduct, without such

23  differentiating or mitigating circumstances that would

24  distinguish their conduct or the employer's treatment of them

25  for it.  That's Anderson v Haverford College, 868 F.Supp.

51

1   741, (E.D. Pa. 1994).

2          The undisputed evidence presented at trial is that

3   Ms. King's unexcused absences occurred during a hurricane,

4   when there was no power, when she could not call in, and that

5   Dr. Wu did give her a verbal warning as a result of the

6   incident.  For that fact, Dr. Wu testified to that in his

7   deposition, as well as at trial on July 16th, 2018, the P.M.

8   Session, at Page 82, Line 12 to Page 83, Line 19.

9          Ms. Briggs contrasts Ms. King's actions with her

10  own failure to notify Dr. Wu, when she was three hours late.

11  And while she had the ability to do so, she chose not to

12  follow protocol.  She did not send him an email.  She did not

13  call and speak with him directly.  She did not call his

14  phone.  There are clearing differentiating or mitigating

15  circumstances, as discussed in the Anderson case, between Ms.

16  Briggs' conduct and Ms. King's alleged conduct that

17  distinguishes their treatment.

18         And the January 2014 written warning that Ms.

19  Briggs received for her alleged lateness, in January of 2014,

20  does not constitute an adverse employment actions, and is,

21  therefore, immaterial.

22         Simply stated, the plaintiff has presented no

23  evidence that any other employee, much less an employee in

24  Dr. Wu's reporting structure, engaged in misconduct similar

25  to the misconduct that led to her end of her employment.  She

52

1    identified no other employee who failed to book travel

2    reservations for a visiting professor or hotel reservations

3    for a colloquial speaker, no other employee who engaged in

4    disruptive or disorderly conduct by becoming argumentative

5    and unprofessional with her supervisors, or who failed to

6    complete assignments within the time requested.  Without such

7    evidence, Ms. Briggs cannot establish a prima facie case of

8    discrimination.

9          I would point the Court to Crumpton v. Potter, 305

10   F.Suupp 2d 465 (E.D. Pa. 2004).  In that case, the Court held

11   that the plaintiff failed to make out a prima facie case and

12   granted summary judgment for the defendant on the defendant's

13   -- plaintiff's discrimination claim because the plaintiff,

14   quote:

15          "-- has not identified any similarly situated, non-

16          protected who was treated more favorably than he."

17          Finally, Dr. Wu's purported comments about --

18   comment about the retirement age for women in China do not

19   give rise to an inference of discrimination because they were

20   wholly unrelated and temporally remote from Ms. Briggs'

21   resignation.

22          THE COURT:  Okay.  Thank you.

23          MS. SATINSKY:  I have more, Your Honor.  I

24   apologize.  It's --

25          THE COURT:  I thought you said "finally."

53

1          MS. SATINSKY:  Oh, the final point on that.  It's

2    quite lengthy because Ms. Briggs has a number of claims here,

3    so I do apologize to the Court, but I do need to put this on

4    the record.

5          Regarding -- assuming that Ms. Briggs satisfies a

6    prima facie case, which --

7          THE COURT:  How much longer do you have?

8       (Participants confer)

9          MS. SATINSKY:  Your Honor, I would gather I

10   probably have another 20 minutes or so.

11         THE COURT:  Yeah, no, it's -- I'll hear from the

12   other side.

13         MS. SATINSKY:  Your Honor, I do want to make it

14   clear that I am making a motion as to all of Ms. Briggs'

15   claims.  I only addressed her claims of gender discrimination

16   and age discrimination.  She also has a claim of retaliation,

17   she has two claims --

18         THE COURT:  Yeah, I know.  But how much time am I

19   going to give you --

20         MS. SATINSKY:  I understand --

21         THE COURT:  -- to make --

22         MS. SATINSKY:  -- Your Honor.

23         THE COURT:  -- these arguments?

24         MS. SATINSKY:  However, if I don't put this on the

25   record --

54

1          THE COURT:  Please, stop.

2          I'll hear from the other side.

3          MR. MUNSHI:  Your Honor, I'll be very brief here.

4     There has been voluminous testimony and documentation in this

5     case to support Ms. Briggs' various claims in this case:  Age

6     discrimination, sex discrimination, retaliation, hostile work

7     environment.

8          With regard to the prima facie case, what we

9     already know is that she's in a protected class.  The concept

10    that she is not qualified for the position is very much

11    contradicted by the fact that, for example, she was in that

12    position for nine years, essentially, as an executive

13    assistant.  We've gone through her performance evaluations,

14    the good performance evaluations as she went through, the

15    reasons why she was put into that position, and so on and so

16    forth, in addition to her own testimony about her good work.

17         With regard to the adverse action that was taken

18    against her, first of all, she was terminated.  The April

19    1st, 2014 letter, that's Plaintiff's Trial Exhibit 45,

20    state's in the last sentence, "Effective today, you are

21    terminated."  Any resignation letter that happened from Ms.

22    Briggs happened thereafter.  And any consideration that it

23    was a forced resignation also constitutes an adverse action.

24    So that standard has certainly been met.

25         There has been voluminous evidence to show

55

1    causation, with regard to her complaints, with regard to the

2    treatment of -- from Dr. Wu, with regard to the comment, with

3    regard to the disparate treatment in favor of Hailey King,

4    who was a substantially younger employee.

5           And Your Honor, in closing, we believe that this

6    case absolutely should move forward, and that the motion

7    should be denied outright.

8           THE COURT:  Summarize the evidence you have to show

9    age discrimination.

10          MR. MUNSHI:  With regard to age discrimination,

11   Your Honor, if you recall, we went through the various

12   meetings that Ms. Briggs had with various folks at Temple and

13   the emails that she sent out.  Each and every one of them

14   refers back to Dr. Wu's comment, which was a specific age and

15   sex discriminatory comment:  Women of a certain age, her age,

16   are put out to pasture in China.

17          His conduct towards her during the period where she

18   was reporting to him, the bullying, the harassment, all of

19   the things that Ms. Briggs testified to, and

20   contemporaneously wrote to everybody at Temple under the sun,

21   shows that he was treating her especially harshly because of

22   her age, stemming from her own comment -- his own comment.

23          You look at Hailey King, who's 28 years old, half

24   of her age, and the disparate treatment that she received.

25   She was out for three days, she disappeared, according to Dr.

1    Wu.  She didn't get a written warning.  Ms. Briggs, written

2    warning, leads to her termination.

3            There's voluminous evidence that Dr. Wu had a bias

4    against Ms. Briggs, not just because she's an older person,

5    not because she's a female; she's an older woman,

6    specifically.

7            We also have evidence that is, again, in the

8    written documents and in the testimony that Dr. Wu was taking

9    responsibility from Ms. Briggs and giving them to younger

10   workers.  We have that in writing and from the testimony.

11           THE COURT:  The younger worker?

12           MR. MUNSHI:  Yes, in the emails that the jury has

13   seen, there are complaints from Ms. Briggs that student

14   workers and other workers within the staff were receiving the

15   exact job duties that she had been doing for years.  Dr. Wu

16   was pushing her out.

17           MS. SATINSKY:  Your Honor, if I may.  There was no

18   evidence presented that there were email -- there were no

19   emails or other documents that were presented, or any

20   evidence put on to show that Ms. Briggs' responsibilities

21   were given to any other employee, much less someone who was

22   younger or a male.

23           THE COURT:  Yeah.

24           MS. SATINSKY:  I mean, as to Ms. Briggs' other

25   claims -- and I do have a brief outline, Your Honor, if I

57

1    could submit it into evidence for your review, if -- it's not

2    a full brief, but I would like to put it into the record.

3           As to Ms. Briggs' retaliation claim, that claim,

4    too, should be dismissed, and Temple is entitled to judgment

5    as a matter of law.  Ms. Briggs testified -- the only thing

6    she testified about being retaliated for, or being worried

7    about being retaliated for, was taking leave under the Family

8    and Medical Leave Act.  This case is not a Family and Medical

9    Leave Act case; there is no such claim here.

10          The only person to whom she made a complaint of age

11   discrimination, two people:  Sandra Foehl and Cameron

12   Etezady.  No witness, nobody testified that Cameron or Ms.

13   Foehl played any decision -- played any role in the decision

14   to end Ms. Briggs' employment.  In fact, the witnesses all

15   testified that that was the responsibility or the decision of

16   Ms. Walton, Dr. Wu, and in some part Mr. Wacker or Mr. DiMeo.

17          THE COURT:  All right.  Thank you.  I'll take it

18   under advisement.  We'll recess for another ten minutes.

19          THE COURT OFFICER:  All rise.

20      (Recess taken at 2:45 p.m.)

21      (Proceedings resume at 2:54 p.m.)

22      (Jury not present)

23          THE COURT:  Bring them in.

24          I'm going to defer ruling until the end of the

25   case.

58

1          MS. SATINSKY:  I understand, Your Honor.  I handed

2     to your deputy I believe --

3          THE COURT:  I know that.

4          MS. SATINSKY:  I just want to make sure that's part

5     of the record.  That's all.

6          THE COURT:  All right.

7          MS. SATINSKY:  Thank you.

8       (Jury present)

9          THE COURT:  The jury may be seated.

10          The plaintiff has rested.  And we'll hear at this

11     point from the defense.

12          MR. HARRIS:  Your Honor, we decided not to call any

13     witnesses.  We're just going to play the deposition

14     transcript -- or, actually, the video transcript of Ms.

15     Briggs.

16          THE COURT:  Of Ms. Briggs?

17          MR. HARRIS:  Of Ms. Briggs.  Correct.

18          THE COURT:  All right.

19          MS. MATTIACCI:  Your Honor, I'm sorry.  But we were

20     just handed these clips right this minute and haven't had a

21     chance to review to see if there are any objections in these

22     particular clips.  So we just need to take a minute to see.

23          THE COURT:  All right.

24       (Pause in proceedings)

25          THE COURT:  Is this going to take long?

59

1          MS. MATTIACCI:  I'm thinking it's going to --

2     looking at all these lines, it might take about 10 minutes to

3     go through.

4          MS. SATINSKY:  Your Honor, there's only six clips

5     there from about six -- seven pages.  It's not very much.

6          MS. MATTIACCI:  They could have given us --

7          MR. MUNSHI:  I don't know why they didn't give it

8     to us before.

9          MR. HARRIS:  We gave you the same ones that you

10    gave us.

11       (Pause in proceedings)

12         MS. MATTIACCI:  Your Honor, I think we're going to

13    have some issues with some of the clips.  There's just some

14    cherry-picking.

15       (Pause in proceedings)

16         THE COURT:  Is it something we can do at sidebar?

17    I this extensive or what?

18         MS. MATTIACCI:  It's -- it's pretty extensive.

19    It's ...

20       (Pause in proceedings)

21         MS. MATTIACCI:  Maybe it's just one.

22         THE COURT:  Are these objections that were made

23    during the deposition?

24         MS. MATTIACCI:  I would -- mostly, it's just that

25    they're just taking little tiny bits without context.

60

1        (Pause in proceedings)

2            MS. MATTIACCI:  Almost there, Your Honor.

3        (Pause in proceedings)

4            MS. MATTIACCI:  It's fine, Your Honor.  Thank you.

5            THE COURT:  Okay.  Play it.

6            MR. HARRIS:  Thank you.

7            THE COURT:  Members of the jury, I'm told that this

8   is a video --

9            MR. HARRIS:  Yes.

10           THE COURT:  -- deposition.  It was under oath,

11  subject to cross-examination taken in the presence of counsel

12  for both sides.

13           You're to give it the same consideration you would

14  give the testimony of the plaintiff if she testified in open

15  court.

16           All right.  You may go.

17       (Video Recording played at 3:00 p.m.)

18       (At 3:05 p.m.)

19           MR. HARRIS:  With the introduction of defense

20  exhibits, we would rest.

21           THE COURT:  All right.  At this point, we will have

22  matters to go over with counsel that will not require the

23  presence of the jury.  I'm going to excuse the jury at this

24  time.

25           Start tomorrow morning at 9:30.  We will start with

1    closing arguments, then the charge of the Court, and then you

2    will get the case to decide.

3              With that, the jury is excused until 9:30 tomorrow

4    morning.

5         (Jury excused)

6              THE COURT:  Any points --

7              MS. SATINSKY:  Yes, Your Honor.  I'd like to renew

8    my motion, the Rule 50(a), judgment as a matter of law

9    motion.

10             THE COURT:  All right.  Denied.

11             MR. MUNSHI:  And we'd like to put a motion on the

12   record as well for a directed verdict under the same rule.

13             THE COURT:  Both denied.

14             Any further -- you wish to discuss any points for

15   charge?

16             MS. MATTIACCI:  Yes, Your Honor.  There's great

17   disagreement between the points for charge and the verdict

18   sheet.

19             THE COURT:  Everybody please sit down.

20             We're looking at defense points at this time?  Is

21   that what you wanted to object to?

