UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

RUTH V. BRIGGS, Plaintiff, vs. TEMPLE UNIVERSITY, Defendants.

Case No. 1:16-cv-248
601 Market Street
Philadelphia, Pennsylvania 19106
July 19, 2018

TRANSCRIPT OF TRIAL
DAY 4
BEFORE THE HONORABLE ROBERT F. KELLY
UNITED STATES DISTRICT JUDGE
AND A JURY

APPEARANCES:

For the Plaintiff: Laura Carlin Mattiacci, Esq.
Stephen G. Console, Esq.
Rahul Munshi, Esq.
CONSOLE MATTIACCI LAW, LLC
1525 Locust Street
Philadelphia, Pennsylvania 19102

For the Defendant: Richard R. Harris, Esq.
Rachel Fendell Satinsky, Esq.
LITTLER MENDELSON, PC
1601 Cherry Street, Suite 1400
Philadelphia, Pennsylvania 19102

Audio Operator: Electronically Recorded by Court Personnel

Transcription Company: JDR Acquisition, LLC./
Advanced Transcription
1880 John F. Kennedy Boulevard
6th Floor
Philadelphia, Pennsylvania 19103
(855)204-8184

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

INDEX

| | Page |
|---|---|
| DISCUSSION RE: VERDICT SHEET | 3 |
| CLOSING ARGUMENT BY MS. MATTIACCI | 9 |
| CLOSING ARGUMENT BY MR. HARRIS | 30 |
| FURTHER ARGUMENT BY MS. MATTIACCI | 42 |
| JURY CHARGE | 45 |
| JURY QUESTION | 85 |
| VERDICT | 93 |

(Proceedings commence at 9:29 a.m.)

MR. HARRIS: Good morning, Your Honor.

MS. MATTIACCI: Good morning, Your Honor.

MR. MUNSHI: Good morning, Your Honor.

THE COURT: Have you seen the verdict form?

MR. MUNSHI: We have.

MS. MATTIACCI: Yes, Your Honor.

MS. SATINSKY: Yes, Your Honor.

THE COURT: All right.

MS. MATTIACCI: I believe there is one correction that both parties, I believe, agree to -- and correct me if I'm wrong. But on Page -- starting on Page 2, Questions 5, 6, 7, and 8, all say "severe and pervasive harassment," and the standard should be severe or pervasive. So those "ands" should be changed to ors in all of those.

THE COURT: Other than that?

MS. SATINSKY: Your Honor?

MS. MATTIACCI: No, Your Honor.

MS. SATINSKY: For the record, we don't agree with that. We believe the proper standard is severe and pervasive, as written, so I think there's a disagreement on that between the parties.

THE COURT: Yeah. Do you want to argue it? Yeah.

MS. SATINSKY: Sure, Your Honor. As to that particular piece and the standard of the case law is mixed.

Some cases say "severe or pervasive," and some cases say "severe and pervasive." I'm sure both parties could cite to you a litany of case law that uses both standards, so I think that's a discretionary piece.

THE COURT: All right.

MS. SATINSKY: And both elements are required.

MR. MUNSHI: Your Honor, both standards were articulated in the past, until last summer, in 2017, the Third Circuit came out specifically and stated the standard is severe or pervasive. I can give you the citation if you'd like it. It's Castleberry v. STI Group, Inc., from the Third Circuit, last year.

THE COURT: Okay. We will look at it and make that change. And maybe can you talk around that issue?

MS. SATINSKY: We can certainly continue to discuss that, Your Honor. There's a few other issues I wanted to raise. The first is with question --

THE COURT: When I said "talk around" it, I mean --

MR. HARRIS: Judge, I won't bring it up,

MS. SATINSKY: Oh, during the closings?

MR. HARRIS: Yeah, I won't bring it up.

THE COURT: Yes.

MS. SATINSKY: Certainly.

THE COURT: All right.

MS. SATINSKY: Your Honor, as to the first

question, Question 1, the way it's framed is that gender was a motivating factor in Temple University's decision to terminate her position. If we're proceeding under the McDonnell Douglas standard, it should be determinative. If Your Honor finds that there is -- it should be a mixed-motive instruction, which we disagree with, based on the evidence -- as I said yesterday, there is no direct evidence in this case. But if Your Honor finds that it should be a mixed-motive instruction --

THE COURT: Can you -- okay.

MS. SATINSKY: -- there's an affirmative defense --

THE COURT: I was under the impression that that was the only problem with this.

MS. SATINSKY: No, Your Honor.

THE COURT: Okay.

MS. SATINSKY: So, if Your Honor does believe a mixed-motive instruction is proper, there is an affirmative defense that the defendant is entitled to put on that changes liability under Title VII. So under Model Jury Instruction 5.1.7, to be a -- it says that protected -- you have to talk about it being a determinative factor.

A true mixed-motive case -- and this is in the cite -- the comment to the Model Jury Instruction of 5.1.1, a mixed-motive case is when the defendant renounces any illegal motive. That is not what we've done here. The standard is

higher in that case, and that's why it's a mixed-motive instruction.

Again, if Your Honor does find that a mixed-motive instruction is proper, the verdict sheet should be revised to include the affirmative defense and the damages -- to say that, if defendant had made the same decision, even in the absence of the impermissible motivating favor, then the plaintiff may only recover declaratory and injunctive relief, attorneys' fees, and costs, not --

THE COURT: All right.

MS. SATINSKY: -- monetary damages.

THE COURT: What else do you have?

MS. SATINSKY: I think that's it, Your Honor.

THE COURT: All right. The jury is working on ordering its lunch, I think. Mark?

THE COURT OFFICER: Yes.

THE COURT: You'll let us know when they're ready?

THE COURT OFFICER: Yes, Judge.

THE COURT: And you're all ready to make your closings?

MS. SATINSKY: Your Honor, may we see you at sidebar, briefly?

(Court and court personnel confer)

(Sidebar)

MS. SATINSKY: Your Honor, yesterday, I made the

motions for judgment as a matter of law. And can I have Your Honor's guidance as to how I may be able to give my argument, perhaps while the jury deliberates, so that I have it on the record and preserved for appeal?

THE COURT: Do what?

MS. SATINSKY: Sure. So, yesterday, I had started to argue my motion for judgment as a matter of law. I understand Your Honor does not want any further argument on it, I understand that. But to preserve the reasons for appeal, my reasons must be stated.

THE COURT: (indiscernible)

MS. SATINSKY: Okay.

THE COURT: What you're going to do when --

MS. SATINSKY: I was hoping to make my argument while the jury deliberates --

THE COURT: (indiscernible)

MS. SATINSKY: -- or just be able to put it on the record, to preserve it for appeal.

THE COURT: How long is this argument?

MS. SATINSKY: Probably 15, 20 minutes, Your Honor.

THE COURT: No. What else?

MS. MATTIACCI: That's all we have.

MS. SATINSKY: That's it.

THE COURT: Okay. All right.

(Sidebar concluded)

(Participants confer)

THE COURT: I'm going off the bench.

(Recess taken at 9:34 a.m.)

(Proceedings resume at 9:44 a.m.)

(Jury not present)

THE COURT: And that will be changed to "or."

MS. MATTIACCI: Thank you, Your Honor.

MR. MUNSHI: Thank you, Your Honor.

THE COURT: And closings are limited to 35 minutes. You're going to reserve 5 for rebuttal or --

MS. MATTIACCI: Yes, Your Honor.

THE COURT: -- or as much as you want for rebuttal.

MS. MATTIACCI: Okay. Thank you.

THE COURT: But you've got to reserve it.

MS. MATTIACCI: We will, absolutely --

THE COURT: All right.

MS. MATTIACCI: -- thank you.

THE COURT OFFICER: All rise.

(Jury present)

THE COURT: You may be seated. We have reached that point, as I indicated yesterday, for closing arguments. And I've limited each side to 35 minutes. Plaintiff can reserve some of that for rebuttal, but that's where we are.

You may proceed.

MS. MATTIACCI: Thank you, Your Honor.

Good morning, members of the jury. As Judge Kelly said, I only have 35 minutes, so I really thank you for all of your attention and being here, so I'm going to get right to it, and get right to what you will hear, to decide this case.

Okay. Here's the standard. It's more likely than not. Another way to think of it is 51 percent. So, with every question that's asked of you, you think, okay, is it more likely than not that Ms. Briggs was retaliated against. You take all the evidence of that question that we have presented and you put it on one side, and the evidence that the Defendant Temple has presented, you put it on the other side. And if our evidence tilts just like five -- they say a "seed" on our side, then we have met our burden, and you should find for Ms. Briggs.

Retaliation. This is the core of the case, so I want to start with retaliation. There's three questions, basically, that come down to retaliation:

One, is it more likely than not that miss -- that Ruth complained of or opposed discrimination or retaliation? That's your first.

Second, is it more likely than not that Ruth's employment ended?

Third, is it more likely than not that there is a

causal connection?

And if you answer yes to all three, it's more likely than not, then you have found in favor of Ruth Briggs on her retaliation claim.

Let's look at the evidence that we have presented on each of those:

Number one, is it more likely than not that Ruth complained of or opposed discrimination or retaliation? There is no question about this in this case because this is the admission of Temple, under oath. Under oath, they said, in their interrogatory response:

"Foehl met with Ms. Briggs on various occasions in 2012, 2013, 2014, and investigated Ms. Briggs' claims of discrimination."

That's what they put in their papers, and they swore to it under oath.

They also said, in 2013 and 2014, Briggs raised her claims of discrimination with Deirdre Walton, and Walton found no merit in Briggs' claims. So the question, is it more likely than not that she complained of or opposed discrimination? They've admitted to it in their own papers.

But there's even more, there's more evidence. I call this "Exhibit C," because that was Exhibit B and Exhibit A. Is it more likely than not? How about we start with the main incident that happened in this case that was the

catalyst, where Ms. Briggs was in a meeting with Dr. Wu, and he says, in China, we put women out to pasture at your age. That's an age and sexist-based comment. When she says, well, with all due respect, we're not in China, we're in America, that's in opposition to his statement. That opposition, in and of itself, is a complaint under the law.

And then she gets an immediate writeup that day, one which they have never been able to explain, and they've never brought any documents to their side of the story that it had nothing to do with that. But you know. I mean, this is just common sense. It happens right immediately after that.

But we're focused on this first question. Did she complain of or oppose discrimination? Here are all the times in which she said in email, in writing, in which the words "age" or "sex" were used in her complaints. There is no obligation under the law to use magic words. You don't have to say "I complained about age discrimination." The HR and EEOC, they are trained that you take everything in context. Let's just look at this like real life, let's take it in context. Did she bring these complaints forward?

But there were many times in which she did use the specific words; she absolutely used those words. And these are all the times. I just pulled these out, from all the emails that you saw during the course of this trial.

On 7/30/2012, she meets with Ms. Foehl. And in Ms. Foehl's own handwritten notes, she wrote:

"In China, when your age, you're done. File an age discrimination complaint. I'm scared."

She's bringing that complaint to HR.

The 9/9 email to Foehl:

"Wu's comments about my age. I do know I was paid lower than two male staff members."

Again, she's putting it in writing.

2/9/13, she sends an email to Etezady:

"Disparate treatment for me, for which I believe is related to my age of 58. I am concerned about retaliation."

In writing, she's even using these specific words.

Exhibit G, on -- in February 2013, email to Etezady:

"Wu says that professional lives of women my age, 58, in China, are done, are over. I feel" -- "felt defensive and offended."

On 8/6/13, to Etezady:

"My situation is now compounded because of my age and my gender. I am begging for someone from Temple to mediate this problem."

There is no way that Temple can stand up before you and tell you that she did not complain about discrimination

when, in their own documents, they swear to it under oath that she did. And then you see all the documented evidence from the emails that she did.

On numerous -- this email:

"On numerous occasions, I've spoken to Deirdre Walton, who has not been helpful to me at all. I plan to file an EEOC complaint. Internally, I've already had a phone intake with EEOC."

This is on February 25th, 2014. She is fired five weeks later. When this complaint comes forward, this is the "oh" moment for Temple because now she's saying, I'm going to take this complaint to the EEOC, which is the Equal Employment Opportunity Commission, outside of Temple, which is a federal agency that she's going to bring this complaint.

And now, at this point, what are they going to do? They're going to terminate her. So they terminate her right now. It's the complaint that she's going to the EEOC, and terminate her, so they have to come up with a plan, they got to get her out.

And at this point in time, here is the only thing that she has --

(Participants confer)

MS. MATTIACCI: At this point in time, there's two things that are on her record. An entire year before, that is when that hotel incident happened, where she didn't book -

- I mean when she didn't book the plane ticket, and she said she dropped the ball. That was an entire year before. She had a three-day, unpaid suspension.

In January, right before this, is when she fell asleep and she came in late. And they wrote her up and gave her a B-level, a B-level, for one tardy. Even though we all looked at those rules, and the rules say that you have to have six tardies for one Level A; six for one Level A. And then, for every subsequent is another Level A. She had one tardy, and they put her right at a B, in January. So right now, they have one tardy, and they have a year before, with the plane ticket. So how are they going to get her out?

Well, what they decide to do is they come up with something. They have -- you have to have two Level C's to get her out. So a month goes by, she keeps pressing, I'm going to go to Sandy Foehl, I want to talk to Sandy Foehl. And termination happens on April 1st, 2014.

When she walks in on April 1st, 2014, and they terminate her, what are the two things they put on there? They put, one, that she booked the hotel room at the Double Tree, instead of Conwell, on March 14th, 2015 [sic]; and then, two, that -- this expense report that she did. That's it, these two things.

Now when the supposed issue of a hotel room happened, she doesn't get a writeup for that, nothing

happens. That wasn't even -- the professor came, he stayed ten minutes away. He was in a -- probably better accommodations than he would have had at Cromwell, and he got to see Center City. It was a nonissue. But they were getting together, trying to figure out, what are we going to do.

Now let me get this -- I'm jumping ahead. So, first, this is just your first question. It's more likely than not that she complained of or opposed discrimination. Yes, you just saw all the evidence of that.

Is it more likely than not than Ruth's employment ended? It's not disputed, it ended.

Three, is it more likely than not there is a causal connection? Yes.

(Participants confer)

MS. MATTIACCI: So we know that, during the course of this -- this is from the opening. You remember seeing this, and thinking what is this swirl, that it starts off with Dr. Wu's comments about women in China. And then she sends an email to Rhonda Brown, and Rhonda Brown says meet with Sandy Foehl. Sandy Foehl says meet with Rhonda Brown. Rhonda Brown says -- then she sends an email to Sandy Foehl. Then she sends an email to Cameron Etezady. But then Etezady says to go to Walton, and Walton says to go back to Etezady. And she's just being passed around and passed around and

passed around, like a hot potato because nobody wants to be holding it, until this time, the 2/25/14, when she's gone to the EEOC. And now who wants to be left with it? We have a plane ticket and the one day late, Level B suspension.

So the termination letter says the expense report and the hotel room. And when Greg Wacker what are the reasons why she was terminated, he named these two. So, in order to terminate her, these were the two reasons that were stated that led to her termination, and he says, I believe so. And he's the decision-maker, they say.

But now they're changing their story because, in the light of the courtroom, when they try to make that as the two reasons that you're going to terminate a thirteen-year employee, on the heels of her saying that she's going to the EEOC, they back away from that, and now they're changing their story.

Now they want to say, despite numerous opportunities to improve, Ms. Briggs continually failed to perform her job duties satisfactorily. Really? Where is the documentation of that? Where -- they will put up a writeup for her being late one day, and put that in writing, put that in her file. If there are all these performance issues, as they say, where is it? There's not even a writeup of it, and it's not even mentioned in the termination letter. This is something that they have made up, after the fact, because now

they're being called on it, and now it's coming out in front of a jury.

Retaliation, you can look at all of the circumstances. You can look at the timing of it. You can look at the ridiculous reasons that they have asserted, the inconsistent reasons, the coverup, and the credibility.

Let's talk about credibility for a second. That's why you're here because you sit here and you look at these witnesses. And as Judge Kelly will tell you in his instructions, you just use your common sense. Look at people, watch how they speak, look in their eyes. Do you believe them or you don't believe them? That's what your role is.

And Dr. Wu stood up here, and he was smooth, and he said all these things. But they weren't true. I mean, he stood up here and put his hand on the Bible and said to you that he just found out about these complaints, this year, about -- that Ms. Briggs brought to him. Well, if that's true, then either Temple is so incompetent in figuring out whether discrimination occurred, that they didn't even bother to talk to Dr. Wu, or Dr. Wu lied to you. And if he's lying to you, then what else is he lying about?

When he tells you that he never made the comment that we put women in China out to pasture at 55. When he tells you that he didn't have any knowledge of her claims the

whole time that she was there. When he tells you that he didn't retaliate against her. Credibility is a core issue for you guys to decide.

And let's talk about what happened at the end. I'll leave that there a second. So they bring up these charges on her about the hotel room and the expense report, no documentation about the -- if this hotel issue was such an incident at the time happened, after March two thousand -- in March '13 or '14 -- would there be even an email from Dr. Wu, you messed up, you booked the wrong hotel room? Nothing.

Now you go to the expense report. Remember when Ms. Briggs, she got an email at four o'clock saying, put the expense report. And 5:30, she writes an email back saying, I'm having trouble getting into that particular grant, I think my access is blocked. She goes through, and she sends -- she takes the time to send an email about the -- not the ability to put the grant in. All -- if she had access, it would take one click of a button, and she's and she expenses it.

So their story is that she is so deficient in her job that she wouldn't -- she just decides she wasn't going to do the expense report, even though she took the time to write an email, to explain her inability to get into the program. That makes no sense. It makes no sense. But they want -- they needed to have two Level C violations in order to

terminate her, and these are the things that they could come up with. And they wanted these because they wanted to present it to her and say, listen, we're going to terminate you, but if you want, you can resign.

And they wanted her to resign because they know that, legally, that might have been a way to give them an out because there needs to be something bad that happens to you after you complain, in order for you to have a retaliation claim. So they had -- she's complained in writing, she's saying she's going to the EEOC. And then, later on, if she tries to come back and say, hey, I was retaliated against, they say, oh, we didn't terminate you, you resigned.

They did it to us here, in this courtroom. These witnesses stood up and I would say, well, when you terminated Ms. Briggs, I didn't terminate her, she resigned. Why would you do that? It's because they know they did something wrong, and they were trying to cover it up. So that's why they wanted her to send in that letter.

But you know what? Not many people make it to this day. It's really hard to make it to this day because they make it hard. But she did it, and now we're here. And the fact that they forced her to resign is not going to hold legal water anymore because you guys see right through it. And they forced her out. She didn't have any choice, she couldn't stay there.

Now we'll talk about credibility. Wacker says -- this is in response to questions we were asking him about whether he knew that she was complaining about a hostile work environment and retaliation and sex and discrimination, and he just kept saying I don't recall, I don't recall, I don't recall, I don't recall, because they don't want to put the knowing of the complaints in the heads of the decision-makers. So that's why he keeps saying I don't recall.

But then Ms. Walton, while Ms. Briggs' complaints were about Dr. Wu, said, yes, I wanted Greg Wacker to look into it, if he had to talk to Dr. Wu, then he would have to talk to Dr. Wu -- if I had to talk to Dr. Wu, then he would have to talk to Dr. Wu. And do you believe that he did talk to Dr. Wu about Ms. Briggs' complaints? Yes. So they're trying to put up this wall between Wacker -- Mr. Wacker and Dr. Wu and the complaints. But Deirdre Walton just -- she just smashed the wall.

Dr. Wu. Did you ever relay -- did Wacker -- Mr. Wacker ever relay to you that Ms. Briggs was complaining about a hostile work environment, retaliation, age, and sex. Dr. Wu, no, no I never knew anything about that. So when did you -- at some point after she was terminated were you advised of this. No, only this year, he said here and said, only this year. Oh, yeah, this year, that's why I was in shock, like how can Ruth say this against me.

Sandy Foehl, when she was on the stand yesterday, that was the last witness.

"When you talked to Dr. Wu, you relayed to him that Ms. Briggs was complaining against him for age and sex discrimination, correct?

"Answer: When I met with Dr. Wu, I would have related all of the allegations that Ms. Briggs had made about his treatment of her.

"And that would have been sometime between April 2014 and August 2014?

"Yes."

Wilful indifference, that's what happened. They know the law. They know the policies. They know better. But they wanted to bury their head in the stand and hope that it went away. And that is what "wilful indifference is." There's going to be a question on the verdict sheet that asked if you Temple's actions here were wilfully indifferent, and the answer to that question is yes because they had every opportunity to make this right.

She applied for dozens of jobs while she was still there. You saw those jobs up there, the event planner jobs, lower level. She was a T-26. Everything she applied for was T-26 and below. She had been there for 13 years. For 10 of those years, she didn't have any performance writeups at all, until she started working for Dr. Wu. And they couldn't find

a place for her? That was all she wanted.

Even after she left there, do you recall the email that she sent, a week after she left? And she detailed all the things that she wanted everybody to know about the event that was coming up. Is this a person that is deficient at her job, that doesn't have attention to detail, that doesn't care about things? And then she continued to apply to Temple to try to get a job. And just like her emails went into a black hole, those job applications went into a black hole.

This is the Age Discrimination and Employment Act. When it was passed, in 1967, Congress wrote a preamble, and I want to read it for you, as quickly as I can.

(Participants confer)

MS. MATTIACCI: "The Congress hereby finds and declares that in the face of rising productivity and affluence, older workers find themselves disadvantaged in their efforts to retain employment, and especially to regain employment when displaced from jobs."

This is why Congress passed this law.

"The setting of arbitrary age limits regardless of potential for job performance has become a common practice, and certain otherwise desirable practices may work to the advantage of older persons" -- "disadvantage. The incidence of unemployment,

especially long-term unemployment with resultant deterioration of skill, morale, and employer acceptability is, relative to the younger ages, high among older workers; their numbers are great and growing; and their employment problems grave. The existence in industries affecting commerce, of arbitrary discrimination in employment because of age, burdens commerce and the free flow of goods in commerce. It is therefore the purpose of this chapter to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; to help employers find" -- "and workers find ways of meeting problems arising from the impact of age on employment."

And you are here today to ensure that that law is upheld, to ensure that Temple will comply with that law.

A sex discrimination claim. Is it more likely than not that her gender was a motivating factor or reason to end her employment? Let me be clear about each of these things: Retaliation, gender, age. None of them have to be the sole reason. There can be other reasons.

For the sex discrimination, if her gender was a motivating reason, one of the reasons that motivated this decision, and it's more likely than not that that sex played

a role, then you find for her.

And retaliation. If it's more likely than not that, but for her complaining, this wouldn't have happened, and you find -- but there could -- there could be other reasons. It doesn't have to be the sole reason. Also in retaliation -- on the retaliation claim, it does not -- you -- the plaintiff does not need to prove the underlying claims. So the age and sex discriminations are not dependent upon the retaliation claim. For the retaliation claim, you just have to prove that she had a reasonable belief that she was being discriminated against, that she complained about it, and she suffered an adverse consequence, regardless of whether the age and sex discrimination claim is proven.

