## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| _____ | : | |
| **RUTH BRIGGS,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| | : | **CIVIL ACTION NO.** |
| **v.** | : | **16-cv-0248** |
| | : | |
| **TEMPLE UNIVERSITY** | : | |
| | : | |
| **Defendant.** | : | |
| _____ | : | |

### ORDER

**AND NOW**, this _____ day of _____, 201____, upon consideration of the Plaintiff Ruth Briggs's Motion for Attorneys' Fees, Costs, and Interest, it is hereby **ORDERED** and **DECREED** as follows:

1. Plaintiff shall be awarded $405,099.00 in attorneys' fees;

2. Plaintiff shall be awarded a contingency fee enhancement of $202,549.50;

3. Plaintiff shall be awarded $6,042.36 in costs;

4. The Judgment shall be amended to include $22,250.00 in prejudgment interest; and

5. Pursuant to 28 U.S.C. §1961, Plaintiff shall receive post-judgment interest at a rate of 2.39% from October 16, 2018 to the date of payment.


BY THE COURT:


_____
ROBERT F. KELLY
SENIOR UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| RUTH BRIGGS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 16-cv-0248 |
| | : | |
| TEMPLE UNIVERSITY | : | |
| | : | |
| Defendant. | : | |
| | : | |

PLAINTIFF RUTH BRIGGS'S MOTION
FOR ATTORNEYS' FEES, COSTS, AND INTEREST

For the reasons set forth in the accompanying Memorandum of Law in Support of Plaintiff's Motion for Attorneys' Fees, Costs, and Interest, Plaintiff respectfully requests that this Court enter an Order awarding to Plaintiff: (1) $405,099.00 in reasonable attorneys' fees accrued; (2) $202,549.50 as a contingency fee enhancement; (3) $6,042.36 in reasonable costs incurred; (4) $22,250.00 in prejudgment interest; and (5) post-judgment interest to be calculated moving forward. In total, Plaintiff seeks $635,940.86 plus post-judgment interest.[1]

Respectfully submitted,

CONSOLE MATTIACCI LAW, LLC

Laura C. Mattiacci, Esq.
Rahul Munshi, Esq.
1525 Locust St., Ninth Floor
Philadelphia, PA 19102
(215) 545-7676 (t); (215) 814-8920 (f)

DATED: October 29, 2018

Attorneys for Plaintiff, Ruth Briggs

---

[1] The instant Motion does not include fees for services rendered or costs incurred after October 25, 2018. Plaintiff specifically reserves her right to supplement her petition for fees and costs and/or file a subsequent petition seeking reimbursement for work performed after October 25, 2018.

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RUTH BRIGGS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 16-cv-0248 |
| | : | |
| TEMPLE UNIVERSITY | : | |
| | : | |
| Defendant. | : | |
| | : | |

---

**PLAINTIFF RUTH BRIGGS'S BRIEF IN SUPPORT OF
HER MOTION FOR ATTORNEYS' FEES, COSTS, AND INTEREST**

---

CONSOLE MATTIACCI LAW, LLC

Laura C. Mattiacci, Esquire
Rahul Munshi, Esquire
1525 Locust St.
Ninth Floor
Philadelphia, PA 19102

Counsel for Plaintiff, Ruth Briggs

Dated: October 29, 2018

## **TABLE OF CONTENTS**

I.   Introduction and Procedural Background ........................................................................1

II.  Plaintiff is Entitled to Her Reasonable Attorneys' Fees and Costs as the Prevailing Party
     Under the ADEA, Title VII, and the PHRA ......................................................................3

     A.  Plaintiff is Entitled to a Fully Compensatory Attorneys' Fee Award............................3

         1.   CML Performed a Reasonable Number of Hours Necessary to Win ....................6

         2.   CML's Hourly Rates are Reasonable ..................................................................12

              a.   CML's Rates Requested are the Firm's Usual and Customary Rates Actually
                   Paid For By the Firm's Hourly Clients...........................................................12

              b.   CML's Rates are in Line with the Prevailing Market Rates for Attorneys of
                   Similar Experience, Skill and Reputation......................................................13

              c.   Mr. Console Attests that CML's Rates are Within Prevailing Market Rates ..20

              d.   CML's Usual and Customary Rates are in Line with Market Rates Per
                   Published Data ..............................................................................................20

              e.   CML's Usual and Customary Rates Have Been Approved in Other
                   Litigations .....................................................................................................21

     B.  The Court Should Award a Contingency Fee Enhancement Under Pennsylvania
         Law ..................................................................................................................................23

     C.  Plaintiff Should Receive Interest on Her Back Pay Award ...........................................25

     D.  Plaintiff is Entitled to be Compensated for Reasonable Costs Incurred......................27

III. Conclusion .........................................................................................................................28

## TABLE OF AUTHORITIES

**Cases**

*Barker v. Hotstetter*, 2017 U.S. Dist. LEXIS 118550 (E.D.Pa. July 28, 2017)......................23, 24

*Becker v. ARCO Chem. Co.*, 15 F.Supp.2d 621 (E.D. Pa. 1998)...........................................26, 27

*Blum v. Stenson*, 465 U.S. 886 (1984) ..............................................................................12

*Booker v. Taylor Milk Co.*, 64 F.3d 860 (3d Cir. 1995).......................................................25

*Braden v. Lockheed Martin Corporation* (D.N.J., Civil Action No. 14-4215) ............................18

*City of Burlington v. Dague*, 505 U.S. 557 (1992) ...........................................................4

*City of Riverside v. Rivera,* 477 U.S. 561 (1986) .............................................................3

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) .................................................................3, 4

*I.W. v. School Dist. of Phila.,* 2016 U.S. Dist. LEXIS 4441 (E.D. Pa. Jan. 13, 2016) .................19

*Lanni v. New Jersey*, 259 F.3d 146 (3d Cir. 2001) ..........................................................13

*Loeffler v. Frank*, 486 U.S. 549 (1988)........................................................................25

*Loesch v. City of Philadelphia*, 2008 U.S. Dist. LEXIS 48757 (E.D. Pa. June 25, 2008).............26

*McClain v. Avis* (3d Cir. Case No. 15-1936) ..................................................................18

*McGuffey v. Brink's, Inc.,* 598 F. Supp.2d 659 (E.D. Pa. 2009).................3. 11, 12, 13, 23, 27, 28

*Mitchell v. City of Philadelphia,* 2010 U.S. Dist. LEXIS 32984 (E.D. Pa. April 5, 2010) .....12, 20

*Missouri v. Jenkins by Agyei*, 491 U.S. 274 (1989)........................................................13

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546 (1986) ...........11

*Pietrowski v. The Kintock Group* (Philadelphia Court of Common Pleas, No. 111003328) ..16, 18

*Polselli v. Nationwide Mut. Fire Ins. Co.*, 126 F.3d 524 (3d Cir. 1997) ...............................24, 25

*Rendine v. Pantzer*, 141 N.J. 292 (1995) ...................................................................24, 25

*Rode v. Dellarciprete*, 892 F.2d 1177 (3d Cir. 1990)........................................................12, 13

*Rush v. Scott Specialty Gases, Inc.*, 940 F.Supp. 814 (E.D. Pa. 1996)...........................................26

*Shovlin v. Timemed Labeling Systems, Inc.*, 1997 U.S. Dist. LEXIS 2350
(E.D. Pa. Feb. 28, 1997)...........................................................................................................26