22             MS. MATTIACCI:  Well, I -- if -- I'd prefer to go

23   with plaintiff's points, and then --

24             THE COURT:  Well, you were the one that spoke up.

25   So --

62

1          MS. MATTIACCI:  Okay.  Your Honor, plaintiff's --

2     we just follow the model rules, the Third Circuit model

3     rules.  Are you okay if I sit down, Your Honor, when I speak?

4          THE COURT:  All right.  That's fine.

5          MS. MATTIACCI:  Okay.  We don't make any

6     modifications to them, other than to put in the

7     specifications about the case.

8          THE COURT:  Any modifications to what?

9          MS. SATINSKY:  Your Honor, may I be heard?

10          MS. MATTIACCI:  I was saying, Your Honor, that

11     plaintiff's set of proposed jury instructions follow the

12     model rules, Third Circuit model rules with very little

13     modification, other than just the specification of the case.

14          In contrast, the defendant's proposed jury

15     instructions come from various sources.  And I don't know how

16     Your Honor would like to go through it, but they do follow,

17     for example, an age discrimination charge --

18          THE COURT:  I've been through them several times.

19          MS. MATTIACCI:  Oh, you have.  Okay.

20          THE COURT:  Well, you think I sit here doing

21     nothing?  I've been over them and over them.

22          MS. SATINSKY:  Your Honor -- Your Honor, if I may,

23     as to the plaintiff's instruction, the key problem with the

24     instructions that are presented by plaintiff is that

25     plaintiff has only offered a set of instructions under Title

63

1    7.  The plaintiff has not offered a set of instructions under

2    the ADEA.  So --

3            THE COURT:  You know, I thought --

4            MS. SATINSKY:  -- or a -- or a retaliation charge.

5    She has clumped everything together.

6            As Your Honor knows, there are different elements

7    to a retaliation claim than to a discrimination claim.  And

8    there's different causation standards.

9            THE COURT:  Yeah -- stop.  At one point I thought

10   maybe you withdrew part of this.

11           MS. MATTIACCI:  Your Honor, I'm sorry.  I --

12           MR. HARRIS:  We were hoping so.

13           MS. MATTIACCI:  Well, yes.  Definitely did not

14   happen.

15           Model -- we have a Title VII retaliation claim,

16   5.17 that we put the retaliation charge into.  And then 5.21,

17   the hostile environment charge.  I thought we had the ADEA

18   charge, but I will -- that would be a mistake if we didn't.

19           THE COURT:  Well, let's concentrate on the defense

20   points.

21           MS. MATTIACCI:  Okay.

22           THE COURT:  And then start on defendant's proposed

23   Point Number 15.

24           MS. MATTIACCI:  I have no objection to that, Your

25   Honor.

64

1          THE COURT:  And 16?

2          MS. MATTIACCI:  We'd prefer to stick with the model

3  rule that says determinative factor.

4          THE COURT:  Yeah.  But that doesn't stick with the

5  law, does it?

6          MS. MATTIACCI:  It should be, "the determinative

7  factor," not "a determinative factor."

8          But "the reason" I think is misleading because it's

9  not -- it's not the sole reason.  There can be other reasons.

10  So I feel by putting that -- the new verbiage of "the reason"

11  is wrong.

12          The Courts are adjusting it to say, "the

13  determinative factor."  And then the instruction follows.

14          MS. SATINSKY:  Your Honor, there is a Supreme Court

15  case that plaintiff actually cited in her summary judgment

16  motion about the but for cause standard.  My colleague is

17  helping me pull that up right now.  I don't have it right in

18  front of me.

19          Under that case -- so that's a criminal case and it

20  talks about but for causes.  And what that case says is that

21  it doesn't have to be the only cause, but you can't have two

22  but for causes be the reason for an adverse action.  So the

23  plaintiff can't have -- there can't be a finding for the

24  plaintiff under the ADEA and for retaliation because both of

25  those standards are but for cause standards.

1          I think if we change it to -- we may be able to

2     come up with some other language here, but the reason that we

3     struck "determinative factor" is, as Your Honor said, that's

4     inconsistent with the law, and also "a determinative factor"

5     is the language used in the Title 7 model jury instruction.

6     So there is a clear difference between the standards.

7          THE COURT:  Yeah.  There's going to have to be --

8     that's -- the troubling thing for me, anyway, is that I'm

9     going to end up giving rather extensive charges on both Title

10    7 and age discrimination because of that -- the difference in

11    the -- but I am -- I think 16 is all right the way it's

12    written.

13         MS. MATTIACCI:  Your Honor, may I -- I have to

14    lodge my strong objection to the concluding instruction there

15    that says:

16              "Ultimately, you must decide whether Ms. Briggs has

17              proved that her age was the reason Temple

18              University decision" -- "for Temple University's

19              decision to end her employment."

20         It's -- it's not -- I mean, if that's going to be

21    said, then I would ask that the Court also specifically

22    advise that it does not have to be the sole reason for the --

23    for the decision, because it does not have to be the sole

24    reason.  That's undisputed.  That's clear-as-day precedent.

25    So we can't have sole reason even be thought of.

66

1          MS. SATINSKY:  Your Honor, like I said, the

2   plaintiff can't have a retaliation claim and an age claim

3   because they are both but for cause standards.  I agree it

4   doesn't have to be the reason, but the other reasons cannot

5   also be but for cause reasons.

6          So if Your Honor would want to change the language

7   of this, I would need just a moment to think about it because

8   I don't like the words "but for" because I think that's

9   confusing to a jury and I think it's legalese.

10         I also don't believe there's any support for the

11  plaintiff's proposition.

12         MS. MATTIACCI:  Your Honor, the sole cause, we can

13  provide Your Honor with a mountain of case law on the sole

14  cause issue.  That's been clearly decided and settled

15  precedent.

16         MR. MUNSHI:  Miller v. CIGNA, Your Honor.  Third

17  Circuit 1995.  It's clear.

18         MS. SATINSKY:  That's pre-Gross, Your Honor.

19         THE COURT:  Pardon?

20         MS. SATINSKY:  That's before the Gross decision,

21  Your Honor.

22         THE COURT:  Yeah.

23         MR. MUNSHI:  We're still in the Third Circuit model

24  jury instructions and it cites to it.

25         MS. MATTIACCI:  Yeah.  But even Gross clearly --

67

1          THE COURT:  Haven't they been upgraded?

2          MR. MUNSHI:  They have been.

3          THE COURT:  Yes?

4          MS. SATINSKY:  No, I have nothing right now, Your

5    Honor.

6          THE COURT:  Okay.

7          MS. SATINSKY:  Your Honor, the Supreme Court case

8    that I was referencing that Ms. Briggs cites in her summary

9    judgment motion is Burrage - B-u-r-r-a-g-e -- v. United

10   States, 571 U.S. 204 (2014).

11         THE COURT:  What is that for?

12         MS. SATINSKY:  Your Honor, that case says that, if

13   there is a but for causation on something, it does not have

14   to be the only reason, but the other reasons cannot also be

15   but for reasons.  So, for that reason, the plaintiff can't

16   prevail on an age claim and a retaliation claim because they

17   both can't be the but for reason for their termination.

18         MS. MATTIACCI:  That is a ludicrous result under

19   the law.

20         THE COURT:  Yeah, I --

21         MS. MATTIACCI:  How could that even be possible?

22   Then a person that has been discriminated against based upon

23   age, and also retaliated against, would not have recourse in

24   the Courts of the United States?  That cannot be the --

25   that's not the intention of the law, nor a logical result.

68

1          MS. SATINSKY:  Your Honor, there is --

2          THE COURT:  All right.  Enough.  19?

3      (Pause in proceedings)

4          THE COURT:  Any objections to that?

5      (Pause in proceedings)

6          MS. MATTIACCI:  I would again ask that -- Your

7  Honor, that the jury be instructed that it does not have to

8  be the sole reason, and that there could be other reasons

9  that led to the discharge.

10          THE COURT:  All right.  I will take that --

11          MS. SATINSKY:  And Your Honor understands our

12  position.

13          THE COURT:  I will take that under advisement.

14      (Participants confer)

15          MS. MATTIACCI:  And Your Honor, is -- I just wanted

16  to make sure I understand this 19.  Is the underlined part

17  added by you?

18          MS. SATINSKY:  It is.

19          MS. MATTIACCI:  Okay.

20          MS. SATINSKY:  Anything that's underlined is added.

21          MS. MATTIACCI:  We don't -- we object to the

22  additional, the added parts to this instruction, Your Honor.

23  I think that the Model Jury Instruction is sufficient.

24          THE COURT:  Number 20, damages.

25          MS. MATTIACCI:  I would object to this.  I think

69

1  this is going to be very confusing to the jury.  I don't

2  believe that they're going to be -- they need to know whether

3  they're awarding it under a specific statute.  I think the

4  way the jury verdict form will be set up will lead them to

5  the conclusion of -- if they -- because, if they find for age

6  and nothing else, they're not going to get a question asking

7  them for compensatory amounts, so they won't ever be facing

8  that.

9         MS. SATINSKY:  Your Honor, we ask this instruction

10  be included because compensatory damages are not recoverable

11  under the ADEA, that's very clear; they are under Title VII.

12  And because of the various claims that Ms. Briggs has

13  brought, the jury is going to need to understand that there

14  are different types of damages recoverable under different

15  statutes.

16         MS. MATTIACCI:  Well, actually, they don't need to

17  know that because we also have a PHRA claim, and the age --

18  if they find for age under the PHRA --

19         THE COURT:  Okay.  I don't plan to give that

20  charge, unless -- I may change my mind, of course.

21         MS. MATTIACCI:  Well, can I just --

22         THE COURT:  But I think that --

23         MS. MATTIACCI:  -- say that the PHRA has the age

24  claim that you can get compensatories under the PHRA, if they

25  find for age.

70

```
1            THE COURT:  All right.  Back pay?  You didn't go to

2    any great effort to show details of the lost wages.

3            MS. MATTIACCI:  We did, Your Honor.  We introduced

4    --

5            THE COURT:  Well, I mean, I know what you did.

6            MS. MATTIACCI:  Yeah.

7            THE COURT:  But it's been very general.

8            MS. MATTIACCI:  It's very general, yes.  But I

9    mean, it's -- we have all of the documented evidence of it,

10   so that we have -- for closing, we can be more specific with

11   the back pay and the front pay.  But we have pay records and

12   the interrogatory responses of the defendant as to the

13   damages.

14           THE COURT:  Liquidated damages?

15           MS. MATTIACCI:  We object to the additional

16   language that they have inserted there.

17           MS. SATINSKY:  Your Honor, liquidated damages are

18   only recoverable under the ADEA; they're not recoverable

19   under Title VII, they're not recoverable for a harassment

20   claim.  The jury needs to be keenly aware that, if they find

21   for the plaintiff on a claim, other than her age claim, they

22   are not to award liquidated damages.  That is only if they

23   find for the plaintiff on an age claim.

24           THE COURT:  All right.  I agree.

25           MS. SATINSKY:  Your Honor, if I may just go -- I
```

71

1    apologize, we're not there.  My apologies.

2              THE COURT:  Front pay damages.

3              MS. SATINSKY:  Yes, Your Honor.  Ms. Briggs

4    testified yesterday that she has not looked for employment

5    since she secured her job in 2016.  There is case law for

6    that proposition that says that your front pay is cut off

7    when you start looking for -- when you stop looking for a

8    job, after you've secured employment.  Her testimony is clear

9    on that, that's included in this judgment as a matter of law,

10   memo that I submitted.

11             MS. MATTIACCI:  Your Honor, I don't -- one, that's

12   not the standard.  The defendant has the burden of proving

13   mitigation, and the defendant must present substantially

14   equivalent positions that are, one, available; and, two, that

15   the plaintiff unreasonably failed to avail herself of.  The

16   defendant has wholly failed to meet its burden on this point.

17   To the extent there's a motion on it, it would be that they

18   have --

19             THE COURT:  Do we give --

20             MS. MATTIACCI:  -- presented zero --

21             THE COURT:  the front pay --

22             MS. MATTIACCI:  -- evidence on the --

23             THE COURT:  -- issue to --

24             MS. MATTIACCI:  -- in the case on --

25             THE COURT:  -- the jury?

1     MS. SATINSKY:  Under the age claim, yes, but not

2  under the gender discrimination claim --

3     THE COURT:  All right.

4     MS. SATINSKY:  -- or gender retaliation.  Your

5  Honor, the support for my position is 959 F.2d 454, 2007 U.S.

6  Dist. LEXIS 62492, 2007 --

7     THE COURT:  Please stop.

8     (Participants confer)

9     THE COURT:  Do you think I'm sitting here, reading

10  -- writing these down?

11     MS. SATINSKY:  No, I just -- I wasn't sure if Your

12  Honor was going to read back the transcript.  I just wanted

13  to make sure we had citation support.