Now make whole. At the end of the day, we're going to -- or I mean today, today, at lunch, we're going to be asking you to find in favor of Ruth Briggs, and to make her whole for her losses. Her salary at Temple is 52,000, and her benefits were approximately $16,500. Her current pay is $10.77 an hour, around $22,000, and her back pay loss is about $251,375. That's how much money she would have made if she had stayed at Temple from the time of termination until today. That's how much money she is out of pocket.

And the second amount that you could determine is how much to make her whole for emotional harm losses. And that's not a number I can give you. That's just a number

that you can use upon your own life experience, your own common sense, and taking into account the testimony that you heard from Ms. Briggs as to the impact that this termination, harassment, and retaliation had on her.

Now I'm going to -- five minutes. Okay. In a minute, Mr. Harris is going to stand up before you. And when he does, listen to his answers. I made you promises about what the -- or what -- we made you promises at the beginning of this case about what the evidence would prove, and we came through on our promises. And when he comes up here, listen to him try to explain how, oh, Ms. Briggs didn't complain about discrimination, when their own documents say and admit under oath that she did; that we should believe, that you guys should believe miss -- Dr. Wu over Ms. Briggs, when he lied repeatedly on that stand, and when his answers do not ring true, when they don't explain. I ask you to find in favor of Ruth Briggs. Thank you.

MR. HARRIS: Your Honor, may we see you at sidebar, briefly?

THE COURT: Yes.

(Sidebar)

MR. HARRIS: Counsel, in her argument -- just two points, and I'll defer to the Court to how the Court would like to handle them.

The first is counsel argued that the defense has

the burden -- has a burden. We have no burden, is number one.

And number two, she made a comment regarding the motivating factor. I thought this Court had said to stay away from those instructions that were an issue, and that's one of the ones that were in issue, and you had yet to decide.

THE COURT: She said motivated -- a motivating factor as to Title VII?

MS. MATTIACCI: But I thought -- I didn't say anything about harassment, you said to stay away from the severe or pervasive, which I didn't even touch. I thought that was the instruction.

THE COURT: No, I --

MR. HARRIS: But the one regarding motivating factor, we had argued that there was a determining factor, and so that's why I --

THE COURT: As to age.

MR. HARRIS: Yes.

MS. MATTIACCI: Right.

MS. SATINSKY: As to sex.

THE COURT: Huh?

MS. SATINSKY: As to sex.

MR. HARRIS: As to sex.

MS. MATTIACCI: That was ruled on, the -- it is a

motivating factor as to sex.

MS. SATINSKY: But Your Honor said he was taking it under advisement --

MS. MATTIACCI: Not that.

MS. SATINSKY: -- and not to discuss it.

MS. MATTIACCI: No, Your Honor. No --

MS. SATINSKY: (indiscernible)

THE COURT: I didn't think so.

MS. MATTIACCI: That was only harassment, yeah.

THE COURT: I thought we knew, before we started, and we had researched that. And am I getting them mixed up?

MS. MATTIACCI: No, Your Honor --

MS. SATINSKY: I think you are--

MS. MATTIACCI: -- is correct.

MS. SATINSKY: -- Your Honor.

MS. MATTIACCI: Your Honor is correct.

MS. SATINSKY: So, Your Honor, we understand your ruling on severe or pervasive.

MS. MATTIACCI: Yeah, so --

MS. SATINSKY: And we agree with that.

MR. HARRIS: We agreed with that.

THE COURT: All right. But I thought it was --

MS. SATINSKY: We're talking about the motivating factors --

THE COURT: That's what I thought we were talking

about.

MS. SATINSKY: -- as to gender. And Your Honor had asked us if we could work around that.

MR. HARRIS: Okay. Well -

MS. MATTIACCI: (indiscernible)

MS. SATINSKY: (indiscernible) and we said yes.

THE COURT: All right.

MS. MATTIACCI: That was before you had made the ruling on the severe and pervasive.

THE COURT: No, it's all right to address it in your closing. But I'm going to be charging as to Title VII that a motivating factor --

MR. HARRIS: Right.

THE COURT: -- as to age, that it has -- but for age, they would have done what they did.

MS. MATTIACCI: Right.

MS. SATINSKY: Your Honor, for the motivating factor instruction, will there be the affirmative defense that goes along with that, as required by the law?

THE COURT: I'm afraid you better explain that to me.

MS. SATINSKY: Sure. Your Honor, under the law, if a motivating factor instruction is given under Title VII, there's an affirmative defense that that the defendant may prove, where the defendant is required to show that it would

have taken the same action in the absence of the plaintiff's sex.

THE COURT: Is that in your charge?

MS. SATINSKY: It -- we didn't submit the motivating factor instruction because we believed that we don't have a --

MR. HARRIS: (indiscernible)

MS. SATINSKY: -- but it's in the Model Rules, it's very clear in the Model Rules. It's (indiscernible) that says affirmative defense, it's in the Model Rule.

MR. HARRIS: Right. So the --

MS. SATINSKY: But if you prove -- if the defendant can prove that affirmative defense, there's no monetary damages --

MR. HARRIS: There's no --

MS. SATINSKY: -- it's -- the only damages that are recoverable --

THE COURT: I'll have to look at it.

MR. HARRIS: Okay. So that's why we argued that the evidence in the case that was presented -- well, since plaintiff produced no evidence other than contradicting what the witnesses presented, that there would have had to have been affirmative evidence demonstrating that there was a mixed motive. So that's why we didn't produce that. We said we thought that the evidence produced was evidence that is

more consistent with the theory of the determining factor, that's why we only presented that charge to the Court.

THE COURT: Okay.

MR. HARRIS: Judge, we just need one second. I think he just needs to fix the computer, that screen, to the right.

THE COURT: All right.

MR. HARRIS: Okay.

(Sidebar concluded)

(Participants confer)

MR. HARRIS: Your Honor, may I address the ladies and gentlemen of the jury?

THE COURT: Yes.

MR. HARRIS: When I opened, I asked you to confront your biases and I'm going to ask you that again.

His Honor will instruct you that your decision must be dispassionate for sympathy for or against Ms. Briggs as well as Temple University. You took an oath, and I'm just asking you to be fair. I'm asking you to submit to the oath.

We had some jurors who said that they couldn't do that, but not you all. Temple University selected you because we thought that you could be fair and impartial.

The worst of us often comes out when we don't think anyone's watching. What was said by Ms. Briggs when she didn't think anyone was watching her, you saw the Facebook

posts that were provided, but what was interesting in the posts -- and certainly you saw the ones that were more offensive than others -- but I'm asking you to look at the post where she says, Oh, why am I not allowed to write comments for the pictures.

Did I say something inappropriate again? Did I say something inappropriate again? See, it's one of those moments when you think no one is watching or at least when you think no one is watching; that's when you actually find out the person's motivation, the person's animus, the person's bias. That's when we find out.

What did we see? From many of the witnesses from Temple when they didn't believe anyone was watching, Dr. Wu, Greg Wacker, Deirdre Walton, and Sandy Foehl; collectively, over 100 years of professional experience. What did you see from them when no one was watching? Absolutely nothing. Not one Facebook post. Not one text message. Not one Instagram post. Not one Tweet. Nothing, whatsoever demonstrated any animus. In this era of Me Too, you would have seen something, would you not?

Because we know when we don't think anyone is watching, sometimes it brings out the worst in us.

MS. MATTIACCI: Your Honor, I'm sorry, I just have to object.

THE COURT: All right.

MS. MATTIACCI: He's stating facts that are not in evidence, hence, it is inappropriate.

THE COURT: What is the fact?

MS. MATTIACCI: He made the allegation that we could somehow have access to their Facebook posts and things of that nature of all of these people. It's an improper argument.

THE COURT: All right.

MR. HARRIS: Your Honor, certainly that was in the discovery requests and she would have received it with them before this courtroom.

May I continue with my argument?

THE COURT: You may.

Members of the jury, if anybody argues evidence before you that you disagree with, then certainly take that into consideration. And this goes as to both, Plaintiff's and defendant's argument.

Yes, Counsel, you may continue.

MR. HARRIS: Thank you, Your Honor.

You saw that -- nothing whatsoever, not one thing, not one text. So, what do we do? So, what did you see from the witnesses from Temple? Aside from electronic messages, aside from those texts, aside from that, wouldn't you have thought you would have seen a current employee. Wouldn't you have thought you would have seen a student? Wouldn't you

have thought you would have seen a faculty member? Wouldn't you have thought you would have seen someone from the alumni?

But remember that's what Ms. Briggs testified to. She said she was humiliated in public. Well, certainly, if you wouldn't have seen a current employee or staff or faculty member, then what about the former?

Dr. Wu had over 30 years of professional experience. He was in NSF before he came to Temple University. Each position that he had, he continued to build his staff around him. Fifty students and faculty members that reported to him with a multimillion-dollar budget, and certainly had professional experience before then, wouldn't you have thought you would have seen someone who said -- who corroborated what Ms. Briggs said before you?

You see, it's their burden. It's not Temple University's burden. It's their burden to prove the claims in which they brought.

But you also heard from the HR director. Not one other complaint was made about Dr. Wu to Deirdre Walton. Not one other complaint was made to Sandy Foehl. So, she's lying too? Sandy Foehl? Sandy -- I think everyone in this courtroom had a visceral reaction when she took the stand. It surprised you when you saw her, did it not? Was she the one?

Ms. Briggs said that she was ban I should when she

was moved to the 10th floor, do you recall that testimony? Didn't she say when she was under oath at her deposition that she was often distracted and that she welcomed the move. I think if you went off the notion of public humiliation, well, if it's in the public, then, therefore, other people would have seen it.

Dr. Wu says, I've never heard of that phrase before: Isn't that consistent? You've heard of that phrase before, because that's a particular idiom used in the American culture. He said, I never said it.

Sandy Foehl says that Ms. Briggs, when she came to see her, she never said that she was being demonstrated against based on her age or gender. And while she said she wanted to file a complaint, it just so happened to be on the day that she was terminated, on April 1st.

What was magical about April 1st? Nothing was magical about April 1st, other than the fact that she thought, perhaps, that at the last meeting she was going to have, that she was going to be terminated. So, there's an email from Sandy Foehl to Ruth Briggs that says, You have to let me know if you want to move forward with the complaint. It's up to her.

Now, you may second-guess Temple's policy. His Honor will instruct you that, in fact, it does not have to be determined whether or not Temple had the right practice it;

it's their business judgment. However, you must show pretext. They have the burden of showing that. They must show that if it was a cover-up, that they lied.

Sandy Foehl told you that, yes, had an obligation to follow the rules and procedures in practice at Temple University or to not conduct an investigation unless the complainant directs you to do so. There are circumstances and examples when that's not the case. It has to be involving sexual assault and/or a threat of violence.

None of the complaints that Ruth Briggs brought dealt with those two exceptions. Once she brought her complaint on April the 1st, I conducted an investigation. What were the results of that investigation? It was unfounded. No evidence. No support. No finding of wrongdoing against Dr. Wu.

Sandy's a liar? Again, business judgment. It's not a question of whether or not they should have done something; the question is, whether or not the reason why they chose not to do it was based on a cover-up.

Her burden. She claims that the workplace was intolerable, but she concedes the mistakes that were made, she made them, but the punishment was too harsh. Again, business judgment.

You heard her testimony on cross-examination that she had seen a psychiatrist and in doing so, she explained to

the psychiatrist, the neuropsychiatrist, in particular, that she was having difficulties remembering, being distracted. She wanted out. She didn't say Dr. Wu's name. She never said his name.

But look at what happens. It's hard to keep that altogether. You start to forget. You can't remember what you said to one person around you certainly can't remember what you said to another person.

So, what does she say to the same person who's been intolerable, who's created an environment that she couldn't take? In the same year that he allegedly made the statement, we know from Dr. Wu he doesn't travel to China during the school year, but every time he goes anywhere outside of the United States, he provides Ms. Briggs a gift. She said in the same year that he allegedly made this offensive conduct -- offensive statement, what does he say -- what does she say on New Year's Eve?

I did not see you before the holiday break. She gives him a greeting card. She gives him a greeting card, I appreciate all you do for me. After, after this alleged comment was made? Why would she do that? I submit to you because he was sweet as pie. You had an opportunity to evaluate his demeanor when he was on the stand. He was a soft-spoken, polite man. That's why she said that.

One would have thought that she was a terrific

performer before Dr. Wu. Now we know from the record that 3.0 was the minimum that you could have to be a good performer, to be average. Average. You would have thought that she had a stellar record prior to Dr. Wu because Dr. Wu, again, is the bad actor. She had a 2.83, 2.28, 2.09, 2.27, 2.88, and the bad actor gives her a 2.9. That is inconsistent with someone who's discriminating against you based on your age and your sex. So what does this misogynistic person do? He hires two other women. It just didn't happen. It didn't happen.

Temple was fair. Their procedures that they follow, whether you like the procedures or not, they were still procedures that were in place that had nothing to do with Ms. Briggs.

It's interesting because, at the same time that we hear from Dr. Wu, Dr. Wu says I complained in the first year, and certainly within the second year about the first year in which Ms. Briggs was his Executive Assistant. Before you, you have an email that demonstrates, at least on one week -- he -- do you remember him testifying that there was one week in which he monitored, every single day, performance deficiencies that she had, which predated the alleged November 9th statement. Predates that. That's before you, that's in the record.

She -- he provided a litany of issues to HR,

suggesting that Ms. Briggs wasn't an appropriate fit for his role. She wasn't aware of it. Contacted HR, wanted help. In fact, he wanted a replacement. So, if he wanted a replacement before November of 2011, then it doesn't reconcile that the basis of him wanting a replacement has anything to do with her age and her sex. And that's unrefuted.

So what else did Temple do? They gave her an intermediator so that -- there was communications problems between her and Dr. Wu, so there's a third person, Drew DiMeo. No evidence to suggest that Drew DiMeo did anything inappropriate. Oh, yes, he's also a bad actor now. Why? What independent evidence do we have to suggest that Drew DiMeo, or anyone else, was a bad actor?

They moved her to the tenth floor, to assist her, to keep her from distraction. They gave her an intermediary, so that she could have someone to provide as a mediator between herself and Dr. Wu.

Greg Wacker, as well as Dr. Wu, despite these allegations, said that she would -- they would provide a reference for her. Again, these two misogynistic people that don't want to help her. I don't think that's consistent with someone who's trying to harm her.

They lifted her ban, so that she could apply to other positions internally. It's not their obligation to

provide her with a position. Their obligation is to be free from discrimination, based on age and/or sex. Again, business judgment. It's not their obligation to provide her with another position. That is not the law, nor is it required, nor are they required to do so.

There was significant evidence presented in this courtroom about the allegations that were in the -- the two allegations within the year. You heard from Deirdre Walton why the Category C's resulted in a termination. Dr. Wu didn't request that she be terminated. These are the offenses in which she committed, HR advises based on these level offenses, then the next step in the progressive discipline is termination. It's policy.

Unless they can demonstrate that that policy was created to cover up misdeeds, she can't prove her case.

MS. MATTIACCI: Objection, Your Honor. That's improper argument.

THE COURT: I didn't hear the last --

MS. MATTIACCI: He said, unless we can prove that Temple created the policies in order to terminate Ms. Briggs, we can't prove our case.

MR. HARRIS: That's not quite what I said, but I said that it was a pretext, we have to prove pretext.

THE COURT: It's an argument and objection overruled.

MR. HARRIS: You saw the disciplinary statements that were provided to Ms. Briggs. You've heard testimony about whether or not they provided to her to resign, or she was going to be terminated. Irrespective of that, it's a tough decision. They were involuntarily asking her to do it. Absolutely. Hard. And in fact, you may say that it was harsh, or perhaps unreasonable. It's not illegal. It's not illegal.

Sandy Foehl took notes on every single conversation that she had with Ms. Briggs. She said in those notes that Ms. Briggs never gave her the authority to conduct an investigation until after April 1st. Again, business record. Business judgment. It could be harsh or unreasonable, but it comes down to the business judgment.

The burden to prove a coverup. Ms. Briggs was an at-will employee; and, therefore, she could be terminated for nondiscriminatory reason. You saw the reasons. It all led to her termination. Unfortunately, mistakes have consequences.

Ms. Briggs questions whether or not she should have been disciplined for being late for three hours. I would suspect many of you have never been late for three hours, never three hours. And she was disciplined, she wasn't terminated for that. Again, you don't agree, you must defer to Temple University's judgment.

There's no evidence to support her claims of discrimination. Not one person has come to this courtroom to say that a younger person was treated differently for similar conduct. No male was treated differently for similar conduct. No one younger treated differently for similar conduct. No comments about her age or gender in connection with her employment.

No one said that Ms. Briggs' replacement was younger than Ms. Briggs. Well, we know two people, and actually, they were both in a protected class; two females Marilyn and Yvette, I believe '67 and '65 were their dates of birth. Not one person has corroborated Ms. Briggs' allegations.

Retaliation, the same thing. In fact, Sandy Foehl told us yesterday that she never spoke to Greg Wacker, she never spoke to Ms. Walton about the actual complaint. She never spoke to Dr. Wu. So Sandy would have to have lied, in order for Ms. Briggs to prevail on her claim of retaliation because we know Ms. Foehl said she never told him. She was the one who received the actual complaints.

Again, no physical, threatening conduct; no evidence of conduct that interfered with her work environment. It has to be extreme conduct. Is there evidence of that? I submit not.

Again, no evidence of age discrimination, no

evidence of gender discrimination, and no evidence of retaliation, nor no evidence of a hostile work environment. None, not direct evidence. They never presented it, and that's their burden.

I submit to you that the oath that you took requires you to be fair; and that, if you follow the law that His Honor provides to you, the verdict that your oath demands, I submit to you, is on behalf of Temple University. Thank you.

THE COURT: Yes.

MS. MATTIACCI: May I, Your Honor?

THE COURT: Yes.

MS. MATTIACCI: I'll be very brief. But I was sitting there with my pen in my hand, waiting to hear the reasons that Ms. Briggs was terminated, and again, didn't hear it. He just said, you heard reasons, they were -- you heard it all, they were it. They can't even, in the closing, get their story straight. They can't get their story straight because they're covering up the real reason.

They had an obligation to ensure that the workplace was free of retaliation, free of discrimination and hostile environment. They didn't care about that. They cared about $5 million in grant money, that's what they wanted to protect. They didn't care about the consequence that this would have to Ms. Briggs.

Sympathy shouldn't rule the day here, but that is not the same thing as not taking into account what she went through. You actually have to take into account what she did go through to determine what is the reasonable amount for the emotional distress damages harm. What is the price of not being able to give your grandkids presents? What is the price of not being able to buy a Christmas tree; having to move to Kensington in subsidized housing, and being on food stamps? What's the value of that? And that's the amount to fill in, in the line for emotional distress damages.

We presented evidence to you. Hailey King, 28 years old. She went missing for three days, they said during a hurricane in 2013. There was no hurricane in the Fall of 2013. What happened with her? Nothing. She got spoken to.

Ms. Briggs was replaced by a forty-six-year-old. She complained multiple times that her duties were being taken away and given to younger people. They say there's no evidence of age discrimination, no evidence of sex discrimination. It's just wilful indifference again, putting their head in the sand.

They want to say that Ms. Briggs never took responsibility. To this day, sitting here today, Temple has never taken responsibility. You, members of the jury, in this moment, you hold Ms. Briggs' fate in your hands. You are the ones that can have her walk out of this courthouse

today with justice, and I ask that you do.

THE COURT: Members of the jury, we will take a ten-minute recess, then I will give you the charge of the Court, and you will have the case in your hands. Ten minutes.

THE COURT OFFICER: All rise.

(Recess taken at 10:40 a.m.)

(Proceedings resume at 10:59 a.m.)

(Jury not present)

MS. MATTIACCI: -- just make an objection for the record?

THE COURT: Pardon me?

MS. MATTIACCI: Can I make an objection just for the record on the verdict sheet?

THE COURT: What is it?

MS. MATTIACCI: Just that we had requested a motivating factor under the PHRA. And so that -- we requested it. I think Your Honor already denied it. But I just wanted to preserve that for -- yeah.

THE COURT: Thank you. All right.

MS. MATTIACCI: Thank you.

THE COURT: Yes.

MR. HARRIS: I'm sorry.

THE COURT: Bring the jury in.

MR. HARRIS: And Judge, we have one thing -- just

one issue.

MS. SATINSKY: Your Honor, in the prior verdict form you gave us, there was no Question 10, about wilful misconduct.

MR. HARRIS: Yeah, I mean --

MS. MATTIACCI: Yes, there was. It's on Page 4.

THE COURT: What about it?

(Pause in proceedings)

THE COURT: What is the objection?

MS. SATINSKY: Your Honor, never mind. My apologies.

THE COURT: All right.

MR. HARRIS: We apologize.

THE COURT: Bring the jury in.

(Jury present)

THE COURT: You may be seated.

Ladies and gentlemen, we have reached that point in the trial known as the charge of the Court. It is the purpose of the Court's charge to give you the law that applies to this case and to assist you as much as possible in determining the true facts of this case. You must decide this case based only on the evidence presented in this courtroom. You must not be influenced in any way by either sympathy or prejudice or compassion.

You must follow the law as I explain it, even if

you do not agree with the law. You must follow all my instructions as a whole and not single out or disregard any of the instructions on the law. You are the judges of the facts. I am the judge of the law, so that you have to accept what I tell you -- or you must accept my statement of the law that applies to this case. I am not the judge of the facts; you are. You are the ones who decide what the true facts in this case are.

So in a nutshell, what a jury does is decide what are the facts, apply the facts to the law that the judge gives you, and decide, in this courtroom over these couple of days, whether the Plaintiff has proven her case by a preponderance of the evidence.

The fact that a corporation is involved as a party in this case, that would -- Temple University, must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. A company or a university is entitled to the same fair trial as a private individual. When a corporation is involved, of course, it may only act through people as its employees. And in general, a corporation is responsible under the law for any of the acts and statements of the employees that are made within the scope of their duties as employees.

I mentioned to you that you must decide the facts.

You decide that from the evidence. The evidence from which you are to find the facts consists of testimony of the witnesses, documents and other things received in evidence, and any facts that have been stipulated to. I'm not sure whether we had any of those, but any facts that all the parties agreed to, you may consider.

The following things are not evidence. Statements, arguments, and questions of the lawyers to the parties in the case are not evidence. Objections by lawyers aren't -- that would -- those are not evidence. Any testimony I may have told you to disregard is not evidence. And anything that you may have seen or heard outside of this courtroom is not evidence. You must make your decision based on -- only on the evidence that you've seen and heard in the courtroom. Do not let rumors, suspicions, or anything else that you may see or hear influence you in any way.

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

There are rules that control what can be received in evidence. When a lawyer asks a question or offers an exhibit into evidence, and the lawyer on the other side

thinks it's not permitted by the rules of evidence, the lawyer may object. And this simply means you should not be influenced by the fact that an objection is made. It is the duty of an attorney to object when the attorney thinks that improper evidence is being offered, and you should not be influenced by the objection.

There are usually two types of evidence that you may use in reaching your verdict. One type is called direct evidence. An example of direct evidence is when a witness testifies about something that the witness knows through or has perceived through that witness' senses; sight, sound, feel, in that regard.