*Student Pub. Interest Research Group of New Jersey v. AT&T Bell Labs*, 842 F.2d 1436
(3d Cir. 1988)..................................................................................................................... 3, 12-13

*Sun Ship, Inc. v. Matson Navigation, Co.*, 785 F.2d 59 (3d Cir. 1986) ........................................26

*Tomasso v. Boeing Co.*, 2007 U.S. Dist. LEXIS 70001 (E.D. Pa. Sept. 21, 2007) ......................11

*Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031 (3d Cir. 1996)........15

*Watcher v. Pottsville Area Emergency Med. Serv.*, 559 F. Supp. 2d 516 (M.D. Pa. 2008).....27, 28

*Williams v. The MLB Network* (N.J. Superior Court, No. CAM-L-3675-14)..........................16, 18

*Young v. Lukens Steel Co.*, 881 F.Supp. 962 (E.D. Pa. 1994) .......................................................26

## Statutes

Age Discrimination in Employment Act
   29 U.S.C. §621, *et seq* ...........................................................................................1, 2, 3, 27

Title VII of the Civil Rights Act of 1964
   42 U.S.C. §2000e, *et seq*..................................................................................................... 1-2, 3

Pennsylvania Human Relations Act
   43 P.S. §951, *et seq*...........................................................................................................1, 3

28 U.S.C. §1961..........................................................................................................................26, 27

## Other Authorities

Pa.R.Civ.P. 1717.......................................................................................................................... 23-24

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **RUTH BRIGGS,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION NO.** |
| **v.** | : | **16-cv-0248** |
| | : | |
| **TEMPLE UNIVERSITY** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

### PLAINTIFF RUTH BRIGGS'S MEMORANDUM OF LAW IN
### SUPPORT OF HER MOTION FOR ATTORNEYS' FEES, COSTS, AND INTEREST

**I.   INTRODUCTION AND PROCEDURAL BACKGROUND**

Plaintiff Ruth V. Briggs submits the instant Motion for Attorneys' Fees, Costs, and Interest as the prevailing party in this employment action that has resulted in a Judgment in her favor in the amount of $910,670.20 (Doc. No. 79).  For the reasons set forth below, Plaintiff seeks reimbursement of attorneys' fees in the amount of $405,099.00, a contingency fee enhancement of $202,549.50, costs in the amount of $6,042.36, and prejudgment interest in the amount of $22,250.00.  In total, Plaintiff seeks $635,940.86 plus post-judgment interest.[1]

By way of background, on January 20, 2016, Plaintiff commenced this employment discrimination, retaliation, and hostile work environment action against her former employer, Defendant Temple University, for violations of the Age Discrimination in Employment Act, as amended, 29 U.S.C. §621, *et seq.* ("ADEA"), the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA"), and Title VII of the Civil Rights Act of 1964, as amended, 42

---

[1] The instant Motion does not include fees for services rendered or costs incurred after October 25, 2018.  Plaintiff specifically reserves her right to supplement her petition for fees and costs and/or file a subsequent petition seeking reimbursement for work performed after October 25, 2018.

U.S.C. §2000e, *et seq.* ("Title VII").  On July 31, 2017, Defendant filed a Motion for Summary Judgment (Doc. No. 26), to which Plaintiff responded on August 9, 2017 (Doc. No. 27).  On January 3, 2018, the Court denied Defendant's Motion in its entirety (Doc. No. 31) and subsequently scheduled the matter for trial.

On July 19, 2018, the jury in this matter rendered a unanimous verdict in favor of Plaintiff and against Defendant Temple University, awarding Plaintiff $250,000 in back pay economic loss damages (which were doubled as liquidated damages under the ADEA) and $350,000 in pain and suffering damages.  The four-day jury trial included live testimony by five (5) witnesses and the introduction of dozens of exhibits into evidence.  By agreement among the parties and the Court, the jury was not asked, and did not determine, the amount of front pay damages that Plaintiff was entitled to recover as a result of Defendant's unlawful conduct.

On August 9, 2018, Defendant filed a Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial, or, in the Alternative, for a Remittitur (Doc. No. 64), to which Plaintiff responded on August 24, 2018 (Doc. No. 74).  On August 10, 2018, Plaintiff filed a Motion for a New Trial on Punitive Damages Only and for Front Pay Damages (Doc. No. 65), to which Defendant responded on August 24, 2018 (Doc. No. 75).  Plaintiff filed a Reply in support of her Motion (Doc. No. 76), to which Defendant filed a Sur-Reply (Doc. No. 77).

On October 16, 2018, this Court rendered an Opinion and issued an Order denying Defendant's post-trial Motion in its entirety, granting Plaintiff's Motion for Front Pay damages and assessing further damages in the amount of $60,670.20, and denying Plaintiff's Motion for a New Trial on Punitive Damages (Doc. Nos. 78, 79).  The Court contemporaneously Ordered the Clerk of Court to amend the Judgment to reflect a total award of $910,670.20 in favor of Plaintiff and against Defendant (Doc. No. 79).

**II.      Plaintiff is Entitled to Her Reasonable Attorneys' Fees and Costs as the Prevailing
Party Under the ADEA, Title VII, and the PHRA.**

Statutory fee shifting provisions are essential to the vindication of important civil rights.
*See, e.g., Student Pub. Interest Research Group of New Jersey v. AT&T Bell Labs,* 842 F.2d 1436,
1449-50, n.13 (3d Cir. 1988); *City of Riverside v. Rivera,* 477 U.S. 561, 576 (1986).
Reimbursement of fees is crucial to attracting dedicated and talented attorneys to pursue what are
often difficult cases with relatively modest potential recoveries on behalf of individuals against
defendants with resources sufficient to fund a vigorous and lengthy litigation. *See, e.g., id.* The
ADEA, Title VII, and PHRA all provide for an award of reasonable attorneys' fees and expenses
to the prevailing party. *See* 29 U.S.C. § 626(b) (referencing 29 U.S.C. § 216(b)); 42 U.S.C. 2000e-
5(k); 43 P.S. § 962 (c.2).   Under the ADEA, which incorporates the fee-shifting provision of the
Fair Labor Standards Act, the award is <u>mandatory</u>.   29 U.S.C. § 216(b) ("The court in such action
shall . . . allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action.").

Console Mattiacci Law, LLC ("CML") vindicated Plaintiff Ruth Briggs's statutorily
protected rights against unlawful discrimination, retaliation, and hostile work environment by her
employer, Temple University, through persuasive advocacy in a case that was difficult to win and
hard fought at every turn.   CML took Ms. Briggs's case on a contingent basis and made the
commitment to bring it to verdict when likely few firms would or could.   The firm's rates for doing
so are reasonable, as are the number of hours expended and costs incurred in achieving this result.