14     THE COURT:  Nominal damages, 24.

15     MS. MATTIACCI:  I don't have an objection, Your

16  Honor.

17     THE COURT:  What is that?

18     MS. MATTIACCI:  No objection.

19     THE COURT:  Oh.  25?  This is the start of Title

20  VII.

21     MS. MATTIACCI:  No objection, Your Honor.

22     THE COURT:  26.

23     (Pause in proceedings)

24     THE COURT:  27?

25     (Pause in proceedings)

73

1        THE COURT:  28.

2     (Pause in proceedings)

3        THE COURT:  And 29, retaliation.

4        MS. MATTIACCI:  Yes, Your Honor.  We object to the

5   additional language that was imposed by defendant here, at

6   the bottom of 29.

7     (Pause in proceedings)

8        THE COURT:  All right.  I may not read that section

9   that's underlined.

10       And Title VII, compensatory damages and nominal

11  damages.  This will make for an interesting verdict form.

12       Tomorrow morning, hopefully at 9:30, then we'll

13  have closing arguments.  They are not to exceed 35 minutes.

14  Plaintiff may reserve 5 minutes for rebuttal.  And I will

15  tell you when your time is up.

16       Anything further?

17       MR. HARRIS:  No, Your Honor.

18       MS. MATTIACCI:  Yes, Your Honor.  We wanted to

19  submit a jury instruction that -- we thought we did -- but is

20  for punitive damages under Title VII.

21       THE COURT:  I'm not charging on punitive damages.

22       MS. MATTIACCI:  Okay.  So you're denying that

23  motion.

24       THE COURT:  That's right.

25       MS. MATTIACCI:  Okay.  Thank you.

74

1          THE COURT:  Anything else.

2          MS. SATINSKY:  No, Your Honor.

3          MR. HARRIS:  No, Your Honor.

4          THE COURT:  All right.  I -- counsel should be here

5   at nine o'clock.

6          MS. MATTIACCI:  Your Honor, I'm sorry.  For

7   clarification regarding the verdict sheet, what was the end

8   result there?

9          THE COURT:  What is it?  What do you mean?

10         MS. MATTIACCI:  Are you -- we submitted competing

11  verdict sheets.

12         THE COURT:  Yeah, right.  I'm not quite satisfied

13  with either one.

14         MS. MATTIACCI:  Okay.

15         THE COURT:  I'm in the process of making my own up.

16         MS. MATTIACCI:  Okay.  So then will we have that

17  tomorrow morning?

18         THE COURT:  Yeah, you'll probably have it.  You

19  may.

20         MS. MATTIACCI:  Okay.  I just wanted to know, if

21  you do, I -- and I didn't to know if we'd be permitted to use

22  it as part of our closing.

23         THE COURT:  I'm not sure now.

24         MS. MATTIACCI:  Okay.  All right.  Thank you very

25  much.

75

1          THE COURT:  All right.  Nine o'clock tomorrow

2    morning.

3          MR. HARRIS:  Thank you.

4          MS. MATTIACCI:  Thank you, Your Honor.

5          MS. SATINSKY:  Thank you.

6          THE COURT:  Or be here, anyway.

7          THE COURT OFFICER:  All rise.

8      (Proceedings adjourned to 7/19/18)

9      (Concluded at 3/27 p.m.)

10                    *****

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

76

1                        CERTIFICATION

2         We certify that the foregoing is a correct

3  transcript from the electronic sound recording of the

4  proceedings in the above-entitled matter to the best of our

5  knowledge and ability.

6

7  Transcriptionists:  Cathryn Renzoni, William J. Garling, and

8  Coleen Rand

9

10

11

12                                    July 18, 2018

13  Coleen Rand, AAERT Cert. No. 341

14  Certified Court Transcriptionist

15  For Advanced Transcription

16

17

18

19

20

21

22

23

24

25

**A**

**AAERT** 76:13
**ability** 51:11
  76:5
**able** 13:14 21:24
  38:5 65:1
**above-entitled**
  76:4
**absence** 50:9
**absences** 51:3
**absent** 15:23
  46:9
**absolutely** 55:6
**acceptable** 22:4
**accomplish**
  21:25
**accounting** 6:25
**accurate** 36:16
**acquired** 34:14
**Acquisition** 1:19
**act** 46:13 57:8,9
**action** 15:14,16
  46:2 47:9,10
  48:25 54:17,23
  64:22
**actions** 51:9,20
**active** 34:3
**acts** 50:20
**actual** 26:19
**add** 34:12
**added** 68:17,20
  68:22
**addition** 54:16
**additional** 39:4
  68:22 70:15
  73:5
**Additionally**
  50:17
**addressed** 53:15
**addressing**
  16:23
**adds** 7:10
**ADEA** 44:19
  46:14,22 63:2
  63:17 64:24
  69:11 70:18
**adept** 7:8

**adjourned** 75:8
**adjusting** 64:12
**admission** 5:17
  25:24 31:23
  35:18
**admit** 26:2,3
**admitted** 5:19
  26:5 31:25
  35:20 38:22
  47:24 48:6,13
**Advanced** 1:20
  76:15
**adverse** 46:2
  47:9,10 48:25
  51:20 54:17,23
  64:22
**advice** 9:23 29:7
  29:9
**advise** 15:18
  27:22 65:22
**advised** 18:2
**advisement**
  57:18 68:13
**advises** 20:18
  23:1
**advising** 20:6
  22:8
**Affairs** 19:10
**afternoon** 3:1,19
  39:15 49:10,14
**age** 4:23 5:2,4
  6:20 9:4,8,10
  9:12 12:11
  13:8 15:24
  19:18 21:7,9
  23:8,17 25:5
  31:8,11,13
  32:4 34:9
  36:25 40:2
  42:18 44:5,18
  44:21,23 45:9
  45:11 46:22,22
  47:1,2,16
  48:22,24 50:4
  52:18 53:16
  54:5 55:9,10
  55:14,15,15,22
  55:24 57:10

62:17 65:10,17
  66:2 67:16,23
  69:5,17,18,23
  69:25 70:21,23
  72:1
**age-based** 44:6
  45:22
**age-discrimin...**
  46:12
**agency** 40:5
**ago** 20:13
**agree** 13:17
  38:15 66:3
  70:24
**agreed** 31:10
**ahead** 11:5
  21:15
**allegation** 12:10
  18:15 36:2
**allegations** 27:4
  37:3
**alleged** 24:5
  45:15 46:1,4
  50:6 51:16,19
**alleviate** 29:10
**allocations**
  47:23
**allow** 15:13,24
**allowing** 6:25
**America** 45:13
**amounts** 69:7
**analyzed** 46:10
  46:14
**Anderson** 50:25
  51:15
**anonymity**
  14:25
**answer** 10:24
  42:21
**anti-** 42:13
**anti-discrimin...**
  42:10
**anti-retaliation**
  42:11,14
**anybody** 23:9
  26:23
**anyway** 15:9
  65:8 75:6

**apologies** 71:1
**apologize** 21:21
  52:24 53:3
  71:1
**APPEARAN...**
  1:11
**appears** 20:6,8
**applicable** 15:2
  20:17
**appointment**
  22:16
**appropriate**
  44:3
**approximately**
  31:3
**April** 30:25
  31:19 34:11
  35:1 36:18
  37:5,22 38:6
  38:19 39:19
  48:3 49:2,8
  54:18
**argumentative**
  52:4
**arguments**
  53:23 61:1
  73:13
**arranged** 6:12
**arrangement**
  6:14
**articulate** 46:16
**asked** 9:7 24:11
  24:22 45:16
  49:25
**asking** 9:12 20:1
  26:18,22 28:14
  69:6
**asks** 34:2
**assault** 15:17,23
**assignment**
  26:11
**assignments**
  52:6
**assistance** 36:8
**assistant** 8:8
  49:6 54:13
**Associate** 19:9
**assuming** 53:5

**assure** 15:3
**attending** 20:18
**attention** 22:3
  26:19
**attorney** 15:7
**Audio** 1:18
**August** 5:13
  9:17 25:22
  26:7,8 28:11
  28:12 35:14,15
  35:16,25 36:18
  37:6 39:2
  49:16
**Authority** 47:13
**authorize** 27:6
**authorized** 16:1
**avail** 71:15
**available** 12:17
  71:14
**average** 48:7,8
**award** 70:22
**awarding** 69:3
**aware** 22:8
  46:10 70:20

**B**

**B-u-r-r-a-g-e**
  67:9
**back** 9:8 20:16
  20:25 28:5
  39:1 46:18
  55:14 70:1,11
  72:12
**background**
  4:15,16 17:22
**bank** 45:18,19
**bargaining** 8:7
**based** 8:15
  42:18 46:22
  50:4 67:22
**basis** 40:1 44:4
**becoming** 52:4
**beginning** 23:15
  44:16
**behalf** 9:25
  43:23
**believe** 8:9 12:2
  13:8 19:9

36:21 38:21
55:5 58:2
66:10 69:2
**believed** 18:5
24:2
**believes** 10:4
21:9
**below-average**
48:15
**benefit** 6:24
**best** 32:12 76:4
**Beth** 7:18
**better** 24:4
29:18 50:16
**beyond** 44:10
**bias** 45:22 56:3
**Bible** 3:8
**bidding** 34:3
**binder** 5:5 12:20
**bit** 20:13
**bits** 59:25
**blow** 12:23
14:18
**board** 18:17
**bonus** 17:1
**book** 52:1
**bottom** 16:15
21:19 35:23
73:6
**Boulevard** 1:20
**box** 34:3
**breaking** 22:25
**brief** 54:3 56:25
57:2
**Briggs** 1:2 4:23
4:25 5:24 6:3,6
6:16,24 7:4,9
7:14,21 8:12
8:18,20 9:24
10:4 12:24
13:1 16:17
19:2,15 20:6
20:25 21:2,4
22:15 23:7,19
23:21 24:8,10
24:12,12,14,17
24:23,23 25:4
25:16 26:10,14

26:16 27:2,10
27:12,15,18,22
28:14,22,25
29:8,13 30:13
30:18,25 31:7
31:9 32:4 34:8
34:10,17,24
35:1,2 36:12
36:25 37:3,10
37:16,20,24
38:1,10,12,19
39:18 40:3,7,9
40:11,13,17,21
44:5,22 46:6
46:15,19,22,25
47:5,14,15,19
48:6,13,17,23
49:3,12,19,22
50:2,10,11,19
51:9,19 52:7
53:2,5 54:22
55:12,19 56:1
56:4,9,13 57:5
58:15,16,17
65:16 67:8
69:12 71:3
**Briggs'** 7:11
12:3 23:10
25:12 29:10
36:3,6,15,19
37:8,25 40:15
40:19 44:16,25
46:5 49:1 50:5
51:16 52:20
53:14 54:5
56:20,24 57:3
57:14
**Bring** 57:23
**bringing** 36:25
**brought** 21:6
24:23 26:18
27:2 69:13
**Brown** 19:7 20:6
**Brunner** 25:22
28:17 29:3,7
**Brunner's** 28:24
**bullied** 19:3,3
**bullying** 55:18

**burden** 46:16,18
46:19 50:12
71:12,16
**burden-shifting**
46:11
**Burrage** 67:9
**but-for** 46:23
47:1

---

### C
**call** 3:4 33:2,12
51:4,13,13
58:12
**called** 32:17
34:17,21 45:12
**calling** 33:16
**calls** 3:6
**Cameron** 12:24
37:18 57:11,12
**capacity** 42:5,9
**care** 9:18
**Carlin** 1:11
**carry** 27:9
**carrying** 27:7
**Carter** 47:3
**case** 1:3 12:3,8
15:17 18:16
24:5 40:6
43:25 45:12,15
45:19 46:2,7
46:16 47:4,5
47:16,18 48:3
48:4,6,21,24
50:3 51:15
52:7,10,11
53:6 54:5,5,8
55:6 57:8,9,25
61:2 62:7,13
64:15,19,19,20
66:13 67:7,12
71:5,24
**cases** 48:1
**Cathryn** 76:7
**causation** 55:1
63:8 67:13
**cause** 46:23 47:1
64:16,21,25
66:3,5,12,14

**causes** 64:20,22
**Cellucci** 45:13
**Center** 8:10
**Cert** 76:13
**certain** 42:7
55:15
**certainly** 54:24
**CERTIFICA...**
76:1
**Certified** 76:14
**certify** 76:2
**chain** 35:24
**Chair** 6:9
**challenged**
46:17
**chance** 58:21
**change** 65:1
66:6 69:20
**changed** 19:12
**changing** 45:18
**charge** 2:10 4:18
61:1,15,17
62:17 63:4,16
63:17,18 69:20
**charges** 65:9
**charging** 73:21
**checked** 34:3
**Cherry** 1:16
**cherry-picking**
59:14
**China** 6:19
44:21,23 50:7
52:18 55:16
**Chinese** 6:19
42:20,21 43:5
**choice** 38:15
**choices** 12:17
**chores** 8:1
**chose** 51:11
**CIGNA** 66:16
**Cir** 45:5
**Circuit** 62:2,12
66:17,23
**circumstances**
47:10 50:23
51:15
**circumstantial**
46:8