Another form is circumstantial evidence, and circumstantial evidence is proof of one or more facts from which you can find that another fact exists. An example of that, someone walks into the courtroom wearing a raincoat covered with what appears to be water, carrying a wet umbrella, that would be circumstantial evidence from which you can conclude that it is raining outside, even though you have no window to look out of, and so that you have no method to have direct evidence of what the weather is.

The law, contrary to what you might think, makes no distinction between direct evidence and circumstantial evidence. All the law requires is that a person who has the burden of proof carry that burden of proof by -- in a civil

case by a preponderance of the evidence, whether it be by direct evidence or circumstantial evidence.

When you are considering a witness' testimony and trying to decide the facts, you may believe everything a witness says, part of what a witness says, or none of what a witness says. In deciding what to believe, you may consider a number of factors: The opportunity and ability of a witness to see or hear or know the things the witness testified to; the quality of the witness' understanding and memory; the witness' manner while testifying; whether the witness has an interest in the outcome of the case or any motive or bias or prejudice.

You should consider whether the witnesses contradicted by anything the witness said or wrote prior to trial, or contradicted by other evidence in the case. You should consider how reasonable the witness' testimony is, whether considered -- when considered in light of other evidence that you believe. You may consider any other factors that bear on believability, and any other factors that you use in your own everyday life and assessing the credibility of people you meet in your everyday life.

The weight of the evidence to prove a fact does not necessarily depend on the number of witnesses to testify. What is more important is how believable the witnesses were and how much weight you think their testimony deserves.

You've heard they're out this -- these couple of days the expression "proof by a preponderance of the evidence." As I said, this is a civil case. Mrs. Briggs is the party who brought this lawsuit. Temple University is the party against which the lawsuit is filed. Ms. Briggs has the burden of proving her case by what we call preponderance of the evidence. That means that Ms. Briggs, the plaintiff, has to prove to you, in light of all the evidence, that what she claims is more likely so then not.

To say it differently, if you were to put the evidence favorable to the plaintiff, Ms. Briggs, and the evidence favorable to Temple University on opposite side of a balance scale, Ms. Briggs would have to make the scales tip somewhat on her side. If Ms. Briggs, the plaintiff, fails to meet this burden, the verdict must be for Temple. If you find, after considering all of the evidence, that a claim or fact is more likely so then not so, then the claim or fact has been proved by a preponderance of the evidence.

And, of course, in determining whether a fact has been proved by a preponderance of the evidence you may, unless otherwise instructed, consider the testimony of all the witnesses regardless of who may have called them, and all exhibits received in evidence regardless of who may have produced them.

Again, you may have heard of "proof beyond a

reasonable doubt." That's -- that applies in a criminal case, not a civil case.

I have in my hand a copy of the verdict form, and it is composed of several questions; it's four pages long. And that -- you shouldn't look upon that as being burdensome because it is a good outline of what I'm going to tell you. They are questions that are -- will be about the charge that I'm about to start, and I think that you will find it an aid. So as I go through things, don't worry about am I going to remember all of this. This, I think, will help jog your memory.

This case involves two statutes. One is Age Discrimination in Employment Act and the other is Title VII, which in our case involves discrimination as to sex. And throughout the case, we been referring to sex or gender. It's probably more accurate to say that this is really a gender dispute case, but in any event, I'll probably use both expressions and discharge.

In this case -- this is as to age discrimination in employment claim, in this case, Ms. Briggs is alleging that Temple University terminated her employment because of her age. In order for Ms. Briggs to recover on this discrimination claim against Temple University, she must prove that Temple terminated her employment and intentionally discriminated against her. This means she must prove that

age was a determinative factor in their decision.

Let me correct that, that but for her age, not a determining -- but for her age, Temple University would not have terminated her.

To prevail, Ms. Briggs must prove both of the following by a preponderance of the evidence: That Temple University terminated her employment; and, second, that Temple University terminated her employment because of her age. In other words, it was the reason that Temple University terminated her employment.

Although Ms. Briggs must prove that Temple University acted with the intent to discriminate, Ms. Briggs is not required to prove that Temple University acted with the particular intent to violate her federal civil rights. Moreover, she is not required to prove -- to produce direct evidence of intent such as statements admitting discrimination. Intentional discrimination may be inferred from the existence of other facts. You should weigh all the evidence received in the case in deciding whether Temple University intentionally discriminated against Ms. Briggs because of her age.

If you find that Temple University terminated Ms. Briggs' employment, Temple University has given a non-discriminatory reason for its decision to terminate Ms. Briggs' employment. If you believe Temple University's

stated reason and if you find that Temple University's decision to terminate Ms. Briggs' employment would have occurred because of Temple University's stated reason, regardless of Ms. Briggs' age, then you must find for Temple University. If you disbelieve Temple University's stated reason for its conduct, then you may, but need not, find that Ms. Briggs has proven intentional discrimination.

In determining whether Temple University's stated reason for its actions was a pretext or excuse for discrimination, you may not question Temple University's business judgment. You cannot find intentional discrimination simply because you disagree with the business judgment of Temple University or because it is harsh or unreasonable. You are not to consider Temple University's wisdom.

However, you may consider whether Ms. Briggs has proven that Temple University's reason is merely a cover-up for discrimination. Ultimately, you must decide whether Ms. Briggs has proven that but for her age, Temple University's decision to terminate her employment would not have been made.

There is also a claim of hostile work environment and harassment. This is under the Age Discrimination Employment Act, as well as Title VII. They claimed that this was done because of her gender or sex. Ms. Briggs claims

that she was harassed by various employees, Ms. Walton or Walker, Dr. Wu, Ms. Foehl, and that this harassment was motivated by Ms. Briggs' age and her sex.

Temple University is liable for the actions of its employees. In Ms. Briggs' claim of discriminatory harassment if she proves all of the following elements by a preponderance of the evidence, Temple University would be liable to her.

First, that Ms. Briggs was subjected to certain conduct that was hostile, that was not -- that the conduct was not welcomed, that -- third, that the conduct was motivated by the fact that Ms. Briggs was 59 years of age; fourth, that the conduct was so severe or pervasive that a reasonable person in Ms. Briggs' position would find Ms. Briggs' work environment to be hostile or abusive. This element requires that you look at the evidence from the point of view of a reasonable person a 59 years of age and how that person would have reacted to Ms. Briggs' work environment.

Fifth, she would have to prove that she believed her work environment to be hostile or abusive as a result of the conduct claimed. Sixth, that management-level employees knew or should have known of the abusive conduct. You can find that management-level employees should have known of the abusive conduct if an employee provided management-level personnel with enough information to raise a probability of

age harassment in the mind of a reasonable employer, or if the harassment was so pervasive and open that a reasonable employer would have had to be aware of it.

If any of the above elements has not been proved by a preponderance of the evidence, your verdict must be for Temple University and you need not proceed further in considering this claim. If you find that the element have been proved, then you must consider Temple University's defense.

You must find for Temple University if you find that Temple University has proved both of the following elements by a preponderance of the evidence: First, that Temple University exercised reasonable care to prevent harassment in the workplace on the basis of age, and also exercised reasonable care -- age and -- on the basis of age and sex, and also exercised reasonable care to promptly correct any harassing behavior that does occur; second, Ms. Briggs -- that Ms. Briggs unreasonably failed to take advantage of any preventive or corrective opportunities provided by Temple University.

Proof of the following facts will be enough to establish the first element that I just referred to concerning preventing and correction of harassment: That Temple University had established an explicit policy against harassment in the workplace on the basis of age and sex;

second, that the policy was fully communicated to its employees; third, that policy provided a reasonable way for Ms. Briggs to make a claim of harassment to higher management; and, fourth, reasonable steps were taken to correct any problem if raised by Ms. Briggs.

On the other hand, proof that Ms. Briggs did not follow a reasonable complaint procedure provided by Temple University will ordinarily be enough to establish that Ms. Briggs unreasonably failed to take advantage of a corrective opportunity. And that affirmative defense, the burden of proof of that affirmative defense by -- is placed on Temple University, and they must prove that, those elements that I went over, by a preponderance of the evidence.

In determining whether a work environment is hostile, you must look at all of the circumstances, which may include the total physical environment of Ms. Briggs' work area, the degree and type of language and insults that filled the environment before and after Ms. Briggs arrived, the reasonable expectations of Ms. Briggs upon entering the environment, the frequency of the offensive conduct, the severity of the conduct, the effect of the working environment on Ms. Briggs' mental and emotional well-being, whether the conduct was unwelcome to, that is conduct Ms. Briggs regarded as unwanted or unpleasant, whether the conduct was pervasive, whether the conduct was directed

toward Ms. Briggs, whether the conduct was physically threatening or humiliating, whether the conduct was merely a tasteless remark, whether the conduct unreasonably interfered with Ms. Briggs' work performance.

Conduct that amounts only to ordinary socializing in the workplace, such as occasional horseplay, occasional use of abusive language, tasteless jokes and occasional teasing, does not constitute an abusive or hostile work environment.

A hostile work environment can be found only if there is extreme conduct amounting to a material change in the terms and conditions of employment. Moreover, isolated incidents, unless extremely serious, will not amount to a hostile work environment.

It is not enough that the work environment was generally harsh, unfriendly, unpleasant, crude, or vulgar to all employees. In order to find a hostile work environment, you must find that Ms. Briggs was harassed because of her age and her sex. The harassment -- or the harassing conduct may, but need not, be based in -- the harassing conduct may, but need not, be age or sex based in nature. Rather, it is -- defining characteristic is that the harassment complained of was linked to Ms. Briggs' age or sex.

The key question is whether Ms. Briggs, as a person of 59 years of age, was subject -- and female, was subjected

to harsh employment conditions to which substantial younger employees were not.

It is important to understand that in determining whether a hostile work environment existed at Temple University's workplace, you must consider the evidence from the perspective of a reasonable person of Ms. Briggs' age, and the same age and sex in the same position. That is, you must determine whether a reasonable person of Ms. Briggs' age would have been offended or harmed by the conduct in question. You must evaluate the total circumstances and determine whether be alleged harassing behavior could be objectively classified as the kind of behavior that would seriously affect the psychological or emotional well-being of a reasonable person of Ms. Briggs' age and sex. The reasonable person of Ms. Briggs' age and sex is simply one of normal sensibility and emotional make-up.

There is also a claim by Ms. Briggs of retaliation, and this claim also is under the Age Discrimination in Employment Act and Title VII of the Civil Rights Act. So it also is based on age and sex. Ms. Briggs claims that Temple University retaliated against her because of her complaints of age and sex discrimination.

To prevail, she must prove the following by a preponderance of the evidence: First, that Ms. Briggs complained about age discrimination and sex discrimination;

second, Ms. Briggs was terminated at the time or after the protected conduct took place; third, that there was a causal connection between the termination of Ms. Briggs' employment and Ms. Briggs' complaint of age and sex discrimination.

Concerning the first element, Ms. Briggs need not prove the merits of her complaint of age or sex discrimination, but only that she was acting under a reasonable good-faith belief that her rights under the Age Discrimination in Employment Act and Title VII were violated.

Concerning the second element of -- the term "materially adverse" means that Ms. Briggs must show that Temple University terminated her employment and determination of her employment was serious enough that it well might have discouraged a reasonable worker from complaining of age or sex discrimination.

Concerning the third element, that of causal connection, the connection may be shown in many ways. For example, you may or may not find that there was a sufficient connection through the timing -- that is, Temple University's action followed shortly after Temple University became aware of Ms. Briggs' complaint of age and sex discrimination. Causation is, however, not necessarily ruled out by a more extended passage of time. Causation may or may not be proven by antagonism shown toward Ms. Briggs or a change in demeanor towards Ms. Briggs.

If you find that Temple University terminated Ms. Briggs' employment, Temple University has given a non-discriminatory reason for ending Ms. Briggs' employment. They said that despite numerous opportunities to improve, Ms. Briggs continually failed to perform her job, had poor judgment and bad attitude.

If you believe Temple University's stated reason and if you find that Temple University's decision to terminate Ms. Briggs' employment would have occurred because of Temple University stated reason, regardless of Ms. Briggs's complaint of age and sex discrimination, then you must find for Temple University. If you disbelieve Temple University's stated reason for its conduct, then you may, but need not, find that Ms. Briggs has proved retaliation.

In determining whether Temple University stated reason for its actions was a pretext or excuse for retaliation, you may not question Temple University's business judgment. You cannot find retaliation simply because you disagree with the business judgment of Temple or believe that it is harsh or unreasonable. You are not to consider Temple University's wisdom.

However, you may consider whether Ms. Briggs has proven that Temple University's reason is merely a cover-up for retaliation. Ultimately, you must decide whether Ms. Briggs' complaint of age and sex discrimination was the

reason for Temple University's terminating her employment.

I'm going to at this time give you an instruction as to damages in the event that you find the age discrimination in employment has been proved. And the fact that I give you an instruction on damages should not be taken by you as an indication from me that I think that you should find any particular verdict. In this instruction, I am required to give you all of the law that you may need to decide the case. So the fact that I give you this instruction, as I said, should not be taken as an indication from me about what verdict you should render.

If you find that Temple University terminated Ms. Briggs' employment and intentionally discriminated against Ms. Briggs because of her age or sex, then you must determine the amount of damage that Temple University's actions have caused Ms. Briggs. Ms. Briggs has the burden of proving damages by a preponderance of the evidence.

You must award as actual damages an amount that reasonably compensate Ms. Briggs for any lost wages and benefits, taking into consideration any increases in salary and benefits, including pension that Ms. Briggs would've received from Temple University had Ms. Briggs been the subject of Temple University's -- had she not been the subject of Temple University's discrimination.

Back-pay damages, if any, apply from the time of --

he employment ended, until the date of a verdict. You must reduce any award by the amount of expenses that Ms. Briggs would have incurred in making those earnings. As I say that, I don't think you have -- anybody has given you any evidence of that.

If you award back pay, you are instructed to deduct from the back pay a figure, whatever wages Ms. Briggs has obtained from other employment during that period. However, note that you should not deduct -- well, the rest of it doesn't matter.

You are further instructed that Ms. Briggs has a duty to mitigate her damages. That is, she has -- she is required to make reasonable effort under the circumstances to reduce her damages. And it's Temple University's burden to prove that Ms. Briggs has failed to mitigate. So if Temple University persuades you buy a preponderance of the evidence that Ms. Briggs failed to obtain substantially equivalent job opportunities that were reasonably available to her, you must reduce the amount of damages by the amount of wages that Ms. Briggs reasonably could have earned if she had obtained those opportunities.

In assessing age discrimination in employment damages, you must not consider attorneys fees or costs or litigation costs in this case.

There's an element of damage, liquidated damages if

you find that Temple University terminated Ms. Briggs' employment and intentionally discriminated against her. If you find that she is entitled to recover damages for lost wages or benefits because of Temple University's intentional discrimination against Ms. Briggs based on her age or sex in violation of those Acts, then I would ask you to decide whether a further question -- to answer a further question, whether Temple University's conduct was willful. For the purpose of your answer to that question, Ms. Briggs has the burden of proving willfulness by a preponderance of the evidence.

If you find Temple University's violation to be willful, if Temple University knew -- let me restate that. You must find Temple University's violation of the Acts to be willful if Temple University knew or showed reckless disregard for whether terminating Ms. Briggs' employment was prohibited by law. To establish willfulness, it is not enough to show that Temple University acted negligently. If you find that Temple University did not know or knew only that the law was potentially applicable and did not act in reckless disregard as to whether its conduct was prohibited by law, then Temple University's conduct was not willful.

If you find that her rights have been violated, Temple University -- if you find that they terminated Ms. Briggs' employment and intentionally discriminated against

her because of her age or sex, you may determine an award separately, a monetary amount equal to the present value of any future wages and benefits that Ms. Briggs would reasonably have earned from Temple University had Temple University not terminated her employment.

MR. HARRIS: Your Honor?

THE COURT: Yes?

MR. HARRIS: May we see you briefly?

THE COURT: Yes.

(Sidebar)

MR. HARRIS: First, Judge, I need to use the restroom. But secondly (indiscernible) just gave the front pay instruction, and I thought that was out.

THE COURT: I'm sorry?

MR. HARRIS: I think you gave the front pay instruction, and I thought that was out.

MS. MATTIACCI: I -- the front pay is not on the jury verdict sheet. I thought maybe Your Honor was going to be deciding, but if it's being charged to the jury, I just want to add it to the --

THE COURT: It's not on the (indiscernible)

MR. HARRIS: No, it's not on there.

MS. MATTIACCI: (indiscernible)

THE COURT: (indiscernible)

MR. HARRIS: Because, Judge, remember, the evidence

was in the case, was that she stopped looking for a position when she got her new role, so that's why front pay goes out.

MS. MATTIACCI: No. No, I mean the front pay means to be determined, but I thought it was a condition -- the front is not now --

THE COURT: What happened? There was a mixup as to that --

MR. HARRIS: Right.

THE COURT: -- as to which statute.

MS. MATTIACCI: Right.

MR. HARRIS: But it's my understanding that you said the front pay was not in (indiscernible)

THE COURT: (indiscernible)

MR. HARRIS: Okay.

MS. MATTIACCI: No. What do you mean "not in"?

MR. HARRIS: May I use the restroom?

MS. MATTIACCI: I'm not clear here. Front pay is going to be decided, correct?

MR. HARRIS: It wasn't. No, that wasn't in the case, Judge.

MS. MATTIACCI: Yes.

MR. HARRIS: You took that out.

MS. MATTIACCI: No. No, no, no, no.

THE COURT: All right.

MS. MATTIACCI: It was an issue --

THE COURT: I tried to remove it, somebody told me --

MR. HARRIS: No, you took it --

MS. MATTIACCI: Right.

MR. HARRIS: -- out, Judge.

MS. MATTIACCI: No. No, no, no. See, he's trying to get away with this. Your Honor, front pay needs to be decided by the jury, so it should be in the verdict sheet and be read to the jury. That's --

THE COURT: Is it on the verdict sheet?

MR. HARRIS: It is not.

MS. MATTIACCI: It is not --

MS. SATINSKY: It's not.

MS. MATTIACCI: -- on the verdict sheet.

MR. HARRIS: It is not, Judge.

THE COURT: And nobody said anything?

MS. MATTIACCI: Because I thought Your Honor was ruling that you were going to make the ruling on the front pay.

THE COURT: (indiscernible) --

MS. SATINSKY: Your Honor?

THE COURT: -- do it that way.

MS. SATINSKY: Your Honor, the law is clear. When somebody takes themselves out of the --

MS. MATTIACCI: That's a jury --

MS. SATINSKY: -- workplace and stops --

MS. MATTIACCI: -- determination.

MS. SATINSKY: -- looking for a job, there's no front pay. It's a legal question, and the case law is clear that it's a legal question.

MS. MATTIACCI: Maybe we should just charge --

MR. HARRIS: Judge, I'm going to --

MS. MATTIACCI: -- the jury and give --

MR. HARRIS: -- run to the restroom.

MS. MATTIACCI: -- the advisory. You know? You can charge the jury on --

THE COURT: But there's no place on the verdict form.

MS. MATTIACCI: There is not a place on the verdict form right now.

THE COURT: All right.

MS. MATTIACCI: So ...

(Sidebar concluded)

THE COURT: I've been asked if we can have a ten-minute recess, so the jury may go out for ten minutes.

THE COURT OFFICER: All rise.

(Recess taken at 11:48 a.m.)

(Proceedings resume at 11:55 a.m.)

(Jury not present)

(Sidebar)

THE COURT: Can we get this straightened out? Where are we?

MR. HARRIS: So here's the issue, Judge. The law says that the defendant has the burden to demonstrate -- to prove mitigation, unless the plaintiff has taken themselves out of the labor market.

MS. MATTIACCI: No.

MR. HARRIS: In this case, Ms. Briggs specifically testified that, when she started working as a home healthcare assistant, she stopped looking for employment. That is a question of law. This Court, as I understood it, did not have it on the verdict form because this Court heard the testimony, and it was not even in dispute.

THE COURT: No, no. That's (indiscernible)

MS. MATTIACCI: No, that's not --

THE COURT: That's not the cause of -- there is no significance to it not being on it.

MR. HARRIS: Okay.

THE COURT: Because I didn't (indiscernible)

MS. MATTIACCI: I think a way it can be handled, Your Honor, is, in Title VII cases, it's an advisory opinion by the jury. In ADEA, it goes to the jury when there's no reinstatement. The way that we could handle it is to have it not go to the jury, and we could submit -- if there is a verdict in our favor, we could submit an application to the

Court for a front pay --

MR. HARRIS: Yeah.

THE COURT: That's fine.

MS. MATTIACCI: -- after a verdict.

MR. HARRIS: We can do that.

MS. MATTIACCI: Is that okay?

THE COURT: That's fine. And I'll tell the jurors to ignore what I --

MS. MATTIACCI: Okay.

MR. HARRIS: (indiscernible)

MS. MATTIACCI: Your Honor, in terms of other objections to the jury form, I've just been making them -- should we wait until the end?

THE COURT: (indiscernible) it's too late. We can't make changes now.

MS. MATTIACCI: Well, there were just some things that I--

THE COURT: I'm going to go over the form with these people.

MS. MATTIACCI: No, not the verdict form, the verdict form is fine. It was just the jury instructions, as they were being said, I just wanted to make sure I was clear for the record that I had requested that it's not the sole reason, it doesn't have to be the only reason, that's clear under the case law. And the way that the jury is being read

to, it seems like it has to be done --

THE COURT: What claim are you talking about now?

MS. MATTIACCI: The ADEA claim and Title VII. You said most prove each was "the reason," that retaliation was "the reason," you know, so that is not --

THE COURT: And I said "but for"?

MR. HARRIS: You did.

MS. SATINSKY: You did.

MR. HARRIS: You did.

THE COURT: Isn't that about the same as a reason for --

MR. HARRIS: One would think so.

THE COURT: All right.

MR. MUNSHI: Sole.

THE COURT: Okay.

MS. MATTIACCI: Can I also just say --

THE COURT: Well, you'll get a chance to, at the end --

MS. MATTIACCI: Okay. I just -- at the end? That's fine. Okay.

(Sidebar concluded)

(Jury present)

THE COURT: You may be seated. That break was at the request of counsel.

I had been talking to you about front pay. I want

you to ignore that. That will not be a factor for you to consider, so ignore what I mentioned to you.

The -- if you return a verdict and -- for Ms. Briggs, but she has failed -- if you find that she has failed to prove actual injury, and therefore is not entitled to damages, then you must award nominal damages of one dollar. A person whose federal rights are violated is entitled to a recognition of that violation, even if it -- she suffered no compensable injury. Nominal damages of one dollar are designed to acknowledge the deprivation of a federal right, even where no compensable injury occurs.

However, if you find compensable injury, you must award damages for lost wages or benefits, rather than -- or for the loss that you find she suffered, rather than nominal damages. And you shouldn't find nominal damages even of one dollar, unless you find that Ms. Briggs has proven her case of violation of her age and/or sex discrimination.

As to Title VII, which forbids discrimination as to sex or gender, in this case, Ms. Briggs alleged -- is alleging that Temple University terminated her employment because of her sex. In order for Ms. Briggs to recover on this discrimination claim against Temple, Ms. Briggs must prove that Temple University intentionally discriminated against Ms. Briggs. This means that Ms. Briggs must prove that Temple University terminated her employment, and her sex

was a determinative factor in Temple University's decision.