**A.  Plaintiff is Entitled to a Fully Compensatory Attorneys' Fee Award.**

"[W]here a plaintiff has obtained excellent results, his attorney should recover a fully
compensatory fee." *McGuffey v. Brink's, Inc.,* 598 F. Supp.2d 659, 674 (E.D. Pa. 2009) (quoting
*Hensley v. Eckerhart,* 461 U.S. 424, 435 (1983)).   By any measure, Plaintiff obtained excellent
results in this litigation.   After a hard-fought litigation from the outset of the case, the unanimous

jury found, as Plaintiff alleged in her Complaint, that Defendant engaged in: (1) age discrimination in connection with the termination of Plaintiff's employment; (2) retaliation in the form of termination against Plaintiff for complaining of age discrimination; (3) age-based hostile work environment; (4) retaliation in the form of hostile work environment against Plaintiff for complaining of age discrimination; and (5) retaliation in the form of hostile work environment against Plaintiff for complaining of gender discrimination. See Verdict Sheet (Doc. No. 58). The unanimous jury further found that Defendant engaged in willful misconduct (thus triggering liquidated damages) by intentionally discriminating against Plaintiff because of her age or retaliating against her because of her complaint of age discrimination (Question 10). Id. As requested, the unanimous jury awarded Plaintiff $250,000 in back pay economic losses. The jury further awarded Plaintiff $350,000 in compensatory damages. With the further assessment of front pay damages by the Court, in total, the Judgment against Defendant and in favor of Plaintiff stands at $910,670.20. CML should recover a fully compensatory fee for its work in securing this excellent result for its client.

The Supreme Court has held that "the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. The result (referred to as the lodestar) is strongly presumed to yield a reasonable fee. *City of Burlington v. Dague*, 505 U.S. 557 (1992). Here, Plaintiff seeks reimbursement of her reasonable attorneys' fees as determined by CML's lodestar calculation of hours reasonably worked to achieve the excellent result multiplied by CML's reasonable hourly rates. A computerized printout setting forth in detail the work performed

by CML for which it now seeks reimbursement is submitted herewith as Exhibit 1.[2]  CML's

lodestar calculation based on that work is summarized as follows:

| Name | Year began as professional/ paraprofessional | Hours Worked | Hourly Rate | Lodestar Amount |
|---|---|---|---|---|
| Stephen G. Console, Member | 1982 | 19.2 | $940 | $18,048.00 |
| Laura C. Mattiacci, Member | 2002 | 231.3 | $750 | $173,475.00 |
| Rahul Munshi, Partner | 2009 | 485.4 | $440 | $213,576.00 |
| **Total** | | **735.9** | | **$405,099.00** |

The reasonableness of CML's lodestar amount is supported by, *inter alia,* the

accompanying declarations of CML attorneys Stephen G. Console, Laura C. Mattiacci, and Rahul

Munshi (submitted herewith as Exhibits 2, 3, and 4, respectively), and the declarations submitted

by highly regarded employment lawyers in the Philadelphia area: Sidney Gold, Robert Davitch,

Michael Homans, and Julianne Peck (Exhibits 5, 6, 7, and 8, respectively).

As set forth more fully below, the hours expended by CML were reasonable and necessary

to win this challenging and hard fought case, and the rates charged for doing so are reasonable.

They are the usual and customary rates actually charged by the firm and paid for by its hourly fee

clients; in line with the prevailing market rates in the Philadelphia area for attorneys of similar

experience, skill and reputation; and have been approved in other litigations.

---

[2] CML has exercised billing judgment and does not seek reimbursement for all of the time that was spent working on this case.  Some billing entries have been deleted so that Exhibit 1 reflects only the time for which Plaintiff seeks reimbursement.  *See* Declaration of Stephen G. Console, submitted as Exhibit 2, at ¶21.  Moreover, Exhibit 1 only includes time spent up to and including October 25, 2018.  As previously noted, Plaintiff specifically reserves her right to supplement this petition for fees and costs and/or file a subsequent Petition seeking reimbursement for work performed after October 25, 2018.

1. **CML Performed a Reasonable Number of Hours Necessary to Win.**

CML is a boutique employee rights firm that allocates work among its legal staff in a way so as to ensure excellent representation in an efficient manner. Console Declaration at ¶14. The firm's founding member, Stephen G. Console, oversees each case and offers input especially into its initial assessment, litigation strategy, settlement posture, and prosecution at trial. *Id.* Each case is staffed with an attorney to handle it on a day-to-day basis through resolution; the level of experience of the attorney assigned depends on several factors including the complexity of the case. *Id.* If it is necessary to try a case in court, the firm devotes great resources to what is considered in today's legal world to be an unusual event requiring unique talent and specialized skills. *Id.*

CML's case staffing according to particular skills works. Console Declaration at ¶15. Mr. Console has attested that he has found, in his over thirty-six (36) years of experience, that this method of staffing is necessary to advocate for clients at the highest level and achieve the reputation and success that CML has. *Id.* Mr. Console allocated the work in this case to ensure the excellent representation of Plaintiff in an efficient way. *Id.* at ¶16. CML's attorneys and paraprofessionals worked tenaciously over a four and one-half (4.5) year period to vindicate Ms. Briggs's statutorily protected rights to not be unlawfully discriminated or retaliated against by her former employer, Defendant Temple University.

This allocation of resources is reflected in the lodestar submitted herewith. For example, Mr. Console expended 19.2 hours in total over the course of this litigation to date, which includes efficient supervisory oversight of the litigation and primary participation in settlement negotiations. Mr. Munshi has spent 485.4 hours on this matter as the primary attorney handling the case from the outset of the representation through post-trial briefing. Mr. Munshi was

responsible for all aspects of discovery, communications with the client, summary judgment briefing, assisting at trial, and post-trial briefing. Finally, Ms. Mattiacci spent 231.3 hours working on this case as lead trial counsel; accordingly, nearly all of Ms. Mattiacci's time on CML's lodestar came in June and July 2018 (pre-trial through post-trial). *See* Exhibit 1.

More specifically, Mr. Console efficiently spent 19.2 hours over the course of this matter keeping abreast of and overseeing Plaintiff's case through litigation. Among other things, Mr. Console attended the settlement conference with the court, communicated on occasion with opposing counsel, formulated a settlement demand, reviewed important correspondence and filings, attended jury selection, and communicated and strategized with Ms. Mattiacci and Mr. Munshi throughout the representation. *See* Console Declaration at ¶17. The itemized time entries for Mr. Console's work are set forth in Exhibit 1 and are accurate. *Id.* at ¶21.

Mr. Munshi was the primary attorney working on this case from May 2014 through trial and the post-trial actions, including the response to Defendant's comprehensive post-trial Motion seeking Judgment as a Matter of Law, a New Trial, and/or a Remittitur, and Plaintiff's own post-trial Motion. He is an experienced litigator who vigorously prosecuted Plaintiff's claims through litigation. Among other things, Mr. Munshi conducted comprehensive discovery and developed the extensive and varied facts necessary to demonstrate pretext in this case. Mr. Munshi deposed witnesses produced by Defendant, including Human Resources professionals and the decision-makers in this action. Defendant produced over 1,000 pages of documents, including emails, all of which he reviewed. He also reviewed and produced over 1,000 documents from Plaintiff, including extensive documentation on Plaintiff's job search post-employment with Defendant and her medical records. Mr. Munshi also successfully defeated Defendant's Motion for Summary

Judgment, and provided valuable assistance in the successful trial of Plaintiff's case. *See* Console Declaration at ¶18.