**citation** 72:13
**cite** 45:12
**cited** 64:15
**cites** 66:24 67:8
**Citizens** 45:13
**civil** 4:20 44:1
**claim** 36:6 37:12
37:17 44:17
46:21 47:2
48:22 50:12
52:13 53:16
57:3,3,9 63:7,7
63:15 66:2,2
67:16,16 69:17
69:24 70:20,21
70:21,23 72:1
72:2
**claims** 31:11
36:15 37:8,25
44:5,16 46:10
46:13 50:5
53:2,15,15,17
54:5 56:25
69:12
**clarification**
74:7
**clarify** 23:19
29:1
**class** 47:7,15
50:14,15 54:9
**clear** 9:1 33:9
48:25 53:14
65:6 66:17
69:11 71:8
**clear-as-day**
65:24
**clearing** 51:14
**clearly** 21:6
31:13 66:14,25
**clips** 58:20,22
59:4,13
**closed** 43:24
**closing** 55:5
61:1 70:10
73:13 74:22
**clumped** 63:5
**co-worker** 50:8
**COL** 33:4

Coleen 76:8,13
colleague 49:17
  64:16
colleagues 26:18
  27:20
College 26:10
  27:17 49:7,23
  50:25
colloquial 52:2
combination
  45:20
come 13:18,22
  13:23 14:1
  29:11 62:15
  65:2
comes 11:20
  16:9
coming 13:24,25
  17:14 32:25
  33:7,10
commensurate
  9:1
comment 44:20
  44:22 45:2,10
  45:21 46:5
  50:6,7 52:18
  55:2,14,15,22
  55:22
commented
  45:17
comments 8:16
  19:18 45:22
  46:1 52:17
Commission
  36:4,20
communicate
  40:3,8,12,16
  40:20
communication
  18:8,15 30:13
  30:19
communicatio...
  40:9,13,17,21
Community
  49:23
Company 1:19
  45:5
comparable

18:17 50:20
comparator
  50:19
compared 17:4
  25:7
compares 50:17
comparing
  33:19
Compensation
  18:3
compensatories
  69:24
compensatory
  69:7,10 73:10
competing
  74:10
complainant
  11:16 12:6,16
  15:14 16:1,4
  38:18
complainant's
  11:9
complained 5:4
complaining
  11:8 13:25
  23:21
complains 11:20
complaint 4:23
  9:4,8,11,13
  10:6,11,12
  11:5,10,12,13
  11:24 12:8
  14:9,10 16:9
  16:21 19:21
  21:7 22:17
  23:16 34:9
  36:19 38:7,8
  38:11 40:5
  57:10
complaints 4:9
  4:11 11:4
  13:19 22:9
  23:8,10,13
  24:8 25:12,13
  31:8 36:3,25
  55:1 56:13
complete 52:6
completeness

9:16
compliance 3:25
  4:1,19 18:11
complies 10:25
  15:2 20:17
Computer 6:6
  26:12 49:6
concentrate
  33:24 63:19
concept 54:9
concern 24:13
  24:23 26:16,17
  27:18,19
concerned 13:9
  14:5
concerning
  17:24 22:9
  29:10
concerns 5:1
  9:22 10:8,10
  12:5 23:23,24
  24:12,15 26:19
  27:2,4,10,23
  29:10
concluded 39:25
  43:18 45:20
  75:9
concluding
  65:14
conclusion
  29:11,12 39:21
  39:24 69:5
conduct 11:17
  31:10 38:1
  50:22,24 51:16
  51:16 52:4
  55:17
conducted 10:17
  39:18
confer 53:8
  68:14 72:8
conference 2:10
  7:19
conferences
  7:23
confers 41:17
confidential
  13:6 14:24

confidentiality
  13:10
confirming
  30:16
confrontational
  32:25
confusing 66:9
  69:1
consequences
  14:8
consider 42:13
consideration
  54:22 60:13
consistently
  48:7
Console 1:12,13
constitute 45:4,6
  51:20
constitutes
  54:23
contact 29:21
contacting 13:6
  14:20
contacts 13:1
contemporane...
  55:20
contends 50:10
content 8:21
  40:9,12,16,20
contention 50:7
context 19:1
  23:24 59:25
continuation
  28:9
continue 30:2
continues 5:12
continuing 36:8
contract 32:6
  33:16,21,22
contradicted
  54:11
contradiction
  43:7
contrast 62:14
contrasts 51:9
conversation
  13:7 14:24
  24:10 28:8,16

28:25 29:5
  30:17
conversations
  23:9 37:21
coordinator
  12:10,13 15:19
copied 35:5
copy 32:21
correct 3:22 4:6
  4:9,21,24 5:3
  5:24,25 6:15
  7:3,20 8:11,17
  8:24 9:14
  11:15 13:3
  15:9,12 17:6
  17:19,22 19:8
  19:16,23 20:1
  20:7 21:8 22:6
  23:22,25 24:15
  25:9,10,14,22
  25:23 26:15
  28:3,9,14,15
  28:20 29:1
  30:6 31:1,8,12
  32:7,8 34:18
  35:7,12,13,25
  36:1 37:1,10
  37:25 38:22
  39:5 58:17
  76:2
correctly 6:10
Cost 8:10
counsel 41:17
  42:1 60:11,22
  74:4
Counsel's 13:2
course 7:11
  69:20
courses 4:13
court 1:1,18 3:4
  3:7,10,14,16
  5:19 20:3
  24:17 26:1,5
  31:25 35:20
  37:14 39:11
  41:1,3,7,9,13
  41:18,22 42:24
  43:2,4,8,10,12

43:16,19 45:20
52:9,10,22,25
53:3,7,11,18
53:21,23 54:1
55:8 56:11,23
57:17,19,23
58:3,6,9,16,18
58:23,25 59:16
59:22 60:5,7
60:10,15,21
61:1,6,10,13
61:19,24 62:4
62:8,18,20
63:3,9,19,22
64:1,4,14 65:7
65:21 66:19,22
67:1,3,6,7,11
67:20 68:2,4
68:10,13,24
69:19,22 70:1
70:5,7,14,24
71:2,19,21,23
71:25 72:3,7,9
72:14,17,19,22
72:24 73:1,3,8
73:21,24 74:1
74:4,9,12,15
74:18,23 75:1
75:6,7 76:14
**Court's** 39:9
45:25
**Courts** 64:12
67:24
**cover** 27:25
**coverage** 32:6
**covered** 28:1
33:22
**credit** 4:14
**criminal** 64:19
**criticisms** 28:23
33:6,7
**cross** 2:2 3:6
**cross-examina...**
39:11 41:25
60:11
**Crumpton** 52:9
**cultural** 7:1
**current** 8:8 27:2

**currently** 3:22
**cut** 71:6
**cuts** 41:12

### D

**D-24** 49:21
**D-34** 49:18,21
**damages** 68:24
69:10,14 70:13
70:14,17,22
71:2 72:14
73:10,11,20,21
**date** 10:7 28:12
**dated** 5:11 14:15
16:17 22:19,20
29:22 35:14
**dates** 5:15
**day** 1:9 14:2
19:4 21:19
34:23 35:2
36:7
**days** 33:1,11,15
55:25
**dean** 9:24 11:21
**dean's** 6:13 7:9
8:9,10 19:4
22:24 24:4
**Dear** 16:20
**decide** 12:16
61:2 65:16
**decided** 58:12
66:14
**decision** 45:9,25
46:18 57:13,13
57:15 65:18,19
65:23 66:20
**decision-maker**
45:8
**defendant** 1:15
43:24 45:19
52:12 70:12
71:12,13,16
73:5
**defendant's** 2:7
2:8 49:9 52:12
62:14 63:22
**Defendants** 1:7
**defense** 22:23

58:11 60:19
61:20 63:19
**defer** 57:24
**deficiencies**
48:19
**defined** 9:1
**Definitely** 63:13
**Deirdre** 19:15
21:24 24:8,11
25:21 26:9
27:12,15 28:13
29:20,23 30:15
34:3 40:20
**demeaning** 6:18
**denied** 55:7
61:10,13
**denying** 73:22
**department**
3:25 6:6,9 7:6
18:7 26:12
33:2 49:6
**deposition** 41:7
41:20,23 51:7
58:13 59:23
60:10
**deputy** 58:2
**description** 8:8
16:22
**desperately**
22:21
**details** 30:4 70:2
**determinative**
64:3,6,7,13
65:3,4
**determine** 16:7
**determined** 14:1
**development**
16:22 28:22
**DeVry** 48:2
**difference** 40:5
46:4 65:6,10
**differences** 7:1
**different** 21:5
63:6,8 69:14
69:14
**differentiating**
50:23 51:14
**differently**

12:11
**difficult** 14:21
**difficulty** 7:1
**DiMeo** 32:10,14
32:15 33:4,7,8
40:16 57:16
**diminished**
33:25
**direct** 2:2 3:17
25:15 44:21
45:4,6,11,23
46:9
**directed** 11:4
30:15 44:13
61:12
**direction** 11:9
12:6 29:13
38:18
**directly** 51:13
**Director** 3:24
4:2
**disagreement**
61:17
**disappeared**
55:25
**discharge** 47:21
68:9
**discharged**
48:18
**discipline** 7:10
33:19 34:4
**disciplined**
32:13 33:5,10
48:18 50:8
**discrepancy**
18:10,14,19
23:21
**discretion** 11:7
**discriminate**
42:18
**discriminated**
10:5 67:22
**discrimination**
4:10,12,23 5:2
5:4 9:4,8,10,13
10:21 11:2,8
12:12 13:19
21:7 23:8,13

23:17 25:5
31:8,12,13,14
34:9 37:1,9
40:1 42:7,14
44:5,6,16,18
44:18,22 45:3
45:11 46:7,10
46:20 47:2,11
47:16,16 48:22
48:24 50:4,5
50:12 52:8,13
52:19 53:15,16
54:6,6 55:9,10
57:11 62:17
63:7 65:10
72:2
**discriminatory**
55:15
**discuss** 13:7
30:21 61:14
**discussed** 10:7
12:3 30:24
51:15
**discussion** 30:8
30:20,22 35:6
**dismissed** 57:4
**disorderly** 52:4
**disparate** 13:7
46:21 55:3,24
**dispute** 47:14
**disruptive** 52:4
**Dist** 48:3 72:6
**distinguish**
50:24
**distinguishes**
51:17
**District** 1:1,1,10
47:4 48:3,5
**Diversity** 19:8
19:13
**document** 25:25
**documentation**
54:4
**documented**
70:9
**documents** 5:6
5:10 56:8,19
**doing** 21:21

33:25 56:15
62:20
**dollar** 17:1
**dollars** 17:12
**doubt** 6:24
**Douglas** 46:8,12
**Dr** 6:9,18,24 7:8
7:17,18,23 8:1
8:16 19:19
25:8 26:23
33:7,7 34:2,2
35:12,24 36:2
36:15,21,24
37:2,8,25 38:5
38:11 39:1,4
40:12 41:20
42:4 44:20,22
45:10 46:4
47:22,23 48:16
50:6 51:5,6,10
51:24 52:17
55:2,14,25
56:3,8,15
57:16
**Drew** 32:14,15
33:4,8 34:2
40:16
**drowning** 29:24
**duties** 8:21
56:15

—————
**E**
**E.D** 45:14 51:1
52:10
**e.g** 6:19 7:17
**earlier** 35:6
36:22 39:3,18
**easier** 12:23
29:16
**Eastern** 1:1 47:4
48:3,5
**editing** 8:21,21
**EEOC** 20:22
23:2
**effective** 49:7
54:20
**effort** 70:2
**either** 15:21

26:9 32:24
74:13
**elapsed** 46:1
**electronic** 1:23
76:3
**Electronically**
1:18
**element** 48:23
50:2
**elements** 47:6
47:18 63:6
**email** 12:22
13:15 14:12
15:7 16:15,17
17:6 19:1 20:5
20:12 21:7,21
21:23 22:15
23:20 24:3,25
25:21 26:22
27:12 28:8,12
29:24 30:5,9
35:4,5,10
37:16,18 49:3
51:12 56:18
**Email(s)** 2:13
**emails** 29:19
35:12 39:1
55:13 56:12,19
**employed** 3:22
38:10,20 40:7
40:11
**employee** 7:7
10:17,22 11:12
50:22 51:23,23
52:1,3 55:4
**employee's**
50:19,20
**employees** 13:18
**employer's**
50:24
**employment**
34:24 36:4,19
40:15,19 46:2
46:5,18 47:9
47:10 48:25
49:1,2 51:20
51:25 57:14