To prevail on this claim, Ms. Briggs must prove all of the following by a preponderance of the evidence: First, that Temple terminated Ms. Briggs' employment; and second, that Ms. Briggs' sex was a determinative factor in Temple University's decision.

Although Ms. Briggs must prove that Temple University acted with the intent to discriminate, she is not required to prove that Temple University acted with the particular intent to violate Ms. Briggs' federal civil rights. Moreover, Ms. Briggs is not required to produce direct evidence of intent, such as statements admitting discrimination. Intentional discrimination may be inferred from the existence of other facts. You should weigh all of the evidence received in the case in deciding whether Temple University intentionally discriminated against Ms. Briggs.

If you find that Temple University terminated Ms. Briggs' employment, Temple University has given a nondiscriminatory reason for its decision, despite -- and that reason they advanced is that, despite numerous opportunities to improve, Ms. Briggs continually failed to perform her job, had poor judgment, and bad attitude.

If you believe Temple University's stated reason, and if you find that Temple University's decision to terminate Ms. Briggs' employment, you -- if -- let me start

that -- if you believe Temple University's stated reason, and if you find that Temple University's decision to terminate Ms. Briggs' employment would have occurred because of Temple University's stated reason, regardless of Ms. Briggs' sex, then you must find for Temple University. If you disbelieve Temple University's stated reason for its conduct, then you may, but need not find that Ms. Briggs has proved intentional discrimination.

In determining whether Temple University's stated reason for its actions was a pretext or excuse for discrimination, you may not -- you may not question Temple University's business judgment. You cannot find intentional discrimination simply because you disagree with the business judgment of Temple University or believe it is harsh or unreasonable.

You are not to consider Temple University's wisdom. However, you may consider whether Ms. Briggs has proven that Temple University's reason is merely a coverup for discrimination. Ultimately, you must decide whether Ms. Briggs has proven that her sex was a determinative factor in Temple University's decision to terminate her for her employment. "Determinative factor" means that, if not for Ms. Briggs' sex, Ms. Briggs' termination would not have occurred.

Now it might be a little confusing to you because

we're talking about the same termination of employment, but under different statutes, and that's why I repeated those separately.

May I just see counsel at sidebar?

(Sidebar)

THE COURT: I tried to cover Title VII.

MR. HARRIS: You did.

THE COURT: Harassment and join them both. I just want to make sure I did that --

MR. HARRIS: You did.

MS. MATTIACCI: The only piece --

THE COURT: -- completely.

MS. MATTIACCI: -- was you would say age and sex, and not also complaints of discrimination, in terms of the hostile work environment; that a hostile work environment could be created because she complains of the discrimination, a retaliatory hostile work environment. That's -- that was a missing piece of the instruction. I don't know, you know, if you want to just do a summary, you know, that it -- that the hostile work environment can also be created by the complaints of discrimination. It's in the verdict sheet. But it would follow.

THE COURT: All right. Okay. I just wanted to make sure that you were satisfied that I joined those two.

MS. MATTIACCI: Those two are fine.

MS. SATINSKY: That's fine.

MS. MATTIACCI: It's just the missing piece of the retaliatory hostile work environment was the only part that I had a note on.

THE COURT: And I --

MS. MATTIACCI: Yeah, maybe we could just solve it by saying that Ms. Briggs' claims for hostile work -- for hostile work environment can also be -- can also be based on her claims of -- complaints of discrimination.

MS. SATINSKY: It should be complaints of age and sex discrimination.

MS. MATTIACCI: Yeah, complaints of age and sex discrimination.

(Participants confer)

(Sidebar concluded)

THE COURT: Just referring back to the charge on hostile work environment.

MS. MATTIACCI: Yes.

THE COURT: The Court instructs further that that can be found, based upon Ms. Briggs' claim of hostile work environment, based on sex and age. The fact that she complained about those things can be a basis for her cause of action. Is that --

MS. MATTIACCI: For the hostile work environment, Your Honor --

THE COURT: For the --

MS. MATTIACCI: -- retaliatory hostile work environment.

THE COURT: For the hostile work environment, yes.

I made reference, under certain circumstances, that the recovery could be made for compensatory damages. And again, just because I instruct you on damages, it should not be taken by you as an indication from me that I think that you should return any particular verdict.

If you find, by a preponderance of the evidence of the evidence, that Temple University terminated Ms. Briggs' employment and intentionally discriminated against Ms. Briggs by terminating her employment because of her sex, then you must consider the issue of compensatory damages. As I instructed you earlier, she -- Ms. Briggs is not entitled to compensatory damages for her age discrimination claim.

Under Title VII of the Civil Rights Act, however, you must award Ms. Briggs an amount that will fairly and adequately compensate her for any injury she actually sustained as a result of Temple University's conduct towards Ms. Briggs, due to her sex. The damages that you award must be fairly compensate -- fair compensation, no more and no less. The award of compensation -- compensatory damages is meant to put Ms. Briggs in the position she would have occupied if the discrimination had not occurred.

Ms. Briggs has the burden of proving damages by a preponderance of the evidence. And she has the burden to show that the injury would not have occurred without Temple's conduct. Ms. Briggs must also show that Temple University's act played a substantial part in bringing about the injury, and that the injury was either a direct result of a reasonable, probable consequence of Temple University's act.

In determining the amount of any damage that you decide to award, you should be guided by common sense, and you must use sound judgment in fixing an award of damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy, speculation, or guesswork.

You may award damages for any pain, suffering, inconvenience, mental anguish or loss of enjoyment of life that you find Ms. Briggs experienced as a consequence of Temple University's unlawful act that you may have found proven. No evidence of monetary value of such intangible things as pain and suffering has been or need be introduced into evidence. There is no exact standard.

And you are -- in awarding compensatory damages, you are not to award damages for any amount of wages she would have earned.

May I see counsel at sidebar?

(Sidebar)

THE COURT: Is that enough on those damages?

MS. SATINSKY: Your Honor --

THE COURT: I didn't want to read that whole thing.

MR. HARRIS: No.

MS. SATINSKY: Your Honor, we would ask -- this one sentence was missed. It says:

"Any award you make should be fair in light of the evidence presented at trial."

THE COURT: I think I said that. I might not have read it, but I -- you know, I said unreasonable and so forth.

MS. MATTIACCI: I think you -- can you just say this paragraph -- oh, maybe you already said it, that the law does not require to prove with mathematical precision, just --

THE COURT: I said, in substance, that there was no mathematical --

MS. MATTIACCI: Okay.

THE COURT: -- measure of pain and suffering and so forth.

MR. HARRIS: You did.

MS. MATTIACCI: Okay.

THE COURT: Anything else?

(Participants confer)

THE COURT: I'm just going to go over the verdict form with them.

MS. MATTIACCI: Okay. Yes.

(Sidebar concluded)

(Court and court personnel confer)

THE COURT: Members of the jury, I'll just go over the verdict form with you.

Question 1: Has Ms. Briggs proved by a preponderance of the evidence of the evidence that her gender was a determinative factor in Temple University's decision to terminate her position? Yes or no.

Question 2: Has Ms. Briggs proved by a preponderance of the evidence that, but for her age, Temple University would not have terminated her position? Yes or no.

And the instruction after -- under that question:

If you answer yes, then you should skip to Question 8; if no, proceed to Question 3. And we'll go to 3.

Has Ms. Briggs proved by a preponderance of the evidence of the evidence that, but for her reasonable and good faith --

(Pause in proceedings)

THE COURT: Has Ms. Briggs proved by a preponderance of the evidence of the evidence that, but for her reasonable, good faith complaint regarding age discrimination, Temple University would not have terminated her position? Yes or no.

Question 4: Has Ms. Briggs proven by a preponderance of the evidence of the evidence that, but for her reasonable good faith complaint regarding gender discrimination, Temple University would not have terminated her position? Yes or no.

Question 5: Has Ms. Briggs proved by a preponderance of the evidence that she was subjected to severe or pervasive harassment by Temple University because of her age? Yes or no.

Has Ms. Briggs proved -- and this is 6: Has Ms. Briggs proved by a preponderance of the evidence that she was subjected to severe or pervasive harassment by Temple University because of her gender?

Question 7: Has Ms. Briggs proved by a preponderance of the evidence that she was subjected to severe or pervasive harassment by Temple University because of her reasonable, good faith complaint regarding age discrimination?

Number 8: Has Ms. Briggs proved by a preponderance of the evidence that she was subjected to severe or pervasive harassment by Temple University because of her reasonable, good faith complaint regarding gender discrimination?

And then the note under Question 8:

Please proceed to Question 9, only if answered -- only if you answered yes to any of the questions above. If

you answer no to all questions above, you have completed your deliberations and you have found in favor of Temple University. You must sign and date this form and return it to the court officer.

Question -- and then Question 9: Has miss proved -- Ms. Briggs proved by a preponderance of the evidence that she lost wages as a result of Temple University's engaging in intentional age discrimination, by terminating her employment? Yes or no.

And if your answer is yes, state the amount of lost wages, if any, and award to Ms. Briggs as a result of Temple University engaging in age discrimination. When calculating the amount of lost wages, you must subtract the income Ms. Briggs actually earned following the end of her employment at Temple University, and wages you determine that Ms. Briggs could have earned if she had used reasonable and diligent efforts to find other work, as she was required to do. If your answer is no, then write zero in the space below. Proceed to Question 10 only if you answer yes to Questions 2, 3, 5, or 7. Otherwise, go to Question 11.

Question 10: Has Ms. Briggs proved by a preponderance of the evidence that Temple University engaged in wilful misconduct by intentionally discriminating against her because of her age, or retaliating against her because of her complaint of age discrimination? Yes or no.

And Question 11: Has Ms. Briggs proved by a preponderance of the evidence pain and suffering damage? Yes or no.

And if your answer to 11 is yes, state the amount that -- of pain and suffering damage, if any, sustained by Ms. Briggs. If your answer to Question Number 11 is no, then write zero in the space below.

When each of you has agreed to the answers that have been -- the questions that have been asked here, the agreement should be recorded by the foreperson in one of these forms that has been given to you. When you've agreed to them all, the foreperson should sign it, date it. Just knock on the jury room door and tell Mr. Rafferty that you have reached your verdict. The foreperson -- the jury will be returned to the courtroom, and the foreperson will state the answers to those questions in open court.

So the first thing you do when you retire is to consider who should be the foreperson. The only additional duty the foreperson has is sort of lead the discussion, at least get it started, and to fill out and sign this verdict form, and then state the result in court.

You should discuss your opinions as to each, and decide, you know, and give your reasons for your opinion. Don't just say it should be this, and not listen to anything else. And if one of your members convinces you that your

original opinion was incorrect, it is okay for you to change your opinion, if you're convinced that the original one was incorrect. However, nobody should change an opinion simply for the reason to reach a unanimous verdict. So your verdict must be unanimous, each of you must agree to it. And the jury may retire to --

MS. MATTIACCI: Your Honor, one second. Could we have a very quick sidebar before the jury retires? Just one thing on the verdict sheet.

THE COURT: I don't think I've ever had so many sidebars.

MS. MATTIACCI: I know, I'm so sorry.

(Sidebar)

MS. MATTIACCI: I hate to do this. I just have to -- Question 9 is the lost wage issue. As --

THE COURT: Wait until the others get here. Wait.

MS. MATTIACCI: I'm sorry. Question 9 says lost wages as a result of Temple University's engaging -- it says "in intentional age discrimination." It shouldn't even say that because you get damages whether it's age or sex. And at this point, they're only here if they found age discrimination, so I just -- I think that that should be deleted. It should be did you find that she lost wages as a result of engaging in intentional discrimination.

THE COURT: Well --

MS. MATTIACCI: You know --

MR. HARRIS: (indiscernible)

MS. SATINSKY: Your Honor, the instruction is fine as it is.

THE COURT: I'm not changing it now.

MS. MATTIACCI: Okay. I just wanted --

(Sidebar concluded)

THE COURT: The jury may retire to consider its verdict.

(Jury excused to begin deliberations at 12:24 p.m.)

THE COURT: The jury has its lunch there. You know, if the attorneys want to get lunch, I guess, but try to be back, but be back definitely within an hour.

MR. HARRIS: Very well.

THE COURT: If you can be back sooner, that's all the better because they may have a question right away, you never know.

MR. HARRIS: Okay.

MS. MATTIACCI: Okay.

THE COURT: All right. Thank you.

COUNSEL: Thank you, Your Honor.

(Off the record at 12:25 p.m.)

(Proceedings resume at 2:39 p.m.)

(Jury not present)

THE COURT: The jury has sent a question. The

question is how do we calculate the lost wages? Any suggestions on what I should tell them?

MS. MATTIACCI: Well, Your Honor, we could provide them with the amount of money that she would have made if she stayed there minus the amount of money that she has made, which was the calculation that I put on the screen during the closing.

THE COURT: Well, you can't add to the record. They were given some figures, but they were very general, right?

MS. MATTIACCI: They were. It was the -- it was really her salary that she would -- it was $53,000 was what she made at Temple, plus benefits. And there were -- that number was given to them. And then they were told that she made $22,000 a year since then.

THE COURT: Okay.

MS. MATTIACCI: And the -- you know, I just -- I did the calculation, it was on the screen during the closing, of what the difference was. Maybe they just didn't remember it because they couldn't, you know, write it down.

THE COURT: 53,000 and 22?

MS. MATTIACCI: No, it was --

THE COURT: That was the testimony?

MS. MATTIACCI: No, 69,000 is the -- it's 50 -- it was 50 -- 69,000 was her total compensation at Temple per

year. And now she makes $22,000 total. So it's 69,000 minus 22,000 per year.

MR. HARRIS: Judge, that's not my recollection of what the evidence was regarding her salary.

THE COURT: You were adding in her benefits to that to get to $69,000? Is that how you get there?

MS. MATTIACCI: Yes. And -- but that is based upon the numbers that Temple gave us as to the value of the her benefits in the --

THE COURT: No, I'm just talking about what was entered into in this trial.

MS. MATTIACCI: It was entered into in this trial.

THE COURT: Okay.

MS. MATTIACCI: It was the interrogatory response of Temple.

THE COURT: Why do you say not?

MR. HARRIS: Judge, I think we have the trial transcript, and I would direct counsel to find it in the trial transcript. I don't believe that that happened, so.

THE COURT: Yeah, I remember a figure for benefits, right?

MS. MATTIACCI: The -- yes, we entered into an exhibit the interrogatory responses of Temple University, and it has the calculation in there. So that's in there. And the -- so she was out of work for two years entirely, and for

the second two years is where the $22,000 per each year comes out. So the first two years she's completely out 69,000. The second two years, it's 22,000 deducted each year.

THE COURT: Well, I don't want to --

MS. MATTIACCI: I mean, you could tell them that since the time of her termination, she has made 44,000, and if she was still at Temple, she would have made 69,000 per year. She -- and they know she's been out of work for four years.

MR. HARRIS: Judge, the issue is, as this Court -- as we directed the Court at side bar, unfortunately Ms. Briggs stopped looking for work, and that's into the record, as well, once she received her employment as a home health care assistant.

THE COURT: I am going to tell the jury that they -- you know, if they want some particular testimony read back, we will do it. But, you know, I don't want to search the record at this point, frankly.

Bring the jury in.

THE BAILIFF: They need two minutes, Judge. Two are in the restroom.

MS. MATTIACCI: Your Honor, the calculation of the benefits is in trial Exhibit P-62 on Page 11. This is an exhibit in evidence. I would propose that the jury --

THE COURT: Show it to the other side. Would you

had that up?

MS. MATTIACCI: Yes.

THE COURT OFFICER: All rise.

(Jury present)

THE COURT: You may be seated. Oh, we're still waiting --

UNIDENTIFIED: We lost one.

THE COURT: Okay. We'll wait. Sorry.

(Pause in proceedings)

THE COURT: Is this all one exhibit or two?

MS. MATTIACCI: It's Temple's responses to Plaintiff's interrogatories, trial Exhibit 62. And the information is on Pages 11 and 12.

(Sidebar)

THE COURT: Any objection to my giving them Pages 11 and 12?

MS. MATTIACCI: It's totally --

MR. HARRIS: Judge, ordinarily I wouldn't have an objection, but the problem is I think the jury would be entitled to receive the litigation information, as well, and that's not included in that page.

THE COURT: Well, the only figures I remember, about $53,000.

MR. HARRIS: That's fair (indiscernible)

THE COURT: Yeah. And then --

MR. HARRIS: The additional, which would have been the benefits, the --

MS. MATTIACCI: Well, in her direct examination, we gave her this document and she confirmed those numbers were accurate. And we entered that exhibit for the purpose of the (indiscernible) loss.

THE COURT: Where are you pointing?

MS. MATTIACCI: To both this and this. She confirmed that these numbers were correct in terms of her loss.

MR. HARRIS: Judge, I don't --

THE COURT: And this is in evidence?

MS. MATTIACCI: Yes.

MR. HARRIS: Well, I certainly don't remember. If it is, then I'll --

THE COURT: I'd have to (indiscernible) show you.

MR. HARRIS: -- rest on the record.

MS. MATTIACCI: In terms of --

MR. HARRIS: I'll rest on the record if it's in the record. But (indiscernible)

MS. MATTIACCI: In terms of her salary and --

MR. HARRIS: -- I don't recall that.

MS. MATTIACCI: -- how -- her salary at Temple and how much she makes now, we have the transcript ready for that portion because that has to do with benefits. But we have

the salary information from the trial transcript if Your Honor wants to have that read.

THE COURT: (Indiscernible)

MS. MATTIACCI: Yes.

MR. MUNSHI: Well, it's not video -- it's not audio. We can just -- we have the written transcript.

(Participants confer)

MS. MATTIACCI: Would you like me to read it?

MS. SATINSKY: I think, Your Honor, if anyone should read it, I think it should be us.

MR. HARRIS: Yeah, we're requesting --

(Participants confer)

(Sidebar concluded)

THE COURT: I have your question, how do we calculate lost wages. There wasn't a whole lot said about it, as I recall. There is a part of an exhibit that referred to some of it, but my recollection is that -- well,

MS. MATTIACCI: Would you like us --

THE COURT: Would you -- what?

MS. MATTIACCI: I didn't know if you wanted us to read it or have -- give you the citations.

THE COURT: Would you like me to have some testimony played back for you with regard to that?

UNIDENTIFIED: The only place we saw it was during the closing arguments.

THE COURT: Okay. You don't want me to have the testimony replayed back or -- with regard to --

UNIDENTIFIED: I didn't see anywhere that we actually heard the number. We just saw it on the screen at one point.

MR. MUNSHI: Your Honor, we have the transcript up and we can show opposing counsel what's in the record.

THE COURT: All right. Show it. Let's go.

MR. MUNSHI: Your Honor, we have two question and answers --

THE COURT: All right.

MR. MUNSHI: -- from Plaintiff's testimony that we can read to the jurors right now.

THE COURT: You're going to show it on the --

MR. MUNSHI: We could show it, but it's very short.

THE COURT: All right.

MR. MUNSHI: I think I can just --

MR. HARRIS: Sorry, Your Honor, may I speak to counsel again just briefly?

(Participants confer)

MR. MUNSHI: Judge, there's another clip as well. That's the direct. She does -- (indiscernible) entitled to listen to the cross as well, just the one line. The -- this question and answer that we propose read to the jury is regarding her annual salary and benefits at temple, and then

her subsequent employment, how much she has made since she's found a new job. And we propose those are the only two things that should be heard.

THE COURT: Read that.

MR. MUNSHI: Question:

"And while you were working at Temple, what was your annual salary?

"Answer: From $50,000 with benefits.

"Question: And at the $10.70 that you are -- that you've been making in total, how much have you made working as a home healthcare aide for two years?

"Answer: It's about 22,000 a year, so two -- it's been two years now, so forty-four."

THE COURT: Does that help?

A JUROR: Yes.

A JUROR: Yes.

THE COURT: The jury may retire to consider their verdict.

(Jury resumes deliberations)

MR. HARRIS: We were trying to find the clip, and I'll I've it to the Court's discretion, the portion of the transcript where Ms. Briggs said that she stopped looking for a job. I think they're entitled to receive that, as well, and that's what I was explaining to counsel.

THE COURT: I tried to give them what they asked

for, and that's it. You may have an exception.

MR. HARRIS: Very well. Thank you.

THE COURT: I'll go off.

(Off the record at 2:52 p.m.)

(Proceedings resume at 2:58 p.m.)

(Call to order of the Court)

THE COURT: You may be seated.

All right. Take the verdict.

THE CLERK: Yes, Your Honor. Members of the jury, please rise.

THE COURT: I don't want them to rise.

THE CLERK: Okay, I'm sorry. Everybody be seated. Just the foreperson.

A JUROR: Okay.

THE CLERK: Members of the jury, have you reached a verdict based upon the questions from the Court?

THE FOREPERSON: Yes.

THE CLERK: Will the foreperson please answer the Question 1, yes or no?

THE FOREPERSON: No.

THE CLERK: Question 2, yes or no?

THE FOREPERSON: Yes.

THE CLERK: Question 3, yes or no?

THE FOREPERSON: Yes.

THE CLERK: Question 4, yes or no?

THE FOREPERSON: No.

THE CLERK: Question 5, yes or no?

THE FOREPERSON: Yes.

THE CLERK: Question 6, yes or no?

THE FOREPERSON: No.

THE CLERK: Question 7, yes or no?

THE FOREPERSON: Yes.

THE CLERK: Question 8, yes or no?

THE FOREPERSON: Yes.

THE CLERK: Question 9, yes or no?

THE FOREPERSON: Yes.

THE CLERK: The amount?

THE FOREPERSON: Two hundred and fifty thousand.

THE CLERK: Question 10, yes or no?

THE FOREPERSON: Yes.

THE CLERK: Question 11, yes or no?

THE FOREPERSON: Yes.

THE CLERK: Amount?

THE FOREPERSON: Three hundred and fifty thousand.

THE COURT: Okay. Get the verdict, please.

THE CLERK: Members of the jury, harken to your verdict as the Court has recorded it in the case issued in Civil Action 16-248 where as Ruth V. Briggs, as Plaintiff, and Temple University, as Defendant, you have answered the interrogatories as followed: Question 1, no; Question 2,

yes; Question 3, yes; Question 4, yes -- I'm sorry, Question 4, no; Question 5, yes; Question 6, no; Question 7, yes; Question 8, yes; Question 9, yes, in the amount of 250,000; Question 10, yes; Question 11, yes, in the amount of 350,000. And so say you all?

JURORS: Yes. Yes.

MR. HARRIS: Excuse me, Your Honor. May we have the jury polled?

THE COURT: Yes. You may be seated.

THE CLERK: Sure.

THE COURT: As I call your seat number, would you answer yes if you agree with the verdict as read by the foreman, or no if you do not agree.

(Jury polled. Verdict 8-0)

MR. HARRIS: Thank you, Your Honor.

THE COURT: You're welcome.

Members of the jury, I thank you. It's not easy to be taken away from your ordinary jobs and functions and be plopped down here in the courtroom, and all of a sudden in the midst of someone else's affairs, and to do a job that is probably very foreign to all of you. I appreciate your time and effort, and with that, the jury is excused.