From May 14, 2014 (the initial consultation with Plaintiff) through October 25, 2018, Mr. Munshi performed 485.5 hours of work on this case for which Plaintiff seeks reimbursement. In summary and without limitation, he:

- Initially consulted with Plaintiff after her termination of employment and reviewed Plaintiff's documents;

- Drafted and filed an Amended EEOC Charge on behalf of Plaintiff;

- Reviewed Defendant's position statements in this matter and submitted a rebuttal to the EEOC;

- Drafted and filed the complaint initiating the instant action with the Court;

- Drafted comprehensive discovery requests addressed to Defendant;

- Reviewed the documents produced by Defendant, which numbered approximately 1,000 pages of documents, including emails;

- Prepared Plaintiff's responses to Defendant's discovery requests;

- Prepared for and defended Plaintiff's deposition, which spanned two (2) days;

- Prepared for and deposed four (4) witnesses from Defendant;

- Drafted deposition summaries;

- Communicated with Plaintiff on a regular basis throughout the representation;

- Communicated with opposing counsel regarding all matters, including discovery disputes;

- Successfully responded to, and conducted legal research in opposition to, Defendant's Motion for Summary Judgment;

8

- Prepared for, and participated in, conferences with the Court;

- Helped prepare Plaintiff for her trial testimony;

- Strategized with Stephen G. Console and Laura C. Mattiacci;

- Reviewed Defendant's trial exhibit list and exhibits;

- Prepared and conducted direct examination of Plaintiff at trial;

- Prepared and presented Plaintiff's opening statement at trial;

- Co-tried the four day trial to successful verdict; and

- Drafted the Post-Trial briefing.

*See* Munshi Declaration at ¶19.

The itemized time entries for Mr. Munshi's work are set forth in Exhibit 1 and are accurate. *Id.* at ¶20.

Ms. Mattiacci focused intensively on the trial of Plaintiff's case. She is an experienced and excellent trial lawyer whose superior skills and successes have commanded the attention and respect of the defense bar. Ms. Mattiacci mastered the varied and many facts of this case, worked extensively on trial preparation, and presented the evidence to the jury in a way that was easy to grasp and which allowed them to see through Defendant's many levels of cover-up to hide the discriminatory animus at play in Plaintiff's termination. *See* Console Declaration at ¶19.

Ms. Mattiacci has performed 231.3 hours of work on this case for which Plaintiff seeks reimbursement. In summary and without limitation, she:

- kept abreast of the case through communications with Rahul Munshi and Stephen Console;

- reviewed the "trial binder," which included the key information in summary form prepared in anticipation of trial;

- worked closely with our paralegals regarding necessary preparations for trial;

9

- reviewed the summary judgment filings, including exhibits;

- reviewed and organized the documents produced by the parties in the case;

- read the deposition transcripts and reviewed the "hot" documents in the case;

- communicated with opposing counsel regarding trial matters;

- digested the deposition transcripts;

- reviewed, organized, and analyzed documents;

- reviewed and analyzed Defendant's trial exhibit list;

- reviewed and analyzed Defendant's trial exhibits;

- participated in strategy meetings with the trial team;

- created the trial strategy for the case;

- prepared cross-examination of witnesses;

- organized and analyzed Plaintiff's trial exhibits;

- prepared closing argument;

- worked on Plaintiff's motion in limine;

- reviewed and analyzed Defendant's motions in limine;

- worked on voir dire and verdict forms;

- conducted legal research regarding evidentiary issues;

- conducted legal research on jury instructions;

- reviewed Court's summary judgment opinion;

- conducted legal research regarding verdict sheet;

- worked on final preparations for trial;

- handled evidentiary issues at trial; and

- tried the four day jury trial as lead trial counsel to successful verdict.

*See* Mattiacci Declaration at ¶15.

The itemized time entries for Ms. Mattiacci's work are set forth in Exhibit 1 and are accurate. *Id.* at ¶16.

In determining the number of hours reasonably expended on the litigation, Plaintiff is entitled to be compensated for work "useful and of a type ordinarily necessary" to secure the final result obtained from the litigation. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 556 (1986). "In determining what hours are reasonably expended on the suit, the most critical factor is the degree of success obtained." *Tomasso v. Boeing Co.,* 2007 U.S. Dist. LEXIS 70001, at *11 (E.D. Pa. Sept. 21, 2007).

**Plaintiff obtained a resounding victory on the merits of a challenging and hard fought case.** Prevailing on a civil rights claim, particularly one against a large university with unlimited resources, is a difficult challenge few plaintiffs' firms will take on. As with every civil rights case, it is difficult to prove intent. Munshi Declaration at ¶16. Prevailing at trial in this case presented particular challenges. Contributing to the challenges of this case were the large amount of documentation that was central to this matter, the many levels of cover-up employed by Defendant to hide the discriminatory and retaliatory animus at play, and the large and sophisticated employer/Defendant who vigorously defended this action from the outset.

**Plaintiff's counsel did what was necessary to win this case and should be fully compensated for its efforts to secure an excellent result for its client in this civil rights action.** The hours expended to do so were reasonable. *See, e.g., McGuffey*, 598 F. Supp. 2d at 670-73 (finding that a total of 1,096.3 hours of work performed by an attorney who handled an ADEA/PHRA case from the time of charge filing through trial and an attorney who joined the representation to assist with trial was reasonable).

## 2. CML's Hourly Rates are Reasonable.

CML was established by Mr. Console in 1990 and for more than 28 years has specialized in representing non-union employees in all aspects of workplace matters, including discrimination and retaliation matters. Console Declaration at ¶11. The firm is included among the Martindale-Hubbell Bar Register of Preeminent Lawyers, which is exclusive to AV Preeminent Attorneys -- those who have achieved the highest possible peer review rating in both legal ability and ethical standards. *Id.* The firm has achieved a high level of success and a great demand for its services. At present, CML represents only a small fraction of the clients who contact our firm for representation. *Id.* at ¶12.

CML charges a reasonable hourly rate for its services. "Generally, a reasonable hourly rate is to be calculated according to the prevailing market rates in the relevant community." *McGuffey,* 598 F. Supp. 2d at 669 (citing *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)). CML's rates as reflected in the billing entries (Exhibit 1) and the lodestar chart are in line with prevailing markets rates. The rates are: a) the firm's usual and customary rates actually paid for by its hourly clients; b) in line with the rates for similar services by lawyers of reasonably comparable skill, experience and reputation; c) attested to by Mr. Console as within prevailing market rates; d) in line with rates charged by other firms per published data; and e) have been approved in several other litigations.

### a. CML's Rates Requested are the Firm's Usual and Customary Rates Actually Paid For By the Firm's Hourly Clients.

The best evidence of a prevailing market rate is counsel's customary billing rate. *E.g., Mitchell v. City of Philadelphia,* 2010 U.S. Dist. LEXIS 32984, at *40 (E.D. Pa. April 5, 2010) (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)); *see also, e.g., Student Pub. Interest*

*Research Group*, 842 F.2d at 1447 (though not dispositive, the starting point in ascertaining a reasonable hourly rate is the attorney's usual billing rate).

The hourly rates for the attorneys as reflected in the billing entries (Exhibit 1) and summarized in the lodestar chart <u>are the same as the regular rates charged for their services in non-contingent matters.</u>  Console Declaration at ¶26.[3]  The usual and customary hourly rates used in the calculation of CML's lodestar are the actual rates CML has used to bill the clients it represents on an hourly fee basis, and which have been paid by hourly clients.  *Id.*  In fact, CML bills about $500,000 annually on an hourly fee basis at its usual and customary rates.  *Id.*  That the rates requested are within the prevailing market is demonstrated by the fact that people within the Philadelphia area are willing to pay them.