65:19 71:4,8
**engaged** 50:22
51:24 52:3
**English** 7:1
**ensure** 10:20
15:2 20:16
**entirety** 34:7
**entitled** 57:4
**environment**
15:24 54:7
63:17
**EOC** 23:1
**Equal** 3:24 4:1
18:10 36:3,19
**equivalent**
71:14
**Eric** 25:22 26:9
27:12,16 28:13
28:16 29:7
**especially** 26:11
55:21
**Esq** 1:11,12,12
1:15,15
**essentially** 50:5
54:12
**establish** 46:21
47:5,15,20
48:21 50:2,19
52:7
**establishes**
46:15
**Etezady** 12:24
13:2 20:16,25
21:10,19 37:18
57:12
**Etezady's** 14:13
**evaluation** 8:14
48:14
**evaluations**
26:18,21 27:19
54:13,14
**event** 14:25
**everybody**
55:20 61:19
**EVID** 2:11
**evidence** 5:20
32:1 35:21
38:22 44:9,12

44:13,17,21
45:4,6,6,11,24
46:8,9 48:17
51:2,23 52:7
54:25 55:8
56:3,7,18,20
57:1 70:9
71:22
**evidentiary** 44:4
**exact** 56:15
**EXAMINATI...**
3:17
**example** 11:21
15:18 54:11
62:17
**exceed** 73:13
**exception** 15:20
**excuse** 4:11
60:23
**excused** 41:2
43:21 61:3,5
**executive** 8:8
49:5 54:12
**exhibit** 2:11
5:14 13:13
14:14 49:9,18
49:21 54:19
**exhibits** 5:9
12:21 16:14
18:23 60:20
**exist** 15:25
**existence** 45:2
**expect** 14:11
**expects** 29:1
**experiencing**
25:8
**explain** 14:9
**extensive** 59:17
59:18 65:9
**extensively** 49:4
**extent** 50:10
71:17
**extraordinary**
32:5
**extremely** 20:19

—————
**F**
**F** 1:9,20

**F-o-e-h-l** 3:13
**F.2d** 72:5
**F.3d** 47:13
**F.3rd** 45:5
**F.Supp** 45:13
47:3 50:25
**F.Suupp** 52:10
**Facebook** 49:18
**faces** 45:19,21
**facie** 46:7,16
47:5,16,18
48:21,24 50:3
52:7,11 53:6
54:8
**facing** 69:7
**fact** 10:5 30:8
51:6 54:11
57:14
**factor** 64:3,7,7
64:13 65:3,4
**facts** 16:7 50:6
**faculty** 11:19
**failed** 33:2,2
52:1,5,11
71:15,16
**failing** 33:12
**failure** 51:10
**familiar** 42:5,9
46:11
**family** 22:22
57:7,8
**far** 38:20
**fat** 45:17
**favor** 55:3
**favorably** 50:11
50:14 52:16
**Fay** 22:1
**FBL** 46:24
**fearful** 13:24
**February** 13:1
14:15,16 19:1
21:6 22:20
24:6
**federal** 4:19
10:25 42:6
44:1
**feel** 64:10
**felt** 23:25 25:6

female 11:19
  56:5
Fendell 1:15
file 9:4 10:11,12
  11:5 22:16
  23:1 34:9,14
  34:15 38:6
filed 40:5
filing 9:7,10,12
  14:8
final 50:2 53:1
finally 47:9
  52:17,25
financial 33:25
  46:24
find 13:24 19:5
  24:25 27:13,16
  44:5,14 69:5
  69:18,25 70:20
  70:23
finding 64:23
fine 60:4 62:4
fired 49:19
first 3:12 5:11
  6:5 14:18 18:3
  18:12,25 32:4
  33:15 35:24
  36:14 47:6,19
  50:9 54:18
Five 17:12
floor 1:21 33:24
FMLA 9:18
Foehl 2:4,12,13
  3:6,9,13,19,20
  20:22 23:20
  39:15 40:7
  57:11,13
Foehl/Wu 2:13
folks 55:11
follow 16:3 27:8
  33:2 51:12
  62:2,11,16
follows 64:13
forced 54:23
foregoing 76:2
form 69:4 73:11
formal 10:11,12
  10:18,22 11:3

11:5,10 19:21
  38:7
formally 25:13
former 49:17
forth 39:1 46:11
  54:16
forward 11:10
  11:12,13,17,23
  12:10 13:18,22
  13:23,24 14:1
  15:8,9 16:9,10
  19:21 27:9,23
  38:13 55:6
forwarded 30:6
  35:5
four 36:11 47:6
fourth 5:8 47:17
frame 21:18
framework
  46:11,14,15
free 10:21
friend 49:17
friends 22:22
front 5:5 8:22
  64:18 70:11
  71:2,6,21
full 3:10 57:2
functions 8:16
  9:1
further 15:1
  29:13 39:7
  40:23 61:14
  73:16
FYI 35:6

——— G ———
G 1:12
Garling 76:7
gather 53:9
gender 40:2
  42:18 44:18,21
  45:9,11 46:12
  47:16 48:22,24
  50:4,12 53:15
  72:2,4
general 13:2
  70:7,8
generally 37:23

42:5
George 6:12
give 12:6 27:7
  36:5 38:12
  47:11 51:5
  52:19 53:19
  59:7 60:13,14
  69:19 71:19
given 11:7 29:8
  56:21 59:6
gives 6:24 7:17
giving 56:9 65:9
Glanzman 45:4
go 7:23 8:4,19
  11:5,9,12,13
  11:17,23 15:8
  15:9 16:10
  18:12,21,21
  19:15,20 20:6
  20:10 21:13,16
  21:19 22:11
  27:3 28:5
  33:23 35:23
  36:6 38:13
  39:1 43:19
  59:3 60:16,22
  61:22 62:16
  70:1,25
goes 7:18 30:4
  34:14
going 7:12 14:2
  16:12 34:12
  35:2 41:19,21
  53:19 57:24
  58:13,25 59:1
  59:12 60:23
  65:7,9,20 69:1
  69:2,6,13
  72:12
good 3:19 39:15
  54:14,16
granted 52:12
great 3:21 49:5
  61:16 70:2
Greg 6:13 7:10
  40:8
Gross 46:23
  66:20,25

ground 27:25
guarantee 13:10
guide 15:14
guides 38:17

——— H ———
Hailey 33:15,18
  50:8,10 55:3
  55:23
Hairston 48:4
half 41:5 55:23
Hamilton 20:22
  21:2
hand 3:7,8
handed 58:1,20
handle 4:9
handwritten
  2:12 5:11 25:5
  28:7
happen 63:14
happened 54:21
  54:22
happens 17:16
happy 14:23
harassed 19:3
  30:3
harassment
  4:10,12 12:8
  12:11 44:6,7
  55:18 70:19
hard 13:21
harm 15:21,24
Harris 1:15
  41:11,16 58:12
  58:17 59:9
  60:6,9,19
  63:12 73:17
  74:3 75:3
harshly 55:21
Haverford
  50:25
heading 19:10
Healthcare 47:3
hear 13:22
  53:11 54:2
  58:10
heard 14:2 17:1
  30:5 41:22

62:9
hearing 11:15
  11:16 16:4
heels 25:3
held 4:4 52:10
Hello 39:16
help 7:9,11,12
helpful 9:23
  12:4 27:21
helping 64:17
her,' 7:9
her.' 7:11
highest 48:8,13
highlighted
  41:20
hire 16:24 17:13
  17:14
history 6:14
  26:10,23 27:13
  27:16 28:3,14
hold 4:7
Honor 3:5,15
  5:16 19:22,24
  20:2 23:11
  24:19 25:25
  26:4 31:22
  35:17,19 37:11
  39:8,9 40:23
  40:25 41:4,10
  42:25 43:13,22
  44:20 45:12
  46:9 52:23
  53:9,13,22
  54:3 55:5,11
  56:17,25 58:1
  58:12,19 59:4
  59:12 60:2,4
  61:7,16 62:1,3
  62:9,10,16,22
  62:22 63:6,11
  63:25 64:14
  65:3,13 66:1,6
  66:12,13,16,18
  66:21 67:5,7
  67:12 68:1,7
  68:11,15,22
  69:9 70:3,17
  70:25 71:3,11

72:5,12,16,21
73:4,17,18
74:2,3,6 75:4
**HONORABLE**
1:9
**hopefully** 73:12
**hoping** 63:12
**hostile** 15:24
54:6 63:17
**hostilities** 19:19
**hostility** 25:8
**hotel** 7:18 52:2
**hours** 51:10
**HP** 28:17
**HR** 9:22 19:15
24:8 28:17,19
**human** 9:22
18:3,12,16
19:7 27:23
28:19,20 29:7
30:15 46:13
**hundred** 17:12
**hurricane** 51:3

———————
**I**
**idea** 35:1
**IDENT** 2:11
**identified** 50:13
52:1,15
**immaterial**
51:21
**important** 42:14
42:15
**imposed** 73:5
**inappropriate**
11:22
**incident** 51:6
**included** 69:10
71:9
**including** 48:2
**inconsistent**
65:4
**increase** 16:25
17:3,9
**INDEX** 2:1
**indicate** 30:20
**indicated** 38:1
43:23

**individual** 11:4
12:9,16 15:16
15:22 16:10
18:2 33:18
**individual's**
27:4
**individuals** 27:5
42:7
**indulgence**
39:10
**inference** 45:3,7
45:23 47:11
50:3 52:19
**informal** 11:3
**information** 6:7
10:3 17:21
26:12,14 27:7
27:20 30:16
34:14,23 49:6
**infraction** 50:21
**initial** 3:13 8:20
24:10
**initials** 10:2
**initiated** 38:7
**inquiry** 28:4
**inserted** 70:16
**insisted** 49:20
**instances** 15:15
**Institutional**
19:8,12
**instructed** 68:7
**instruction** 7:8
62:23 64:13
65:5,14 68:22
68:23 69:9
73:19
**instructions**
15:17 62:11,15
62:24,25 63:1
66:24
**insubordination**
7:6
**insufficient** 44:9
44:17
**intake** 23:2
**intention** 67:25
**intentionally**
33:1,11

**interaction**
24:11,22
**interesting**
73:11
**Interim** 9:23
**internally** 23:2
**interrogatory**
70:12
**interview** 49:24
**interviewed**
49:23
**introduced** 70:3
**introduction**
60:19
**investigate** 15:1
15:9 16:6,8,11
17:24 18:1,18
25:12 27:3
38:7
**investigation**
10:6,9,13,15
10:17,18 11:14
11:17,24,25
14:3,10 16:1
25:13,16 27:7
31:10 36:18
38:2,13 39:18
39:22
**involving** 5:2
**isolated** 45:10
**issue** 17:24 18:2
18:13 19:14
31:15 37:20
49:19 66:14
71:23
**issues** 18:4 29:6
30:14,14,14
59:13
**IX** 12:10,13
15:18

———————
**J**
**J** 76:7
**January** 51:18
51:19
**JDR** 1:19
**job** 4:9 8:8,21
9:2 16:21 19:5

47:22,23 56:15
71:5,8
**John** 1:20
**Jones** 47:12
**judge** 1:10 13:21
45:14
**judgment** 2:7,8
2:9 43:14,25
44:3,10 52:12
57:4 61:8
64:15 67:9
71:9
**Judy** 7:7
**July** 1:5 4:25
5:11,24 26:7
45:1 48:10
49:10,14 50:1
51:7 76:12
**jury** 1:10 3:3
5:22 30:5
43:16,19,20,21
44:4,14 56:12
57:22 58:8,9
60:7,23,23
61:3,5 62:11
62:14 65:5
66:9,24 68:7
68:23 69:1,4
69:13 70:20
71:25 73:19

———————
**K**
**keenly** 70:20
**keep** 14:24
34:14
**KELLY** 1:9
**Kennedy** 1:20
**key** 62:23
**King** 33:15,18
33:21 50:8,10
50:12,18 55:3
55:23
**King's** 51:3,9,16
**Klein** 9:24
**knew** 18:6 38:20
**know** 12:13 14:8
16:4 18:16
21:3 24:5

27:24 29:23
32:11,22 34:19
34:20 41:12
42:8 53:18
54:9 58:3 59:7
62:15 63:3
69:2,17 70:5
74:20,21
**knowing** 27:21
**knowledge** 76:5
**known** 21:3
**knows** 63:6

———————
**L**
**language** 65:2,5
66:6 70:16
73:5
**late** 32:9,13,15
32:25 33:11
51:10
**lateness** 51:19
**Laura** 1:11
**law** 1:13 15:3
20:17 43:14,25
44:10 57:5
61:8 64:5 65:4
66:13 67:19,25
71:5,9
**laws** 4:20 42:6
**lead** 69:4
**leads** 56:2
**learning** 28:17
28:18,22
**leave** 57:7,8,9
**led** 51:25 68:9
**left** 3:8 34:16
**legal** 4:13,15,16
**legalese** 66:9
**legally** 44:4
**legitimate** 46:17
48:19
**lengthy** 53:2
**Lennon** 7:7
**let's** 5:5,22 11:9
16:13 18:21
21:13 22:4,11
24:7,14 25:19
28:5 31:16