THE COURT OFFICER: All rise.

(Jury excused)

THE COURT: All right. We will adjourn.

MR. HARRIS: Sir --

MS. MATTIACCI: Thank you, Your Honor.

MR. HARRIS: I'm sorry. Regarding -- we obviously renew our objection as a matter of law. But would the Court give us a briefing schedule so we can brief the issue?

THE COURT: You already have the transcript?

MR. HARRIS: We do.

THE COURT: How much time do you need?

MR. HARRIS: Probably less than three days.

(Participants confer)

MR. HARRIS: I thought she said three days. She's going to draft the brief, so (indiscernible)

THE COURT: I would give you two weeks.

MR. HARRIS: All right. That's fine. We'll take it.

THE COURT: And whatever time --

MR. HARRIS: I should have said three days (indiscernible) all right. That's fine. Thank you.

THE COURT: A response within --

MR. MUNSHI: And if we could have two weeks as well, Your Honor.

THE COURT: Two weeks, yeah. All right. Thank you.

MR. MUNSHI: Thank you, Your Honor.

MS. MATTIACCI: Thank you.

(Proceedings concluded at 3:04 p.m)

CERTIFICATION

We certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter to the best of our knowledge and ability.

Transcriptionists: William J. Garling, Sharolyn Bornholdt, and Coleen Rand

July 19, 2018

Coleen Rand, AAERT Cert. No. 341
Certified Court Transcriptionist
For Advanced Transcription

**A**

**a.m** 3:1 8:3,4 44:7,8 67:22 67:23
**AAERT** 97:16
**ability** 18:17 23:11 49:7 97:7
**able** 7:2,17 11:8 43:6,7
**above-entitled** 97:6
**absence** 6:7 29:1
**absolutely** 8:15 11:23 31:16 40:6
**abusive** 54:15 54:20,22,24 57:7,8
**accept** 46:4,5
**acceptability** 23:3
**access** 18:15,17 32:5
**accommodati...** 15:3
**account** 25:2 43:2,3
**accurate** 51:16 89:5
**acknowledge** 71:10
**Acquisition** 1:20
**act** 22:10 46:20 51:13 53:24 58:19,19 59:9 63:20 76:17 77:5,7,17
**acted** 52:12,13 63:18 72:8,9
**acting** 59:7
**action** 29:1 59:20 75:23 94:23
**actions** 21:17 53:9 54:4 60:16 61:15 73:10
**actor** 37:5,6 38:12,14
**acts** 46:22 63:6 63:14
**actual** 41:16,20 61:18 71:5
**add** 64:20 85:8
**adding** 86:5
**additional** 82:18 89:1
**address** 28:10 30:11
**ADEA** 68:22 70:3
**adequately** 76:19
**adjourn** 95:25
**admission** 10:10
**admit** 25:12
**admitted** 10:21
**admitting** 52:16 72:12
**advanced** 1:21 72:20 97:18
**advantage** 22:24 55:19 56:9
**adverse** 24:12 59:11
**advised** 20:23
**advisement** 27:3
**advises** 39:11
**advisory** 67:10 68:21
**affairs** 95:20
**affect** 46:16 58:13
**affirmative** 5:11 5:17 6:5 28:18 28:24 29:10,13 29:23 56:10,11
**affluence** 22:16
**afraid** 28:20
**age** 11:2,3,16,18 12:3,3,7,12,17 12:21 20:20 21:4 22:10,21 23:8,11,12,14 23:21 24:8,13 26:18 28:14,15 34:13 37:8 38:6 39:2 41:6 41:25 43:18 51:12,19,22 52:1,2,3,9,21 53:4,19,23 54:3,12,17 55:1,14,15,15 55:25 57:18,21 57:23,25 58:6 58:7,8,14,15 58:18,20,22,25 59:4,6,8,14,21 60:11,25 61:3 61:14 62:22 63:5 64:1 71:17 74:13 75:10,12,21 76:16 79:11,23 80:9,17 81:8 81:12,24,25 83:19,20,21
**agency** 13:14
**ages** 23:3
**agree** 3:11,19 27:20 40:24 46:1 83:5 95:12,13
**agreed** 27:21 47:6 82:8,11
**agreement** 82:10
**ahead** 15:7
**aid** 51:8
**aide** 92:11
**allegation** 32:4
**allegations** 21:7 38:20 39:7,8 41:13
**alleged** 36:20 37:22 58:11 71:19
**allegedly** 36:11 36:15
**alleging** 51:20 71:20
**allowed** 31:4
**altogether** 36:6
**alumni** 33:2
**America** 11:4
**American** 34:10
**amount** 24:23 43:4,9 57:13 61:15,18 62:2 62:19,19 64:2 76:18 77:8,22 81:10,13 82:4 85:4,5 94:12 94:18 95:3,4
**amounting** 57:11
**amounts** 57:5
**and/or** 35:9 39:2 71:17
**ands** 3:14
**anguish** 77:15
**animus** 31:10,19
**annual** 91:25 92:7
**answer** 10:2 21:6,18 63:7,9 79:15 81:1,10 81:18,19 82:4 82:6 91:24 92:8,12 93:18 95:12
**answered** 80:24 80:25 94:24
**answers** 25:7,15 82:8,16 91:10
**antagonism** 59:24
**anybody** 32:14 62:4
**anymore** 19:23
**anyone's** 30:24
**apologies** 45:11
**apologize** 45:13
**appeal** 7:4,10,18
**APPEARAN...** 1:11
**appears** 48:17
**applicable** 63:20
**application** 68:25
**applications** 22:9
**applied** 21:20,22
**applies** 45:20 46:6 51:1
**apply** 22:7 38:24 46:10 61:25
**appreciate** 36:20 95:21
**appropriate** 38:1
**approximately** 24:18
**April** 14:17,18 21:9 34:15,16 34:17 35:12 40:12
**arbitrary** 22:21 23:7,12
**are--** 27:13
**area** 56:17
**argue** 3:23 7:7
**argued** 25:25 26:16 29:19
**argues** 32:14
**argument** 2:8,10 2:12 7:2,8,14 7:19 25:22 32:7,12,17 39:17,24
**arguments** 8:21 47:8 90:25
**arising** 23:14
**arrived** 56:18
**articulated** 4:8
**aside** 32:22,23 32:23
**asked** 9:9 21:17 28:3 30:14 67:19 82:9 92:25
**asking** 20:2 24:16 30:19,19 31:3 40:5
**asks** 47:24
**asleep** 14:5
**assault** 35:9

**asserted** 17:5
**assessing** 49:20 62:22
**assist** 38:15 45:20
**assistant** 37:18 68:10 87:14
**at-will** 40:16
**attention** 9:4 22:6
**attitude** 60:6 72:22
**attorney** 48:4,4
**attorneys** 62:23 84:12
**attorneys'** 6:9
**audio** 1:19 90:6
**August** 21:10
**authority** 40:11
**available** 62:18
**average** 37:3,3
**award** 61:18 62:2,6 64:1 71:6,13 76:18 76:21,23 77:9 77:10,12,14,22 78:7 81:11
**awarding** 77:21
**aware** 38:2 55:3 59:20

**B**

**B** 10:23 14:10 16:4
**B-level** 14:6,6
**back** 15:24 16:15 18:13 19:11 24:19 62:6,7 75:16 84:13,13,15 87:17 90:23 91:2
**Back-pay** 61:25
**bad** 19:7 37:5,6 38:12,14 60:6 72:22
**BAILIFF** 87:20
**balance** 50:13
**ball** 14:2
**ban** 33:25 38:24
**bar** 87:11
**based** 5:6 23:11 34:13 35:19 37:8 39:2,11 45:22 47:13 57:20,21 58:20 63:5 75:8,20 75:21 77:12 86:7 93:16
**basically** 9:19
**basis** 38:5 55:14 55:15,25 75:22
**bear** 49:19
**begging** 12:22
**beginning** 25:8
**behalf** 42:8
**behavior** 55:17 58:11,12
**belief** 24:10 59:8
**believability** 49:19
**believable** 49:24
**believe** 3:10,11 3:20 5:16 12:11 16:9 17:12,12 20:13 25:13,14 31:13 41:11 47:20 49:4,6,18 52:25 60:7,20 72:23 73:1,14 86:19
**believed** 29:5 54:19
**bench** 8:2
**benefits** 24:18 61:20,21 63:4 64:3 71:13 85:13 86:5,9 86:20 87:23 89:2,25 91:25 92:8
**best** 97:6
**better** 15:2 21:13 28:20 84:16
**beyond** 50:25
**bias** 31:11 49:12
**biases** 30:15
**Bible** 17:16
**birth** 41:12
**black** 22:9,9
**blocked** 18:15
**book** 13:25 14:1
**booked** 14:20 18:10
**Bornholdt** 97:9
**bother** 17:20
**Boulevard** 1:21
**break** 36:18 70:23
**brief** 42:13 96:5 96:12
**briefing** 96:5
**briefly** 6:22 25:19 64:8 91:19
**Briggs** 1:2 9:10 9:16 10:3,12 10:17 11:1 16:18 17:18 18:12 19:15 20:19 21:4,7 24:16 25:3,11 25:14,17 30:17 30:24 33:3,14 33:25 34:11,20 35:10 36:14 37:14,18 38:1 39:20 40:2,10 40:11,15,20 41:9,18 42:15 42:25 43:15,21 50:3,5,7,11,13 50:14 51:20,22 52:5,11,12,20 53:7,16,19,25 54:9,12 55:18 55:18 56:3,5,6 56:9,18,19,24 57:1,18,24 58:17,20,24 59:1,5,11,24 59:25 60:5,14 60:22 61:14,16 61:16,19,21,22 62:2,7,11,15 62:17,20 63:5 63:9 64:3 68:8 71:4,16,19,21 71:22,24,24 72:2,7,11,16 72:21 73:7,17 73:20 76:12,15 76:18,21,24 77:1,4,16 79:6 79:10,17,21 80:1,6,10,11 80:14,19 81:6 81:11,14,15,21 82:1,6 87:12 92:22 94:23
**Briggs'** 10:13,19 20:9,14 41:8 41:12 43:24 52:23,25 53:2 53:4 54:3,5,14 54:15,18 56:16 56:22 57:4,23 58:6,8,14,15 59:3,4,21 60:2 60:3,9,25 61:13 63:1,16 63:25 72:4,5 72:10,18,25 73:3,4,23,23 75:7,20 76:11
**Briggs's** 60:11
**bring** 4:19,21 11:21 13:14 18:5 44:24 45:14 87:19
**bringing** 12:5 77:5
**brings** 31:22
**brought** 11:9 17:18 33:17 35:10,11 50:4
**Brown** 15:20,20 15:21,22
**budget** 33:11
**build** 33:9
**burden** 9:15 26:1,1,1 33:15 33:16,16 35:2 35:20 40:15 42:4 48:25,25 50:6,15 56:10 61:16 62:14 63:10 68:4 77:1,2
**burdens** 23:8
**burdensome** 51:5
**bury** 21:14
**business** 35:1,16 35:23 39:3 40:12,13,14 53:11,12 60:18 60:19 73:12,13
**button** 18:18
**buy** 43:7 62:16

**C**

**C** 10:23 18:25
**C's** 14:14 39:9
**calculate** 85:1 90:15
**calculating** 81:12
**calculation** 85:6 85:18 86:24 87:22
**call** 10:23 50:6 93:6 95:11
**called** 17:1 48:8 50:22
**Cameron** 15:23
**card** 36:19,19
**care** 22:7 42:22 42:24 55:13,15 55:16 87:14
**cared** 42:22
**Carlin** 1:11
**carry** 48:25
**carrying** 48:17
**case** 1:3 3:25 4:3 5:8,22,24 6:1 9:6,17 10:9,25 25:9 29:20

35:8 39:15,21 44:4 45:20,21 45:22 46:6,8 46:12,15 47:9 49:1,11,15 50:3,6 51:2,2 51:12,14,15,17 51:19,20 52:19 61:9 62:24 65:1,20 67:4 68:8 69:25 71:16,19 72:15 94:22
**cases** 4:1,1 68:21
**Castleberry** 4:11
**catalyst** 11:1
**Category** 39:9
**causal** 10:1 15:13 59:2,16
**Causation** 59:22 59:23
**cause** 68:16 75:22
**caused** 61:16
**Center** 15:4
**Cert** 97:16
**certain** 22:23 47:21 54:9 76:5
**certainly** 4:15 4:23 31:2 32:9 32:15 33:4,12 36:7 37:17 89:14
**CERTIFICA...** 97:3
**Certified** 97:17
**certify** 97:4
**chance** 70:17
**change** 4:14 57:11 59:24 83:1,3
**changed** 3:15 8:6
**changes** 5:18 69:15
**changing** 16:11 16:15 84:5
**chapter** 23:10
**characteristic** 57:22
**charge** 2:14 29:3 30:2 44:3 45:18,19 51:7 67:6,11 75:16
**charged** 64:19
**charges** 18:6
**charging** 28:11
**Cherry** 1:16
**China** 11:2,4 12:3,18 15:19 17:24 36:12
**choice** 19:24
**chose** 35:19
**Christmas** 43:7
**Circuit** 4:9,12
**circumstances** 17:4 35:7 56:15 58:10 62:13 76:5
**circumstantial** 48:13,14,18,23 49:2
**citation** 4:10
**citations** 90:21
**cite** 4:2 5:22
**City** 15:4
**civil** 48:25 50:3 51:2 52:14 58:19 72:10 76:17 94:23
**claim** 10:4 19:9 23:18 24:6,9,9 24:13 41:18 50:16,17 51:20 51:23 53:22 54:5 55:7 56:3 58:17,18 70:2 70:3 71:22 72:2 75:20 76:16
**claimed** 53:24 54:21
**claims** 10:14,18 10:19 17:25 24:7 33:16 35:20 41:1 50:9 53:25 58:20 75:7,9
**class** 41:10
**classified** 58:12
**clear** 23:20 29:9 65:17 66:23 67:4 69:22,24
**CLERK** 93:9,12 93:15,18,21,23 93:25 94:2,4,6 94:8,10,12,14 94:16,18,21 95:10
**click** 18:18
**clip** 91:21 92:20
**closing** 2:8,10 8:21 28:11 42:17 85:7,18 90:25
**closings** 4:20 6:20 8:9
**Coleen** 97:10,16
**collectively** 31:14
**come** 9:19 13:18 14:13 19:1,11 41:2
**comes** 13:10 25:10 30:23 40:14 87:1
**coming** 17:1 22:5
**commence** 3:1
**comment** 5:23 11:3 17:23 26:3 36:21
**comments** 12:7 15:19 31:5 41:6
**commerce** 23:6 23:8,9
**Commission** 13:13
**committed** 39:11
**common** 11:11 17:10 22:22 25:2 47:17 77:9
**communicated** 56:1
**communicatio...** 38:9
**company** 1:20 46:18
**compassion** 45:24
**compensable** 71:9,11,12
**compensate** 61:19 76:19,22
**compensation** 76:22,23 85:25
**compensatory** 76:6,14,16,23 77:21
**complain** 11:14 12:25 19:8 25:11
**complainant** 35:7
**complained** 9:21 10:8,20 11:18 15:9 19:9 24:11 37:16 43:16 57:22 58:25 75:22
**complaining** 20:3,19 21:4 24:3 59:14
**complains** 74:16
**complaint** 11:6 12:4,5 13:7,10 13:12,14,17 33:19,20 34:14 34:21 35:12 41:16 56:7 59:4,6,21 60:11,25 79:23 80:3,17,22 81:25
**complaints** 11:16,21 17:17 20:7,9,14,16 35:10 41:20 58:21 74:14,21 75:9,10,12
**completed** 81:1
**completely** 74:12 87:2
**comply** 23:17
**composed** 51:4
**compounded** 12:21
**computer** 30:5
**concedes** 35:21
**concerned** 12:12
**concerning** 55:23 59:5,10 59:16
**conclude** 48:19
**concluded** 7:25 30:9 67:18 70:21 75:15 79:2 84:7 90:13 97:1
**conclusion** 47:21,22
**condition** 65:4
**conditions** 57:12 58:1
**conduct** 35:6 36:15 40:11 41:4,5,6,21,22 41:23 53:6 54:10,10,11,13 54:21,22,24 56:20,21,23,23 56:25,25 57:1 57:2,3,5,11,19 57:20 58:9 59:2 60:13 63:8,21,22 73:6 76:20 77:4
**conducted** 35:12
**confer** 6:23 8:1 13:22 15:15 22:13 30:10 75:14 78:23

79:3 90:7,12 91:20 96:10
**confirmed** 89:4 89:9
**confront** 30:14
**confusing** 73:25
**Congress** 22:11 22:14,20
**connection** 10:1 15:14 41:6 59:3,17,17,19
**consequence** 24:12 42:24 77:7,16
**consequences** 40:19
**consider** 47:6,18 49:6,13,16,18 50:21 53:14,16 55:8 58:5 60:21,22 62:23 71:2 73:16,17 76:14 82:18 84:8 92:17
**consideration** 32:16 61:20
**considered** 49:17,17
**considering** 49:3 50:16 55:7
**consistent** 30:1 34:8 38:22
**consists** 47:2
**Console** 1:12,13
**constitute** 57:8
**Contacted** 38:2
**context** 11:19,21
**continually** 16:18 60:5 72:21
**continue** 4:15 32:12,18
**continued** 22:7 33:9
**contradicted** 49:14,15
**contradicting** 29:21
**contrary** 48:22
**control** 47:23
**conversation** 40:9
**convinced** 83:2
**convinces** 82:25
**Conwell** 14:21
**copy** 51:3
**core** 9:17 18:2
**corporation** 46:14,16,20,22
**correct** 3:11 21:5 27:14,16 52:2 55:17 56:5 65:18 89:9 97:4
**correction** 3:10 55:23
**corrective** 55:19 56:9
**corroborated** 33:14 41:12
**costs** 6:9 62:23 62:24
**counsel** 25:22,25 32:18 70:24 74:4 77:24 84:21 86:18 91:7,19 92:24
**couple** 46:11 50:1
**course** 11:25 15:16 46:20 50:19
**court** 1:1,19 3:5 3:9,16,23 4:5 4:13,18,22,24 5:10,12,15 6:10,12,14,16 6:17,18,19,23 6:23 7:5,11,13 7:16,19,21,24 8:2,6,9,12,14 8:16,18,20 25:20,23,23 26:4,8,14,18 26:22 27:8,10 27:22,25 28:7 28:10,14,20 29:3,18 30:2,3 30:7,13 31:25 32:3,8,13 39:18,24 42:10 42:12 44:2,4,6 44:12,15,20,22 44:24 45:7,9 45:12,14,16,18 46:18 64:7,9 64:14,21,24 65:6,9,13,24 66:1,10,16,20 66:22 67:12,16 67:19,21 68:1 68:11,12,14,16 68:19 69:1,3,7 69:14,18 70:2 70:6,10,13,15 70:17,23 74:6 74:8,12,23 75:5,16,19,19 76:1,4 78:1,3,9 78:15,18,22,24 79:3,3,4,21 81:4 82:16,21 83:10,16,25 84:5,8,11,15 84:20,25 85:8 85:16,21,23 86:5,10,13,16 86:20 87:4,10 87:11,15,25 88:3,5,8,10,15 88:22,25 89:7 89:12,16 90:3 90:14,19,22 91:1,8,11,14 91:16 92:4,14 92:17,25 93:3 93:6,7,11,16 94:20,22 95:9 95:11,16,23,25 96:4,6,8,13,16 96:19,22 97:17
**Court's** 45:19 92:21
**courthouse** 43:25
**courtroom** 16:12 19:13 32:11 33:22 39:7 41:2 45:23 46:11 47:12,14 48:16 82:15 95:19
**cover** 19:17 39:15 74:6
**cover-up** 35:3 35:19 53:17 60:23
**covered** 48:17
**covering** 42:19
**coverup** 17:6 40:15 73:18
**created** 36:10 39:15,20 74:16 74:20
**credibility** 17:6 17:7 18:2 20:1 49:21
**criminal** 51:1
**Cromwell** 15:3
**cross** 91:23
**cross-examina...** 35:24
**crude** 57:16
**culture** 34:10
**current** 24:18 32:24 33:5

**D**

**damage** 61:15 62:25 77:8 82:2,5
**damages** 6:5,11 29:14,16 43:5 43:10 61:3,5 61:17,18,25 62:12,14,19,23 62:25 63:3 71:6,6,9,13,15 71:15 76:6,7 76:14,16,21,23 77:1,10,12,14 77:21,22 78:1 83:20
**date** 62:1 81:3 82:12
**dates** 41:11
**day** 1:9 11:7 16:4,21 19:20 19:20 24:14 34:15 37:21 43:1,22
**days** 43:12 46:12 50:2 96:9,11,17
**dealt** 35:11 46:17
**decide** 9:5 14:13 18:3 26:7 45:21 46:7,9 46:11,25 47:1 49:4 53:18 60:24 61:9 63:6 73:19 77:9 82:23
**decided** 65:18 66:8
**decides** 18:21
**deciding** 49:6 52:19 64:19 72:15
**decision** 5:2 6:6 23:25 30:16 40:5 46:16 47:13 52:1,24 53:2,20 60:8 72:1,6,19,24 73:2,21 79:8
**decision-** 20:7
**decision-maker** 16:10
**declaratory** 6:8
**declares** 22:15
**deduct** 62:6,9
**deducted** 87:3
**defendant** 1:15 5:18,24 6:6 9:13 28:24,25 29:12 68:4 94:24