### b. CML's Rates are in Line with the Prevailing Market Rates for Attorneys of Similar Experience, Skill and Reputation.

In considering prevailing market rates, "the district court should 'assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"  *McGuffey,* 598 F. Supp. 2d at 669 (quoting *Rode*, 892 F.2d at 1183).

The attorneys who performed the bulk of the legal services in this case -- Ms. Mattiacci and Mr. Munshi -- are experienced and talented practitioners of employment law who have earned stellar reputations for their excellent work.  Mr. Console played a critical role in supervising the litigation and participating in court and settlement conferences.  Each attorney bills at a rate that

---

[3] Under Third Circuit law, to account for the delay in compensation, a plaintiff is entitled to recover reasonable attorney's fees based on his attorney's <u>current</u> hourly rate at the time of the fee petition. *See, e.g., Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001); *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283-84 (1989).

lies within the prevailing market rates in the Philadelphia area for attorneys of similar experience, skill and reputation.

Mr. Console worked on this case through litigation and trial and currently bills at the rate of $940 an hour. *See* Exhibit 1. Mr. Console is a 1982 graduate of Villanova Law School. Console Declaration at ¶3. He has been practicing law for over thirty-six (36) years, and has concentrated his practice for the last thirty-plus years on employment law. *Id.* at ¶¶4-5. He is an elected fellow of the College of Labor and Employment Lawyers (2008). *Id.* at ¶6. Martindale-Hubbell has recognized him as an "AV Rated" Attorney – the highest possible peer review rating in legal ability and ethical standards. *Id.* at ¶7. From 1988 through 2000, Mr. Console was a member of the Executive Board of Directors of the National Employment Lawyers Association of New Jersey. *Id.* at ¶8. He regularly speaks at seminars involving employment law and has done so for more than twenty-five (25) years. *Id.* at ¶9.

Mr. Console has been recognized by his peers as a top practitioner. *Id.* at ¶10. Without limitation: he was named as a leading attorney in the state of Pennsylvania in the area of plaintiff's employment and labor law in *Chambers USA: America's Leading Business Lawyers 2005-2006*, as one of the Best Lawyers in America (2008-2014) in the area of Labor and Employment Law in *Best Lawyers in America*, as one of the Best Lawyers in *The Best of the U.S.* (2008-2013), and as one of the Best Lawyers in America in *America's Who's Who*. Mr. Console was named the Best Lawyers' 2012 Philadelphia Employment Law – Individuals Lawyer of the Year. He was named a "Super Lawyer" and to the "Top 100 Attorneys in Philadelphia" and "Top 100 Attorneys in Pennsylvania" by *Philadelphia Magazine* and *Philadelphia Super Lawyers Magazine* every year from 2008-present. *Id.*

Plaintiff has submitted declarations from four (4) highly regarded employment law practitioners in the Philadelphia area who are familiar with Mr. Console's work and the work of CML. *See Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1035-36 (3d Cir. 1996) (remanding the issue of attorneys' fees for further consideration by the trial court in light of the submitted affidavits from various Philadelphia lawyers practicing in employment discrimination cases supporting counsel's requested rate). Each practitioner attests that his current hourly rate ($940) is reasonable because it lies well within the range of fees charged for work in fee shifting cases by attorneys with similar backgrounds, experience and abilities in the employment field in the Philadelphia area. *See* Gold Declaration at ¶6; Davitch Declaration at ¶7; Homans Declaration at ¶6; and Peck Declaration at ¶6.

Ms. Mattiacci served as lead trial counsel and nearly all of her requested fees at the hourly rate of $750 come from trial work performed in June and July 2018. Ms. Mattiacci is a 2002 graduate of the Beasley School of Law at Temple University. *See* Mattiacci Declaration at ¶3. While at the Beasley School of Law, she clerked for the preeminent trial lawyer, James E. Beasley, Sr., and was a standout member of the National Trial Team, where she several trial advocacy awards and honors, including the ATLA National Championship in Trial Advocacy. *Id.* at ¶4. Ms. Mattiacci joined CML - formerly known as Console Law Offices - as an associate attorney in 2003 and has since devoted her practice to the representation of employees. She has represented employees in all matters of plaintiffs' employment law, from counseling, representation at the administrative agency, negotiation of settlements, litigation in state and federal courts, and at trial. *Id.* at ¶6. In 2012, she was made a shareholder and partner of CML, and designated as the firm's lead trial counsel on its significant cases. *Id.* at ¶7.

At CML, Ms. Mattiacci has tried numerous jury trials.  Two settled several days into trial. Eight were tried to verdict (six of which were favorable).  Ms. Mattiacci has prepared many other cases for trial, which were settled right after or shortly before jury selection.  In 2013, she was lead trial counsel in the case of *Pietrowski v. The Kintock Group* (Philadelphia Court of Common Pleas, No. 111003328), which resulted in the largest employment law verdict in Pennsylvania for that year, as reported in *The Legal Intelligencer.*  In 2017, she was lead trial counsel in the case of *Williams v. The MLB Network* (N.J. Superior Court, No. CAM-L-3675-14) which resulted in a jury verdict of over $1.5 million.  *Id.* at ¶8.

Ms. Mattiacci has spoken frequently at seminars and conferences on employment law and trial strategy.  In 2016, she was asked to speak as part of a distinguished panel that included federal judges from around the nation regarding the December 1, 2015, Amendments to the Federal Rules of Civil Procedure.  She has spoken frequently on the topic of employment law, including in particular on the trial of an employment case.  Among her recent speaking engagements were: *Employment Law Essentials and Best Practices: Preparing for Trial* (Employment Law Institute, 2015);  *How to Get Through (and Win) the First Day of Trial* (Pennsylvania Bar Institute, 2015); *Employment Law Essentials and Best Practices: Disability Discrimination and FMLA* (Employment Law Institute, 2015); *Trial Techniques and Strategies for Litigating Damages* (ABA, 2018); *Strategic Trial Decisions: Perspectives from Counsel and the Court* (Employment Law Institute, 2018); *Workers with Disabilities and the Rise of Retaliation Claims* (ABA, 2018); and *Representation Services in the Courts for Deaf and Hard of Hearing Individuals* (Pennsylvania Bar Association, 2018).

Ms. Mattiacci has also written many articles on the topic of employment law, including several that focus on the trial of an employment case.  Among her recent publications are: *Trial*

16

*of an Employment Law Case – Mock Demonstration of Closing, Directs and Crosses* (Pennsylvania Bar Institute, 2014); *Top Ten Pitfalls for Employment Lawyers* (Employment law Institute, 2012); and *Visualizing Your Evidence* (National NELA Conference, 2012).

Ms. Mattiacci has been recognized by her peers as a top practitioner.  Without limitation: she was recognized in *Best Lawyers in America* in the area of Employment Law (2015-2019) and by *Lawdragon 500 Plaintiff Employment Lawyers Guide* (2018); and she has been named to the list of "Top 50 Female Attorneys in Pennsylvania" by *Philadelphia Magazine* and *Philadelphia Super Lawyers Magazine* 2014-2018, and to their list of "Top 100 Attorneys in Philadelphia" and "Top 100 Attorneys in Pennsylvania" in 2015 and 2018.  Ms. Mattiacci has been named to the Pennsylvania "Super Lawyers" list by *Philadelphia Magazine* and *Philadelphia Super Lawyers Magazine* every year since 2013.  She was also named to the "*2011 Lawyers on the Fast Track*" by *The Legal Intelligencer*, a distinction given to only 27 lawyers under the age of 40.