33:23 35:23 63:19
**letter** 54:19,21
**level** 8:5 16:24
**Lexis** 48:3 72:6
**life** 30:1,2
**likewise** 46:25
**limited** 20:19
**line** 14:18 48:11 48:12,12 49:15 49:15,15 50:1 51:8,8
**lines** 45:1 48:11 48:12 49:11 59:2
**liquidated** 70:14 70:17,22
**literally** 44:11
**little** 13:21 20:13 59:25 62:12
**LITTLER** 1:16
**live** 41:4
**LLC** 1:13 47:3
**LLC./** 1:19
**loan** 6:13
**local** 11:1
**location** 33:24
**Locust** 1:13
**lodge** 65:14
**logical** 67:25
**long** 58:25
**longer** 53:7
**look** 5:5 12:19 14:12 16:13 18:11,16,17 24:14 25:19 31:16 35:8 41:15 55:23
**looked** 23:19,20 24:1 26:7 28:13 34:13 35:4 71:4
**looking** 20:12 26:14 28:10 59:2 61:20 71:7,7
**lost** 70:2

**lot** 30:5
**low** 48:8
**low-paid** 24:2
**lower** 8:6 18:6
**ludicrous** 67:18
**Luncheon** 3:2

**M**
**making** 13:14 17:15 24:9 53:14 74:15
**male** 11:20 56:22
**males** 18:6 25:7
**Management** 45:5
**manager** 42:6 42:10
**managers** 22:24
**March** 29:22 30:6 35:4
**mark** 33:21
**Market** 1:4
**Mary** 7:17
**massages** 11:23
**matter** 14:21 43:14,25 44:10 57:5 61:8 71:9 76:4
**matters** 34:10 60:22
**Mattiacci** 1:11 1:13 3:5,15,18 5:16,21 20:1,4 20:10,11 21:13 21:14 22:11,12 23:14,18 24:18 24:20 25:1,2 25:19,20,24 26:2,6 28:5,6 29:14,15 31:17 31:18,22 32:2 35:8,9,17,22 37:13,15 38:21 38:24 39:7 40:25 41:4,8 41:14,19 42:3 43:6,9 58:19

59:1,6,12,18 59:21,24 60:2 60:4 61:16,22 62:1,5,10,19 63:11,13,21,24 64:2,6 65:13 66:12,25 67:18 67:21 68:6,15 68:19,21,25 69:16,21,23 70:3,6,8,15 71:11,20,22,24 72:15,18,21 73:4,18,22,25 74:6,10,14,16 74:20,24 75:4
**maximum** 16:23 17:5,13
**McDonnell** 46:8 46:11
**mean** 11:14 23:20 28:17 30:22 33:17 35:14 56:24 65:20 70:5,9 74:9
**meaning** 32:6
**means** 33:21
**mediation** 21:25
**Medical** 57:8,8
**meet** 7:18 39:2 45:23 71:16
**meeting** 5:23 6:2 22:4 30:25 31:3,5,7,16,20 32:3 33:11 34:1,2,8,16,17 34:18,20,21 35:1 39:2,4
**meetings** 11:21 33:1 55:12
**member** 11:20 47:6,14
**members** 17:2 60:7
**memo** 24:1 71:10
**memory** 36:17

**men** 24:3
**MENDELSON** 1:16
**mere** 44:9
**met** 37:2 39:3 54:24
**Metropolitan** 45:4
**Michael** 9:24
**Mid-Atlantic** 47:3
**middle** 3:13
**midrange** 17:17
**Miller** 66:16
**mind** 69:20
**minimum** 17:5
**minute** 39:10 58:20,22
**minutes** 36:5 53:10 57:18 59:2 73:13,14
**misconduct** 51:24,25
**misleading** 64:8
**misstates** 23:11
**mistake** 63:18
**mistakes** 47:24
**mitigating** 50:23 51:14
**mitigation** 71:13
**model** 62:2,2,12 62:12 63:15 64:2 65:5 66:23 68:23
**modification** 62:13
**modifications** 62:6,8
**moment** 66:7
**Monday** 29:21
**money** 17:15
**months** 33:15 36:11
**morning** 31:4,5 45:1 49:25 60:25 61:4 73:12 74:17 75:2

**motion** 2:7,8,9 43:14 44:13 53:14 55:6 61:8,9,11 64:16 67:9 71:17 73:23
**mountain** 66:13
**move** 5:16 16:12 25:24 31:22 35:17 38:17 43:25 55:6
**Multicultural** 19:10
**municipal** 4:19
**Munshi** 1:12 43:11 54:3 55:10 56:12 59:7 61:11 66:16,23 67:2

**N**
**name** 3:10,12,13
**necessarily** 16:3 30:22
**need** 11:4 15:16 15:18 22:22 27:25 36:4 53:3 58:22 66:7 69:2,13 69:16
**needed** 10:12,14 27:24,24
**needs** 45:18 70:20
**negative** 45:8
**Nelson** 48:2
**never** 4:13 19:25 28:24 43:7
**new** 9:23 16:24 17:13,14 34:10 43:10 45:19 64:10
**nine** 54:12 74:5 75:1
**nominal** 72:14 73:10
**non** 8:7
**non-** 52:15

non-bargaining 17:1
non-discrimin... 46:17
North 45:13
note 5:12 18:8 26:7
noted 29:2
notes 2:12,13 5:11,15 7:5,25 8:4,19 9:16,21 25:5 28:7,9,11 28:16 31:16,19 32:3 34:4,7,13
notify 51:10
number 48:1 53:2 63:23 68:24
numerous 29:25

**O**

o'clock 31:3,6 74:5 75:1
oath 41:24 60:10
object 61:21 68:21,25 70:15 73:4
objection 5:18 19:22,24 20:3 23:11 26:4 31:24 35:19 37:11 41:10,11 63:24 65:14 72:15,18,21
objections 58:21 59:22 68:4
obligated 12:9
obligation 10:20 10:24 15:1 16:6 20:16
occurred 51:3
offered 49:13 62:25 63:1
offering 22:6
office 4:1 8:9,10 8:22 13:2 18:11 19:4,8 19:10 21:22

22:2,24 24:4 30:16 38:17
Office.' 6:13 7:10
OFFICER 3:7 3:10 57:19 75:7
official 38:4,12
oh 29:19 34:2 42:15 43:8,12 53:1 62:19 72:19
okay 3:21 4:3 5:5,8,16,22 6:17 8:2,4 9:12 9:21 10:3,9 11:11 12:15 13:17 14:12 16:8,12,15,19 17:17,21 19:1 19:11,14 20:9 21:5,12,15,18 23:6 24:6,25 28:2,5,20 29:19 30:25 31:7,16 33:23 34:12,16,25 35:16,23 36:11 36:21 37:13,23 38:21,25 41:9 43:8 52:22 60:5 62:1,3,5 62:19 63:21 67:6 68:19 69:19 73:22,25 74:14,16,20,24
old 55:23
older 56:4,5
one-thousand- 16:25
one-time 16:25
ones 34:13 59:9
ongoing 30:17
open 60:14
operations.' 8:23
Operator 1:18
opportunity

3:24 4:1 18:10 36:4,19 44:21
options 10:8 12:3,5 22:3,6
order 10:12
outline 56:25
outright 55:7
outside 50:15
oversee 8:22
overslept 32:10

**P**

P 18:21
P- 18:21
P-10 18:24,25 19:1
P-12 20:10
P-13 12:19,22
P-14 21:13,16 21:18
P-34 22:11,13
P-38 29:14,19
P-4 2:12 5:17,20 28:5,10
P-44 2:13 31:17 31:23 32:1
P-55 2:13 35:8 35:18,21 38:22
P-6 25:1,3,19 26:3
P-7 16:13,15 18:21
p.m 1:9 3:2 48:10 51:7 57:20,21 60:17 60:18 75:9
Pa 51:1 52:10
page 2:6 5:11,12 5:13 28:10 41:6 45:1 48:10,11,11,12 48:12 49:11,15 49:15 50:1 51:8,8
pages 5:10 59:5
paid 8:5,9 24:4
Palladino 6:12
paper 29:18

papers 8:21
paragraph 6:5 6:17 20:20
Pardon 66:19
part 14:9,18 20:15 33:23 39:21 57:16 58:4 63:10 68:16 74:22
Participants 53:8 68:14 72:8
particular 20:5 36:2 58:22
particularly 14:7
parties 42:2
parts 10:24 41:21,21 68:22
party 44:12,15
pasture 44:24 55:16
Pause 7:15 39:12 58:24 59:11,15,20 60:1,3 68:3,5 72:23,25 73:2 73:7
pay 18:10,14,19 23:21 70:1,11 70:11,11 71:2 71:6,21
PC 1:16
PDP 8:14 9:1,22
PDPs 8:15 28:23
Pennsylvania 1:1,5,14,17,21 45:14 46:13 47:12
pension 45:17
people 19:4 26:24 42:17,18 57:11
performance 8:14 16:22 26:17,20 27:19 28:23 48:8,14 48:18 54:13,14

period 21:5 55:17
permitted 74:21
person 11:7 16:9 36:6 41:24 56:4 57:10 67:22
personal 30:1
Personnel 1:18
perspective 11:15
pertinent 45:25
Philadelphia 1:5 1:14,17,21 49:23
phone 23:2 28:16 36:6 51:14
PHRA 47:2 69:17,18,23,24
physical 15:21 15:23
place 3:8 26:20 30:23 45:8
placement 6:12
plaintiff 1:3,11 2:3 3:5,9 43:24 45:15,18 51:22 52:11,13 58:10 60:14 62:24,25 63:1 64:15,23 64:24 66:2 67:15 70:21,23 71:15 73:14
plaintiff's 2:9 5:6 45:9 52:13 54:19 61:23 62:1,11,23 66:11
plan 16:22 69:19
planned 45:16
planner 7:19
plans 23:1
play 58:13 60:5
played 57:13,13 60:17
please 3:7,10 13:10 18:2

29:21 36:7
41:16 43:1,20
54:1 61:19
72:7
point 10:7,11
16:2 22:25
23:8 25:11
29:11 36:11
52:9 53:1
58:11 60:21
63:9,23 71:16
pointed 24:1
points 61:6,14
61:17,20,23
63:20
policies 42:11,13
policy 10:16
11:11 15:11,13
40:1 47:25
portions 41:20
47:23
position 4:4,7
7:11 8:6 17:14
17:18 38:14
47:8,20,21
48:1,2,21 49:5
54:10,12,15
68:12 72:5
positions 71:14
possible 67:21
postoperative
9:18
posts 49:18
Potter 52:9
power 51:4
practice 40:4
pre-Gross 66:18
precedent 65:24
66:15
prefer 61:22
64:2
premised 50:6
presence 42:1,1
60:11,23
present 3:3
57:22 58:8
71:13
presented 51:2

51:22 56:18,19
62:24 71:20
President 19:9
presumption
45:3,7,23
pretense 46:20
pretty 59:18
prevail 47:1
48:22 67:16
previous 8:15
28:23
previously 21:3
34:13
PRHA 44:19
prima 46:6,16
47:5,15,18
48:21,23 50:3
52:7,11 53:6
54:8
Prior 37:23
private 11:21
proactive 22:23
probably 45:17
53:10 74:18
problem 18:19
62:23
Problems 6:18
procedure 33:3
38:16,17 44:2
procedures 11:3
48:20
proceed 3:14
10:14 12:18
44:10
proceedings
1:23 3:2 7:15
39:12 57:21
58:24 59:11,15
59:20 60:1,3
68:3,5 72:23
72:25 73:2,7
75:8 76:4
process 74:15
produced 1:24
professor 52:2
prohibiting 11:1
40:1
promise 14:25

prompt 22:2
proofreading
33:25
proper 46:19
proposed 62:11
62:14 63:22
proposition
66:11 71:6
protect 42:6
protected 47:7
47:15 50:14,15
52:16 54:9
protection 32:7
protocol 51:12
prove 45:2,7
46:6,19,22,25
47:6 48:23
50:3
proved 65:17
provide 11:3
22:2 66:13
proving 71:12
PRRA 46:22
pull 64:17
punitive 73:20
73:21
purported 52:17
pursuant 44:1
pursue 27:4
pushing 56:16
put 4:18 29:16
44:23 53:3,24
54:15 55:16
56:20 57:2
61:11 62:6
63:16
putting 64:10

**Q**

qualifications
17:22
qualified 47:7
47:19,20 48:20
54:10
quality 30:1
question 27:14
33:21 38:9
42:4 44:11