**defendant's** 32:17
**Defendants** 1:7
**defense** 5:11,18 6:5 25:25 28:18,24 29:10 29:13 55:9 56:10,11
**defensive** 12:19
**defer** 25:23 40:24
**deficiencies** 37:22
**deficient** 18:20 22:5
**defining** 57:22
**definitely** 84:13
**degree** 56:17
**Deirdre** 10:18 13:5 20:16 31:14 33:19 39:8
**deleted** 83:23
**deliberates** 7:3 7:15
**deliberations** 81:2 84:10 92:19
**demands** 42:8
**demeanor** 36:23 59:24
**demonstrate** 39:14 68:4
**demonstrated** 31:18 34:12
**demonstrates** 37:19
**demonstrating** 29:23
**denied** 44:18
**depend** 49:23
**dependent** 24:8
**deposition** 34:2
**deprivation** 71:10
**deserves** 47:20 49:25
**designed** 71:10
**desirable** 22:23
**despite** 16:17 38:19 60:4 72:19,20
**detail** 22:6
**detailed** 22:3
**deterioration** 23:2
**determination** 59:12 67:2
**determinative** 5:4,21 52:1 72:1,5 73:20 73:22 79:8
**determine** 24:23 43:4 58:8,11 61:14 64:1 81:15
**determined** 34:25 65:4
**determining** 26:16 30:1 45:21 50:19 52:3 53:8 56:14 58:3 60:15 73:9 77:8
**difference** 85:19
**different** 74:2
**differently** 41:3 41:4,5 50:10
**difficulties** 36:2
**diligent** 81:16
**DiMeo** 38:11,11 38:14
**direct** 5:7 42:3 48:8,9,21,23 49:2 52:15 72:12 77:6 86:18 89:3 91:22
**directed** 56:25 87:11
**director** 33:18
**directs** 35:7
**disadvantage** 22:25
**disadvantaged** 22:17
**disagree** 5:6 32:15 53:12 60:19 73:13
**disagreement** 3:21
**disbelieve** 53:5 60:12 73:5
**discharge** 51:18
**disciplinary** 40:1
**discipline** 39:13
**disciplined** 40:21,23
**discouraged** 59:14
**discovery** 32:10
**discretion** 92:21
**discretionary** 4:4
**discriminate** 52:12 72:8
**discriminated** 24:11 51:25 52:20 61:13 63:2,25 71:23 72:16 76:12
**discriminating** 37:7 81:23
**discrimination** 9:21 10:8,14 10:18,21 11:14 11:18 12:4,25 15:9 17:20 20:4 21:5 22:10 23:7,12 23:18,23 24:13 25:12 39:2 41:2,25 42:1 42:21 43:18,19 51:13,14,19,23 52:17,17 53:7 53:10,12,18,23 58:18,22,25,25 59:4,7,9,15,21 60:11,25 61:4 61:24 62:22 63:5 71:17,18 71:22 72:13,13 73:8,11,13,19 74:14,16,21 75:9,11,13 76:16,25 79:24 80:4,18,22 81:8,12,25 83:19,22,24
**discriminations** 24:8
**discriminatory** 52:24 54:5 60:3
**discuss** 4:15 27:5 82:22
**discussion** 2:6 82:19
**Disparate** 12:11
**dispassionate** 30:17
**displaced** 22:19
**dispute** 51:17 68:13
**disputed** 15:12
**disregard** 46:2 47:11 63:16,21
**distinction** 48:23
**distracted** 34:3 36:2
**distraction** 38:16
**distress** 43:5,10
**DISTRICT** 1:1 1:1,10
**document** 89:4
**documentation** 16:20 18:7
**documented** 13:2
**documents** 11:9 13:1 25:12 47:3
**doing** 35:25
**dollar** 71:6,9,16
**door** 82:13
**Double** 14:20
**doubt** 51:1
**Douglas** 5:4
**dozens** 21:20
**Dr** 11:1 15:19 17:14,21,21 18:9 20:10,11 20:12,12,13,14 20:16,18,21 21:3,6,25 25:14 31:13 33:7,19 34:7 35:15 36:3,12 37:1,4,4,16,16 38:10,18,19 39:9 41:17 54:2
**draft** 96:12
**drawing** 77:11
**Drew** 38:10,11 38:13
**dropped** 14:2
**due** 11:4 76:21
**duties** 16:19 43:16 46:24
**duty** 48:4 62:12 82:19

**E**

**earlier** 76:15
**earned** 62:20 64:4 77:23 81:14,16
**earnings** 62:3
**EASTERN** 1:1
**easy** 95:17
**EEOC** 11:19 13:7,8,12,17 16:3,15 19:10
**effect** 56:21
**effort** 62:13 95:22
**efforts** 22:17 81:17
**either** 17:19 45:23 77:6
**electronic** 1:24 32:22 97:5
**Electronically** 1:19

**element** 54:16 55:7,22 59:5 59:10,16 62:25
**elements** 4:6 54:6 55:4,12 56:12
**else's** 95:20
**email** 11:15 12:6 12:10,15 13:4 15:20,22,23 18:9,12,13,16 18:23 22:2 34:20 37:19
**emails** 11:25 13:3 22:8
**emotional** 24:24 43:5,10 56:22 58:13,16
**employee** 16:14 32:24 33:5 40:16 54:24
**employees** 46:21 46:23,24 54:1 54:5,21,23 56:2 57:17 58:2
**employer** 23:2 55:1,3
**employers** 23:13
**employment** 9:24 13:13 15:11 22:10,18 22:18 23:5,7 23:10,12,15,20 41:7 51:13,20 51:21,24 52:7 52:8,10,23,25 53:2,20,24 57:12 58:1,19 59:3,9,12,13 60:2,3,9 61:1,4 61:13 62:1,8 62:22 63:2,16 63:25 64:5 68:10 71:20,25 72:4,18,25 73:3,22 74:1 76:12,13 81:9 81:14 87:13 92:1
**ended** 9:24 15:12,12 62:1
**engaged** 81:22
**engaging** 81:7 81:12 83:18,24
**enjoyment** 77:15
**ensure** 23:16,17 42:20
**entered** 86:11 86:12,22 89:5
**entering** 56:19
**entire** 13:24 14:2
**entirely** 86:25
**entitled** 5:18 46:19 63:3 71:5,7 76:15 88:20 91:22 92:23
**environment** 20:4,20 36:10 41:23 42:2,22 53:22 54:15,18 54:20 56:14,16 56:18,20,22 57:9,10,14,15 57:17 58:4 74:15,15,17,20 75:3,8,17,21 75:24 76:3,4
**equal** 13:12 46:17 64:2
**equals** 46:18
**equivalent** 62:17
**era** 31:19
**especially** 22:18 23:1
**Esq** 1:11,12,12 1:15,15
**establish** 55:22 56:8 63:17
**established** 55:24
**Etezady** 12:10 12:16,20 15:23 15:23,24
**evaluate** 36:23 58:10
**Eve** 36:17
**event** 21:21 22:4 51:17 61:3
**events** 47:19
**everybody** 22:4 93:12
**everyday** 47:18 49:20,21
**evidence** 5:6,7 9:11,12,14 10:5,22 13:2 15:10 25:9 29:20,21,23,25 29:25 32:2,14 35:14 38:11,13 39:6 41:1,22 41:24,25 42:1 42:1,2,3 43:11 43:18,18 45:22 46:13 47:1,1,3 47:7,9,10,11 47:13,14,18,21 47:24,25 48:1 48:5,7,9,9,13 48:14,18,21,23 48:24 49:1,2,2 49:15,18,22 50:3,7,8,11,12 50:16,18,20,23 52:6,16,19 54:7,16 55:5 55:12 56:13 58:5,24 61:17 62:4,16 63:11 64:25 72:3,12 72:15 76:10,11 77:2,11,18,20 78:8 79:7,7,11 79:18,18,22,22 80:2,2,7,11,15 80:20 81:6,22 82:2 86:4 87:24 89:12
**exact** 77:20
**examination** 89:3
**example** 48:9,15 59:18
**examples** 35:8
**exception** 93:1
**exceptions** 35:11
**excuse** 53:9 60:16 73:10 95:7
**excused** 84:10 95:22,24
**Executive** 37:18
**exercised** 55:13 55:15,16
**exhibit** 10:23,23 10:23 12:15 47:25 86:23 87:23,24 88:10 88:12 89:5 90:16
**exhibits** 50:23
**existed** 58:4
**existence** 23:6 52:18 72:14
**exists** 48:15
**expectations** 56:19
**expense** 14:22 16:5 18:6,11 18:13,22
**expenses** 18:18 62:2
**experience** 25:1 31:15 33:8,12 47:18,20
**experienced** 77:16
**explain** 11:8 18:23 25:11,16 28:20 45:25
**explained** 35:25
**explaining** 92:24
**explicit** 55:24
**expression** 50:2
**expressions** 51:18
**extended** 59:23
**extreme** 41:23 57:11
**extremely** 57:13
**eyes** 17:11

**F**

**F** 1:9,21
**face** 22:15
**Facebook** 30:25 31:17 32:5
**fact** 16:25 19:22 32:3 34:17,24 38:3 40:6 41:14 46:14 48:3,15 49:22 50:17,17,19 54:12 61:4,9 75:21
**factor** 5:2,21 23:19 26:4,9 26:16,16 27:1 28:12,18,23 29:5 30:1 44:17 52:1 71:1 72:1,5 73:20,22 79:8
**factors** 27:24 49:7,19,19
**facts** 32:1 45:21 46:4,6,7,10,10 46:25 47:2,4,5 48:14 49:4 52:18 55:21 72:14 77:11
**faculty** 33:1,5 33:10
**failed** 16:18 55:18 56:9 60:5 62:15,17 71:4,4 72:21
**fails** 50:14
**fair** 30:19,22 37:11 42:6 46:19 76:22 78:7 88:24
**fairly** 76:18,22

**faith** 79:19,23 80:3,17,22
**Fall** 43:13
**fate** 43:24
**favor** 6:7 10:3 24:16 25:17 68:25 81:2
**favorable** 50:11 50:12
**February** 12:15 13:9
**federal** 13:14 52:14 71:7,10 72:10
**feel** 12:18 48:12
**fees** 6:9 62:23
**fell** 14:4
**felt** 12:18
**female** 57:25
**females** 41:10
**Fendell** 1:15
**Fifth** 54:19
**fifty** 33:10 94:13 94:19
**figure** 15:5 62:7 86:20
**figures** 85:9 88:22
**figuring** 17:19
**file** 12:3 13:7 16:22 34:14
**filed** 50:5
**fill** 43:10 82:20
**filled** 56:17
**find** 6:3 9:16 21:25 22:16 23:13,13 24:1 24:4,16 25:16 31:9,11 47:2 48:15 50:16 51:8 52:22 53:1,4,6,11 54:14,23 55:7 55:10,10 57:17 57:18 59:18 60:1,8,12,14 60:18 61:3,7 61:12 63:1,3 63:12,14,19,23 63:24 71:4,12 71:14,15,16 72:17,24 73:2 73:5,7,12 76:10 77:16 81:17 83:23 86:18 92:20
**finding** 35:14
**finds** 5:5,8 22:14
**fine** 69:3,7,21 70:20 74:25 75:1 84:3 96:14,18
**fired** 13:9
**first** 4:17,25 9:22 11:13 15:8,8 25:25 37:16,17 54:9 55:12,22 58:24 59:5 64:11 72:3 82:17 87:2
**fit** 38:1
**five** 9:14 13:9 25:5
**fix** 30:5
**fixing** 77:10
**floor** 1:22 34:1 38:15
**flow** 23:8
**focused** 11:13
**Foehl** 10:12 12:1 12:6 14:16,16 15:21,21,22 21:1 31:14 33:20,21 34:11 34:20 35:4 40:9 41:14,19 54:2
**Foehl's** 12:2
**follow** 35:5 37:12 42:6 45:25 46:1 56:7 74:22
**followed** 59:20 94:25
**following** 47:7
52:6 54:6 55:11,21 58:23 72:3 81:14
**food** 43:8
**forbids** 71:18
**forced** 19:22,24
**foregoing** 97:4
**foreign** 95:21
**foreman** 95:13
**foreperson** 82:10,12,14,15 82:18,19 93:13 93:17,18,20,22 93:24 94:1,3,5 94:7,9,11,13 94:15,17,19
**forget** 36:6
**form** 3:5 45:3 48:13 51:3 67:13,15 68:12 69:12,18,20,21 78:25 79:5 81:3 82:21
**former** 33:6
**forms** 82:11
**forth** 78:10,19
**forty-four** 92:13
**forty-six-year...** 43:15
**forward** 11:21 13:10 34:21
**found** 10:3,19 17:17 57:10 75:20 77:17 81:2 83:21 92:2
**four** 18:12 51:4 87:8
**fourth** 54:13 56:4
**framed** 5:1
**frankly** 87:18
**free** 23:8 39:1 42:21,21 47:22
**frequency** 56:20
**front** 17:1 64:12 64:15,17 65:2 65:3,5,12,17 66:7,18 67:4 69:1 70:25
**fully** 56:1
**functions** 95:18
**further** 2:12 7:8 55:6 62:11 63:7,7 75:19
**future** 64:3

**G**

**G** 1:12 12:15
**Garling** 97:9
**gender** 5:1 12:22 23:19,21 23:23 28:2 34:13 41:6 42:1 51:15,17 53:25 71:19 79:7 80:3,13 80:22
**general** 46:21 85:9
**generally** 57:16
**gentlemen** 30:12 45:17
**getting** 15:5 18:14 27:11
**gift** 36:14
**give** 4:10 7:2 19:6 24:25 43:6 44:3 45:19 47:19 61:2,5,8,9 67:8 82:23 90:21 92:25 96:5,13
**given** 28:23 43:17 52:23 60:2 62:4 72:18 82:11 85:9,14
**gives** 36:19,19 37:6 46:11
**giving** 88:15
**go** 14:16 15:24 15:24 18:11 43:4 51:9 67:20 68:24 69:18 78:24 79:4,16 81:20 91:8 93:3
**goes** 14:15 18:15 28:19 32:16 36:13 65:2 68:22
**going** 7:13 8:2 8:10 9:4 13:11 13:14,15,16,17 14:12,16 15:5 16:13,14 18:21 19:3,10,22 21:16 24:14,15 25:5,6 28:11 30:15 34:18,19 40:4 51:6,9 61:2 64:18 65:18 66:18 67:7 69:18 78:24 87:15 91:14 96:12
**good** 3:2,3,4 9:2 37:2 51:6 79:19,23 80:3 80:17,22
**good-faith** 59:8
**goods** 23:8
**grandkids** 43:6
**grant** 18:14,17 42:23
**grave** 23:5
**great** 23:4
**greeting** 36:19 36:19
**Greg** 16:6 20:10 31:14 38:19 41:15
**Group** 4:11
**growing** 23:5
**guess** 84:12
**guesswork** 77:13
**guidance** 7:2
**guided** 77:9
**guys** 18:3 19:23 25:14

**H**

**Hailey** 43:11
**hand** 17:16 42:14 51:3 56:6
**handle** 25:24 68:23
**handled** 68:20
**hands** 43:24 44:4
**handwritten** 12:2
**happen** 37:10,10
**happened** 10:25 13:25 14:25 18:4,8 21:12 24:3 34:14 43:14 65:6 86:19
**happens** 11:11 14:17 15:1 19:7 36:5
**harassed** 54:1 57:18
**harassing** 55:17 57:19,20 58:11
**harassment** 3:13 25:4 26:11 27:9 53:23 54:2,5 55:1,2,14,23 55:25 56:3 57:19,22 74:8 80:8,12,16,21
**hard** 19:20,21 36:5 40:6
**harken** 94:21
**harm** 24:24 38:23 43:5
**harmed** 58:9
**Harris** 1:15 2:10 3:2 4:19,21 25:6,18,22 26:15,19,24 27:21 28:4,13 29:7,11,15,19 30:4,8,11,14 32:9,19 39:22 40:1 44:23,25 45:5,13 64:6,8 64:11,15,22,25 65:8,11,14,16 65:19,22 66:3 66:5,11,15 67:7,9 68:3,8 68:18 69:2,5 69:10 70:7,9 70:12 74:7,10 78:4,20 84:2 84:14,18 86:3 86:17 87:10 88:18,24 89:1 89:11,14,17,19 89:22 90:11 91:18 92:20 93:2 95:7,15 96:1,3,7,9,11 96:14,17
**harsh** 35:22 40:7,13 53:13 57:16 58:1 60:20 73:14
**hate** 83:14
**head** 21:14 43:20
**heads** 20:7
**health** 87:13
**healthcare** 68:9 92:11
**hear** 9:5 37:16 39:18 42:14,16 47:16 49:8
**heard** 25:3 33:18 34:7,8 35:24 39:8 40:2 42:16,17 47:12,14 50:1 50:25 68:12 91:4 92:3
**heels** 16:14
**help** 23:12 38:2 38:22 51:10 92:14
**helpful** 13:6
**hey** 19:11
**high** 23:4
**higher** 6:1 56:3
**hires** 37:9
**hold** 19:22 43:24
**holding** 16:2
**hole** 22:9,9
**holiday** 36:18
**home** 68:9 87:13 92:11
**Honor** 3:2,3,4,7 3:8,17,18,24 4:7,16,25 5:5,8 5:14,16 6:3,13 6:21,25 7:8,20 8:7,8,11,25 25:18 27:2,6 27:12,15,16,17 28:2,17,22 30:11,16 31:23 32:9,19 34:24 39:16 42:7,11 44:18 45:2,10 64:6,18 66:7 66:17,21,23 68:21 69:11 75:25 78:2,5 83:7 84:3,21 85:3 87:22 90:2,9 91:6,9 91:18 93:9 95:7,15 96:2 96:21,24
**Honor's** 7:2
**HONORABLE** 1:9
**hope** 21:14
**hoping** 7:14
**horseplay** 57:6
**hostile** 20:3,20 42:2,21 53:22 54:10,15,20 56:15 57:8,10 57:14,17 58:4 74:15,15,17,20 75:3,7,8,17,20 75:24 76:2,4
**hot** 16:1
**hotel** 13:25 14:20,24 16:6 18:6,7,10
**hour** 24:19 84:13
**hours** 40:21,22 40:23
**housing** 43:8
**HR** 11:18 12:5 33:18 37:25 38:2 39:11
**Huh** 26:22
**humiliated** 33:4
**humiliating** 57:2
**humiliation** 34:4
**hundred** 94:13 94:19
**hurricane** 43:13 43:13

**I**

**I--** 69:17
**idiom** 34:9
**ignore** 69:8 71:1 71:2
**illegal** 5:24 40:7 40:8
**immediate** 11:7
**immediately** 11:11
**impact** 23:14 25:3
**impartial** 30:22
**impermissible** 6:7
**important** 49:24 58:3
**impression** 5:12
**improper** 32:6 39:17 48:5
**improve** 16:18 60:4 72:21
**inability** 18:23
**inappropriate** 31:6,7 32:2 38:12
**incidence** 22:25
**incident** 10:25 13:25 18:8
**incidents** 57:13
**include** 6:5 56:16
**included** 88:21
**including** 61:21
**income** 81:13
**incompetent** 17:19
**inconsistent** 17:6 37:7
**inconvenience** 77:15
**incorrect** 83:1,3
**increases** 61:20
**incurred** 62:3
**independent** 38:13
**INDEX** 2:1
**indicated** 8:21
**indication** 61:6 61:10 76:8
**indifference** 21:12,15 43:19
**indifferent** 21:17
**indiscernible** 7:11,16 27:7 28:5,6 29:7,9 64:12,21,23,24 65:12,13 66:20 68:14,19 69:10 69:14 84:2 88:24 89:6,16 89:20 90:3 91:22 96:12,18
**individual** 46:19
**industries** 23:6
**inferences** 77:11
**inferred** 52:17 72:13
**influence** 47:16
**influenced** 45:23 48:3,6
**information** 54:25 88:13,20 90:1
**injunctive** 6:8
**injury** 71:5,9,11

71:12 76:19 77:3,5,6
**Instagram** 31:17
**instruct** 30:16 34:24 76:7
**instructed** 50:21 62:6,11 76:15
**instruction** 5:6,9 5:17,19,23 6:2 6:4 26:13 28:18,23 29:5 61:2,5,7,10 64:13,16 74:18 79:14 84:3
**instructions** 17:10 26:5 46:2,3 69:21
**instructs** 75:19
**insults** 56:17
**intake** 13:8
**intangible** 77:18
**intent** 52:12,14 52:16 72:8,10 72:12
**intentional** 52:17 53:7,11 63:4 72:13 73:7,12 81:8 83:19,24
**intentionally** 51:24 52:20 61:13 63:2,25 71:23 72:16 76:12 81:23
**interest** 49:11
**interesting** 31:1 37:15
**interfered** 41:22 57:3
**intermediary** 38:16
**intermediator** 38:9
**internally** 13:7 38:25
**interrogatories** 88:12 94:25
**interrogatory** 10:11 86:14,23
**intolerable** 35:21 36:10
**introduced** 77:19
**investigated** 10:13
**investigation** 35:6,12,13 40:12
**involuntarily** 40:5
**involved** 46:14 46:20
**involves** 51:12 51:14
**involving** 35:9
**Irrespective** 40:4
**isolated** 57:12
**issue** 4:14 14:24 18:2,7 26:5,6 45:1 65:25 68:3 76:14 83:15 87:10 96:5
**issued** 94:22
**issues** 4:16 16:22 37:25

**J**

**J** 97:9
**January** 14:4,10
**JDR** 1:20
**job** 16:19 18:21 22:6,8,9,22 60:5 62:17 67:3 72:22 92:2,23 95:20
**jobs** 21:20,21,21 22:19 95:18
**jog** 51:10
**John** 1:21
**join** 74:8
**joined** 74:24
**jokes** 57:7
**judge** 1:10 4:19 6:18 9:2 17:9 30:4 44:25 46:4,6,10 64:11,25 65:20 66:5,15 67:7 68:3 86:3,17 87:10,20 88:18 89:11 91:21
**judges** 46:3
**judgment** 7:1,7 35:1,16,23 39:3 40:13,14 40:25 53:11,13 60:6,18,19 72:22 73:12,14 77:10
**July** 1:5 97:15
**jumping** 15:7
**JUROR** 92:15 92:16 93:14
**jurors** 30:20 69:7 91:13 95:6
**jury** 1:10 2:14 2:16 5:19,23 6:14 7:3,15 8:5 8:19 9:2 17:2 30:12 32:14 43:23 44:2,9 44:24 45:14,15 46:9 64:18,19 66:8,9,25 67:8 67:11,20,24 68:22,22,24 69:12,21,25 70:22 79:4 82:13,14 83:6 83:8 84:8,10 84:11,24,25 87:15,19,24 88:4,19 91:24 92:17,19 93:9 93:15 94:21 95:8,14,17,22 95:24
**justice** 44:1 46:18

**K**

**keep** 36:5 38:16
**keeps** 14:15 20:8
**Kelly** 1:9 9:2 17:9
**Kennedy** 1:21
**Kensington** 43:8
**kept** 20:5
**key** 57:24
**kind** 58:12
**King** 43:11
**knew** 20:3,21 27:10 54:22 63:13,15,19
**knock** 82:13
**know** 6:17 11:10 12:7 15:16 19:5,16,19 21:13,13,13 22:4 31:21 34:21 36:12 37:1 41:9,19 49:8 63:19 67:10 70:5 74:18,18,19 78:10 82:23 83:12 84:1,12 84:17 85:17,20 87:8,16,17 90:20
**knowing** 20:7
**knowledge** 17:25 97:7
**known** 45:18 54:22,23
**knows** 48:10

**L**

**labor** 68:6
**ladies** 30:11 45:17
**language** 56:17 57:7
**late** 14:5 16:4,21 40:21,22 69:14
**Laura** 1:11
**law** 1:13 3:25 4:3 7:1,7 11:6 11:17 21:13 22:20 23:16,17 28:19,22 39:4 42:6 45:19,25 46:1,3,4,5,10 46:17,22 48:22 48:24 61:8 63:17,20,22 66:23 67:4 68:3,11 69:25 78:12 96:4
**lawsuit** 50:4,5
**lawyer** 47:24,25 48:2
**lawyers** 47:8,9
**lead** 82:19
**leads** 47:21
**leave** 18:5
**led** 16:9 40:17
**left** 16:3 22:2,3
**legal** 19:23 67:4 67:5
**legally** 19:6
**let's** 10:5 11:20 11:20 17:7 18:4 91:8
**letter** 16:5,24 19:18
**level** 14:8,8,9,14 16:4 18:25 21:22 39:12
**liability** 5:19
**liable** 54:4,8
**liar** 35:16
**lied** 17:21 25:15 35:3 41:17
**life** 11:20 25:1 49:20,21 77:15
**lifted** 38:24
**light** 16:12 47:18 49:17 50:8 78:7
**limited** 8:9,22
**limits** 22:21
**line** 43:10 91:23
**linked** 57:23
**liquidated** 62:25
**listen** 19:3 25:7