Plaintiff has submitted declarations from four highly regarded employment law practitioners in the Philadelphia area who are familiar with Ms. Mattiacci's work.  All attest that her hourly rate ($750 per hour) is reasonable because it lies well within the range of fees charged for work in fee shifting cases by attorneys with similar backgrounds, experience and abilities in the employment field in the Philadelphia area.  *See* Gold Declaration at ¶7; Davitch Declaration at ¶8; Homans Declaration at ¶7; and Peck Declaration at ¶7.

Mr. Munshi primarily handled this case through litigation and currently bills at the rate of $440 an hour.  Mr. Munshi is a 2006 graduate of Haverford College and a 2009 graduate of the Beasley School of Law at Temple University.  Munshi Declaration at ¶3.  While at the Beasley School of Law at Temple University, Mr. Munshi was a standout member of the National Trial Team, Jessup International Law Moot Court Team, and served as Managing Editor of the *Temple*

*Political & Civil Rights Law Review*.  *Id.* at ¶4.  He has practiced law since 2009, and his first position out of law school was serving as a judicial law clerk for the Hon. Joel H. Slomsky of the United States District Court for the Eastern District of Pennsylvania (2009-2010).  *Id.* at ¶5.  Since joining CML in 2010 as an associate, Mr. Munshi has devoted his practice to the representation of employees.  *Id.* at ¶6.  Mr. Munshi was elevated to partner in 2017.  *Id.*

Mr. Munshi has significant courtroom experience.  Last year, Mr. Munshi served as trial counsel in *Braden v. Lockheed Martin Corporation* (D.N.J., Civil Action No. 14-4215) and obtained a jury verdict of $51,560,000.00 in an age discrimination action.  As trial counsel in that matter, Mr. Munshi presented arguments, examined witnesses, and contributed to plaintiff's successful prosecution of the age discrimination action.  *Id.* at ¶7.  Also in 2017, Mr. Munshi served as second-chair (with Ms. Mattiacci as first-chair) in *Williams v. The MLB Network* (N.J. Superior Court, No. CAM-L-3675-14), where the firm obtained a jury verdict in favor of the plaintiff for over $1.5 million.  In that litigation, Mr. Munshi was the primary attorney handling pre-trial matters, including through discovery and motions practice.  *Id.* at ¶8.  In 2013, Mr. Munshi also served as co-counsel in the case of *Pietrowski v. The Kintock Group* (Philadelphia Court of Common Pleas, C.A. No. 111003328), which resulted in a jury verdict of $1,678,000.00.  At the *Pietrowski* trial, Mr. Munshi presented plaintiff's opening statement and conducted several trial examinations, including the direct examination of the plaintiff.  *Id.* at ¶11.  Additionally, in 2016, Mr. Munshi successfully argued before the Court of Appeals for the Third Circuit in *McClain v. Avis* (3d Cir. Case No. 15-1936), where he obtained reversal of summary judgment in a race discrimination action.  *Id.* at ¶10.

Mr. Munshi has spoken frequently at seminars and conferences on employment law and litigation.  In 2013, he served as an instructor at the Pennsylvania Bar Institute (PBI) Employment

Law Institute on a panel regarding evidence in age discrimination actions.  In 2014, he served as an instructor at the PBI Employment Law Institute on a seminar called "Trial of a Retaliation Case," where he represented a fictional plaintiff in a mock trial before several hundred seminar participants.  In 2015, Mr. Munshi served as a panelist and moderator at the Philadelphia Bar Association's Bench-Bar and Annual Conference, where he led a discussion on LGBT discrimination in the workplace.  In 2016, he served as an instructor at the PBI Employment Law Institute on a course regarding age discrimination litigation.  In 2017, he again served as an instructor at the PBI Employment Law Institute on a seminar regarding employee protections under the Americans with Disabilities Act.  Thus far in 2018, Mr. Munshi has co-presented a CLE hosted by the ABA on litigation skills and tips for discovery in employment litigation actions; a CLE hosted by PBI called "Responding to Allegations of Sexual Misconduct"; and a CLE on issues surrounding the ADA and the FMLA, entitled "The Best Ways to Get Sued Over Employee Leaves and Accommodations."  *Id.* at ¶12.

Mr. Munshi has been recognized by his peers as a top practitioner.  *Id.* at ¶13.  Without limitation:  he has been named a "Rising Star" on the "Super Lawyers" list by *Philadelphia Magazine* and *Philadelphia Super Lawyers Magazine* every year since 2013; he was named to the "*2016 Lawyers on the Fast Track*" by *The Legal Intelligencer*, a distinction given to only 35 lawyers under the age of 40; and he was the 2012 recipient of the Young Alumni Award for Excellence in Leadership by Haverford College.  *Id.* at ¶13.

Plaintiff has submitted declarations from three highly regarded employment law practitioners in the Philadelphia area who are familiar with Mr. Munshi's work.  All attest that his hourly rate ($440 per hour) is reasonable because it lies well within the range of fees charged for work in fee shifting cases by attorneys with similar backgrounds, experience and abilities in the

employment field in the Philadelphia area. *See* Gold Declaration at ¶8; Davitch Declaration at ¶9; and Peck Declaration at ¶8. Mr. Munshi's hourly rate is also comparable to rates of attorneys with eight-years of experience practicing in top firms in the Philadelphia area. *See, e.g., I.W. v. School Dist. of Phila.*, 2016 U.S. Dist. LEXIS 4441 (E.D. Pa. Jan. 13, 2016) (noting affidavit from eighth year senior associate at Drinker Biddle & Reath, LLP attesting that her regular billing rate is $440).

### c. Mr. Console Attests that CML's Rates are Within Prevailing Market Rates.

Mr. Console has concentrated his practice on employment law for more than thirty (30) years. Console Declaration at ¶5. He is familiar with the rates charged by other attorneys with backgrounds similar to his, as well as to the attorneys within CML who worked on this matter. *Id.* at ¶28. He has attested that based on his personal knowledge, the rates that were utilized by CML in calculating its lodestar in this case are within the prevailing market rates for similar work performed by attorneys of comparable skills and experience. *Id.*

Mr. Console's Declaration should be considered in the Court's evaluation of prevailing market rates. *See, e.g., I.W. v. School District*, 2016 U.S. Dist. LEXIS 4441, at *18-19 (court considered in full the declarations submitted by the plaintiffs' attorneys, including their assertions as to prevailing market rates in the community).

### d. CML's Usual and Customary Rates are in Line with Market Rates Per Published Data.

CML's usual and customary rates are consistent with rates charged by defense firms based in Philadelphia according to the **2013** National Law Journal Survey of Billing Rates (submitted herewith as Exhibit 9) – a publication which has been cited by courts in the consideration of attorneys' fees awards. *See, e.g., Mitchell*, 2010 U.S. Dist. LEXIS 32984 at *40. For example:

- Blank Rome in **2013** reported a high partner billing rate of $940, low partner billing rate of $445, and average partner billing rate of $640; and a high associate rate of $565, low associate rate of $175, and average associate rate of $350.