69:6
questions 39:7
39:17 40:24,25
45:21
quick 24:25
41:15
quite 32:13
33:20 53:2
74:12
quote 52:14

**R**

R 1:15
Rachel 1:15
Rahul 1:12
raise 3:7 14:25
18:2
raised 23:23
24:13 26:16,17
27:18,19 29:6
37:20
raising 30:14
Rand 76:8,13
range 16:24
rare 14:5 15:15
15:20
rate 8:6
rated 48:7
rating 28:24
48:8
RBS 45:13
reach 27:15
29:12 39:21
reached 22:25
27:20 28:13
29:24 32:17
reaching 45:9
read 6:10 13:14
13:16 32:21
41:19,21 72:12
73:8
read-in 41:5,7
reading 72:9
ready 27:9
real 24:25 41:15
reason 38:4
42:17 46:17,20
49:20 64:8,9

64:10,22 65:2
65:17,22,24,25
66:4 67:14,15
67:17 68:8
reasons 54:15
64:9 66:4,5
67:14,15 68:8
rebuttal 73:14
recall 17:6 24:1
32:12 37:17,20
55:11
receive 16:24
received 4:22
5:20 10:3 17:2
32:1 35:21
36:20 48:9,14
48:15 51:19
55:24
receiving 17:6
19:19 56:14
recess 3:2 57:18
57:20
recognition
29:20
recognize 5:10
16:15 18:24
31:19
recollection
33:9 36:17,23
recommend
20:21
recommendat...
28:24
record 3:11 7:25
36:17 41:21
48:25 53:4,25
57:2 58:5
61:12
recorded 1:18
1:23 9:15
recording 1:23
60:17 76:3
records 34:1
70:11
recourse 8:7
67:23
recoverable
69:10,14 70:18

70:18,19
**RECROSS** 2:2
**REDIRECT** 2:2
**refer** 22:1
**referencing** 67:8
**referring** 33:4
**refers** 20:25
21:2,10 32:11
55:14
**refresh** 36:17
**regard** 31:14
54:8,17 55:1,1
55:2,3,10
**regarding** 16:21
50:7 53:5 74:7
**regardless** 10:22
15:16
**regards** 5:23
23:9 24:8
26:22 28:22
30:9 34:3,8
**regulations** 11:1
**relate** 18:5
**related** 8:12,18
13:8 21:9
32:14 33:13
37:2
**relating** 33:5
34:10
**relations** 46:13
**relayed** 7:13
9:13,19 23:7
23:24 25:6,7
30:9 36:24
**relaying** 9:7
10:4 33:10
**relays** 31:7 34:8
**reliance** 45:8
**rely** 50:18
**remain** 47:25
**remarks** 6:25
**Remedy** 8:20
**remember**
30:23 31:13,13
33:6,18 40:4
**remote** 52:20
**rendered** 47:25
**renew** 61:7

**Renzoni** 76:7
**repeat** 27:14
**repeated** 47:24
48:19
**replied** 9:8
**reply** 13:11
**report** 12:10,14
26:20 27:4
**reported** 17:20
**reporting** 32:12
51:24 55:18
**reports** 27:9
**representing**
42:1
**request** 10:22
13:6 25:13
**requested** 6:2
9:18 21:25
52:6
**requesting**
11:21,22
**require** 60:22
**required** 45:3
47:18
**requirement**
45:24
**reservations**
52:2,2
**reserve** 73:14
**resign** 49:5,12
49:25
**resignation**
52:21 54:21,23
**resigned** 49:2,21
49:24
**resolution** 11:2
11:3
**resolving** 10:8
12:5
**resources** 9:22
12:4 18:3,12
18:16 19:7
27:24 28:19,20
29:7 30:15
**respect** 12:13
**respond** 29:23
**responders** 18:4
**response** 14:13

19:14 27:10
28:8
**responses** 70:12
**responsibilities**
56:20
**responsibility**
14:9 56:9
57:15
**rest** 9:16 60:20
**rested** 58:10
**result** 51:5
67:18,25 74:8
**resume** 3:2
57:21
**retaliated** 57:6,7
67:23
**retaliation**
10:21 13:9,19
13:25 14:6,7
15:4,25 21:7
37:9,12,17,21
44:6 53:16
54:6 57:3 63:4
63:7,15,16
64:24 66:2
67:16 72:4
73:3
**retire** 45:17
**retirement**
43:20 45:21
52:18
**return** 8:20
**review** 36:5
37:16 57:1
58:21
**reviews** 5:9,14
12:21 13:13
14:14 16:14
18:23
**Rhonda** 19:2,7
**Rhonda's** 19:9
**Richard** 1:15
**right** 3:7,8,14,16
12:19 14:12
17:8 18:24
19:5 21:1
22:11 25:9
26:5 30:23

32:3 41:3,13
42:2,24 57:17
58:6,18,20,23
60:16,21 61:10
62:4 64:17,17
65:11 67:4
68:2,10 70:1
70:24 72:3
73:8,24 74:4
74:12,24 75:1
**right-hand** 32:5
**rights** 4:20
**rigorous** 45:23
**rise** 47:11 52:19
57:19 75:7
**ROBERT** 1:9
**Robreno** 45:14
**role** 57:13
**room** 43:20
**rule** 43:14 44:1
44:8 61:8,12
64:3
**rules** 44:1 62:2,3
62:12,12
**ruling** 57:24
**rumors** 49:19
**Runyon** 48:4
**Ruth** 1:2 4:23
6:3 12:24
13:11 16:17
19:6 21:4
22:15 25:16
26:10,14 28:14
28:22 30:13
33:24 36:2
**Ruth's** 34:1,2

**S**

**S-a-n-d-r-a** 3:12
**sadness** 49:5
**salaries** 18:17
**salary** 8:5,5 9:1
9:22 16:23,23
16:25 17:2,4,9
17:25 18:2,4,6
18:12 19:14
23:23 24:2,13
24:15,24 26:16

26:20 27:18
31:15
**Sandra** 2:4 3:9
3:12 57:11
**Sandy** 3:6 16:20
20:21 21:23
**sat** 25:4
**Satinsky** 1:15
5:18 19:22,24
20:2 23:11,16
26:4 31:24
35:19 37:11
38:23 39:9,14
40:23 41:10
42:25 43:13,17
43:22 52:23
53:1,9,13,20
53:22,24 56:17
56:24 58:1,4,7
59:4 61:7 62:9
62:22 63:4
64:14 66:1,18
66:20 67:4,7
67:12 68:1,11
68:18,20 69:9
70:17,25 71:3
72:1,4,11 74:2
75:5
**satisfied** 29:9
74:12
**satisfies** 53:5
**saying** 7:22
10:16 11:22,24
14:4 15:7 33:9
33:19 34:25
38:3 62:10
**says** 5:6 6:2,5,11
6:17,18,23 9:5
10:18 13:5
14:19,22 16:10
16:19 20:16,20
21:20 22:20
28:2,2 30:19
32:4,9,10,17
33:14,25 64:3
64:20 65:15
67:12 71:6
**scared** 9:6,9,11

9:14,15 11:23
13:18 25:6
**schedule** 22:16
**scheduled** 33:1
33:11
**scheduling** 39:2
**Science** 26:10
27:17 49:7
**Sciences** 6:7
26:12 49:7
**scintilla** 44:9
**score** 48:14,15
48:16
**screen** 26:1
29:16
**seated** 58:9
**second** 5:12
29:20 47:7,17
**Secretary** 7:6
**section** 73:8
**secured** 71:5,8
**see** 6:21 12:22
12:24 13:12
15:5 17:8,9,11
19:15 20:6,23
21:15 22:13,18
23:4 29:17
32:19,22,24
34:5,6 35:10
36:9 38:25
42:25 45:4
58:21,22
**seen** 18:25 56:13
**send** 7:9 26:22
32:10 43:16
51:12
**sending** 16:17
**sends** 19:2
**senior** 11:20
**sent** 25:21 49:3
55:13
**sentence** 54:20
**separation**
49:20
**September** 6:8
16:17
**series** 29:19
38:25

**seriousness**
50:21
**service** 1:24 9:2
**Services** 46:24
**session** 1:9 3:1
48:10 49:10,14
50:1 51:8
**set** 22:4 46:11
62:11,25 63:1
69:4
**settled** 66:14
**seven** 59:5
**severely** 50:9
**sex** 4:23 5:2
15:23,25 19:18
23:8,13 31:8
31:11,14 34:9
37:1 44:6 54:6
55:15
**sex-based** 18:10
18:14,19 23:21
44:7
**sexual** 11:22
12:8,11 15:17
15:23
**share** 26:13
**shared** 15:21
**sheet** 61:18 74:7
**sheets** 74:11
**shift** 46:16
**shifts** 46:18
**short** 17:18 41:5
41:14
**show** 5:22 47:6
47:7,8,9,17
48:20 54:25
55:8 56:20
70:2
**showed** 49:18
**shows** 48:17
55:21
**side** 11:16 16:4
16:5 32:5
32:12 54:2
**sidebar** 43:1,3
43:18,23 59:16
**sides** 60:12
**signature** 10:1

**similar** 26:22
30:12,14 51:24
**similarly** 52:15
**Simply** 51:22
**Sincerely** 13:11
**single** 45:2 46:5
**sit** 61:19 62:3,20
**sits** 34:1,1,2
**sitting** 72:9
**situated** 52:15
**situation** 12:1
22:21 50:17
**six** 33:15 59:4,5
**skip** 21:15
**small** 17:2 41:20
**sole** 64:9 65:22
65:23,25 66:12
66:13 68:8
**somebody** 14:5
50:15
**son** 9:18
**Soon** 24:10
**sorry** 21:15
24:18,18 33:8
58:19 63:11
74:6
**sound** 1:23 76:3
**sources** 62:15
**Southeastern**
47:12
**speak** 14:23
20:21 24:7
38:5,11 51:13
62:3
**speaker** 52:3
**speaking** 37:8
49:17
**specific** 10:22
55:14 69:3
70:10
**specifically** 5:2
10:18 11:13
31:11 56:6
65:21
**specification**
62:13
**specifications**
62:7

**spell** 29:14
**spent** 47:23
**spoke** 16:21
23:7 61:24
**spoken** 21:4
37:24
**staff** 17:2 56:14
**stand** 3:6
**standard** 32:4
44:8 54:24
64:16 71:12
**standards** 63:8
64:25,25 65:6
66:3
**start** 24:7 60:25
60:25 63:22
71:7 72:19
**started** 36:18
**state** 3:10 4:19
11:1 37:23
42:6
**state's** 54:20
**stated** 49:4
51:22
**statement** 38:4
38:12
**States** 1:1,10
36:3 67:10,24
**status** 16:20
**statute** 69:3
**statutes** 69:15
**stemming** 55:22
**stenographer**
41:24
**step** 41:1
**Stephen** 1:12
**stick** 64:2,4
**stop** 54:1 63:9
71:7 72:7
**story** 11:16 16:4
16:5
**Street** 1:4,13,16
**strong** 65:14
**struck** 65:3
**structure** 51:24
**student** 7:17,23
7:25 32:17
56:13

**students** 42:21
42:22 43:5
**stupid** 6:19
**subject** 29:21
41:25 60:11
**submit** 57:1
73:19
**submitted** 71:10
74:10
**substantial** 45:8
**substantially**
55:4 71:13
**suffer** 48:25
**suffered** 47:8
**sufficient** 29:9
44:4 68:23
**suggest** 36:7
**suggested** 31:14
**Suite** 1:16
**Summarize** 55:8
**summary** 52:12
64:15 67:8
**Summer** 4:22
**sun** 55:20
**super** 41:14
**supervising** 8:22
**supervisor**
22:23 28:25
29:10 45:16
**supervisors** 52:5
**support** 44:17
48:1 54:5
66:10 72:5,13
**supporting**
44:12
**supposed** 44:20
**Supreme** 64:14
67:7
**sure** 10:25 13:14
14:21 32:13
33:20 36:16
38:15 58:4
68:16 72:11,13
74:23
**surrounding**
47:10
**sustain** 50:11
**Sustained** 20:3

37:14
**SWORN** 3:9

---

**T**

**T-26** 8:5,6 16:24
**tab** 5:8
**take** 5:5 12:19
  15:14,16 16:13
  22:23 24:14
  25:19 31:16
  35:8 57:17
  58:22,25 59:2
  68:10,13
**takeaway** 29:5
**taken** 4:13 27:23
  41:23,23 54:17
  57:20 60:11
**talk** 4:25 22:4
  36:14
**talked** 36:21,24
**talks** 17:4 64:20
**target** 17:5,17
**technical** 8:6
**technology** 7:8
  26:11 27:17
  49:7
**tell** 10:14 11:17
  12:9 14:10
  19:4,20 24:14
  24:17 27:5,12
  27:15 28:4
  41:18 73:15
**telling** 38:13
**tells** 11:13
**Temple** 1:6 3:22
  4:18 10:20
  13:3 15:3,13
  15:24 21:19
  36:20 39:25
  40:8,11,15,19
  42:10,10 43:24
  44:3 46:16
  47:14 48:9
  49:19,24 55:12
  55:20 57:4
  65:17,18
**Temple's** 10:16
  11:11 15:11