25:10 82:24 91:23
**litany** 4:3 37:25
**litigation** 62:24 88:20
**little** 73:25
**LITTLER** 1:16
**lives** 12:17
**LLC** 1:13
**LLC./** 1:20
**Locust** 1:13
**long** 7:19 51:4
**long-term** 23:1
**look** 4:13 10:5 11:20 17:3,4,5 17:8,10,11 20:10 29:18 31:3 36:5 48:20 51:5 54:16 56:15
**looked** 14:7
**looking** 65:1 67:3 68:10 87:12 92:22
**loss** 24:19 71:14 77:15 89:6,10
**losses** 24:17,24
**lost** 61:19 63:3 71:13 81:7,10 81:13 83:15,17 83:23 85:1 88:7 90:15
**lot** 90:15
**lower** 12:8 21:22
**lunch** 6:15 24:15 84:11,12
**lying** 17:21,22 33:20

**M**

**magic** 11:17
**magical** 34:16 34:17
**main** 10:25
**make-up** 58:16
**makers** 20:8
**making** 62:3 69:12 92:10
**male** 12:8 41:4
**man** 36:24
**management** 56:4
**management-l...** 54:21,23,24
**manner** 49:10
**March** 14:21 18:8,9
**Marilyn** 41:11
**Mark** 6:15
**market** 1:4 68:6
**material** 57:11
**materially** 59:11
**mathematical** 78:13,16
**matter** 7:1,7 62:10 96:4 97:6
**Mattiacci** 1:11 1:13 2:8,12 3:3 3:7,10,18 7:22 8:7,11,13,15 8:17,25 13:23 15:16 22:14 26:10,20,25 27:4,6,9,12,14 27:16,19 28:5 28:8,16 31:23 32:1,4 39:16 39:19 42:11,13 44:10,13,16,21 45:6 64:17,23 65:3,10,15,17 65:21,23,25 66:4,6,12,14 66:17,25 67:2 67:6,8,10,14 67:17 68:7,15 68:20 69:4,6,9 69:11,16,20 70:3,16,19 74:11,13,25 75:2,6,12,18 75:24 76:2 78:11,17,21 79:1 83:7,12 83:14,17 84:1 84:6,19 85:3 85:11,17,22,24 86:7,12,14,22 87:5,22 88:2 88:11,17 89:3 89:8,13,18,21 89:23 90:4,8 90:18,20 96:2 96:25
**McDonnell** 5:4
**mean** 4:18 11:10 14:1 17:15 24:15 45:5 65:3,15 87:5
**means** 48:2 50:7 51:25 59:11 65:3 71:24 73:22
**meant** 76:24
**measure** 78:18
**mediate** 12:23
**mediator** 38:17
**meet** 15:20,21 49:21 50:15
**meeting** 11:1 23:14 34:18
**meets** 12:1
**member** 33:1,6
**members** 9:2 12:8 32:14 33:10 43:23 44:2 79:4 82:25 93:9,15 94:21 95:17
**memory** 49:10 51:11
**MENDELSON** 1:16
**mental** 56:22 77:15
**mentioned** 16:24 46:25 71:2
**merely** 53:17 57:2 60:23 73:18
**merit** 10:19
**merits** 59:6
**message** 31:17
**messages** 32:22
**messed** 18:10
**met** 9:15 10:12 21:6
**method** 48:20
**midst** 95:20
**million** 42:23
**mind** 45:10 55:1
**minimum** 37:2
**minus** 85:5 86:1
**minute** 25:6 67:20
**minutes** 7:20 8:9 8:22 9:3 15:2 25:5 44:5 67:20 87:20
**misconduct** 45:4 81:23
**misdeeds** 39:15
**misogynistic** 37:9 38:21
**missed** 78:6
**missing** 43:12 74:18 75:2
**mistakes** 35:21 40:18
**mitigate** 62:12 62:15
**mitigation** 68:5
**mixed** 3:25 27:11 29:24
**mixed-** 5:8
**mixed-motive** 5:5,17,22,24 6:1,3
**mixup** 65:6
**Model** 5:19,23 29:8,9,10
**moment** 13:11 43:24
**moments** 31:8
**monetary** 6:11 29:13 64:2 77:18
**money** 24:20,22 42:23 85:4,5
**monitored** 37:21
**month** 14:15
**morale** 23:2
**morning** 3:2,3,4 9:2
**motion** 7:7
**motions** 7:1
**motivated** 23:24 26:8 54:3,12
**motivating** 5:2 6:7 23:19,24 26:4,8,15 27:1 27:23 28:12,17 28:23 29:5 44:17
**motivation** 31:10
**motive** 5:9,25 29:24 49:12
**move** 34:3,21 43:8
**moved** 34:1 38:15
**multimillion-...** 33:11
**multiple** 43:16
**Munshi** 1:12 3:4 3:6 4:7 8:8 70:14 90:5 91:6,9,12,15 91:17,21 92:5 96:20,24

**N**

**name** 36:3,4
**named** 16:7
**nature** 32:6 57:21
**necessarily** 49:23 59:22
**need** 24:7 30:4 53:6 55:6 57:20,21 59:5 60:14 61:8 64:11 73:7 77:19 87:20 96:8
**needed** 18:25

**needs** 19:7 30:5 66:7
**negligently** 63:18
**neuropsychiat...** 36:1
**never** 11:8,9 17:23 20:21 34:7,10,12 36:3 40:11,22 40:23 41:15,16 41:17,19 42:3 43:21,23 45:10 84:17
**new** 36:17 65:2 92:2
**nominal** 71:6,9 71:14,15
**non-** 52:23 60:2
**nondiscrimin...** 40:17 72:19
**nonissue** 15:4
**normal** 58:16
**note** 62:9 75:4 80:23
**notes** 12:2 40:9 40:10
**notion** 34:4
**November** 37:23 38:4
**NSF** 33:8
**number** 10:7 24:25,25 26:1 26:3 49:7,23 80:19 82:6 85:14 91:4 95:11
**numbers** 23:4 86:8 89:4,9
**numerous** 13:4 13:5 16:17 60:4 72:20
**nutshell** 46:9

**O**

**o'clock** 18:12
**oath** 10:10,10,16 13:1 25:13 30:18,19 34:2 42:5,7
**object** 31:24 48:2,4
**objection** 39:16 39:24 44:10,13 45:9 48:3,6 88:15,19 96:4
**objections** 47:9 69:12
**objectively** 58:12
**obligation** 11:17 35:4 38:25 39:1,3 42:20
**obtain** 62:17
**obtained** 62:8 62:20
**obviously** 96:3
**occasional** 57:6 57:6,7
**occasions** 10:12 13:5
**occupied** 76:25
**occur** 55:17
**occurred** 17:20 53:3 60:9 73:3 73:24 76:25 77:3
**occurs** 71:11
**offended** 12:19 58:9
**offenses** 39:11 39:12
**offensive** 31:3 36:15,16 56:20
**offered** 48:5
**offers** 47:24
**officer** 6:16,18 8:18 44:6 67:21 81:4 88:3 95:23
**oh** 4:20 13:11 19:12 20:24 25:11 31:4 38:12 78:12 88:5
**okay** 4:13 5:10 5:15 7:12,24 8:13 9:7,9 25:5 28:4 29:19 30:3,8 65:14 68:18 69:6,9 70:15,19,20 74:23 78:17,21 79:1 83:1 84:6 84:18,19 85:16 86:13 88:8 91:1 93:12,14 94:20
**old** 43:12
**older** 22:16,24 23:4,10
**once** 35:11 87:13
**ones** 26:6 31:2 43:25 46:7
**open** 55:2 82:16
**opened** 30:14
**opening** 15:17
**Operator** 1:19
**opinion** 68:21 82:23 83:1,2,3
**opinions** 82:22
**opportunities** 16:18 55:19 60:4 62:18,21 72:21
**opportunity** 13:13 21:19 36:22 49:7 56:10
**oppose** 11:14
**opposed** 9:21 10:8,20 15:9
**opposing** 91:7
**opposite** 50:12
**opposition** 11:5 11:5
**order** 16:8 18:25 19:8 39:20 41:18 51:22 57:17 71:21 93:6
**ordering** 6:15
**ordinarily** 56:8 88:18
**ordinary** 57:5 95:18
**original** 83:1,2
**ors** 3:15
**outcome** 49:11
**outline** 51:6
**outside** 13:13 36:13 47:12 48:19
**overruled** 39:25

**P**

**P-62** 87:23
**p.m** 84:10,22,23 93:4,5 97:1
**page** 2:4 3:12,12 45:6 87:23 88:21
**pages** 51:4 88:13 88:15
**paid** 12:7
**pain** 77:14,19 78:18 82:2,5
**papers** 10:15,21
**paragraph** 78:12
**Pardon** 44:12
**part** 49:5 75:3 77:5 90:16
**Participants** 8:1 13:22 15:15 22:13 30:10 75:14 78:23 90:7,12 91:20 96:10
**particular** 3:25 18:14 34:9 36:1 52:14 61:7 72:10 76:9 87:16
**parties** 3:11,22 4:2 47:6,8
**party** 46:14 50:4 50:5
**passage** 59:23
**passed** 15:25,25 16:1 22:11,20
**pasture** 11:2 17:24
**Pause** 45:8 79:20 88:9
**pay** 24:18,19 62:6,7 64:13 64:15,17 65:2 65:3,12,17 66:7,19 67:4 69:1 70:25
**PC** 1:16
**pen** 42:14
**Pennsylvania** 1:1,5,14,17,22
**pension** 61:21
**people** 17:11 19:19 32:6 34:5 38:21 41:9 43:17 46:21 47:19 49:21 69:19
**perceived** 48:11
**percent** 9:8
**perform** 16:19 60:5 72:22
**performance** 16:22 21:24 22:22 37:21 57:4
**performer** 37:1 37:3
**period** 62:8
**permitted** 48:1
**person** 22:5 36:7 36:8,9 37:9 38:10 41:2,3 41:12 48:24 54:14,17,18 57:24 58:6,8 58:14,15 71:7
**person's** 31:10 31:10,11
**personnel** 1:19 6:23 54:25 79:3
**persons** 22:24 23:10 46:17
**perspective** 58:6

**persuades** 62:16
**pervasive** 3:13 3:14,21 4:1,2 4:10 26:12 27:18 28:9 54:13 55:2 56:25 80:8,12 80:16,20
**Philadelphia** 1:5 1:14,17,22
**phone** 13:8
**PHRA** 44:17
**phrase** 34:7,8
**physical** 41:21 56:16
**physically** 57:1
**pictures** 31:5
**pie** 36:22
**piece** 3:25 4:4 74:11,18 75:2
**place** 22:1 37:13 59:2 67:12,14 90:24
**placed** 56:11
**plaintiff** 1:3,11 6:8 8:22 24:7 29:21 46:12 50:7,11,14 68:5 94:23
**plaintiff's** 29:1 32:16 88:12 91:12
**plan** 13:7,18
**plane** 14:1,12 16:4
**planner** 21:21
**played** 23:25 77:5 90:23
**please** 80:24 93:10,18 94:20
**plopped** 95:19
**plus** 85:13
**pocket** 24:22
**point** 8:21 13:15 13:20,23 20:22 45:17 54:16 83:21 87:18 91:5
**pointing** 89:7
**points** 25:23
**policies** 21:13 39:20
**policy** 34:23 39:13,14 55:24 56:1,2
**polite** 36:24
**polled** 95:8,14
**poor** 60:5 72:22
**portion** 89:25 92:21
**position** 5:3 33:9 39:1,4 54:14 58:7 65:1 76:24 79:9,12 79:25 80:5
**positions** 38:25
**possible** 45:20
**post** 31:4,17,18
**posts** 31:1,2 32:5
**potato** 16:1
**potential** 22:22
**potentially** 63:20
**practice** 22:23 34:25 35:5
**practices** 22:23
**preamble** 22:11
**precision** 78:13
**predated** 37:22
**Predates** 37:23
**prejudice** 45:24 49:12
**preponderance** 46:13 49:1 50:2,6,18,20 52:6 54:7 55:5 55:12 56:13 58:24 61:17 62:16 63:10 72:3 76:10 77:2 79:7,11 79:17,22 80:2 80:7,11,15,19 81:6,22 82:2
**present** 8:5,19 19:3 44:9 45:15 64:2 67:24 70:22 84:24 88:4
**presented** 9:12 9:13 10:5 29:20,22 30:2 39:6 42:3 43:11 45:22 78:8
**presents** 43:6
**preserve** 7:9,18 44:19
**preserved** 7:4
**pressing** 14:15
**pretext** 35:2 39:23,23 53:9 60:16 73:10
**prevail** 41:18 52:5 58:23 72:2
**prevent** 55:13
**preventing** 55:23
**preventive** 55:19
**price** 43:5,7
**prior** 37:4 45:2 49:14
**private** 46:19
**probability** 54:25
**probable** 77:7
**probably** 7:20 15:2 51:16,17 95:21 96:9
**problem** 5:13 12:23 56:5 88:19
**problems** 23:5 23:14 38:9
**procedure** 56:7
**procedures** 35:5 37:11,12,13
**proceed** 8:24 55:6 79:16 80:24 81:19
**proceeding** 5:3
**proceedings** 1:24 3:1 8:4 44:8 45:8 67:23 79:20 84:23 88:9 93:5 97:1,6
**produce** 29:24 52:15 72:11
**produced** 1:25 29:21,25 50:24
**productivity** 22:15
**professional** 12:17 31:15 33:7,12
**professor** 15:1
**program** 18:23
**progressive** 39:12
**prohibit** 23:11
**prohibited** 63:17,21
**promises** 25:7,8 25:10
**promote** 23:10
**promptly** 55:16
**proof** 48:14,25 48:25 50:2,25 55:21 56:6,11
**proper** 3:20 5:17 6:4
**propose** 87:24 91:24 92:2
**protect** 42:24
**protected** 5:20 41:10 59:2
**prove** 24:7,10 25:9 28:25 29:12,13 33:16 39:15,19,21,23 40:15 49:22 50:8 51:24,25 52:5,11,13,15 54:19 56:12 58:23 59:6 62:15 68:5 70:4 71:5,23 71:24 72:2,7,9 78:13
**proved** 50:18,20 55:4,8,11 60:14 61:4 73:7 79:6,10 79:17,21 80:6 80:10,11,14,19 81:5,6,21 82:1
**proven** 24:13 46:12 53:7,17 53:19 59:23 60:23 71:16 73:17,20 77:18 80:1
**proves** 54:6
**provide** 38:17 38:20 39:1,3 85:3
**provided** 31:1 37:25 40:2,3 54:24 55:20 56:2,7
**provides** 36:14 42:7
**proving** 50:6 61:16 63:10 77:1
**psychiatrist** 35:25 36:1
**psychological** 58:13
**public** 33:4 34:4 34:5
**pulled** 11:24
**punishment** 35:22
**purpose** 23:9 45:19 63:9 89:5
**put** 5:18 7:17 9:12,13 10:15 11:2 14:10,19 14:20 16:20,21 16:21 17:16,24 18:12,17 20:6 20:15 50:10 76:24 85:6
**putting** 12:9

43:19

**Q**

**quality** 49:9
**question** 2:16 4:17 5:1,1 9:9 9:11 10:9,19 11:13 15:8 21:16,18 35:17 35:18 45:3 47:24 53:10 57:24 58:10 60:17 63:7,7,9 67:4,5 68:11 73:11 79:6,10 79:14,15,16 80:1,6,14,23 80:24 81:5,5 81:19,20,21 82:1,6 83:15 83:17 84:16,25 85:1 90:14 91:9,24 92:5,9 93:19,21,23,25 94:2,4,6,8,10 94:14,16,25,25 95:1,1,1,2,2,2 95:3,3,4,4
**questions** 3:12 9:18 20:2 40:20 47:8 51:4,7 80:25 81:1,19 82:9 82:16 93:16
**quick** 83:8
**quickly** 22:12
**quite** 39:22

**R**

**R** 1:15
**Rachel** 1:15
**Rafferty** 82:13
**Rahul** 1:12
**raincoat** 48:16
**raining** 48:19
**raise** 4:17 54:25
**raised** 10:17 56:5
**Rand** 97:10,16
**reach** 47:22 83:4
**reached** 8:20 45:17 82:14 93:15
**reaching** 48:8
**reacted** 54:18
**reaction** 33:22
**read** 22:12 66:9 69:25 78:3,10 87:16 90:2,8 90:10,21 91:13 91:24 92:4 95:12
**ready** 6:17,19 89:24
**real** 11:20 42:19
**really** 9:3 16:19 19:20 51:16 85:12
**reason** 23:19,22 23:24 24:5 35:18 40:17 42:19 52:9,24 53:1,3,6,9,17 60:3,7,10,13 60:16,23 61:1 69:24,24 70:4 70:5,10 72:19 72:20,23 73:1 73:4,6,10,18 83:4
**reasonable** 24:10 43:4 49:16 51:1 54:14,17 55:1 55:2,13,15,16 56:2,4,7,19 58:6,8,14,15 59:8,14 62:13 77:7,11 79:18 79:23 80:3,17 80:21 81:16
**reasonably** 47:21 61:19 62:18,20 64:4
**reasons** 7:9,10 16:7,8,13 17:5 17:6 23:22,24 24:5 40:17 42:15,16 82:23
**rebuttal** 8:10,12 8:23
**recall** 20:5,5,6,6 20:8 22:2 34:1 89:22 90:16
**receive** 88:20 92:23
**received** 32:10 41:20 47:3,23 50:23 52:19 61:22 72:15 87:13
**recess** 8:3 44:3,7 67:20,22
**reckless** 63:15 63:21
**recognition** 71:8
**recollection** 86:3 90:17
**reconcile** 38:5
**record** 3:19 7:4 7:18 13:24 37:1,4,24 40:12 44:11,14 69:23 84:22 85:8 87:12,18 89:17,19,20 91:7 93:4
**recorded** 1:19 1:24 82:10 94:22
**recording** 1:24 97:5
**recover** 6:8 51:22 63:3 71:21
**recoverable** 29:17
**recovery** 76:6
**reduce** 62:2,14 62:19
**reference** 38:21 76:5
**referred** 55:22 90:16
**referring** 51:15 75:16
**regain** 22:18
**regard** 48:12 90:23 91:2
**regarded** 56:24
**regarding** 26:3 26:15 79:23 80:3,17,22 86:4 91:25 96:3
**regardless** 22:21 24:12 50:22,23 53:4 60:10 73:4
**reinstatement** 68:23
**related** 12:12 21:7
**relative** 23:3
**relay** 20:18,19
**relayed** 21:3
**relief** 6:8
**remark** 57:3
**remember** 15:17 18:11 33:3 36:6,7 37:20 51:10 64:25 85:19 86:20 88:22 89:14
**remembering** 36:2
**remove** 66:1
**render** 61:11
**renew** 96:4
**renounces** 5:24
**repeated** 74:2
**repeatedly** 25:15
**replaced** 43:15
**replacement** 38:3,4,5 41:8
**replayed** 91:2
**report** 14:22 16:5 18:6,11 18:13,22
**reported** 33:11
**request** 39:10 70:24
**requested** 44:16 44:18 69:23
**requesting** 90:11
**requests** 32:10
**require** 78:13
**required** 4:6 28:19,25 39:5 39:5 52:13,15 61:8 62:13 72:9,11 81:17
**requires** 42:6 48:24 54:16
**researched** 27:11
**reserve** 8:10,14 8:23
**resign** 19:4,5,22 40:3
**resigned** 19:12 19:15
**respect** 11:4
**response** 10:11 20:2 86:14 96:19
**responses** 86:23 88:11
**responsibility** 43:22,23
**responsible** 46:22
**rest** 62:9 89:17 89:19
**restate** 63:13
**restroom** 64:12 65:16 67:9 87:21
**result** 54:20 76:20 77:6 81:7,11 82:21 83:18,24
**resultant** 23:1
**resulted** 39:9
**results** 35:13
**resume** 8:4 44:8 67:23 84:23

93:5
**resumes** 92:19
**retain** 22:17
**retaliate** 18:2
**retaliated** 9:10 19:11 58:21
**retaliating** 81:24
**retaliation** 9:17 9:18,19,21 10:4,8 12:13 17:3 19:8 20:4 20:20 23:21 24:2,6,6,9,9 25:4 41:14,18 42:2,21 58:17 60:14,17,18,24 70:4
**retaliatory** 74:17 75:3 76:2
**retire** 82:17 83:6 84:8 92:17
**retires** 83:8
**return** 71:3 76:9 81:3
**returned** 82:15
**revised** 6:4
**Rhonda** 15:20 15:20,21,22
**Richard** 1:15
**ridiculous** 17:5
**right** 3:9 4:5,24 6:10,14 7:24 8:16 9:4,5 11:11 13:16 14:4,10,10 19:23 21:19 26:20 27:22 28:7,10,13,16 29:11 30:6,7 31:25 32:8 34:25 44:20 45:12 65:8,10 65:24 66:4 67:15,16 70:13 71:10 74:23 84:16,20 85:10 86:21 91:8,11 91:13,16 93:8 95:25 96:14,18 96:22
**rights** 52:14 58:19 59:8 63:23 71:7 72:11 76:17
**ring** 25:16
**rise** 8:18 44:6 67:21 88:3 93:10,11 95:23
**rising** 22:15
**ROBERT** 1:9
**role** 17:13 24:1 38:2 65:2
**room** 14:20,24 16:6 18:6,10 82:13
**rule** 29:10 43:1
**ruled** 26:25 59:22
**rules** 14:7,7 29:8 29:9 35:5 47:23 48:1
**ruling** 27:18 28:9 66:18,18
**rumors** 47:15
**run** 67:9
**Ruth** 1:2 9:21 10:3,7 20:25 24:16 25:17 34:20 35:10 94:23
**Ruth's** 9:23 15:11