- Cozen O'Connor in **2013** reported a high partner billing rate of $1050, low partner billing rate of $300, and average partner billing rate of $555; and a high associate rate of $590; low associate rate of $235, and average associate rate of $345.

- Pepper Hamilton in **2013** reported a high partner billing rate of $850, low partner billing rate of $475, and average partner billing rate of $630; and a high associate rate of $460; low associate rate of $245, and average associate rate of $360.

- Saul Ewing in **2013** reported a high partner billing rate of $850, low partner billing rate of $365, and average partner billing rate of $530; and a high associate rate of $575; low associate rate of $225, and average associate rate of $340.

The billing rates of Mr. Console (a preeminent attorney in the field of employment law for over thirty (30) years), Ms. Mattiacci (a distinguished trial attorney with over fifteen (15) years of experience), and Mr. Munshi (a partner at CML with significant courtroom experience) fall directly in line with the rates charged by defense firms in the Philadelphia market.

### e.  CML's Usual and Customary Rates Have Been Approved in Other Litigations.

CML's usual and customary rates have been approved by arbitrators and courts in awarding fees to the firm.  Console Declaration at ¶27.

In 2014, CML submitted a fee petition in the matter of *Sessions v. Owens-Illinois, Inc.*, a class action pension benefits case in the United States District Court for the Middle District of Pennsylvania (C.A. No. 1:07-cv-1669).  *Id.*  The fee petition for a negotiated portion of the common fund set forth a lodestar check based on CML's usual and customary rates and referenced in particular the work and rate of Mr. Console.  *Id.*  By Order dated October 23, 2014 (Docket No. 283), the Honorable Robert Mariani approved the requested fee based, in part, upon a cross check of the percentage of recovery based fee against the lodestar method.  *Id.*

In 2008, CML submitted declarations setting forth its usual and customary rates in support of plaintiffs' petition for attorneys' fees and costs in a race discrimination case. *Id.* Chief United States Magistrate Judge Rueter awarded the attorneys' fees and found that the CML's rates (including for Mr. Console) were "reasonable billing rates for federal employment-related matters" in the Philadelphia area and in accordance with the prevailing market rates. *Id. See Marthers v. Gonzalez,* Civil Action No. 05-cv-3778, Docket No. 81 (E.D. Pa. August 13, 2008).

In 2007, an arbitrator awarded fees to CML as the prevailing party on a multi-claimant WPCL and ERISA case based on CML's usual and customary rates charged to its clients. (*Aaron, et al. v. ACE.*) *Id.* Defendant's counsel did not contest the reasonableness of CML's hourly rates. *Id.* In 2005, an arbitrator awarded CML its attorney's fees based on its usual and customary hourly rates. (*Bolton v. LINA.*) *Id.* In that case, defendant's counsel did not contest the reasonableness of CML's hourly rates. *Id.*

In 1999, CML submitted a fee petition in the matter of *Feret v. First Union Corp.* based on its usual and customary hourly rates. *Id.* The petition was approved (although, as agreed, the award was in an amount negotiated as part of the aggregate class settlement). *Id. See Feret v. First Union Corp.,* Civil Action No. 2:97-cv-06759, Docket No. 104 (E.D. Pa. August 16, 1999).

The Honorable Clarkson S. Fisher of the United States District Court for the District of New Jersey awarded attorney's fees based on CML's usual and customary rates as the prevailing party at trial in an age discrimination case. *Id. See Garden v. General Elec.,* Civil Action No. 3:91-cv-01204, Docket No. 55 (D.N.J. June 7, 1993). CML was also awarded attorneys' fees as the prevailing party in discrimination cases based on its usual and customary rates in *Plumley v. Harbor Linen,* Civil Action No. 1:88-cv-01557 (D.N.J.) and *Bronstein v. Harbor Services,* Civil Action No. 1:88-cv-05074 (D.N.J.). *Id.*

22

In sum, when an applicant for a fee has demonstrated that the claimed rate and hours are reasonable, the resulting product (the lodestar) may be presumed to be the reasonable fee to which counsel is entitled. *See, e.g., McGuffey*, 598 F. Supp. 2d at 668. As demonstrated above, CML has calculated its lodestar based on reasonable hourly rates for hours reasonably expended, and no downward adjustment is warranted.

### B. The Court Should Award a Contingency Fee Enhancement Under Pennsylvania Law.

As explained above, Plaintiff's counsel represented Plaintiff in this case on a contingency fee basis where Plaintiff would not have to pay any money to the firm as the case proceeded. Plaintiff would not have been able to litigate this case with counsel if she had to pay even a small fraction of the fees as they accrued. *See* Console Declaration at ¶25. If Plaintiff was not successful in this litigation, Plaintiff's counsel would not have earned any fee. Courts routinely recognize that under these circumstances, "a contingent fee risk should be taken into account in determining the amount of reasonable attorneys' fees." *Barker v. Hotstetter*, 2017 U.S. Dist. LEXIS 118550, at *9 (E.D.Pa. July 28, 2017).

While contingency fee enhancement is precluded under federal law, in this case Plaintiff also succeeded in her claims under Pennsylvania's anti-discrimination law, the PHRA. Consequently, the Court should look to the Pennsylvania Rules of Civil Procedure in calculating the attorneys' fees to which Plaintiff is entitled. Pa.R.Civ.P. 1717 (previously numbered 1716) states:

> Rule 1717.    Counsel Fees
>
> In all cases where the court is authorized under applicable law to fix the amount of counsel fees it shall consider, among other things, the following factors:

(1) the time and effort reasonably expended by the attorney in the litigation;

(2) the quality of the services rendered;

(3) the results achieved and benefits conferred upon the class or upon the public;

(4) the magnitude, complexity and uniqueness of the litigation; and

(5) **whether the receipt of a fee was contingent on success.**

Pa.R.Civ.P. 1717.

The Third Circuit has held that where the assessment of attorneys' fees is bound by the Pennsylvania Rules of Civil Procedure, the Third Circuit predicts that the Pennsylvania Supreme Court would permit courts to consider a case's contingent risk when calculating a reasonable fee. *Polselli v. Nationwide Mut. Fire Ins. Co.*, 126 F.3d 524, 535 (3d Cir. 1997). In *Polselli*, a bad-faith action brought under Pennsylvania law, the Third Circuit predicted that the Pennsylvania Supreme Court would permit a trial court to **enhance** the lodestar amount to account for a particular case's inherent contingent risk. *Id.*; *see also Barker*, 2017 U.S. Dist. LEXIS 118550, at *9 (citing numerous cases applying a contingency fee enhancement under Pennsylvania law).

Importantly, the Third Circuit in *Polselli* cited approvingly the New Jersey Supreme Court case of *Rendine v. Pantzer*, 141 N.J. 292 (1995), which established a rule favoring the award of contingency enhancements to prevailing parties under the New Jersey Law Against Discrimination – the New Jersey state analogue to the PHRA. *Id.* at 536. In discussing *Rendine*, the Third Circuit explained:

> The [*Rendine*] court held that 'a counsel fee awarded under a fee-shifting statute cannot be 'reasonable' unless the lodestar, calculated as if the attorney's compensation were guaranteed irrespective of result, is adjusted to reflect the actual risk that the attorney will not receive payment if the suit does not succeed.' The court focused on risk of attorney non-payment, and it recognized that such risk will

24

vary with the circumstances of each unique case. The court concluded that 'contingency enhancements in fee-shifting cases ordinarily should range between five and fifty-percent of the lodestar fee, with the enhancement in typical contingency cases ranging between twenty and thirty-five percent of the lodestar.' **We believe that our prediction of Pennsylvania law is not significantly different from the statement of New Jersey law in** ***Rendine***.