47:25 48:19
**temporally**
  52:20
**temporary** 6:12
**ten** 31:3,5 57:18
**Tenth** 33:24
**tenure** 48:9
**terminated**
  34:22 35:2
  36:12 37:24
  49:1 54:18,21
**termination**
  46:23 47:1
  56:2 67:17
**terms** 4:15
  19:18 20:5
**testified** 19:25
  39:17 44:22
  47:21 49:4,12
  49:22 51:6
  55:19 57:5,6
  57:12,15 60:14
  71:4
**testify** 23:12
  37:12
**testimony** 23:12
  25:11 38:10
  44:25 54:4,16
  56:8,10 60:14
  71:8
**tests** 46:8
**Thank** 4:3 14:20
  36:7 41:1 42:3
  52:22 57:17
  58:7 60:4,6
  73:25 74:24
  75:3,4,5
**thing** 32:4 57:5
  65:8
**things** 6:18
  11:22 22:5
  55:19
**think** 14:1 24:16
  30:12 41:22
  43:17 59:12
  62:20 64:8
  65:1,11 66:7,8
  66:9 68:23,25

69:3,22 72:9
**thinking** 59:1
**third** 5:12 28:10
  47:8,17 62:2
  62:12 66:16,23
**thirty-year** 7:7
**thought** 18:9
  27:13 43:10
  52:25 63:3,9
  63:17 65:25
  73:19
**threat** 15:21
**three** 6:7 21:24
  33:15 46:6
  51:10 55:25
**time** 8:3 9:17
  18:1,20,25
  19:12 20:19
  21:5,18 22:9
  23:6,6 24:6,6
  25:11,15,17
  26:25 27:11
  30:12,24 31:9
  34:19,25 36:7
  36:14 40:7,11
  43:19 46:1,1,4
  47:21,23 52:6
  53:18 60:24
  61:20 73:15
**times** 29:25
  45:16 62:18
**tiny** 59:25
**title** 4:6 12:10
  12:13 15:18
  19:9 44:18
  46:14 62:25
  63:15 65:5,9
  69:11 70:19
  72:19 73:10,20
**today** 54:20
**told** 19:14 27:11
  29:3 34:24
  38:6 39:19
  45:18 49:12,24
  60:7
**tolerable** 22:22
**tolerate** 15:4
**tomorrow** 60:25

61:3 73:12
  74:17 75:1
**top** 6:2 29:20
**Trachtenberg**
  22:1
**Tracy** 20:22
  21:24
**transcript** 1:8
  1:24 48:10
  49:10 58:14,14
  72:12 76:3
**transcription**
  1:19,20,24
  76:15
**Transcription...**
  76:14
**Transcription...**
  76:7
**Transportation**
  47:13
**travel** 52:1
**treated** 12:11
  26:24 50:10,14
  50:15 52:16
**treating** 55:21
**treatment** 13:7
  37:3 46:21
  50:24 51:17
  55:2,3,24
**trial** 1:8 20:18
  44:17,25 48:6
  48:9,13 49:4,9
  49:18,22 51:2
  51:7 54:19
**tried** 22:21
**trigger** 18:9
**troubling** 65:8
**true** 4:4,13,18
  4:22 45:10
**trusting** 14:20
**try** 29:12
**turn** 5:8 29:14
  31:17
**twenty-five**
  17:12
**two** 5:10 10:24
  18:6 19:4
  22:24 24:3

50:6,7 53:17
  57:11 64:21
  71:14
**types** 42:7 69:14

---

**U**

**U.S** 36:19 46:12
  46:24 48:2
  67:10 72:5
**ultimate** 46:19
**Ultimately**
  65:16
**unable** 13:9
  38:11
**uncertain** 16:20
**unclear** 21:22
**uncomfortable**
  21:23
**undefined** 8:15
**underlined**
  68:16,20 73:9
**underpaid**
  17:25 23:25
  25:7
**understand** 27:6
  27:8 38:9
  47:22,22 53:20
  58:1 68:16
  69:13
**understanding**
  15:11,13
**understands**
  68:11
**undisputed**
  48:17 51:2
  65:24
**unexcused** 50:9
  51:3
**unfair** 33:20
**union** 8:7 32:6,7
  33:22
**unit** 8:7
**United** 1:1,10
  36:3 67:9,24
**university** 1:6
  10:25 12:4
  15:2 20:17
  36:20 40:1

43:24 49:2
65:18
**University's**
4:19 65:18
**unlawful** 4:11
11:1
**unprofessional**
52:5
**unqualified**
47:25
**unreasonably**
71:15
**unrelated** 52:20
**upgraded** 67:1
**Urgent** 29:21
**use** 74:21
**usual** 40:4

**V**

**v** 1:2 45:4,13
46:24 47:3,12
48:2,4 50:25
52:9 66:16
67:9
**vague** 45:10
**various** 8:16
54:5 55:11,12
62:15 69:12
**verbal** 51:5
**verbiage** 64:10
**verdict** 44:14
61:12,17 69:4
73:11 74:7,11
**Vice** 19:9
**victim** 11:8
**video** 58:14 60:8
60:17
**VII** 63:15 69:11
70:19 72:20
73:10,20
**violation** 39:25
43:10 48:19
**violations** 47:24
**visiting** 52:2
**voluminous**
54:4,25 56:3
**vs** 1:4

**W**

**Wacker** 6:13
7:10 34:18,21
40:8 49:13
57:16
**wages** 70:2
**waited** 29:13,25
29:25
**walked** 34:17,20
**Walton** 19:15
24:8,11,21,22
25:21 30:8,15
30:16,18,19
34:18,21 35:6
40:20 49:3,13
57:16
**want** 10:18
11:24 14:2,4
15:3,8 22:16
24:25 27:5,8
30:2 41:9,14
41:18 53:13
58:4 66:6
**wanted** 10:14
26:3 30:21
31:9 61:21
68:15 72:12
73:18 74:20
**wants** 8:20 12:6
14:8 34:9
**warning** 51:5,18
56:1,2
**wasn't** 26:2
37:18 72:11
**way** 13:25 26:23
65:11 69:4
**we'll** 57:18
58:10 73:12
**we're** 12:8 18:21
28:9 41:21
58:13 59:12
61:20 66:23
71:1
**We've** 54:13
**web** 8:21
**week** 20:19
21:22 35:6

**went** 9:11 54:14
55:11
**wholly** 52:20
71:16
**William** 76:7
**wish** 61:14
**wished** 38:6
**wishes** 11:5
**withdrew** 63:10
**witness** 2:2 3:9
3:12 5:9,14
12:21 13:13
14:14 16:14
18:23 19:24
23:12 37:11
41:2,23 42:8
57:12
**witness'** 23:12
**witnesses** 41:5
57:14 58:13
**WL** 48:5
**woman** 23:25
49:24 50:13,13
56:5
**women** 6:19
44:20,23 50:7
52:18 55:15
**wondering** 9:10
**word** 32:22,24
41:24,24
**words** 38:16
66:8
**work** 7:17 15:24
22:21 29:1
30:2 54:6,16
**worker** 7:17 8:1
32:18 56:11
**workers** 7:24
56:10,14,14
**working** 6:8
37:10
**workplace** 5:1
10:21 11:2
13:20 15:25
24:9 26:24
27:3 42:20
**works** 33:24
**worried** 57:6

**write** 20:15 26:8
**writes** 20:16
**Writeup** 7:6
**writing** 56:10
72:10
**written** 32:9,9
32:15 51:18
56:1,1,8 65:12
**wrong** 43:4
64:11
**wrongdoing**
49:20
**wrote** 5:22 7:16
8:13 9:3 55:20
**Wu** 6:9,18,24
7:17,18,23 8:1
19:19 25:8
26:23 33:7
34:2,2 35:12
35:24 36:2,15
36:21,24 37:2
37:8,25 38:5
38:11 39:1,4
40:12 42:4
44:22 45:10
47:23 48:16
51:5,6,10 55:2
56:1,3,8,15
57:16
**Wu's** 7:8 8:16
41:20 44:20
46:4 47:22
50:6 51:24
52:17 55:14

**X**

**Y**

**yeah** 42:15
53:11,18 56:23
63:9 64:4 65:7
66:22,25 67:20
70:6 74:12,18
**year** 22:19 46:3
49:16
**years** 6:7 9:2
46:6 54:12
55:23 56:15

**yell** 42:20 43:7
**yelling** 43:4
**yells** 6:18
**Yep** 38:23
**yesterday** 71:4
**younger** 45:19
45:21 55:4
56:9,11,22

**Z**

**zero** 71:20

**0**

**1**

**1** 49:8
**1.5** 8:14
**1.75** 16:25
**1/20** 32:9
**1:16-cv-248** 1:3
**1:21** 3:2
**10** 18:22 59:2
**102** 48:12
**10th** 14:15,16
**116** 50:1
**12** 45:1 48:11
51:8
**13** 45:2
**1400** 1:16
**14th** 49:16
**15** 63:23
**1525** 1:13
**16** 64:1 65:11
**1601** 1:16
**167** 46:24
**16th** 51:7
**17th** 45:1 48:10
49:10,14 50:1
**18** 1:5 76:12
**1880** 1:20
**19** 51:8 68:2,16
**19102** 1:14,17
**19103** 1:21
**19106** 1:5
**196** 21:19
**1973** 46:12
**1994** 51:1
**1995** 66:17

**1997** 48:4,5
**1st** 31:1,19 35:1
  37:22 38:6,19
  39:19 54:19

**2**

**2.91** 48:15
**2:45** 57:20
**2:54** 57:21
**20** 49:15 53:10
  68:24
**2004** 45:5 52:10
**2005** 4:5
**2007** 72:5,6
**2009** 4:6 6:8
  46:24 48:2,4
**2010** 8:15
**2011** 8:15 16:23
  35:14
**2012** 2:12 4:22
  4:25 5:11,13
  5:24 8:14
  16:18 25:22
  26:8,8
**2013** 4:7 13:1
  14:16 19:2
  21:6 45:14
  47:4 49:3
**2014** 4:7 22:20
  24:7 29:22
  30:6 31:1
  34:11 35:14,25
  37:5,6 38:19
  39:2,19 49:8
  51:18,19 54:19
  67:10
**2015** 47:13
  49:16
**2016** 71:5
**2018** 1:5 45:1
  48:10 49:10,14
  50:1 51:7
  76:12
**204** 67:10
**21** 48:12
**22** 48:12 50:1
**228** 47:3
**23** 49:9

**23rd** 48:4
**24** 49:11 72:14
**25** 50:1 72:19
**25th** 22:20 24:7
  29:22 30:6
  35:4
**26** 72:22
**27** 72:24
**28** 48:12 55:23
  73:1
**29** 73:3,6
**2d** 45:13 52:10

**3**

**3** 1:9 2:4
**3.0** 28:24
**3/27** 75:9
**3:00** 60:17
**3:05** 60:18
**30** 48:11
**305** 52:9
**30th** 5:11,24
  26:8,8
**31** 45:1
**32** 2:13
**323** 47:13
**341** 76:13
**35** 2:13 73:13
**38161** 48:3
**39** 2:4
**391** 45:5
**3d** 45:5 47:3
**3d.Cir** 47:13
**3rd** 5:13 25:22
  28:11,12 49:3

**4**

**4** 48:11 49:11
**4/1/14** 2:13
**401(k)** 45:17
**411** 46:12
**43** 2:7
**45** 54:19
**454** 72:5
**46** 48:11
**465** 52:10
**47** 48:11
**48** 48:12

**495** 47:4
**4th** 34:11

**5**

**5** 2:12 73:14
**5.17** 63:16
**5.21** 63:16
**50(a)** 43:15 44:1
  44:8 61:8
**506** 45:5
**51,252** 17:9
**53,600** 17:13
**55** 44:24
**557** 46:24
**571** 67:10
**578** 45:13
**58** 13:8

**6**

**6** 48:11 49:15
**60,500** 17:18
**601** 1:4
**61** 2:8,9,10
  49:11,15
**62** 49:15
**62492** 72:6
**6th** 1:21

**7**

**7** 44:18 46:14
  63:1 65:5,10
**7/19/18** 75:8
**741** 51:1
**792** 46:12
**796** 47:13
**798240** 48:5
**7th** 19:1

**8**

**8/8/14** 2:13
**82** 51:8
**83** 51:8
**855)204-8184**
  1:22
**868** 50:25
**8th** 35:14,15,16

**9**

**9** 48:11,12

**9:30** 60:25 61:3
  73:12
**959** 72:5
**987** 45:13
**9th** 13:1 16:18