**S**

**salary** 24:17 61:20 85:12 86:4 89:21,23 90:1 91:25 92:7
**sand** 43:20
**Sandy** 14:16,16 15:21,21,22 21:1 31:14 33:20,21,21 34:11,20 35:4 40:9 41:14,17
**Sandy's** 35:16
**Satinsky** 1:15 3:8,17,19,24 4:6,15,20,23 4:25 5:11,14 5:16 6:11,13 6:21,25 7:6,12 7:14,17,20,23 26:21,23 27:2 27:5,7,13,15 27:17,20,23 28:2,6,17,22 29:4,8,12,16 45:2,10 66:13 66:21,23 67:1 67:3 70:8 75:1 75:10 78:2,5 84:3 90:9
**satisfactorily** 16:19
**satisfied** 74:24
**saw** 11:25 15:10 21:21 30:25 31:2 32:20 33:23 40:1,17 90:24 91:4
**saying** 13:11 16:14 18:12,13 19:10 20:5,8 75:7
**says** 5:20 11:2,3 12:17 15:20,21 15:22,24,24 16:5,9 20:1 29:10 31:4 34:7,11,20 37:16 49:5,5,6 68:4 78:6 83:17,18
**scale** 50:13
**scales** 50:13
**scared** 12:4
**schedule** 96:5
**school** 36:13
**scope** 46:24
**screen** 30:5 85:6 85:18 91:4
**search** 87:17
**seat** 95:11
**seated** 8:20 45:16 70:23 88:5 93:7,12 95:9
**second** 9:23 17:7 18:5 24:23 30:4 37:17 52:7 55:17 56:1 59:1,10 72:4 83:7 87:1 87:3
**second-guess** 34:23
**secondly** 64:12
**see** 6:21 13:2 15:4 19:23 25:18 31:7,12 31:15 32:21 33:15 34:12 36:18 47:15 49:8 64:8 66:6 74:4 77:24 91:3
**seed** 9:15
**seeing** 15:17
**seen** 3:5 31:19 32:24,25 33:1 33:2,5,13 34:6 35:25 47:12,14
**selected** 30:21
**send** 18:16 19:18
**sends** 12:10 15:20,22,23 18:15
**sense** 11:11 17:10 18:24,24 25:2 47:17 77:9
**senses** 48:11
**sensibility** 58:16
**sent** 22:3 84:25
**sentence** 78:6
**separately** 64:2 74:3
**serious** 57:13 59:13
**seriously** 58:13
**service** 1:25
**setting** 22:21
**severe** 3:13,14 3:20 4:1,2,10 26:12 27:18 28:9 54:13 80:8,12,16,20
**severity** 56:21
**sex** 11:16 20:4 20:20 21:4 23:18,23,25 24:8,13 26:21 26:23,24 27:1 29:2 37:8 38:6 39:2 43:18 51:14,15 53:25 54:3 55:16,25 57:19,21,23 58:7,14,15,20 58:22,25 59:4 59:6,15,21 60:11,25 61:14 63:5 64:1 71:17,19,21,25 72:5 73:4,20 73:23 74:13 75:11,12,21 76:13,21 83:20
**sexist-based** 11:3
**sexual** 35:9
**Sharolyn** 97:9
**sheet** 2:6 6:4 21:16 44:14 64:18 66:8,10 66:14 74:21 83:9
**shock** 20:25
**short** 91:15
**shortly** 59:20
**show** 28:25 35:1 35:3 59:11 63:18 77:3,4 87:25 89:16 91:7,8,14,15

**showed** 63:15
**showing** 35:2
**shown** 59:17,24
**sic** 14:21
**side** 8:22 9:12 9:14,15 11:9 47:25 50:12,14 87:11,25
**sidebar** 6:22,24 7:25 25:18,21 30:9 64:10 67:18,25 70:21 74:4,5 75:15 77:24,25 79:2 83:8,13 84:7 88:14 90:13
**sidebars** 83:11
**sight** 48:11
**sign** 81:3 82:12 82:20
**significance** 68:17
**significant** 39:6
**similar** 41:3,4,5
**simply** 48:2 53:12 58:15 60:18 73:13 83:3
**single** 37:21 40:9 46:2
**Sir** 96:1
**sit** 17:8
**sitting** 42:14 43:22
**situation** 12:21
**six** 14:8,8
**Sixth** 54:21
**skill** 23:2
**skip** 79:15
**smashed** 20:17
**smooth** 17:14
**socializing** 57:5
**soft-spoken** 36:24
**sole** 23:21 24:5 69:23 70:14
**solve** 75:6
**somebody** 66:1 66:24
**somewhat** 50:14
**sooner** 84:15
**sorry** 31:23 44:23 64:14 83:12,17 88:8 91:18 93:12 95:1 96:3
**sort** 82:19
**sound** 1:24 48:11 77:10 97:5
**space** 81:18 82:7
**speak** 17:11 91:18
**specific** 11:23 12:14
**specifically** 4:9 68:8
**speculation** 77:12
**spoke** 41:15,16 41:17
**spoken** 13:5 43:14
**staff** 12:8 33:5 33:10
**stamps** 43:9
**stand** 12:24 21:1 21:14 25:6,15 33:22 36:23 46:17
**standard** 3:14 3:20,25 4:9 5:4 5:25 9:7 77:20
**standards** 4:3,7
**start** 9:18 10:24 36:6 51:8 72:25
**started** 7:6 21:25 27:10 68:9 82:20
**starting** 3:12
**starts** 15:18
**state** 81:10 82:4 82:15,21
**stated** 4:9 7:10 16:9 53:1,3,5,8 60:7,10,13,15 72:23 73:1,4,6 73:9
**statement** 11:5 36:11,16 37:23 46:5
**statements** 40:1 46:23 47:7 52:16 72:12
**States** 1:1,10 36:14
**stating** 32:1
**statute** 65:9
**statutes** 51:12 74:2
**stay** 19:25 26:4 26:11
**stayed** 15:1 24:21 85:5
**stellar** 37:4
**step** 39:12
**Stephen** 1:12
**steps** 56:4
**STI** 4:11
**stipulated** 47:4
**stood** 17:14,16 19:14
**stopped** 65:1 68:10 87:12 92:22
**stops** 67:1
**story** 11:9 16:11 16:16 18:20 42:18,18
**straight** 42:18 42:19
**straightened** 68:1
**Street** 1:4,13,16
**student** 32:25
**students** 33:10
**subject** 57:25 61:23,24
**subjected** 54:9 57:25 80:7,12 80:15,20
**submit** 29:4 30:19 36:21 41:24 42:5,8 68:24,25
**subsequent** 14:9 92:1
**subsidized** 43:8
**substance** 78:15
**substantial** 58:1 77:5
**substantially** 62:17
**subtract** 81:13
**sudden** 95:19
**suffered** 24:12 71:8,14
**suffering** 77:14 77:19 78:18 82:2,5
**sufficient** 59:18
**suggest** 38:11,13
**suggesting** 38:1
**suggestions** 85:2
**Suite** 1:16
**summary** 74:19
**summer** 4:8
**support** 35:14 41:1
**supposed** 14:24
**sure** 3:24 4:2 7:6 28:22 47:4 69:22 74:9,24 95:10
**surprised** 33:23
**suspect** 40:22
**suspension** 14:3 16:4
**suspicions** 47:15
**sustained** 76:20 82:5
**swear** 13:1
**sweet** 36:22
**swirl** 15:18
**swore** 10:16
**sympathy** 30:17 43:1 45:24 77:12

**T**

**T-26** 21:22,23
**take** 9:11 11:19 11:20 13:12 18:18 32:15 36:11 43:3 44:2 55:18 56:9 93:8 96:14
**taken** 8:3 29:1 43:17,23 44:7 56:4 61:5,10 67:22 68:5 76:8 95:18
**takes** 18:16 66:24
**talk** 4:14,18 5:20 14:16 17:7,21 18:4 20:1,11,12,12 20:13,13
**talked** 21:3
**talking** 27:23,25 70:2,25 74:1 86:10
**tardies** 14:8
**tardy** 14:6,10,11
**tasteless** 57:3,7
**teasing** 57:8
**tell** 12:25 17:9 46:5 51:6 69:7 82:13 85:2 87:5,15
**tells** 17:23,25 18:1 47:20
**temple** 1:6 5:2 9:13 10:10 12:23,24 13:11 13:13 17:19 22:7 23:17 24:17,21 30:18 30:21 31:13 32:22 33:8,15 34:25 35:5 37:11 38:8 39:20 40:25 42:8 43:22 46:15 50:4,12 50:15 51:21,23 51:24 52:3,6,8

52:9,11,13,19 52:22,23,25 53:1,3,4,5,8,10 53:13,14,17,19 54:4,7 55:6,8 55:10,11,13,20 55:24 56:7,11 58:4,20 59:12 59:19,20 60:1 60:2,7,8,10,12 60:12,15,17,19 60:21,23 61:1 61:12,15,22,23 61:24 62:14,15 63:1,4,8,12,13 63:14,15,18,19 63:22,24 64:4 64:4 71:20,22 71:23,25 72:1 72:4,5,7,9,15 72:17,18,23,24 73:1,2,3,5,6,9 73:11,14,16,18 73:21 76:11,20 77:4,7,17 79:8 79:11,24 80:4 80:8,12,16,21 81:2,7,11,15 81:22 83:18 85:13,25 86:8 86:15,23 87:7 89:23 91:25 92:6 94:24
**Temple's** 21:17 34:23 77:3 88:11
**ten** 15:2 44:4 67:20
**ten-** 67:19
**ten-minute** 44:3
**tenth** 38:15
**term** 59:10
**terminate** 5:3 13:16,16,18 14:19 16:8,13 19:1,3,12,15 39:20 52:24 53:2,20 60:9 72:25 73:2,21 79:9
**terminated** 16:7 19:14 20:22 34:15,19 39:10 40:4,16,24 42:15 51:21,24 52:4,7,8,10,22 59:1,12 60:1 61:12 63:1,24 64:5 71:20,25 72:4,17 76:11 79:12,24 80:4
**terminating** 61:1 63:16 76:13 81:8
**termination** 14:17 16:5,9 16:24 24:21 25:3 39:9,13 40:18 59:3 73:23 74:1 87:6
**terms** 57:12 69:11 74:14 89:9,18,21
**terrific** 36:25
**testified** 33:3 49:9 68:9
**testifies** 48:10
**testify** 49:23
**testifying** 37:20 49:10
**testimony** 25:2 34:1 35:24 40:2 47:2,10 49:3,16,25 50:21 68:13 85:23 87:16 90:23 91:2,12
**text** 31:17 32:21
**texts** 32:23
**thank** 8:7,8,13 8:17,25 9:3 25:17 32:19 42:9 44:20,21 84:20,21 93:2 95:15,17 96:2 96:18,22,24,25
**theory** 30:1
**thing** 13:20 32:20 41:14 43:2 44:25 78:3 82:17 83:9
**things** 13:24 14:19,23 17:15 19:1 22:4,7 23:20 32:5 47:3,7 49:8 51:9 69:16 75:22 77:19 92:3
**think** 3:21 4:3 6:13,15 9:8,9 18:15 27:8,13 30:5,23,25 31:8,9,21 33:21 34:4 38:22 44:18 48:22 49:25 51:8,10 61:6 62:4 64:15 68:20 70:12 76:8 78:9,11 83:10,22 86:17 88:19 90:9,10 91:17 92:23
**thinking** 15:18
**thinks** 48:1,4
**third** 4:9,11 9:25 38:10 54:11 56:2 59:2,16
**thirteen-year** 16:13
**thought** 26:4,10 26:12 27:10,22 27:25 29:25 30:22 32:24,25 33:1,2,13 34:18 36:25 37:3 64:13,16 64:18 65:4 66:17 96:11
**thousand** 18:8 94:13,19
**threat** 35:9
**threatening** 41:21 57:2
**three** 9:18 10:2 15:13 40:21,22 40:23 43:12 94:19 96:9,11 96:17
**three-day** 14:3
**ticket** 14:1,12 16:4
**tilts** 9:14
**time** 13:20,23 16:2 18:1,8,16 18:22 24:21 36:13 37:15 59:1,23 61:2 61:25 87:6 95:21 96:8,16
**times** 11:14,22 11:24 43:16
**timing** 17:4 59:19
**tip** 50:13
**Title** 5:19 26:9 28:11,23 51:13 53:24 58:19 59:9 68:21 70:3 71:18 74:6 76:17
**today** 23:16 24:15,15,22 43:22 44:1
**told** 35:4 41:15 41:19 47:11 66:1 85:14
**total** 56:16 58:10 85:25 86:1 92:10
**totally** 88:17
**touch** 26:12
**tough** 40:5
**trained** 11:19
**transcript** 1:8 1:25 86:18,19 89:24 90:1,6 91:6 92:22 96:6 97:5
**transcription** 1:20,21,25 97:18
**Transcription...** 97:17
**Transcription...** 97:9
**travel** 36:12
**treated** 41:3,4,5
**treatment** 12:11 21:8
**tree** 14:21 43:7
**trial** 1:8 11:25 45:18 46:19 49:15 78:8 86:11,12,17,19 87:23 88:12 90:1
**tried** 66:1 74:6 92:25
**tries** 19:11
**trouble** 18:14
**true** 5:22 17:15 17:19 25:16 45:21 46:7
**try** 16:12 22:8 25:11 84:12
**trying** 15:5 19:17 20:15 38:23 49:4 66:6 92:20
**Tweet** 31:18
**two** 12:8 13:23 14:14,19,22,23 16:7,8,13 18:8 18:25 25:22 26:3 35:11 37:9 38:21 39:7 41:9,10 48:7 51:12 74:24,25 86:25 87:1,2,3,20,20 88:10 91:9 92:2,11,12,13 94:13 96:13,20 96:22
**type** 48:8 56:17

**types** 48:7

**U**

**Ultimately** 53:18 60:24 73:19
**umbrella** 48:18
**unanimous** 83:4 83:5
**underlying** 24:7
**understand** 7:8 7:9 27:17 58:3
**understanding** 49:9 65:11
**understood** 68:11
**unemployment** 22:25 23:1
**unfortunately** 40:18 87:11
**unfounded** 35:14
**unfriendly** 57:16
**UNIDENTIFI...** 88:7 90:24 91:3
**United** 1:1,10 36:14
**university** 1:6 30:18,21 33:9 35:6 42:8 46:15,18 50:4 50:12 51:21,23 52:3,7,8,10,12 52:13,20,22,23 53:5,13 54:4,7 55:6,10,11,13 55:20,24 56:8 56:12 58:21 59:12,20 60:1 60:2,10,12,15 61:12,22 62:16 63:1,13,15,18 63:19,24 64:4 64:5 71:20,23 71:25 72:8,9 72:16,17,18 73:5,14 76:11 79:12,24 80:4 80:8,13,16,21 81:3,12,15,22 86:23 94:24
**University's** 5:2 33:16 40:25 52:25 53:1,3,5 53:8,10,14,17 53:19 55:8 58:5 59:19 60:7,8,13,17 60:21,23 61:1 61:15,23,24 62:14 63:4,8 63:12,14,22 72:1,6,23,24 73:1,2,4,6,9,12 73:16,18,21 76:20 77:4,7 77:17 79:8 81:7 83:18
**unlawful** 77:17
**unpaid** 14:3
**unpleasant** 56:24 57:16
**unreasonable** 40:7,13 53:14 60:20 73:15 78:10
**unreasonably** 55:18 56:9 57:3
**unrefuted** 38:7
**unwanted** 56:24
**unwelcome** 56:23
**upheld** 23:17
**use** 11:17,22 17:10 25:1 47:17 48:8 49:20 51:17 57:7 64:11 65:16 77:10
**uses** 4:3
**usually** 48:7

**V**

**v** 1:2 4:11 94:23
**value** 43:9 64:2 77:18 86:8
**various** 10:12 54:1
**verdict** 2:6,18 3:5 6:4 21:16 42:7 44:14 45:2 48:8 50:15 51:3 55:5 61:7,11 62:1 64:18 66:8,10,14 67:12,14 68:12 68:25 69:4,20 69:21 71:3 74:21 76:9 78:24 79:5 82:14,20 83:4 83:4,9 84:9 92:18 93:8,16 94:20,22 95:12 95:14
**video** 90:5
**view** 54:17
**VII** 5:19 26:9 28:11,23 51:13 53:24 58:19 59:9 68:21 70:3 71:18 74:6 76:17
**violate** 52:14 72:10
**violated** 59:9 63:23 71:7
**violation** 63:6 63:12,14 71:8 71:17
**violations** 18:25
**violence** 35:9
**visceral** 33:22
**vs** 1:4
**vulgar** 57:16

**W**

**Wacker** 16:6 20:1,10,15,15 20:18,19 31:14 38:19 41:15
**wage** 83:15
**wages** 61:19 62:7,19 63:4 64:3 71:13 77:22 81:7,11 81:13,15 83:18 83:23 85:1 90:15
**wait** 69:13 83:16 83:16 88:8
**waiting** 42:14 88:6
**walk** 43:25
**Walker** 54:2
**walks** 14:18 48:16
**wall** 20:15,17
**Walton** 10:18,18 13:6 15:24,24 20:9,16 31:14 33:19 39:8 41:16 54:1
**want** 3:23 7:8 8:12 9:18 14:16 16:17 18:24 19:4 20:6 22:12 34:21 38:22 43:21 64:20 70:25 74:9,19 78:3 84:12 87:4,16,17 91:1 93:11
**wanted** 4:16 19:2,2,5,18 20:10 21:14 22:1,4 34:14 36:3 38:2,3,3 42:23 44:19 69:22 74:23 84:6 90:20
**wanting** 38:5
**wants** 16:1,3 90:2
**wasn't** 15:1 18:21 38:1,2 40:23 65:19,19 90:15
**watch** 17:11
**watching** 30:24 30:25 31:8,9 31:13,16,22
**water** 19:23 48:17
**way** 5:1 9:8 12:24 19:6 45:23 46:16 47:16 56:2 66:22 68:20,23 69:25
**ways** 23:13 59:17
**we'll** 20:1 79:16 88:8 96:14
**we're** 5:3 11:4,4 11:13 19:3,21 24:14,15 27:23 74:1 88:5 90:11
**we've** 5:25
**wearing** 48:16
**weather** 48:21
**week** 22:3 37:19 37:20
**weeks** 13:10 96:13,20,22
**weigh** 52:18 72:14
**weighing** 47:17
**weight** 47:19 49:22,25
**welcome** 95:16
**welcomed** 34:3 54:11
**well-being** 56:22 58:13
**went** 21:15 22:8 22:9 34:4 43:2 43:12 56:13
**weren't** 17:15
**wet** 48:17
**whatsoever** 31:18 32:20
**wilful** 21:12,15 43:19 45:3

81:23
**wilfully** 21:17
**willful** 63:8,13 63:15,22
**willfulness** 63:10,17
**William** 97:9
**window** 48:20
**wisdom** 53:15 60:21 73:16
**witness** 21:2 48:9,10 49:5,5 49:6,8,8,11,14
**witness'** 48:11 49:3,9,10,16
**witnesses** 17:9 19:14 29:22 31:12 32:22 47:3 49:13,23 49:24 50:22
**women** 11:2 12:17 15:19 17:24 37:9
**words** 11:15,17 11:23,23 12:14 52:9
**work** 20:3,20 22:24 28:3 41:22 42:2 53:22 54:15,18 54:20 56:14,16 57:4,8,10,14 57:15,17 58:4 74:15,15,17,20 75:3,7,8,17,20 75:24 76:2,4 81:17 86:25 87:8,12
**worker** 59:14
**workers** 22:16 23:4,13
**working** 6:14 21:25 56:21 68:9 92:6,10
**workplace** 35:20 42:20 55:14,25 57:6 58:5 67:1
**worry** 51:9
**worst** 30:23 31:22
**would've** 61:21
**wouldn't** 18:21 24:3 32:23,24 32:25 33:1,5 33:12 88:18
**write** 18:22 31:4 81:18 82:7 85:20
**writes** 18:13
**writeup** 11:7 14:25 16:20,23
**writeups** 21:24
**writing** 11:15 12:9,14 16:21 19:9
**written** 3:21 90:6
**wrong** 3:12 18:10 19:17
**wrongdoing** 35:15
**wrote** 12:2 14:5 22:11 49:14
**Wu** 11:1 12:17 17:14,21,21 18:9 20:10,11 20:12,12,13,14 20:16,18,21 21:3,6,25 25:14 31:13 33:7,19 34:7 35:15 36:12 37:1,4,4,16,16 38:10,18,19 39:9 41:17 54:2
**Wu's** 12:7 15:19 36:3

**X**

**Y**

**yeah** 3:23,23 4:21 20:24 27:9,19 44:19 45:5 69:2 75:6 75:12 86:20 88:25 90:11 96:22
**year** 4:12 13:24 14:2,11 17:17 20:23,24,24 36:11,13,15 37:16,17,17 39:8 85:15 86:1,2 87:1,3,8 92:12
**Year's** 36:17
**years** 21:23,24 31:15 33:7 43:12 54:12,17 57:25 86:25 87:1,2,3,9 92:11,13
**yesterday** 5:7 6:25 7:6 8:21 21:1 41:15
**younger** 23:3 41:3,5,9 43:17 58:1
**Yvette** 41:11

**Z**

**zero** 81:18 82:7

**0**

**1**

**1** 5:1 79:6 93:19 94:25
**1:16-cv-248** 1:3
**10** 21:23 45:3 81:19,21 94:14 95:4
**10.70** 92:9
**10.77** 24:19
**10:40** 44:7
**10:59** 44:8
**100** 31:15
**10th** 34:1
**11** 81:20 82:1,4 82:6 87:23 88:13,16 94:16 95:4
**11:48** 67:22
**11:55** 67:23
**12** 88:13,16
**12:24** 84:10
**12:25** 84:22
**13** 18:9 21:23
**14** 18:9
**1400** 1:16
**14th** 14:21
**15** 7:20
**1525** 1:13
**16-248** 94:23
**16,500** 24:18
**1601** 1:16
**1880** 1:21
**19** 1:5 97:15
**19102** 1:14,17
**19103** 1:22
**19106** 1:5
**1967** 22:11
**1st** 14:17,18 34:15,16,17 35:12 40:12

**2**

**2** 3:12 79:10 81:19 93:21 94:25
**2.09** 37:5
**2.27** 37:5
**2.28** 37:5
**2.83** 37:5
**2.88** 37:6
**2.9** 37:6
**2/25/14** 16:2
**2/9/13** 12:10
**2:39** 84:23
**2:52** 93:4
**2:58** 93:5
**20** 7:20
**2011** 38:4
**2012** 10:13
**2013** 10:13,17 12:15 43:13,14
**2014** 10:13,17 13:9 14:17,18 21:10,17
**2015** 14:21
**2017** 4:8
**2018** 1:5 97:15
**22** 85:21
**22,000** 24:19 85:15 86:1,2 87:1,3 92:12
**250,000** 95:3
**251,375** 24:20
**25th** 13:9
**28** 43:11

**3**

**3** 2:6 79:16,16 81:20 93:23 95:1
**3.0** 37:2
**3:04** 97:1
**30** 2:10 33:7
**341** 97:16
**35** 8:9,22 9:3
**350,000** 95:4

**4**

**4** 1:9 45:6 80:1 93:25 95:1,2
**42** 2:12
**44,000** 87:6
**45** 2:14

**5**

**5** 3:12 8:10 42:23 80:6 81:20 94:2 95:2
**5.1.1** 5:23
**5.1.7** 5:20
**5:30** 18:13
**50** 85:24,25
**50,000** 92:8
**51** 9:8
**52,000** 24:17
**53,000** 85:12,21 88:23
**55** 17:24
**58** 12:12,18
**59** 54:12,17 57:25

**6**

**6** 3:13 80:10 94:4 95:2
**601** 1:4
**62** 88:12
**65** 41:11
**67** 41:11
**69,000** 85:24,25 86:1,6 87:2,7
**6th** 1:22

**7**

**7** 3:13 80:14 81:20 94:6 95:2
**7/30/2012** 12:1

**8**

**8** 3:13 79:16 80:19,23 94:8 95:3
**8-0** 95:14
**8/6/13** 12:20
**85** 2:16
**855)204-8184** 1:23

**9**

**9** 2:8 80:24 81:5 83:15,17 94:10 95:3
**9/9** 12:6
**9:29** 3:1
**9:34** 8:3
**9:44** 8:4
**93** 2:18
**9th** 37:23