*Polselli*, 126 F.3d 524 (citations omitted) (emphasis added).

Accordingly, because Plaintiff has succeeded in her claims under the PHRA, the Pennsylvania Rules of Civil Procedure dictate that the contingency nature of the fee agreement should be considered when calculating reasonable attorneys' fees, and the Third Circuit has predicted that the Pennsylvania Supreme Court would permit courts to consider the inherent risk of representation on a contingent basis, Plaintiff requests a contingency fee enhancement in this case of 50% - which the courts in *Polselli* and *Rendine* described as within the "ordinary range." In total, Plaintiff requests a contingency fee enhancement of $202,549.50.

### C. Plaintiff Should Receive Interest on Her Back Pay Award.

In civil rights actions such as the present matter, interest is authorized as part of the back pay remedy in actions against private employers. *Loeffler v. Frank*, 486 U.S. 549 (1988). Whether to award interest, which is intended to make victims of discrimination "whole," is within the sound discretion of the trial court. *Booker v. Taylor Milk Co.*, 64 F.3d 860, 868 (3d Cir. 1995). Awarding interest "serves to compensate a plaintiff for the loss of the money that the plaintiff otherwise would have earned had he not been unjustly discharged." *Id.* There is a "strong presumption in favor of awarding prejudgment interest, except where the award would result in unusual inequities." *Id.*

Courts in this circuit routinely award interest on back pay awards under the relevant statutes in this matter. *See, e.g., Booker*, 64 F.3d at 869 (reversing the district's court order denying

plaintiff prejudgment interest and concluding, "[b]ecause Plaintiff was entitled to some back pay as a result of his unlawful termination, under the present circumstances he is entitled to prejudgment interest for the loss of the use of the amount included in the back pay award."); *Loesch v. City of Philadelphia*, 2008 U.S. Dist. LEXIS 48757, at *8-9 (E.D. Pa. June 25, 2008); *Becker v. ARCO Chem. Co.*, 15 F.Supp.2d 621, 637-38 (E.D. Pa. 1998) ("Indeed, prejudgment interest should be presumed in backpay awards under the ADEA unless the equities require otherwise.") (quoting *Young v. Lukens Steel Co.*, 881 F.Supp. 962, 977 (E.D. Pa. 1994)); *Rush v. Scott Specialty Gases, Inc.*, 940 F.Supp. 814, 817-18 (E.D. Pa. 1996) ("It is well-settled that Title VII authorized prejudgment interest as part of the back pay remedy in actions against private employers.").

"The applicable prejudgment interest rate is left to the discretion of the Court." *Becker*, 15 F.Supp.2d at 637 (quoting *Shovlin v. Timemed Labeling Systems, Inc.*, 1997 U.S. Dist. LEXIS 2350 (E.D. Pa. Feb. 28, 1997)). However, the Third Circuit has stated that the district court may look to the interest rate contained in the federal post-judgment interest statute, 28 U.S.C. §1961, for guidance. *Id.* (citing *Sun Ship, Inc. v. Matson Navigation, Co.*, 785 F.2d 59, 63 (3d Cir. 1986)).

Typically, the Court my calculate simple interest on the plaintiff's back pay award by determining the average 52-week Treasury Bill rate from the date of plaintiff's termination to the date judgment was entered. In this case, Plaintiff's employment was terminated on April 1, 2014. The Amended Judgment was entered by the Court on October 16, 2018. The average 52-week Treasury Bill rate over this period is .89%.[4] The simple interest calculation on plaintiff's $250,000 back pay award is **$22,250** and the judgment should be amended to include this amount.

Plaintiff further seeks post-judgment interest, which is likewise governed by 28 U.S.C. §1961. *See Becker*, 15 F.Supp.2d at 638. Section 1961 "states that the interest rate to be used is

---

[4] *See* https://fred.stlouisfed.org/series/DGS1.

the 52-week Treasury Bill price on the day of the verdict." *Id.* On July 19, 2018, the rate was 2.39%.[5] Accordingly, Plaintiff should receive post-judgment interest at a rate of 2.39% from October 16, 2018 (the date of the Amended Judgment) moving forward. In accordance with 28 U.S.C. §1961, the interest should be compounded daily, and should be compounded annually. *Becker*, 15 F.Supp.2d at 638.

### D.  Plaintiff is Entitled to be Compensated for Reasonable Costs Incurred.

The enforcement provision of the ADEA, Section 16(b) of the Fair Labor Standards Act, provides for the **mandatory** award of costs to the prevailing party. 29 U.S.C. § 216(b) ("the court in such action shall . . . allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action.") Plaintiff, as the prevailing party on her claims under the ADEA, is thus entitled to reimbursement of her reasonable and appropriate costs. *See, e.g., McGuffey,* 598 F. Supp. 2d at 675 (awarding to plaintiff who prevailed on ADEA/PHRA claim his reasonable and appropriate costs of litigation); *Watcher v. Pottsville Area Emergency Med. Serv.,* 559 F. Supp. 2d 516 (M.D. Pa. 2008) (prevailing party under the ADEA and PHRA is entitled to an award of costs under the ADEA's fee shifting provision).

The costs and expenses incurred and paid by CML in connection with this case were reflected on the books and records of the firm. Console Declaration at ¶29. These books and records were prepared from checks and expense vouchers that were regularly maintained by the firm in the ordinary course of business and accurately reflect the costs and expenses incurred. *Id.* A printout of the detailed, individualized billing entries is attached as Exhibit 10 to Plaintiff's Motion. *Id.*; *see also* Munshi Declaration at ¶22.

---

[5] *See* https://www.treasury.gov/resource-center/data-chart-center/interest-rates/Pages/TextView.aspx?data=billRatesYear&year=2018

CML has incurred $6,042.36 in costs through October 25, 2018 in pursing this action on behalf of Plaintiff for which she seeks reimbursement. *Id.* These costs were reasonably incurred in the prosecution of this litigation. Console Declaration at ¶29. Accordingly, they should be awarded to Plaintiff as the prevailing party. *See, e.g., McGuffey*, 598 F.Supp.2d at 675 (awarding $28,521.08 in costs of litigation to prevailing party under ADEA's enforcement provision); *Watcher*, 559 F.Supp.2d at 534 (prevailing parties in civil rights cases are generally entitled to recover any reasonable costs associated with litigating their claims, provided that the costs are necessary and properly documented).

## III.  <u>Conclusion</u>

For all of the foregoing reasons, Plaintiff respectfully requests that the Court award to Plaintiff a total amount of $635,940.86 plus post-judgment interest - $405,099.00 for reasonable attorneys' fee for services performed; $202,549.50 as a contingency fee enhancement; $22,250.00 as prejudgment interest; and $6,042.36 for reasonable costs incurred.

Respectfully submitted,

**CONSOLE MATTIACCI LAW, LLC**

Dated: October 29, 2018

Rahul Munshi, Esq.
1525 Locust St., Ninth Floor
Philadelphia, PA 19102
(215) 545-7676

Attorney for Ruth Briggs

28